1   IRELL & MANELLA LLP
    Morgan Chu (CA 70446)
2   MChu@irell.com
    Alan Heinrich (CA 212782)
3   AHeinrich@irell.com
    Jordan Nafekh (CA 328151)
4   JNafekh@irell.com
    Henry White (CA 351549)
5   HWhite@irell.com
    1800 Avenue of the Stars, Suite 900
6   Los Angeles, California 90067-4276
    Telephone:    (310) 277-1010
7   Facsimile:    (310) 203-7199

8   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Kevin P.B. Johnson (Bar No. 177129)
9   kevinjohnson@quinnemanuel.com
    Andrew J. Bramhall (Bar No. 253115)
10  andrewbramhall@quinnemanuel.com
    555 Twin Dolphin Drive, Fifth Floor
11  Redwood Shores, California 94065
    Telephone:    (650) 801-5000
12  Facsimile:    (650) 801-5100

13  Sandra L. Haberny (Bar No. 260977)
    sandrahaberny@quinnemanuel.com
14  David M. Elihu (Bar No. 303043)
    davidelihu@quinnemanuel.com
15  865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017
16  Telephone:    (213) 443-3000
    Facsimile:    (213) 443-3100

17  *Attorneys for Foresight Diagnostics Inc.*

18                  **UNITED STATES DISTRICT COURT**

19                  **NORTHERN DISTRICT OF CALIFORNIA**

20                         **SAN JOSE DIVISION**

21  ROCHE MOLECULAR SYSTEMS, INC.          )   Case No. 5:24-cv-03972-EKL
    and ROCHE SEQUENCING SOLUTIONS,        )
22  INC.,                                  )   **FORESIGHT DIAGNOSTICS INC.'S**
                                           )   **MOTION TO DISMISS PURSUANT TO**
23                  Plaintiffs             )   **FRCP 12(b)(6)**
                                           )
24         v.                              )
                                           )   Pursuant to L.R. 7-2(b), Foresight identifies
25  FORESIGHT DIAGNOSTICS INC., DAVID      )   a hearing date and time of February 5, 2025
    KURTZ, an individual, and BOARD OF     )   at 10:00 AM.
26  TRUSTEES OF THE LELAND STANFORD        )
    JUNIOR UNIVERSITY,                     )
27                                         )
                    Defendants.            )
28

FORESIGHT'S MOTION TO DISMISS                                    Case No. 5:24-cv-03972-EKL

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................. 3

    A.  CAPP-Seq Technology ................................................................................. 3

    B.  Roche's Acquisition of CappMed ................................................................ 4

    C.  The Alleged Roche Trade Secrets ................................................................ 5

    D.  PhasED-Seq and Founding of Foresight ..................................................... 5

    E.  Roche's Trade Secret Misappropriation Allegations .................................. 6

III. LEGAL STANDARDS ........................................................................................ 7

IV. ARGUMENT ........................................................................................................ 7

    A.  Roche Fails to State a Claim Under the DTSA and CUTSA ...................... 7

        1.  Roche Has Failed to Plead Any Plausible "Trade Secrets" With the Required Particularity ..................................................... 8

        2.  Roche's Complaint Fails to Allege How Its Purported Trade Secrets Have Independent Economic Value ............................... 12

        3.  Roche's Complaint Fails to Allege Any Acts of Misappropriation by Foresight ......................................................... 13

    B.  Roche's UCL Claim Should Be Dismissed Because It is Preempted By CUTSA and Otherwise Fail to State a Claim ....................................... 18

        1.  Roche's UCL Claim Is Preempted By CUTSA ....................................... 18

        2.  Regardless of Preemption, The Complaint Fails To State a Claim Under The UCL .............................................................. 19

    C.  Roche's Declaratory Judgment Claim For Patent Ownership Should Be Dismissed ................................................................................... 21

V.  CONCLUSION ................................................................................................... 24

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**Cases**

4

*Aerotel, Ltd. v. IDT Corp.*,
   486 F. Supp. 2d 277 (S.D.N.Y. 2007) ...................................................................24

5

*Agency Solutions.com LLC v. TriZetto Group, Inc.*,
   819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................................17

6

*AlterG, Inc. v. Boost Treadmills LLC*,
   388 F. Supp. 3d 1133 (N.D. Cal. 2019) ..................................................................8

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................7, 24

9

10

*Attia v. Google LLC*,
   983 F.3d 420 (9th Cir. 2020) ..............................................................................9, 16

11

12

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
   583 F.3d 832 (Fed. Cir. 2009) ............................................................................23

13

14

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
   2018 WL 11434596 (N.D. Cal. Aug. 16, 2018) ...................................................19

15

16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................7

17

18

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
   727 F.3d 917 (9th Cir. 2013) ..............................................................................15

19

*Bonito Boats v. Thunder Craft Boats*,
   489 U.S. 141 (1989) ............................................................................................14

20

21

*Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc.*,
   2019 WL 11499334 (N.D. Cal. Nov. 13, 2019) ...................................................18

22

23

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ........................................................................................20

24

*Cisco Sys., Inc. v. Chung*,
   462 F. Supp. 3d 1024 (N.D. Cal. 2020) ...............................................................13

25

26

*CleanFish, LLC v. Sims*,
   2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) .......................................................8

27

28

*Colyer v. AcelRx Pharms., Inc*,
   No. 14-CV-04416-LHK, 2015 U.S. Dist. LEXIS 159640 (N.D. Cal. Nov. 25, 2015) ...........4, 7

*Davis v. HSBC Bank*,
691 F.3d 1152 (9th Cir. 2012) ................................................................................. 19

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ................................................................................... 3

*FilmTec Corp. v. Allied-Signal, Inc.*,
939 F.2d 1568 (Fed.Cir.1991) .................................................................................. 23

*Flores v. Wells Fargo Bank, N.A.*,
2012 U.S. Dist. LEXIS 88418 (N.D. Cal. June 26, 2012) ................................... 20, 21

*Forcier v. Microsoft Corp.*,
123 F. Supp. 2d 520 (N.D. Cal. 2000) ........................................................................ 9

*GENFIT S. A. v. CymaBay TherapeuticsInc.*,
2022 WL 195650 (N.D. Cal. Jan. 21, 2022) ........................................................... 13

*GeoVector Corp. v. Samsung Elecs. Co.*,
234 F. Supp. 3d 1009 (N.D. Cal. 2017) ................................................................. 4, 6

*Hadley* v. *Kellogg Sales Co.*
243 F.Supp.3d 1074 (N.D. Cal. 2017) ..................................................................... 21

*Imax Corp. v. Cinema Technologies, Inc.*,
152 F. 3d 1161 (9th Cir. 1998) .................................................................................. 8

*J. Gallagher & Co. v. Tarantino*,
498 F. Supp. 3d 1155 (N.D. Cal. 2020) ................................................................... 17

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .................................................................................. 22

*Morgan v. AT&T Wireless Servs., Inc.*,
177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768 (2009) ............................................. 20

*Moss v. United States Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ..................................................................................... 7

*Navigation Holdings, LLC v. Molavi*,
445 F. Supp. 3d 69 (N.D. Cal. 2020) ....................................................................... 18

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) .................................................................. 8, 10

*Prudencio v. Midway Importing, Inc.*,
831 F. App'x 808 (9th Cir. 2020) ............................................................................. 19

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 2002) ..................................................................................... 7

*Soc. Apps, LLC v. Zynga, Inc.*,
    2012 WL 2203063 (N.D. Cal. June 14, 2012) ............................................................. 9

*Space Data Corp. v. X*,
    2017 U.S. Dist. LEXIS 22571 (N.D. Cal. Feb. 16, 2017).................................. 7, 8, 11

*Sylabs, Inc. v. Rose*,
    2023 WL 8813517 (N.D. Cal. Dec. 19, 2023) ........................................................... 19

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009) ....................................................................... 16, 17

*Vendavo, Inc. v. Price*,
    2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ........................................................... 8

*WalkMe Ltd. v. WhatFix, Inc.*,
    No.23-cv-3991, 2024-WL-1221960 (N.D. Cal. March 21, 2024) ...................... 11, 12

*Waymo, LLC v. Uber Techs., Inc.*,
    256 F. Supp. 3d 1059 (N.D. Cal. 2017) ............................................................. 18, 19

*Welsh v. Am. Home Mortg. Assets*,
    LLC, No. 4:13-CV-04750 CW, 2014 U.S. Dist. LEXIS 139337 (N.D. Cal.
    Sep. 30, 2014)............................................................................................................ 20

*Wieg v. GM LLC*,
    No. 23-cv-04358-SI, 2023 U.S. Dist. LEXIS 200067 (N.D. Cal. Nov. 7, 2023)........ 20

**Statutes**

U.S.C. § 1839(5) ................................................................................................................ 17

18 U.S.C. § 1839 ............................................................................................................... 13

Bayh-Dole Act....................................................................................................... 1, 2, 16, 17

Cal. Bus. & Prof. Code § 17200........................................................................... 18, 19, 20

Cal. Bus. & Prof. Code § 17204......................................................................................... 19

Cal. Civ. Code § 3426.1 .................................................................................................... 13

Cal. Civ. Code § 3426.1(b) ............................................................................................... 17

California Unfair Competition Law ................................................................................ 2, 20

California Uniform Trade Secrets Act ............................................................................. 2, 3

Defend Trade Secrets Act ..................................................................................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

Fed. R. Civ. P. 8 .................................................................................................9, 11

Fed. R. Civ. P. 9(b)..................................................................................................20

Fed. R. Civ. P. 12(b)(6).........................................................................................2, 3

**Other Authorities**

"'925 Application," Exhibit 1[1] ..................................................................................3

"'020 Application," Exhibit 2 .....................................................................................4

"'688 Application," Exhibit 3 .....................................................................................6

Newman, Bratman et al. *Nature Medicine* 2014, available at
    https://www.nature.com/articles/nm.3519 ..........................................................4

SU18 for Maximilian Diehn, Exhibit 4 ....................................................................23

SU18 for Ash Alizadeh, Exhibit 5 ............................................................................23

SU18 for David Kurtz, Exhibit 6 ..............................................................................23

---

[1] Lettered exhibits are attached to Plaintiffs' Complaint.  Numbered exhibits are attached to the declaration of Henry White, filed concurrently herewith.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE THAT Defendant Foresight Diagnostics Inc. ("Foresight") is moving to dismiss all pending claims against it pursuant to Fed. R. Civ. P. 12(b)(6), with a hearing for the motion set on February 5, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Eumi K. Lee, United States District Judge for the Northern District of California located at 280 South 1st Street, San Jose, CA 95113. This motion is based upon this notice of motion, the supporting memorandum of points and authorities, all pleadings and papers on file in this action, and upon such other matters as may be properly presented to the Court.

1    I.    **INTRODUCTION**

2    Plaintiffs Roche Molecular Solutions, Inc. and Roche Sequencing Solutions, Inc.

3    (collectively, "Roche") filed the present lawsuit alleging trade secret misappropriation, contract, and

4    business tort claims against the Board of Trustees of the Leland Stanford Junior University

5    ("Stanford"), Dr. David Kurtz, an Assistant Professor and Medical Oncologist at Stanford, and

6    Foresight Diagnostics Inc. ("Foresight"), an early stage competitor of Roche. The allegations in the

7    Complaint are generally directed to alleged actions of Dr. Kurtz and his colleagues and mentors at

8    Stanford, Drs. Maximilian Diehn and Ash Alizadeh (co-defendants named in a separate but nearly

9    identical Roche Complaint, and together with Dr. Kurtz, the "Stanford Oncologists"). The Stanford

10    Oncologists have provided detailed facts and evidence that refute Roche's allegations. Defendants

11    refer the Court to the "speaking answers" of Dr. David Kurtz in this case (Dkt. 54), and of Drs.

12    Maximilian Diehn and Ash Alizadeh in related Civil Case No. 5:24-cv-06117-EKL (Dkt. 26).

13    By way of brief background, in 2015, Roche purchased an early-stage company, Capp

14    Medical ("CappMed"), which was the exclusive licensee of Stanford-owned patent applications

15    covering a cancer diagnostic technology co-invented by Drs. Diehn and Alizadeh called "CAPP-

16    Seq." The Stanford Oncologists continued their research at Stanford, and years after Roche's

17    CappMed acquisition, they invented a new diagnostic technology at Stanford called PhasED-Seq.

18    Stanford patented PhasED-Seq and exclusively licensed the patents to Foresight. In its Complaint,

19    Roche contends that PhasED-Seq was based on vaguely described CAPP-Seq-related "trade secrets"

20    that Roche purportedly acquired from CappMed.

21    Roche's claims are implausible on their face. ***Before*** Roche acquired CappMed, there was

22    nothing "secret" about CAPP-Seq: Stanford and the Stanford Oncologists had already publicly

23    disclosed the details of that technology in academic papers and in a fulsome 547-page published

24    patent application.[2] To underscore this point, the Stanford Oncologists' research leading to CAPP-

25    Seq relied on federal funding and thus was subject to the provisions of the Bayh-Dole Act. As

26

27    _____

   [2] These CAPP-Seq publications are incorporated by reference in the Complaint and hence

28    can and should be considered by the Court in ruling on this motion to dismiss. *See infra* at 3-4.

explained below, "***there is no ability of the contractor to keep a patentable invention a trade secret*** under the Bayh-Dole Act." 2 Federal Contract Management P 11.01 (Henry L. Goldberg ed., 2024).[3] Contrary to the central, faulty premise of Roche's lawsuit, research universities such as Stanford are simply not in the "trade secrets" business for technology already described in academic papers and filed patent applications.

Rendering Roche's claims even more implausible, in issuing Stanford's PhasED-Seq patents, the U.S. Patent Office has found PhasED-Seq to be novel and non-obvious over CAPP-Seq prior art—far from being a rip-off of CAPP-Seq. Roche's trade secret claims are thus factually and legally nonsensical.

The allegations against Foresight—claims for trade secret misappropriation, violation of the California Unfair Competition Law, and Declaratory Judgment of patent ownership—are implausible on their face and should be dismissed at the pleading stage under Fed. R. Civ. P. 12(b)(6). These claims fail for multiple, independent grounds.

***First***, Roche's trade secret causes of action fail because the Complaint fails to assert its trade secrets with the particularity required at the pleading phase. Most notably, the Complaint includes none of the allegations required by Courts in this district to separate any alleged CAPP-Seq "trade secrets" from what was already generally known in the art as a result of the robust disclosures in the CAPP-Seq publications. Instead, Roche's efforts to provide factual allegations concerning its trade secret encompass just two conclusory paragraphs, Compl. ¶¶ 58, 61, consisting of trade secrets alleged as two, three, and four words categories, without more. Courts have repeatedly found allegations relying on mere categories that are devoid of detail insufficient at the pleading phase.

***Second,*** the trade secret causes of action also fail because the Complaint has failed to include any plausible factual allegations that Roche's (insufficiently-pleaded) two, three, and four-word asserted trade secrets have independent economic value. With respect to this independent element under the Defend Trade Secrets Act and California Uniform Trade Secrets Act, Roche has included just two conclusory sentences that make no effort to identify the independent economic value of its

---

[3] Throughout this Motion, emphasis is added unless otherwise indicated.

1  purported trade secrets (as distinct from the publicly-disclosed CAPP-Seq platform itself).

2  **Third**, the trade secret claims against Foresight also should be dismissed because Roche has

3  failed to allege any acts of misappropriation by Foresight (as distinct from allegations against

4  Stanford or the Stanford Oncologists). The allegations against Foresight simply mirror the elements

5  of the causes of action Roche purports to plead; they lack any detail and are conclusorily asserted on

6  information and belief. Compl. ¶¶ 116-120. The mere fact that Foresight took a license to an already-

7  filed patent application does not fall within the scope of an act of misappropriation, which is limited

8  to the use, acquisition or disclosure of a trade secret by improper means. Roche's allegations of

9  misappropriation against Foresight are insufficient at the pleading stage, as the Court should not

10  "assume the truth of legal conclusions merely because they are cast in the form of factual

11  allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

12  **Fourth**, Roche's UCL claim should be dismissed because it is based solely on, and is

13  preempted by, the California Uniform Trade Secret Act, which is well-established to preempt tort

14  claims like UCL claims based on the same conduct. Roche has also not plausibly alleged any

15  unlawful, fraudulent or unfair business practices.

16  **Fifth**, Roche's declaratory judgment claim for patent ownership fails because the disputed

17  inventions by the Stanford Oncologists were assigned by them to Stanford, not to Roche.

18  All of Roche's claims against Foresight should be dismissed for failure to state a claim

19  pursuant to Fed. R. Civ. P. 12(b)(6).

20  **II.    FACTUAL BACKGROUND**

21  **A.    CAPP-Seq Technology**

22  Drs. Diehn and Alizadeh, along with Ashok Krishnamurthi, founded Capp Medical, Inc.

23  ("CappMed") in October 2013 to commercialize a new cancer diagnostic technology developed at,

24  and owned, by Stanford. Compl. ¶¶ 30-31, 78. In 2011, as part of their Stanford research, Drs. Diehn

25  and Alizadeh developed a sequencing-based method for tracking certain types of cancer-related

26  mutations in circulating tumor DNA ("ctDNA"). *Id*.; Ex. C at 16. They called the method CAPP-

27  Seq, which is short for Cancer Personalized Profiling by deep Sequencing. *Id*. Stanford filed a

28  provisional patent application on CAPP-Seq, U.S. Provisional Patent Application No. 61/798,925

1    (the "'925 Application", Exhibit 1), on March 15, 2013, naming Drs. Diehn, Alizadeh and two other

2    Stanford employees as inventors. *Id.* ¶ 31; Ex. 1.

3          Paragraph 31 of the Complaint alleges that in April 2014, CappMed exclusively licensed

4    from Stanford the '925 Application "and any U.S. or foreign application claiming priority

5    therefrom." The Complaint therefore incorporates the '925 Application by reference. One of the

6    patent applications "claiming priority" from the '925 Application is PCT/US/2014/025020 (the

7    "'020 Application," Exhibit 2), filed March 12, 2014. Ex. 2 at 1. The '020 Application on its face

8    claims priority to the '925 application and hence is also incorporated by reference into the Complaint.

9    Ex. 2 at 1. *See GeoVector Corp. v. Samsung Elecs. Co*., 234 F. Supp. 3d 1009, 1016 n.2 (N.D. Cal.

10    2017) ("because the '185 incorporates, and claims priority to the Korean Patent, I may also consider

11    the Korean Patent as incorporated by reference in the complaint."); *see also Colyer v. AcelRx*

12    *Pharms., Inc,* No. 14-CV-04416-LHK, 2015 U.S. Dist. LEXIS 159640, at *10 (N.D. Cal. Nov. 25,

13    2015) ("[Patent filings] are in the public record, and all are subject to judicial notice."). The '020

14    Application is 547 pages long and describes CAPP-Seq in detail, as explained below.

15          **B.**    **Roche's Acquisition of CappMed**

16          In 2014, CappMed and Roche entered into discussions about the possibility of Roche

17    acquiring CappMed. Compl. ¶ 33. In a September 2014 presentation to Roche, attached as Exhibit

18    C to the Complaint, Drs. Diehn and Alizadeh noted that CappMed's technology was "Exclusively

19    Licensed from Stanford," and described the CappMed Intellectual Property which Roche would

20    receive as part of an acquisition. Ex. C at 9. The CappMed Intellectual Property included filed and

21    to-be-filed patent applications on all aspects of CAPP-Seq, including selector design, library

22    preparation, a data analysis pipeline software named FACTERA, and several other CAPP-Seq-

23    related technologies. *Id.* at 58. The presentation also noted that details of CAPP-Seq were published

24    in a 2014 paper in *Nature Medicine*. Ex. C at 22, 30. Notably, nowhere in the CappMed presentation

25    were any "trade secrets" mentioned. *Id.* And for good reason. On September 25, 2014, just days after

26    this meeting, the 547-page '020 Application published, which included hundreds of pages of

27    disclosure of CAPP-Seq's tumor selectors, tumor selector design software, data analysis pipeline,

28    and panel data. Ex. 2. *See infra* at 9-11.

In April 2015, months after the '020 Application published and publicly disclosed the details of CAPP-Seq, Roche acquired CappMed. Compl. ¶ 36. As part of that acquisition, Roche acquired CappMed's exclusive license to Stanford's CAPP-Seq patent applications. *Id*. The Complaint alleges that Roche further developed the CAPP-Seq technology under the trademark AVENIO and in May 2017, "announced the global commercial launch of its AVENIO ctDNA Analysis Kits." *Id.* ¶ 3.

### C.   The Alleged Roche Trade Secrets

The Complaint includes just two paragraphs on what it defines as the "Roche Trade Secrets." In paragraph 59, Roche alleges these trade secrets as "at least, CAPP-Seq tumor selectors, CAPP-Seq selector design software, Roche's data analysis pipeline, and panel data (the 'Roche Trade Secrets')." *Id.* ¶ 58. The Complaint makes no attempt to distinguish alleged "Roche Trade Secrets" from the hundreds of pages of detailed descriptions of CAPP-Seq's "tumor selectors," "selector design software," "data analysis pipeline," and "panel data" that, months before Roche acquired CappMed, Stanford had already published in the '020 Application. *See infra* at 7-10.

In paragraph 61, the Complaint goes on to further state that "One specific aspect used as part of the Roche Trade Secrets is confidential data relating to genetic mutations in patients with DLBC," but it does not state which of the Roche Trade Secrets it relates to or even that the purportedly "confidential data" relates to any of the disputed issues. And although the Complaint alleges that the "Roche Trade Secrets include both materials acquired as part of the CappMed Acquisition and Roche's improvements thereto," Compl. ¶ 58, the Complaint provides no factual content on the nature of Roche's conclusory "improvements" to the implausible CAPP-Seq trade secrets allegedly "acquired as part of the CappMed Acquisition."

### D.   PhasED-Seq and Founding of Foresight

After Roche's CappMed acquisition, Drs. Diehn and Alizadeh partnered with Dr. Kurtz to develop a new assay called PhasED-Seq, "a liquid-biopsy powered platform that detects minimal residual disease (MRD) from circulating tumor DNA (ctDNA)." *Id.*, ¶¶ 66-67. PhasED-Seq is "much more sensitive" than CAPP-Seq and is able to detect "less than one cancer DNA sequence in 1 million non-cancer DNA sequences," compared to CAPP-Seq's ability to detect approximately one in ten-thousand. Ex. L at 4. This makes PhasED-Seq ideally suited for detecting minimal residual

disease, which is often present at levels far below one in ten-thousand. *Id.* at 5.

On November 6, 2019, Stanford filed U.S. Provisional Patent Application 62/931,688 (the "'688 Application," Exhibit 3), which described PhasED-Seq and listed the Stanford Oncologists as inventors. *See Id.*, ¶ 73; Ex. 3.[4] Stanford then filed several applications claiming priority to the '688 Application, some of which have issued as patents and all of which have published. *Id.*, ¶ 74. The PhasED-Seq patent applications do not claim priority to any CAPP-Seq application. Ex. 3. After inventing and filing a provisional application on PhasED-Seq, the Stanford Oncologists, among others, co-founded Foresight on May 8, 2020, with the goal of becoming the leader in cancer detection through ultra-sensitive liquid biopsy. *Id.*, ¶ 9. Stanford has exclusively licensed these PhasED-Seq patents and patent applications to Foresight. *Id.*, ¶ 115.

### E.    Roche's Trade Secret Misappropriation Allegations

Now Roche, threatened by a startup competitor with a diagnostic assay 100 times more sensitive than its assay (Ex. L at 4), baselessly claims that PhasED-Seq was developed using Roche Trade Secrets. *Id.* ¶ 69.

The Complaint recites wholly conclusory allegations against Foresight, almost entirely on information and belief. Indeed, with the exception of one background factual allegation that is not even germane to misappropriation, Compl. ¶ 117 ("In January 2022, Foresight approached Roche about a potential partnership in the same field in which Drs. Diehn, Alizadeh, and Kurtz had been working in for Roche just months before."), all of the factual allegations in the section entitled "Foresight's Misappropriation of the Roche Trade Secrets" are wholly conclusory and based only on information and belief. Compl. ¶¶ 116, 118-120. For example:

- "On information and belief, Foresight has used and continues to use the Roche Trade Secrets." Compl. ¶ 116.

- "On information and belief, Foresight's technology builds on and uses Roche Trade Secrets." *Id.*, ¶ 118.

---

[4] The '688 Application is incorporated by reference into Plaintiff's complaint because each of the Disputed Patent Applications claims priority thereto. *GeoVector Corp.*., 234 F. Supp. 3d at 1016 n.2

- "On information and belief, Foresight and its co-founders Drs. Diehn, Alizadeh, and Kurtz know that Foresight's technology builds on and uses Roche Trade Secrets, including proprietary data that Drs. Diehn and Alizadeh sold to Roche as part of the CappMed Acquisition." *Id.*, ¶ 120.

Not one of these conclusory recitals is supported by any factual content that would render Roche's claims against Foresight plausible, as explained below.

## III.     LEGAL STANDARDS

To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of [its] cause[s] of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss. *Id.* Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In ruling on a motion to dismiss, the Court can consider documents not physically attached to the complaint under the incorporation by reference doctrine, which allows courts to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002) (superseded by statute on other grounds). As explained above, the '020 Application is incorporated by reference in Roche's Complaint, and the Court may also take judicial notice of it as it is in the public record. *See Colyer*, 2015 U.S. Dist. LEXIS 159640, at *10.

## IV.     ARGUMENT

### A.     Roche Fails to State a Claim Under the DTSA and CUTSA

To state a claim for trade secret misappropriation, a plaintiff must allege "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist.

LEXIS 22571 at *3 (N.D. Cal. Feb. 16, 2017) (citation omitted). Roche fails to plead factual allegations plausibly alleging that it either owned any actual "trade secret" or that Foresight committed any misappropriation.

### 1. Roche Has Failed to Plead Any Plausible "Trade Secrets" With the Required Particularity

"[T]he burden is on Plaintiff to identify protectable trade secrets and show that they exist." *CleanFish, LLC v. Sims*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020) (citation omitted). Roche's claim for trade secret misappropriation fails for the threshold reason that the Complaint does not identify any trade secrets with the particularity required by the applicable pleading standard:

> Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret ..., the complaint should describe the subject matter of the trade secret with ***sufficient particularity to separate it from matters of general knowledge in the trade*** or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

*Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (citations omitted) (granting motion to dismiss trade secret claims). *See also, e.g.*, *Imax Corp. v. Cinema Technologies, Inc.*, 152 F. 3d 1161 at 1164-65 (9th Cir. 1998) (citing same standard).

### a. Roche's Identification of Broad Categories of Tools Fails to Particularly Plead Trade Secrets As Required

The Complaint fails to identify any alleged "trade secrets" with sufficient particularity. Instead, the Complaint merely lists broad categories of diagnostic tools: "tools Roche used . . . include[ing], at least, CAPP-Seq tumor selectors, CAPP-Seq selector design software, Roche's data analysis pipeline, and panel data." Complaint ¶ 58. Allegations that set out "purported trade secrets in broad, categorical terms" that are merely "descriptive of the types of information that generally *may* qualify as protectable trade secrets" are insufficient to state a claim. *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) (emphasis in original). *See, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1145-6 (N.D. Cal. 2019) (dismissing DTSA claim when plaintiff alleged "categories of information" rather than specific descriptions of its trade secrets and their relationship to plaintiff's technologies); *Space Data Corp.*, 2017 U.S. Dist. LEXIS 22571, at *4

("high-level overview of … purported trade secrets, such as 'data on the environment in the stratosphere' and 'data on the propagation of radio signals from stratospheric balloon-based transreceivers'" did not satisfy the Rule 8 pleading standards); *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) ("A description of [a] category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret."). Roche's trade secret claims should be dismissed for this independent reason.

> **b.** **Roche Has Also Failed to Distinguish Its Conclusory Trade Secrets From Matters of General Knowledge**

Even if this Court were to find that Roche's two, three, and four-word asserted trade secrets are not broad categories devoid of the requisite detail, Roche's trade secret claims also fail because they fail to distinguish the asserted trade secrets from matters that were already known. Roche would only have a viable trade secret claim in technology related to CAPP-Seq "if [Roche] reveals implementation details and techniques *beyond* what was disclosed in [a published patent application or paper]." *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (emphasis in original). Not only has Roche failed to do so, it has not even tried.

As noted above, Roche has defined its alleged trade secrets as "CAPP-Seq tumor selectors, CAPP-Seq selector design software, Roche's data analysis pipeline, and panel data." Compl. ¶ 58. Roche's Complaint makes no attempt to separate such purported trade secrets from general knowledge. In fact, the categories Roche identifies as its alleged trade secrets were robustly disclosed in the CAPP-Seq publications and publicly available patent applications filed before Roche acquired CappMed. *See Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) ("'trade secret' status was extinguished" when the information had already been in the public domain by the time of the alleged misappropriation). Roche's Complaint incorporates these publications by reference. *See supra* at 3-4.

For example, the CappMed Presentation (Ex. C) states that CappMed had filed patent applications on "Selector design" (i.e., CAPP-Seq selector design software), "Additional selectors" (i.e., CAPP-Seq tumor selectors) and "FACTERA" (which, as discussed below, is part of the CAPP-

1    Seq data analysis pipeline) before Roche's acquisition of CappMed. Ex. C at 58.

2         On September 25, 2014, the 547-page '020 Application incorporated by reference into the

3    Complaint (*see supra* at 4) extensively described and publicly disclosed each category of alleged

4    "Roche Trade Secrets" identified in paragraph 58 of the Complaint. Specifically:

5         **"CAPP-Seq tumor selectors" (Complaint ¶ 58)**: With respect to this purported Roche

6    Trade Secret, the '020 Application already explained that "Exemplary selector sets are provided in

7    Tables 2, and 6-18. The Selector set comprising one or more genomic regions identified in Table 2

8    may be useful for [non-small cell lung cancer]." Ex. 2 at [00554]. Indeed, Tables 6 to 18 of the '020

9    Application set forth CAPP-Seq tumor selectors for such other cancers as breast cancer, colorectal

10   cancer, diffuse large B-cell lymphoma, follicular lymphoma, pancreatic cancer and

11   adenocarcinomas. *Id.*

12        Roche's Complaint makes no effort to identify with particularity any alleged "CAPP-Seq

13   tumor selector" trade secrets separate from the published CAPP-Seq tumor selectors, much less

14   permit Foresight "to ascertain at least the boundaries within which the secret lies." *Pellerin*, 877 F.

15   Supp. at 988. And the fact that Stanford published 14 different CAPP-Seq tumor selectors in the

16   '020 Application months before the CappMed acquisition renders Roche's conclusory assertion that

17   its "Roche Trade Secrets" included "CAPP-Seq tumor selectors" that were "acquired as part of the

18   CappMed Acquisition" highly implausible.

19        **"CAPP-Seq selector design software" (Complaint ¶ 58)**: The '020 Application includes

20   many paragraphs directed to CAPP-Seq selector design software, another one of the purported Roche

21   Trade Secrets. For example, a section expressly entitled "CAPP-Seq Selector Design" begins at

22   paragraph [00823] of the '020 Application. The Application explains, "We employed a six-phase

23   design strategy to identify and prioritize genomic regions for the CAPP-Seq NSCLC selector as

24   detailed below . . . The following algorithm was used to design the CAPP-Seq selector . . . ." *Id.* at

25   [00824]-[00825]. Similarly, the '020 Application also includes 38 paragraphs that provide additional

26   details on CAPP-Seq selector design in a section entitled "*Methods for producing a selector set." Id.*

27   at [00555 – 00593].

28        Again, the Complaint utterly fails to identify with particularity any "CAPP-Seq selector design

1    software" trade secrets separate from the details of such software published in the '020 Application.

2    **"data analysis pipeline" (Complaint ¶ 58)**: The '020 Application also includes many

3    paragraphs describing in detail the CAPP-Seq data analysis pipeline. Figure 6 is described as the

4    "CAPP-Seq computational pipeline," and "schematically illustrate[s] the "[m]ajor steps of the

5    bioinformatics pipeline for mutation discovery and quantitation in plasma." Ex. 2 at [00448 and Fig.

6    6].

7    Likewise, a detailed section on "Bioinformatics and Statistical Methods starts at [00807], and

8    a section on the "CAPP-Seq Computational Pipeline" starts at [00827].

9    One particular component of the CAPP-Seq data analysis pipeline is called FACTERA, which

10   stands for FACile Translocation Enumeration and Recovery Algorithm. The FACTERA algorithm is

11   described in detail starting at [00829].

12   Once again, Roche has failed to identify with particularity any alleged CAPP-Seq "data

13   analysis pipeline" trade secrets separate from the details of the CAPP-Seq pipeline published in the

14   '020 Application, and thus again fails to meet its pleading burden.

15   **"panel data" ("Complaint ¶ 58)**: Roche's reference to "panel data" is insufficiently particular

16   to satisfy the pleading standard. *See Space Data Corp.,* 2017 U.S. Dist. LEXIS 22571 at *4 (finding

17   Plaintiff's identified trade secrets of "data on the environment in the stratosphere" and "data on the

18   propagation of radio signals from stratospheric balloon-based transceivers" as insufficiently particular

19   to satisfy Rule 8 pleading standards). And again, Roche does not even attempt to identify "panel data"

20   trade secrets separate from the examples of panel data in Tables 19-21 of the '020 Application. *Id.* at

21   [00771].

22                              *                   *                   *

23   Judge White's recent opinion in *WalkMe Ltd. v. WhatFix, Inc*., No.23-cv-3991, 2024-WL-

24   1221960 (N.D. Cal. March 21, 2024), is particularly instructive for why Roche's trade secret claims

25   should be dismissed at the pleading phase. There, the court held that the plaintiff's identification of

26   trade secrets such as "WalkMe's Rule Engine" software and other "editing tools that allow customers

27   to create guidance for users even if the creator of the guidance has no technical training" were

28   insufficient because they simply identified categories of information. *Id*. at *3. The court further

explained that WalkMe's website included "information about those features," but "'the existing allegations about those features are not sufficient to separate matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade' from non-public information." *Id*. at *4. As a result, the court dismissed the trade secret claims.

Here, similarly, the Complaint does not allege any specific "CAPP-Seq tumor selector" as a trade secret separate from what had already been publicly disclosed. Nor does the Complaint identify any particular trade secret instance of any of the other components of CAPP-Seq technology identified in ¶ 58 of the Complaint. Instead, as in *WalkMe*, the Complaint merely identifies categories of information, such as categories of software ("CAPP-Seq selector design software" and CAPP-Seq "data analysis pipeline"). And like the plaintiff in *WalkMe*, Roche does not include sufficient (or any) allegations to separate any alleged trade secrets within those categories from public information.

In sum, Roche failed to describe its trade secrets with sufficient particularity to separate them from what was already publicly disclosed. At most, Roche only pled categories of information, not particularized trade secrets, which is insufficient. The Complaint does not allow Foresight to ascertain the boundaries of Roche's alleged trade secrets, and Roche's trade secret misappropriation claims should therefore be dismissed.

### 2.    Roche's Complaint Fails to Allege How Its Purported Trade Secrets Have Independent Economic Value

Separate and independent from Roche's failure to identify any asserted trade secrets with requisite particularity, its trade secret claims (First and Second Causes of Action) also fail because Roche has failed to plausibly allege that these trade secrets have independent economic value. With respect to this prong of its DTSA and CUTSA claims, Roche has alleged just one conclusory sentence, alleging that these trade secret, together, have independent economic value "in the development of precise and accurate tools for cancer detection and monitoring":

> 60.  The Roche Trade Secrets have independent economic value to Roche from not being generally known to the public, to Roche's competitors, or to other persons who can obtain economic value from the trade secrets, including the CAPP-Seq tumor selectors, CAPP-Seq selector design software, data analysis pipeline, and panel data. The Roche Trade Secrets all have economic value in the development of precise and accurate tools

1    for cancer detection and monitoring.

2  Compl. ¶ 60.

3       However, this broad assertion of economic value of multiple alleged trade secrets is

4  insufficient because Roche has failed to allege how "CAPP-Seq tumor selectors" (assuming this Court

5  finds those three words to be a plausibly alleged trade secret even at the pleading phase) have

6  independent value as distinct from the "CAPP-Seq selector design software" trade secret, "data

7  analysis pipeline" trade secret, or "panel data" trade secret. *GENFIT S. A. v. CymaBay*

8  *TherapeuticsInc.*, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21, 2022) (dismissing trade secret claims

9  because plaintiff failed to allege adequately "how any individual component [trade secret] part …,

10  standing on its own, has any independent economic value . . . different from the value that [plaintiff]

11  attaches to its Protocol as a whole"); *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1053 (N.D. Cal.

12  2020) (finding that allegation of economic value of "platform" "says nothing about the economic value

13  of the particular information at issue," despite investment of "significant resources" into the

14  "platform").

15         **3.      Roche's Complaint Fails to Allege Any Acts of Misappropriation by**
16                 **Foresight**

17         To state a claim for trade secret misappropriation under either the CUTSA or DTSA, a

18  plaintiff must plead plausible factual allegations that the party against whom the claim is asserted

19  committed some act of misappropriation of information which is "not . . . generally known" to the

20  public. 18 U.S.C. § 1839; Cal. Civ. Code § 3426.1. Roche fails to plead any factual allegations

21  that ***Foresight***, not some other defendant or other party, misappropriated a trade secret.

22         Roche's unarticulated claim against Foresight is premised on two theories: (1) "Foresight

23  purports to own a proprietary technology referred to as 'PhasED-Seq,'" which allegedly was

24  developed using "Roche's confidential CAPP-Seq data and analytical tools" (Compl. ¶¶ 67, 69);

25  and (2) "Stanford granted an exclusive license to Foresight for the '779 patent and all related patent

26  applications," which allegedly "include[s] data previously sold to Roche" as part of the CappMed

27  Acquisition. (*Id.* ¶ 115). But, as explained below, the Complaint is devoid of any allegations of

28

"factual content" that would render the first theory "plausible," e.g., that developing PhasED-Seq actually did use CAPP-Seq data and analytical tools. And, as explained below, the second theory regarding Foresight's license is a legally insufficient basis for a misappropriation claim.

### a.    The Complaint Lacks Any Plausible Factual Allegations That PhaseED-Seq Was Developed Using Roche Trade Secrets

The lynchpin of Roche's theory that development of PhasED-Seq used Roche Trade Secrets is a public statement by Stanford: "A December 11, 2023, public statement by Stanford touts the PhasED-Seq technology asserting that that 'PhasED-Seq *builds upon a technique called CAPP-Seq* . . . indicating that Defendants made use Roche's confidential CAPP-Seq data and analytical tools in developing PhasED-Seq." Compl. ¶ 69 (emphasis in original); *see also id.* ¶ 82 (proposing to "extend" CAPP-Seq). But Roche's conclusion from this statement is a non-sequitur. A statement that PhasED-Seq "builds upon" or "extends" "CAPP-Seq" does not make it plausible that PhasED-Seq was built on or is an extension of any alleged CAPP-Seq *trade secret*. As discussed above, even before Roche's acquisition of CappMed, CAPP-Seq technology was already in the public domain when it came to trade secret protection: CAPP-Seq had already been described in detail in published patent applications and in a peer-reviewed paper years before Foresight's founding. Thus, Roche cannot base its claim that PhasED-Seq uses Roche Trade Secrets on a bare assertion that PhasED-Seq builds upon CAPP-Seq.

Further, allowing a plaintiff to defeat dismissal of a claim for trade secret misappropriation based on allegations that a defendant's technology "builds upon" a technique disclosed in a published patent application, without alleging any facts leading to a plausible inference that the defendant also used trade secrets beyond what was disclosed in the application, would run against the core purpose behind the patent system. Patents and their applications are disclosed to the public *precisely so that others may* "build upon" and improve the invention. *See Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 150-51 (1989) ("The federal patent system thus embodies a carefully crafted bargain for encouraging the creation *and disclosure* of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years.")

If a party builds a product upon an invention disclosed in a patent, it may be liable for patent

1   infringement, but if and only if its product falls within the scope of an issued claim of the patent.

2   Here, notably, Roche does not accuse Foresight of infringing any *patented* CAPP-Seq technology,

3   and Roche cannot recover trade secret protection for technology already disclosed to the public in

4   published patent applications.

5           The remaining allegations related to Foresight's misappropriation of trade secrets are "naked

6   assertions devoid of further factual enhancement," which are not entitled to any weight and cannot

7   defeat a motion to dismiss. *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care*

8   *Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (allegations made on information and belief, in the absence

9   of facts to provide context, were insufficient to avoid dismissal). For example, the section of Roche's

10  Complaint entitled "Foresight's Misappropriation of the Roche Trade Secrets" comprises several

11  paragraphs of naked assertions alleged "on information and belief," devoid of a single supporting

12  fact:

13                              Foresight's Misappropriation of the Roche Trade Secrets

14          116.    On information and belief, Foresight has used and continues to use the Roche
                Trade Secrets.

15          117.    In January 2022, Foresight approached Roche about a potential partnership in the
16              same field in which Drs. Diehn, Alizadeh, and Kurtz had been working in for Roche just
17              months before.

18          118.    On information and belief, Foresight's technology builds on and uses Roche
                Trade Secrets.

19          119.    On information and belief, Foresight has raised over $70 million touting
20              technology that improperly uses and relies on Roche Trade Secrets.

21          120.    On information and belief, Foresight and its co-founders Drs. Diehn, Alizadeh,
22              and Kurtz know that Foresight's technology builds on and uses Roche Trade Secrets, including
                proprietary data that Drs. Diehn and Alizadeh sold to Roche as part of the CappMed
23              Acquisition.

24

25  Compl. ¶¶ 116-120. These conclusory assertions are insufficient to state a claim for misappropriation

26  of trade secrets under the *Iqbal/Twombly* standard. *See Blantz*, 727 F.3d at 927.

27

28

**b.    Foresight's Licensing of Stanford's PhasED-Seq Patents Cannot Support a Trade Secret Misappropriation Claim**

Roche's only remaining factual allegation against Foresight is that "Stanford granted an exclusive license to Foresight for the '779 patent and all related patent applications." Compl. ¶ 115. As a result, Roche alleges, "Foresight knowingly and improperly gained access to Roche Trade Secrets that Drs. Diehn and Alizadeh had previously sold to Roche as part of the CappMed Acquisition." *Id*. This allegation does not state a claim for trade secret misappropriation as a matter of law.

Foresight's acquisition of an exclusive license to an already-filed U.S. patent application cannot support the inference that Foresight "gained access to" Roche Trade Secrets contained within the patent because "[i]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and the patentee's only protection is that afforded under the patent law." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (quoting *Stutz Motor Car of Am. v. Reebok Int'l*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995)). *See also Attia*, 983 F.3d at 426 ("disclosure of a trade secret in a patent application extinguishes the information's trade secret status."). Because Roche fails to particularly describe what "related patent applications" it alleges contains trade secrets, the only reasonable inference is that Roche is referring to the "Disputed Patent Applications," which all published through no action of Foresight's. Thus, any alleged trade secret in those applications was extinguished upon their publication.

Moreover, Paragraph 115 explicitly limits the trade secrets Foresight allegedly "gained access to" to those "that Drs. Diehn and Alizadeh had previously sold to Roche as part of the CappMed Acquisition." But the Stanford CAPP-Seq technology that was the subject of the CappMed acquisition was developed using federal funding and thus subject to the provisions of the Bayh-Dole Act. *See* Ex. 1 at [0001] ("This invention was made with government support under grant number W81XWH-12-1-0285 awarded by the Department of Defense.").

The Bayh-Dole Act governs intellectual property rights between the Federal Government

and those who conceive or reduce to practice inventions while using federal funding. A contractor using federal funds to create an invention has two options: either (a) elect title to any patentable subject invention conceived or reduced to practice with federal funding, or (b) give the Government the right to do so while retaining a non-exclusive license. 2 Federal Contract Management P 11.01. "Thus, *there is no ability of the contractor to keep a patentable invention a trade secret* under the Bayh-Dole Act." *Id.* Accordingly, Stanford was unable to keep any trade secrets related to its federally-funded invention of the CAPP-Seq technology licensed to CappMed (and from CappMed to Roche). Thus, Roche could not have acquired trade secrets related to CAPP-Seq from the CappMed Acquisition, despite its repeated allegations to the contrary.

Finally, Roche premises its misappropriation-by-license theory on the inclusion of a BED File in the '730 Application, which cannot have any bearing on Foresight's liability for two reasons. Compl. ¶ 98. First, it is undisputed that the same BED File was included as Table 3 in the '688 Application, to which all the Disputed Patent Applications claim priority. *Id.* ¶ 74; Ex. 3 at 185. The '688 Application was filed *by Stanford* before Foresight even existed. Compl. ¶ 73. Thus, the inclusion of the BED File in the '688 Application had nothing to do with Foresight.

Second, merely obtaining a license to a patent estate owned by a third party is not and cannot be an act of trade secret misappropriation. Misappropriation is defined under both federal and state law as "improper acquisition of a trade secret or disclosure of a trade secret or use of a trade secret." *Agency Solutions.com LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1026 (E.D. Cal. 2011); *see* U.S.C. § 1839(5); *see also* Cal. Civ. Code § 3426.1(b). Merely licensing a patent application, which by law only includes information within the public domain, is none of these things. *See Ultimax*, 587 F.3d at 1355 ("Public disclosure [in a patent], that is the absence of secrecy, is fatal to the existence of a trade secret."). In sum, Roche has not alleged any facts that make it plausible that Foresight misappropriated any of the insufficiently alleged "Roche Trade Secrets."

### c. Roche Cannot Save Its Trade Secret Claims Against Foresight By Relying on Factual Allegations Against the Stanford Oncologists

With the Complaint devoid of any plausible allegations specifically directed at alleged misappropriation by Foresight, Roche's trade secret claims must be dismissed. The law is clear that

generic allegations of alleged misappropriation by an individual or other co-defendants, without more, are insufficient to allege misappropriation against a corporate defendant. *See, e.g., J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1173 (N.D. Cal. 2020) (allegations of misappropriation against the individual defendants were not sufficient to support a claim against their employer, noting individual defendants "could well have taken the trade secrets … without [their new employer's] knowledge"); *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) (dismissing a DTSA complaint against corporate defendants where the complaint improperly based its "trade secret misappropriation claims on [an employee's] conduct, without differentiating what each specific [corporate] Defendant is alleged to have done"); *Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc.*, 2019 WL 11499334, at *7 (N.D. Cal. Nov. 13, 2019) ("[T]he mere fact that [defendant] hired former [employees of plaintiff] who allegedly have knowledge of [plaintiff's] trade secrets is insufficient to demonstrate misappropriation.").

Here, the Complaint is devoid of allegations specifically directed at alleged misappropriation by Foresight. For example, there are no well-pleaded allegations or specific facts showing that Foresight knew that the Stanford Oncologists purportedly misappropriated confidential or trade secret information from Roche (even if that were true); rather, all such allegations are alleged only generally and on information and belief. *See, e.g.*, Complaint ¶ 118 ("On information and belief, Foresight's technology builds on and uses Roche Trade Secrets."). This is insufficient, as discussed above. *See, e.g., Carl Zeiss Meditec*, 2019 WL 11499334, at *7.

**B.    Roche's UCL Claim Should Be Dismissed Because It is Preempted By CUTSA and Otherwise Fail to State a Claim**

Roche's UCL claim fails because the allegations mirror those upon which Roche bases its trade secret misappropriation claim, and thus the claim is preempted by CUTSA. Moreover, even if it were not preempted, Roche fails to state any plausible factual allegation that would give rise to a claim under the UCL.

**1.    Roche's UCL Claim Is Preempted By CUTSA**

"Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret.

It therefore supersedes claims—including Section 17200 claims—based on the same nucleus of facts as trade secret misappropriation." *Waymo, LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). Roche's Complaint explicitly alleges that "the federal and state law claims derive from a common nucleus of operative facts." Compl. ¶ 17. Roche only brings one federal claim, trade secret misappropriation under the DTSA. Accordingly, Roche's state law claims, including its CUTSA and UCL claim, are necessarily "based on the same nucleus of facts as trade secret misappropriation." *Waymo*, 256 F. Supp. 3d at 1062; *Sylabs, Inc. v. Rose*, 2023 WL 8813517, at \*9 (N.D. Cal. Dec. 19, 2023) (citing *Angelica Textile Services, Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013)) (tort claims preempted by CUTSA where plaintiff "predicate[d] its CUTSA and non-CUTSA claims on the same underlying conduct"); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 11434596, at \*5-6 (N.D. Cal. Aug. 16, 2018) (tort claims based on former employee's failure to disclose and assign inventions based on plaintiff's confidential information were preempted by CUTSA).

The preemption inquiry thus ends there, based on Roche's own allegations.

### 2.    <u>Regardless of Preemption, The Complaint Fails To State a Claim Under The UCL</u>

Even if Roche's UCL Claim were not preempted by CUTSA, the complaint still does not state a claim under the UCL. To survive a motion to dismiss a UCL claim, the complaint must plead facts showing that Roche lost money or property as a result of Foresight's "unlawful, unfair or fraudulent business . . . practice[s]." Cal. Bus. & Prof. Code § 17200; *id.* § 17204. Further, a UCL claim "cannot be predicated on vicarious liability because liability must be based on personal participation . . . and unbridled control." *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 811 (9th Cir. 2020). Roche has failed to allege any of the required prerequisites to a UCL claim.

### a.    The Complaint Fails To Allege Unlawful Business Practices

To state a claim for unlawful business practices, Roche must allege that Foresight's business practices violate some law other than the UCL. *Davis v. HSBC Bank*, 691 F.3d 1152, 1168 (9th Cir. 2012). The only laws Roche has accused Foresight of violating are CUTSA and DTSA. These allegations cannot support a claim for unlawful business practices because they are preempted. Thus,

1    Roche has not stated a claim for unlawful business practices.

2            **b.     The Complaint Fails To Allege Fraudulent Business Practices**

3            To state a claim for fraudulent business practices, Roche must plead fraud "with the

4    particularity required by Rule 9(b)." *Welsh v. Am. Home Mortg. Assets*, LLC, No. 4:13-CV-04750

5    CW, 2014 U.S. Dist. LEXIS 139337, at *30 (N.D. Cal. Sep. 30, 2014). Roche falls sorely short of

6    9(b)'s heightened pleading standard with its allegations of fraudulent business practices.

7            "A fraudulent business practice is one in which members of the public are likely to

8    be deceived." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254, 99 Cal. Rptr.

9    3d 768 (2009). Roche fails to allege even in a conclusory manner that the public is likely to be

10   deceived by Foresight's business practices. Roche only alleges "[o]n information and belief,

11   Foresight violated [the UCL] by engaging in . . . fraudulently deceptive business acts or practices . . .

12   ." Compl. ¶ 186. This is not nearly sufficient to surpass 9(b)'s heightened pleading standard, and

13   thus this claim fails on its face. *See Wieg v. GM LLC*, No. 23-cv-04358-SI, 2023 U.S. Dist. LEXIS

14   200067, at *9 (N.D. Cal. Nov. 7, 2023) (dismissing fraudulent business practices claim for failing to

15   meet 9(b) pleading standard where it "include[d] boilerplate and conclusory allegations of fraud.").

16           **c.     The Complaint Fails To Allege Unfair Business Practices**

17           Roche has failed to make the allegations required to state a claim for unfair business practices

18   between direct competitors, which Roche admits is its relationship with Foresight. *See* Compl. ¶ 182

19   ("Foresight . . . compete[s] against Roche in the field of cancer diagnostics . . . ."). "In a challenge

20   to a direct competitor's 'unfair' act or practice under § 17200, the word 'unfair' in that section means

21   conduct that threatens an incipient violation of an antitrust law, or that violates the policy or spirit of

22   one of those laws because its effects are comparable to a violation of the law, or that otherwise

23   significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20

24   Cal. 4th 163, 168 (1999). Thus, for an unfair business practices claim against a competitor to survive

25   a motion to dismiss, courts "require[] a plaintiff to 'tether' its allegation of unfair competition to a

26   constitutional or statutory provision or regulation carrying out such a statutory policy." *Flores v.

27   Wells Fargo Bank, N.A.*, No. 11-6619 JSC, 2012 U.S. Dist. LEXIS 88418, at *25 (N.D. Cal. June

28    

26, 2012).

Roche has not tethered its allegations of unfair competition to any law, nor has it alleged an "incipient violation of an antitrust law." *Cel-Tech Commc'ns*, 20 Cal. 4th at 168. Rather, Roche alleges in a conclusory fashion that "Foresight violated California's Unfair Competition Law by engaging in unlawful, unfair, and fraudulently deceptive business acts or practices, which were immoral, unethical, oppressive, unscrupulous, and substantially damaging to Plaintiffs." Compl. ¶ 186. These allegations of unfairness in the abstract are insufficient to state a claim for unfair business practices. *See Flores,* 2012 U.S. Dist. LEXIS 88418, at *25 (dismissing UCL claim where unfair business practices allegations were not grounded in "constitutional or statutory provisions that prohibit Defendants' actions . . . .").

In any event, Roche bases its unfair business practices claim on the same alleged acts as the fraudulent and unlawful business practices prongs. "[C]ourts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley* v. *Kellogg Sales Co.* 243 F.Supp.3d 1074, 1104-05 (N.D. Cal. 2017). Because Roche has failed to allege unlawful and fraudulent business practices, Roche's unfair business practices claim predicated on the same acts also fails.

### C.    Roche's Declaratory Judgment Claim For Patent Ownership Should Be Dismissed

Roche's claim for "Declaratory Judgment of Patent Ownership" of the Stanford PhasED-Seq patents is based on two grounds: (1) Foresight's alleged misappropriation of the Roche Trade Secrets, and (2) the Stanford Oncologists' alleged breach of their consulting agreements with Roche. Compl. ¶¶ 190-96. As explained above, Roche has failed to state trade secrets claims against Foresight, and thus its patent ownership claim on that basis likewise fails. And as explained below, Roche also has failed to adequately allege it is entitled to patent ownership under the Stanford Oncologists' consulting agreements.

Roche admits in its Complaint that Drs. Diehn and Alizadeh's "2015 Consulting Agreements

acknowledged that Drs. Diehn and Alizadeh were employees of Stanford subject to certain obligations to Stanford regarding ownership of intellectual property." Compl. ¶ 42. More specifically, their consulting agreements attached to the Complaint expressly provided that they had "Conflicting Obligations" with Stanford:

> 5.    Conflicting Obligations.
>
> 5.1 RMS acknowledges that Provider is an employee of Stanford University ("Stanford") and is subject to certain agreements, rules, policies, regulations, orders and guidelines of Stanford, including, without limitation, policies concerning consulting, conflicts of interest and ownership of intellectual property (collectively, the "Stanford Policies").

*See, e.g.,* Ex. A at 2.

However, Roche's Complaint contains no allegations as to why the Roche consulting agreements would somehow control over the Stanford Oncologists' pre-existing and "conflicting" assignment agreements with Stanford. Indeed, Roche does not even bother to attach to its Complaint the Stanford agreements governing "ownership of intellectual property" that Roche expressly acknowledged in the consulting agreements. At a minimum, Roche should not be permitted to dodge this glaring inconsistency in its ownership claim, but instead should be ordered to plead in an amended complaint its basis for asserting that its later-in-time consulting agreements form a basis for patent ownership that controls over Stanford's pre-existing, "conflicting" obligations.

The reason Roche dodges this issue is because, in view of the Stanford Oncologists' pre-existing Stanford assignments, Roche's patent ownership claim fails as a matter of law. As a preliminary matter, this court can and should treat the Oncologists' Stanford patent assignment agreements as incorporated by reference into Roche's complaint, given that no party can dispute their authenticity and the Roche consulting agreements on which Roche's claims depend specifically refer to them. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."). It is undisputed that Stanford's controlling

assignment agreement for faculty, including the Stanford Oncologists, provides:

> I will disclose to Stanford all potentially patentable inventions conceived or first reduced to practice in whole or in part in the course of my University responsibilities or with more than incidental use of University resources. **I hereby assign to Stanford all my right, title and interest in such patentable inventions** and to execute and deliver all documents and do any and all things necessary and proper on my part to effect such assignment.

Exhibits 4, 5, 6 (SU18s for Drs. Diehn, Alizadeh and Kurtz). The "hereby assign" language of these assignments conveyed a *present assignment* of the Stanford Oncologists' entire rights in their future inventions, including PhasED-Seq, to Stanford. *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009). As a result, at the time of their consulting agreements with Roche, they had no ownership interest in PhasED-Seq to convey to Roche, even under Roche's warped interpretation of those agreements. *Id.*

Ironically, the leading case on this issue involves a previous dispute between Stanford and Roche, *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.* In that case, the Federal Circuit held that Roche's later-in-time assignment agreement that provided a *present assignment* using the language "I will assign and do hereby assign" controlled over Stanford's prior assignment agreement, which provided a mere *promise* to assign rights in the *future*, using the language "*I agree to assign.*" *Id.* at 842. The court explained that, because the Roche agreement "effected a present assignment of [the inventor's] future inventions to [Roche], . . .[Roche] immediately gained equitable title to the [inventor's] inventions." *Id.* The inventor's subsequent attempt to assign his interest in the invention to Stanford was therefore void; "because [Roche's] legal title vested first, [the inventor] no longer retained his rights, negating his subsequent assignment to Stanford during patent prosecution." *Id.*

Notably, as a result of this very case, Stanford changed its patent assignment agreement to provide for a present assignment of future inventions, using the magic language of a present assignment on which Roche successfully relied in that prior Stanford case: "I hereby assign to Stanford." Exs. 4, 5, 6. Thus, under that very case, here it was *Stanford's* "legal title [that] vested first," and the Stanford Oncologists "no longer retained [their] rights, negating" any purported assignment to Roche, even under its own incorrect interpretation of the consulting agreements. As a result, the Stanford Oncologists "ha[d] nothing remaining to assign" with respect to PhasED-Seq in

their Roche consulting agreements. *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed.Cir.1991); *see also Aerotel, Ltd. v. IDT Corp.*, 486 F. Supp. 2d 277, 281-82 (S.D.N.Y. 2007) ("[C]hallenges to ownership have been permitted where an inventor, by contract or under statute, had made a present assignment of future inventions to a third party before conceiving of the patented invention. In such a case, the contract or statute divests the inventor-assignor of ownership of the invention and automatically vests ownership of the invention, when invented, in the assignee. Therefore, the inventor has no legal title to assign at a future date . . . .") (citations omitted).

Roche's patent ownership claim thus fails as a matter of law, whether based on trade secrets or the consulting agreements.

## V.    CONCLUSION

Roche's complaint is a prime example of the reasoning behind the *Iqbal/Twombly* pleading standard. If established businesses with deep coffers were allowed to "unlock the doors of discovery" against an emerging competitor (not to mention a leading university and three practicing oncologists and pioneers in cancer diagnostics) "armed with nothing more than conclusions," while simultaneously dragging the competitor into a costly litigation, then startups would routinely be buried by established competitors based on frivolous claims. *Iqbal*, 556 U.S. at 679. Roche's Complaint makes grand accusations against Foresight, but when the complaint is stripped of conclusory allegations of law and unreasonable leaps of logic, it is bereft of facts that plausibly support Roche's claims. The Court should dismiss each of Roche's claims asserted against Foresight.

Dated: October 9, 2024

Respectfully submitted,

IRELL & MANELLA LLP

By: */s/ Alan Heinrich*
_____
Alan Heinrich

Attorneys for Defendant Foresight Diagnostics