IRELL & MANELLA LLP
Morgan Chu (CA 70446)
MChu@irell.com
Alan Heinrich (CA 212782)
AHeinrich@irell.com
Jordan Nafekh (CA 328151)
JNafekh@irell.com
Henry White (CA 351549)
HWhite@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:    (310) 203-7199

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
555 Twin Dolphin Drive, Fifth Floor
Redwood Shores, California 94065
Telephone:   (650) 801-5000
Facsimile:    (650) 801-5100

Sandra L. Haberny (Bar No. 260977)
sandrahaberny@quinnemanuel.com
David M. Elihu (Bar No. 303043)
davidelihu@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Foresight Diagnostics Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC. et al<br><br>Plaintiffs<br><br>v.<br><br>FORESIGHT DIAGNOSTICS INC. et al<br><br>Defendants. | Case No. 5:24-cv-03972-EKL<br><br>**FORESIGHT DIAGNOSTICS INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>Pursuant to L.R. 7-2(b), Foresight identifies a hearing date and time of April 2, 2025. |

1

## **TABLE OF CONTENTS**

2
**Page**

3  I. INTRODUCTION ..................................................................................................... 1

4  II. FACTUAL BACKGROUND ................................................................................... 2

5  A. CAPP-Seq Technology ............................................................................... 2

6  B. Roche's Acquisition Of CappMed ............................................................. 3

7  C. PhasED-Seq And The Founding Of Foresight ......................................... 4

8  D. Roche's Trade Secret Misappropriation Allegations ............................... 5

9  E. Roche's Allegations Regarding The Chabon 2020 Paper ......................... 5

10  III. LEGAL STANDARDS ........................................................................................... 6

11  IV. ROCHE'S TRADE SECRET CLAIMS SHOULD BE DISMISSED ..................... 6

12  A. Roche's FAC Concedes That Its Trade Secret Claims Are Time-
Barred ........................................................................................................ 6

13
14  1. Roche Alleges That Chabon 2020 Evidences
Misappropriation .......................................................................... 7

15  2. Chabon 2020 Constituted Inquiry Notice Of Alleged
Misappropriation .......................................................................... 7

16
17  3. Roche's Claims Are Barred By The Statute Of Limitations .................... 10

B. Roche's DUTSA Claim Should Be Dismissed As Duplicative ........................... 11

18  C. Roche Fails To State A Claim Under The DTSA And CUTSA .......................... 12

19
20  1. Roche Fails To Distinguish Its Trade Secrets From Matters
of General Knowledge ................................................................. 13

21  2. Roche Fails To Allege Misappropriation By Foresight ............................. 15

22  V. ROCHE'S UCL AND UNFAIR COMPETITION CLAIMS ARE
PREEMPTED ........................................................................................................ 21

23
24  VI. ROCHE'S DECLARATORY JUDGMENT CLAIM SHOULD BE
DISMISSED ........................................................................................................... 22

25  VII. CONCLUSION ..................................................................................................... 25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Aerotel, Ltd. v. IDT Corp.*,
5
    486 F. Supp. 2d 277 (S.D.N.Y. 2007)........................................................................................25

6

*Agency Solutions.com LLC v. TriZetto Group, Inc.*,
    819 F. Supp. 2d 1001 (E.D. Cal. 2011).................................................................................20

7

8

*Alamar Biosciences, Inc. v. Difco Labs., Inc.*,
    No. CIV-S-94-1856 DFL PAN, 1995 U.S. Dist. LEXIS 21342 (E.D. Cal. Oct.
9
    12, 1995).....................................................................................................................................9

10

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    902 F.2d 1400 (9th Cir.1990)..............................................................................................12

11

*Anduril Indus., Inc. v. Salient Motion Inc.*,
12
    No. 8:23-cv-01650-JVS-KES, 2024 U.S. Dist. LEXIS 77672 (C.D. Cal. Mar. 4,
    2024).........................................................................................................................................12

13

14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................................6

15

*Ashton-Tate Corp. v. Ross*,
16
    728 F. Supp. 597 (N.D. Cal. 1989) ..............................................................................10, 11

17

*Attia v. Google LLC*,
    983 F.3d 420 (9th Cir. 2020)...........................................................................................13, 19

18

19

*Battaglia Mgmt., Inc. v. Abramowicz*,
    No. CV 23-615-GBW, 2024 WL 3183063 (D. Del. June 26, 2024)...........................13

20

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
21
    583 F.3d 832 (Fed. Cir. 2009) .............................................................................................24

22

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................................6

23

24

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
    727 F.3d 917 (9th Cir. 2013).................................................................................17, 18, 19

25

*Bonito Boats v. Thunder Craft Boats*,
26
    489 U.S. 141 (1989) .............................................................................................................16

27

*Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc.*,
    2019 WL 11499334 (N.D. Cal. Nov. 13, 2019)...........................................................21

28

*CleanFish, LLC v. Sims*,
  2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ......................................................................13

*Colyer v. AcelRx Pharms., Inc*,
  2015 U.S. Dist. LEXIS 159640 (N.D. Cal. Nov. 25, 2015) ....................................................3, 6

*Deutsch v. Turner Corp.*,
  324 F.3d 692 (9th Cir.2003) ...................................................................................................11

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) ...................................................................................................2

*FilmTec Corp. v. Allied-Signal, Inc.*,
  939 F.2d 1568 (Fed.Cir.1991) .................................................................................................25

*Forcier v. Microsoft Corp.*,
  123 F. Supp. 2d 520 (N.D. Cal. 2000) .....................................................................................10

*GeoVector Corp. v. Samsung Elecs. Co.*,
  234 F. Supp. 3d 1009 (N.D. Cal. 2017) ................................................................................3, 4

*Grainger v. Greene*,
  2022 Cal. Super. LEXIS 19028 (Sup. Ct. Los Angeles County, March 1, 2022) .....................11

*HiRel Connectors, Inc. v. U.S.*,
  465 F. Supp. 2d 984 (C.D. Cal. 2005) ......................................................................................10

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .................................................................................................23

*Les Concierges, Inc. v. Robeson*,
  No. C-09-1510MMC, 2009 U.S. Dist. LEXIS 39414, 2009 WL 1138561 (N.D.
  Cal. Apr. 27, 2009) .................................................................................................................19

*MGA Entm't, Inc. v. Mattel, Inc.*,
  41 Cal. App. 5th 554, 564, 254 Cal. Rptr. 3d 314 (2019) ......................................................7, 10

*Micrel Inc. v. Monolithic Power Sys.*,
  No. C 04-04770 JSW, 2005 U.S. Dist. LEXIS 47030 (N.D. Cal. Dec. 9, 2005) ....................6, 9

*Moss v. United States Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) .....................................................................................................6

*Navigation Holdings, LLC v. Molavi*,
  445 F. Supp. 3d 69 (N.D. Cal. 2020) ...............................................................................17, 21

*P2I Ltd. v. Favored Tech. USA Corp.*,
  No. 23-cv-01690-AMO, 2024 U.S. Dist. LEXIS 172643 (N.D. Cal. Sep. 24,
  2024) ......................................................................................................................................18

*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ...............................................................................13, 18

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
  522 F.3d 1049 (9th Cir. 2008) ............................................................................................11

*RoadRunner Recycling, Inc. v. Recycle Track Sys.*,
  No. C 23-04804 WHA, 2023 U.S. Dist. LEXIS 229227 (N.D. Cal. Dec. 26,
  2023) ....................................................................................................................................14

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 2002)................................................................................................6

*Sivas v. Luxottica Retail N. Am., Inc.*,
  No. 1:19-CV-00537-LJO-BAM, 2019 U.S. Dist. LEXIS 150724 (E.D. Cal. Sep.
  3, 2019)............................................................................................................................22, 25

*Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571 (N.D.
  Cal. Feb. 16, 2017) .............................................................................................................13

*Stutz Motor Car of Am. v. Reebok Int'l*,
  909 F. Supp. 1353 (C.D. Cal. 1995).....................................................................................19

*Sylabs, Inc. v. Rose*,
  2023 WL 8813517 (N.D. Cal. Dec. 19, 2023) ....................................................................22

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
  587 F.3d 1339 (Fed. Cir. 2009)......................................................................................19, 20

*Varlack v. Ohio Sec. Ins. Co.*,
  No. 22-CV-02478, 2023 WL 2012836 (N.D. Cal. Feb. 15, 2023)........................................11

*Wang v. Palo Alto Networks, Inc.*,
  No. C 12-05579 WHA, 2014 U.S. Dist. LEXIS 50737 (N.D. Cal. Apr. 11,
  2014).................................................................................................................................8, 9

*Waymo, LLC v. Uber Techs., Inc.*,
  256 F. Supp. 3d 1059 (N.D. Cal. 2017) ..........................................................................21, 22

*You Map, Inc. v. Snap Inc.*,
  No. CV 20-00162-CFC, 2021 WL 106498 (D. Del. Jan. 12, 2021), *report and
  recommendation adopted*, No. CV 20-162-CFC, 2021 WL 327388 (D. Del.
  Feb. 1, 2021)........................................................................................................................22

**Statutes**

18 U.S.C. § 1836(d) ...........................................................................................................6, 7, 10

18 U.S.C. § 1839 ...............................................................................................................15, 20

Bayh-Dole Act ....................................................................................................... 1, 19, 20

Cal. Civ. Code § 3426 ................................................................................................. *passim*

California Uniform Trade Secret Act ................................................................................ 2

Del. Code Ann. Tit. 6, § 2001 ...................................................................................... 15

Del. Code Ann. Tit. 6, § 2006 .............................................................................. 6, 7, 10

Delaware Uniform Trade Secret Act ........................................................................... 2, 3

Uniform Trade Secrets Act ........................................................................................... 12

**Rules**

California Emergency Rule 9 ......................................................................................... 11

Rule 12(b)(6) .......................................................................................................... 2, 12

Numbered exhibits are attached to Plaintiffs' FAC. Dkt. 87. Lettered exhibits are attached to the declaration of Alan Heinrich, filed concurrently herewith. Throughout this Motion, emphasis is added unless otherwise stated.

1

### **NOTICE OF MOTION**

2          PLEASE TAKE NOTICE THAT Defendant Foresight Diagnostics Inc. ("Foresight") is

3    moving to dismiss all pending claims against it pursuant to Fed. R. Civ. P. 12(b)(6), with a hearing for

4    the motion set on April 2, 2025, or as soon thereafter as the matter may be heard, in the courtroom of

5    the Honorable Eumi K. Lee, United States District Judge for the Northern District of California located

6    at 280 South 1st Street, San Jose, CA 95113. This motion is based upon this notice of motion, the

7    supporting memorandum of points and authorities, all pleadings and papers on file in this action, and

8    upon such other matters as may be properly presented to the Court.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Plaintiffs Roche Molecular Solutions, Inc. and Roche Sequencing Solutions, Inc. (collectively, "Roche") have alleged trade secret misappropriation, contract, and business tort claims against the Board of Trustees of the Leland Stanford Junior University ("Stanford"), Drs. David Kurtz, Maximilian Diehn, and Ash Alizadeh, each of whom is a practicing oncologist at Stanford (the "Stanford Oncologists"), and Foresight Diagnostics Inc. ("Foresight"), an early stage competitor of Roche.[1] Defendants moved to dismiss Roche's original complaint for failure to state a claim, but Roche did not attempt to oppose, instead filing a First Amended Complaint ("FAC"). Roche's FAC fails to cure the defects in its original complaint and raises additional grounds for dismissal.

By way of brief background, in 2015, Roche purchased an early-stage company, Capp Medical ("CappMed"), which was the exclusive licensee of Stanford-owned patent applications covering a cancer diagnostic technology co-invented by Drs. Diehn and Alizadeh called "CAPP-Seq." The Stanford Oncologists continued their research at Stanford, and years after Roche's CappMed acquisition, they invented a new and different diagnostic technology at Stanford called PhasED-Seq. Stanford patented PhasED-Seq and exclusively licensed the patents to Foresight. In its FAC, Roche contends without support that PhasED-Seq was based on trade secrets which Roche allegedly acquired from CappMed and improvements made thereto by Roche.

Roche's claims are implausible on their face. *Before* Roche acquired CappMed, there was nothing "secret" about CAPP-Seq: Stanford and the Stanford Oncologists had already publicly disclosed the details of that technology in academic papers and in a fulsome 547-page published patent application. In fact, the Stanford Oncologists' research leading to CAPP-Seq relied on federal funding subject to the provisions of the Bayh-Dole Act, under which "***there is no ability of the contractor to keep a patentable invention a trade secret***." 2 Federal Contract Management P 11.01 (Henry L. Goldberg ed., 2024). Contrary to the central, faulty premise of Roche's lawsuit, research universities such as Stanford are simply not in the "trade secrets" business for technology already publicly described. And Roche has failed to explain what any of its alleged post-acquisition

---

[1] The Stanford Oncologists provided detailed facts and evidence refuting Roche's allegations in their "speaking answers," Dkt. 54 and Dkt. 26 of Civil Case No. 5:24-cv-06117-EKL.

improvements to CAPP-Seq actually are, or how they constitute trade secrets in light of the voluminous details of the CAPP-Seq/iDES technology that had already been published.

The allegations against Foresight should be dismissed under Rule 12(b)(6).

**First**, Roche failed to bring its trade secret causes of action within the three-year statute of limitations. As of March 25, 2020, Roche was at least on inquiry notice of a published paper authored by the Stanford Oncologists, which Roche's FAC alleges constitutes an act of misappropriation of its alleged trade secrets. Roche's own allegations, however, are fatal to its case because they demonstrate that Roche filed this suit well after the three-year statute of limitations expired.

**Second**, the FAC fails to allege any actual trade secret. The FAC fails to separate the alleged trade secrets from what was already generally known in the art from the disclosures of multiple CAPP-Seq publications. Moreover, Roche now concedes that some portion of the alleged "trade secrets" was publicly known, but leaves one guessing on what that is. Courts have repeatedly found that failure to distinguish trade secrets from matters known to the public is grounds for dismissal.

**Third**, Roche has failed to allege any acts of misappropriation by Foresight. The allegations against Foresight simply mirror the elements of the causes of action Roche purports to plead; they lack detail and are only asserted on information and belief. FAC ¶¶ 328-332. These allegations are insufficient, as the Court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

**Fourth**, Roche's UCL and Unfair Competition claims are preempted by the California Uniform Trade Secret Act and the Delaware Uniform Trade Secret Act because they are based on the same alleged conduct constituting trade secret misappropriation.

**Finally**, Roche's claim for patent ownership fails because the disputed inventions by the Stanford Oncologists were automatically assigned to Stanford under earlier assignment agreements that as a matter of law take precedence over later consulting agreements with Roche.

The Court should dismiss the FAC's claims against Foresight with prejudice.

## II.    FACTUAL BACKGROUND

### A.    CAPP-Seq Technology

Drs. Diehn and Alizadeh, along with Ashok Krishnamurthi, founded Capp Medical, Inc.

("CappMed") in October 2013 to commercialize a new cancer diagnostic technology developed at, and owned by, Stanford. FAC ¶¶ 38-39. In 2011, as part of their Stanford research, Drs. Diehn and Alizadeh developed a sequencing-based method for tracking certain types of cancer-related mutations in circulating tumor DNA ("ctDNA"). *Id*.; Ex. 3 at 16. They called the method CAPP-Seq, which is short for Cancer Personalized Profiling by deep Sequencing. *Id*. Stanford filed U.S. Provisional Patent Application No. 61/798,925 (the "'925 Application", Exhibit A) covering CAPP-Seq on March 15, 2013, naming Drs. Diehn and Alizadeh as co-inventors. *Id.* ¶ 40; Ex. A.

Paragraph 31 of the FAC alleges that in April 2014, CappMed exclusively licensed from Stanford the '925 Application "and any U.S. or foreign application claiming priority therefrom." The FAC thus incorporates the '925 Application by reference. One of the patent applications "claiming priority" from the '925 Application is PCT/US2014/025020 (the "'020 Application," Exhibit 2), which spans 547 pages and published on September 25, 2014. Ex. B at 1. The FAC also alleges that Roche obtained rights to the CAPP-Seq "integrated digital error suppression (iDES)" workflow. FAC ¶ 44. iDES is disclosed in U.S. Patent No. 11,085,084 (the "'084 Patent," Ex. C at 12:67-13:02 ("Disclosed herein is a novel analytical modeling framework for integrated digital error suppression (iDES)"). The '084 Patent also was exclusively licensed to CappMed, and then to Roche as part of the CappMed acquisition. The specification of the '084 patent published on March 17, 2016. Ex. C at 1 (pub. date for WO2016/040901). The '020 Application and '084 Patent, which describe CAPP-Seq/iDES in detail, are incorporated by reference in the FAC as well as subject to judicial notice.[2]

### B.    Roche's Acquisition Of CappMed

In September 2014, as part of discussions in connection with a potential acquisition of CappMed, Drs. Diehn and Alizadeh gave a presentation to Roche in which they noted that CappMed's technology was "Exclusively Licensed from Stanford," and described the CappMed Intellectual Property which Roche would receive as part of an acquisition. Ex. 3 at 9. The CappMed

---

[2] *See GeoVector Corp. v. Samsung Elecs. Co*., 234 F. Supp. 3d 1009, 1016 n.2 (N.D. Cal. 2017) ("because the '185 incorporates, and claims priority to the Korean Patent, I may also consider the Korean Patent as incorporated by reference in the complaint."); *Colyer v. AcelRx Pharms., Inc,* 2015 U.S. Dist. LEXIS 159640, at *10 (N.D. Cal. Nov. 25, 2015) ("[Patent filings] are in the public record, and all are subject to judicial notice.").

Intellectual Property included filed and to-be-filed patent applications on all aspects of CAPP-Seq. *Id.* at 58. The presentation also noted that details of CAPP-Seq were published in a 2014 paper in *Nature Medicine*. *Id.* at 22, 30. Notably, nowhere in the CappMed presentation were any "trade secrets" mentioned. *Id.* And for good reason. On September 25, 2014, just days after this meeting, the 547-page '020 Application published, which was replete with disclosure of CAPP-Seq technologies, a number of which Roche is now alleging are trade secrets. Ex. B.

In April 2015, months after the '020 Application published and publicly disclosed the details of CAPP-Seq, Roche acquired CappMed. FAC ¶ 47. As part of that acquisition, Roche acquired CappMed's exclusive license to Stanford's CAPP-Seq patent applications. *Id.*

### C.    PhasED-Seq And The Founding Of Foresight

After Roche's CappMed acquisition, Drs. Diehn and Alizadeh partnered with Dr. Kurtz to develop a new assay called PhasED-Seq, "a liquid-biopsy powered platform that detects minimal residual disease (MRD) from circulating tumor DNA (ctDNA)." *Id.*, ¶¶ 234-235.[3] PhasED-Seq is "much more sensitive" than CAPP-Seq and is able to detect "less than one cancer DNA sequence in 1 million non-cancer DNA sequences," compared to CAPP-Seq's ability to detect approximately one in ten-thousand. Ex. 12 at 4. This makes PhasED-Seq ideally suited for detecting MRD, in which ctDNA is often present at levels far below one in ten-thousand cell-free DNA fragments. *Id.* at 5.

On November 6, 2019, Stanford filed U.S. Provisional Patent Application 62/931,688 (the "'688 Application," Exhibit 3), which described PhasED-Seq and listed the Stanford Oncologists as inventors. *See id.*, ¶ 284; Ex. D.[4] Stanford then filed several applications claiming priority to the '688 Application, some of which have issued as patents and all of which have published. *Id.*, ¶ 285. The PhasED-Seq patent applications do not claim priority to any CAPP-Seq application. Ex. D. After inventing and filing a provisional application on PhasED-Seq, the Stanford Oncologists, among others, co-founded Foresight on May 8, 2020, with the goal of becoming the leader in cancer

---

[3] "Minimal residual disease" is a condition in which very small amounts of cancer cells exist in the body of a patient who has gone into cancer remission. "Circulating tumor DNA" is cell-free DNA derived from tumors that circulates in a cancer patient's body.

[4] The '688 Application is incorporated by reference into Plaintiff's FAC because each of the Disputed Patent Applications claims priority thereto. *GeoVector Corp.*, 234 F. Supp. 3d at 1016 n.2

detection through ultra-sensitive liquid biopsy. FAC ¶ 8. Stanford has exclusively licensed these PhasED-Seq patents and patent applications to Foresight. *Id.*, ¶ 327.

### D.    Roche's Trade Secret Misappropriation Allegations

Threatened by a startup with a diagnostic assay 100 times more sensitive than its own (Ex. 12 at 4), Roche baselessly claims that PhasED-Seq was developed using its trade secrets. *Id.* ¶ 263.

The FAC recites wholly conclusory allegations against Foresight. Indeed, every allegation in the section entitled "Foresight's Misappropriation of the Roche Trade Secrets" is based only on information and belief. FAC ¶¶ 328-334. For example:

- "On information and belief, Foresight has used and continues to use the Roche Trade Secrets." *Id.* ¶ 329.

- "On information and belief, Foresight's technology builds on proprietary CAPP-Seq/iDES technologies previously sold to Roche by Foresight's founders, and further developed by Roche, and Foresight's technology was developed using Roche Trade Secrets, and continues to be performed using the Roche Trade Secrets." *Id.* ¶ 330.

### E.    Roche's Allegations Regarding The Chabon 2020 Paper

The FAC features a peer-reviewed paper published in *Nature* on March 25, 2020, Chabon 2020 (Ex. 104), as its main evidence of misappropriation. FAC, ¶¶ 273-278, 281. Each of the Stanford Oncologists, as well as 45 other academic researchers at Stanford, Washington University School of Medicine, St. Louis; Vanderbilt University Medical Center; Mayo Clinic; Harvard Medical School; Massachusetts General Hospital; and other renowned institutions, are co-authors of this purported act of misappropriation.

Chabon 2020 reports certain "improvements" to "CAPP-Seq" made at Stanford in connection with a technology called "lung cancer likelihood in plasma (Lung-CLiP)." Ex. 104 at 1. The FAC alleges that Chabon 2020 demonstrates that the Stanford Oncologists misappropriated multiple alleged Roche trade secrets. FAC ¶¶ 273-278, 281. As explained below, however, Roche was at minimum on inquiry notice of Chabon 2020, and therefore of the misappropriation it alleges the Stanford Oncologists committed, in March 2020. Roche's own allegations thus demonstrate that Roche filed its trade secret claims well past the three-year statute of limitations deadline.

1    **III.    LEGAL STANDARDS**

2          To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is

3    plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

4    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

5    inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

6    678 (2009). "Threadbare recitals of the elements of [its] cause[s] of action, supported by mere

7    conclusory statements" are insufficient to defeat a motion to dismiss. *Id*. Rather, "for a complaint to

8    survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

9    that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United*

10   *States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

11         In ruling on a motion to dismiss, the Court can consider documents not physically attached

12   to the complaint under the incorporation by reference doctrine, which allows courts to consider

13   documents "whose contents are alleged in a complaint and whose authenticity no party questions."

14   *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002). As explained above, the

15   '020 Application and '084 Patent are incorporated by reference in Roche's FAC, and the Court may

16   also take judicial notice of it as it is in the public record. *See Colyer*, 2015 U.S. Dist. LEXIS 159640,

17   at *10. And as explained below, the Stanford Oncologists' SU18's are incorporated by reference into

18   the FAC because the FAC explicitly refers to them.

19   **IV.    ROCHE'S TRADE SECRET CLAIMS SHOULD BE DISMISSED**

20         **A.    Roche's FAC Concedes That Its Trade Secret Claims Are Time-Barred**

21         Roche attempts to backfill the insufficiency of its misappropriation allegations against

22   *Foresight* by relying heavily on a *Stanford* paper, Chabon 2020 (Ex. 104), which was published on

23   March 25, 2020. FAC, ¶¶ 273-278, 281. Roche's trade secret claims are subject to a three-year statute

24   of limitations. *See* Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d); Del. Code Ann. Tit. 6, § 2006. As

25   explained below, Roche was at minimum on inquiry notice of Chabon 2020 when it published.

26   Roche did not file its claims within three years of that date (even accounting for tolling), and its

27   claims for trade secret misappropriation should therefore be dismissed. *Micrel Inc. v. Monolithic*

28   *Power Sys.*, No. C 04-04770 JSW, 2005 U.S. Dist. LEXIS 47030, at *18 (N.D. Cal. Dec. 9, 2005)

(dismissing CUTSA claim with prejudice because Plaintiff was charged with notice of its misappropriation claim through the publication of Defendant's patent more than three years earlier).

### 1.    Roche Alleges That Chabon 2020 Evidences Misappropriation

Roche heavily relies on Chabon 2020 to support its claims for trade secret misappropriation. FAC, ¶¶ 273-278, 283. In the section of the FAC directed to "Defendants' Misappropriation of Roche's Trade Secrets," Roche alleges that Chabon 2020 demonstrates that the Stanford Oncologists used without authorization, and hence misappropriated:

- "Roche's CAPPSeq/iDES adaptive variant caller algorithm trade secret," FAC ¶ 273, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES germline filtering algorithm trade secret," FAC ¶ 274, citing Chabon 2020 (Ex. 104) at 12;

- "Roche's CAPPSeq/iDES SNV caller algorithm trade secret," FAC ¶ 275, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES Indel caller algorithm trade secret," FAC ¶ 276, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES fusion caller algorithm trade secret," FAC ¶ 277, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES CNV caller algorithm trade secret," FAC ¶ 278, citing Chabon 2020 (Ex. 104) at 59-60;

- "Roche's CAPPSeq/iDES blacklisted and whitelisted genes trade secrets," FAC ¶ 281, citing Chabon 2020 (Ex. 104) at 3, 10, 21.

### 2.    Chabon 2020 Constituted Inquiry Notice Of Alleged Misappropriation

Roche's claims are subject to a three-year statute of limitations, which begins when a plaintiff either actually discovered ("actual notice") or should have reasonably discovered the misappropriation "through the exercise of reasonable diligence" ("inquiry notice"). *See* Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d); Del. Code Ann. Tit. 6, § 2006. *MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 564, 254 Cal. Rptr. 3d 314, 322 (2019) (dismissing misappropriation claims because plaintiff was on inquiry notice of defendant's misappropriation more than three years before filing suit).

As discussed above, the FAC itself alleges that Chabon 2020 evidences that the Stanford Oncologists allegedly misappropriated multiple Roche trade secrets. Thus, the only remaining issue is whether Roche was on inquiry notice of Chabon 2020 when it published on March 25, 2020. If it was on inquiry notice as of that date, then it would have necessarily had notice of trade secret misappropriation, based on Roche's own allegations in the FAC. For several reasons, Roche was at least on inquiry notice of Chabon 2020.

**First**, Chabon 2020 reports on research conducted at Stanford, Roche's licensor, on the very technology Stanford licensed to Roche—CAPP-Seq. Indeed, the abstract on page 1 of Chabon 2020 announces, "Here we introduce improvements to cancer personalized profiling by deep sequencing (CAPP-Seq)." Ex. 104 at 1.

**Second,** the Stanford Oncologists themselves were co-authors of Chabon 2020 and their affiliation with co-defendant Stanford is prominently displayed throughout the paper. *See Wang v. Palo Alto Networks, Inc.,* No. C 12-05579 WHA, 2014 U.S. Dist. LEXIS 50737, at *23 (N.D. Cal. Apr. 11, 2014) (the fact that defendant's names were listed on the face of a patent application disclosing plaintiff's trade secrets supported the court's conclusion that plaintiff was on constructive notice of its misappropriation claim upon the application's publication.).

**Third**, Chabon 2020 was co-authored by multiple Roche consultants and affiliates. Each of the Stanford Oncologists expressly discloses a "paid consultancy from Roche" in the "Competing Interests" section of Chabon 2020. Two other of Chabon 2020's co-authors also list paid consultancies or other funding from Roche. Ex. 104 at 13 (listing Roche's name nine times under "Competing Interests" of researchers).

**Fourth**, Chabon 2020 was published in *Nature*, one of the world's largest science journals. In fact, Chabon 2020 has been accessed over ***36 thousand*** times since being published and has been cited hundreds of times. *See* Ex. E (Chabon 2020 *Nature* page), available at https://www.nature.com/articles/s41586-020-2140-0. As Roche was actively developing products relating to ctDNA analysis as early as 2017 and "continues to make substantial investments in the research and development of clinically relevant next-generation sequencing assays based on the CAPP-Seq technology," FAC ¶ 3, it should be charged with notice of an article discussing the same

technology in a widely-disseminated journal. *See Wang*, 2014 U.S. Dist. LEXIS 50737, at *20 ("an inventor actively practicing in the field and prosecuting his own patent application must be deemed to be on constructive notice of published patent applications in the same field.").

Roche alleges that it "has maintained the Roche Trade Secrets as confidential and has taken reasonable precautions to maintain their secrecy." FAC ¶ 232. Thus, it is flatly implausible that Roche, exercising "reasonable diligence" and "tak[ing] reasonable precautions to maintain [its trade secrets'] secrecy," should not have reasonably discovered a paper that (i) discusses Roche's licensed CAPP-Seq technology at length, (ii) expressly reports improvements to CAPP-Seq, (iii) allegedly discloses use of seven of Roche's trade secrets, (iv) was authored by researchers at its licensor institution, (v) lists 5 of Roche's own consultants as co-authors, and (vi) was published in one of the world's most widely-circulated science journals. *See Micrel Inc,* 2005 U.S. Dist. LEXIS 47030, at *17-18 (finding a patent "should have put a reasonable person on notice" of misappropriation claim where the patent "state[d] that it [was] a modification of [Plaintiff's] prior invention"). A straightforward search by Roche of its consultants' names or CAPP-Seq would have led Roche to Chabon 2020. *See Alamar Biosciences, Inc. v. Difco Labs., Inc.,* No. CIV-S-94-1856 DFL PAN, 1995 U.S. Dist. LEXIS 21342, at *15 (E.D. Cal. Oct. 12, 1995) (granting summary judgment that plaintiff's claims were time-barred where plaintiff could have discovered defendant's PCT application more than three years prior to the filing of the complaint through a search for the name of the misappropriated technology, the plaintiff's name, or the defendant's name).

Moreover, among Chabon 2020's 48 co-authors are several who disclosed paid consultancies from other major life science companies and Roche competitors. Ex. 104 at 13. Either Roche should have been aware that its CAPP-Seq trade secrets were allegedly being misappropriated en masse by scores of researchers and academic institutions, including consultants for its competitors, or Roche did not take reasonable precautions to protect the secrecy of its trade secrets.

Whether Roche argues it actually was unaware of PhasED-Seq in March of 2020 would not change the result on this motion or the fact that Chabon 2020 put Roche on (inquiry) notice of its misappropriation claim. Based on Roche's own allegations, Chabon 2020 either constituted an unauthorized disclosure of Roche's trade secrets or put Roche on notice of the alleged

misappropriation and use by dozens of scientific researchers. *Ashton-Tate Corp. v. Ross*, 728 F. Supp. 597, 603 (N.D. Cal. 1989) (statute of limitations began to run upon initial disclosure of a trade secret even though product using the trade secrets was not published until years later).

Because Roche would have discovered Chabon 2020 through the exercise of reasonable diligence, and because, according to Roche's own allegations in the FAC, Chabon 2020 would have given Roche "reason to suspect an injury and some wrongful cause," the statute of limitations for its misappropriation claims began to run on March 25, 2020. *MGA Entm't, Inc.*, 41 Cal. App. 5th at 564.

### 3.    Roche's Claims Are Barred By The Statute Of Limitations

Each of the statutes under which Roche brings its misappropriation claims treats a continuing misappropriation as a single claim for statute of limitations purposes. *See* Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d); Del. Code Ann. Tit. 6, § 2006. Moreover, courts in this district have held that a misappropriation claim accrues at the point in time when the plaintiff was on actual or inquiry notice that the defendant had misappropriated *any* trade secret:

> [W]hen the statute of limitations begins to run on some of a plaintiff's trade secret claims against given defendants, the statute also begins to run at the same time as to other trade secret claims against those same defendants, even if there have not yet been any acts of misappropriation of the other trade secrets, at least when the plaintiff shared all the trade secrets with the defendants during the same time period and in connection with the same relationships and when the trade secrets concern related matters.

*Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000); *see also HiRel Connectors, Inc. v. U.S.*, 465 F. Supp. 2d 984, 988 (C.D. Cal. 2005) ("When a plaintiff brings suit against an individual defendant for separate misappropriations of related trade secrets . . . the date of accrual is the date of the initial misappropriation."); *MGA Entm't, Inc.*, 41 Cal. App. 5th at 564 ("the question is not when MGA actually discovered all 114 misappropriations; it is when MGA by the exercise of reasonable diligence should have discovered Mattel engaged in misappropriation"). This rule is animated by the principle that "once plaintiff knows or should know that a defendant who once was trusted has shown, by any act of misappropriation, that he cannot be trusted, plaintiff should know that there is a risk that that defendant will commit additional acts of misappropriation, whether they involve repeated misappropriations of one trade secret or initial misappropriations of other confidences." *Forcier*, 123 F. Supp. 2d at 525.

1    Here, because all three Stanford Oncologists were authors on Chabon 2020, and because

2    Roche alleges Chabon 2020 shows the misappropriation of seven separate alleged trade secrets at issue

3    in this case, the statute of limitations against each of the Stanford Oncologists began to run as to *all*

4    misappropriation claims on March 25, 2020. In California, as a response to the Covid-19 pandemic,

5    all statutes of limitations periods longer than 180 days were tolled from April 6, 2020, until October

6    1, 2020, a period of 178 days. Cal. Rules of Court, App'x 1: Emergency Rules Related to COVID-19,

7    Emergency Rule 9 (May 29, 2020); *see also Varlack v. Ohio Sec. Ins. Co.*, No. 22-CV-02478, 2023

8    WL 2012836, at *1 (N.D. Cal. Feb. 15, 2023). Based on this tolling period, the statute of limitations

9    on Roche's trade secrets misappropriation expired on September 19, 2023—three (3) years and 178

10   days from the publication of Chabon 2020. Because this date predates the parties' Tolling and

11   Standstill Agreement, Roche's claims are untimely and must be dismissed.

12   Roche's claims are also time-barred as to Foresight because Roche entirely bases its

13   misappropriation claim against Foresight on the actions of the Stanford Oncologists. FAC ¶ 22 (the

14   Stanford Oncologists "served as conduits for Foresight's unfair competition and misappropriation of

15   Roche's trade secrets."); *id.* ¶ 328 ("Foresight misappropriated the Roche Trade Secrets through [the

16   Stanford Oncologists]."); *Ashton-Tate Corp,* 728 F. Supp. at 603 (N.D. Cal. 1989) (individual's

17   disclosure of trade secret began the statute of limitations for the individual and for a company that

18   obtained the trade secret from the individual); *Grainger v. Greene*, 2022 Cal. Super. LEXIS 19028

19   (Sup. Ct. Los Angeles County, March 1, 2022) (where the court dismissed the predicate claims on

20   which plaintiff's theory of vicarious liability was based, noting "[i]t therefore follows, as a matter of

21   law, there is no underlying tort from which respondeat superior liability can flow.").

22   Because the expiration of the statutes of limitations cannot be corrected, amendment would

23   be futile and dismissal should be with prejudice. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522

24   F.3d 1049, 1060 (9th Cir. 2008) ("because Platt's claims are barred by the statute of limitations, any

25   amendments would have been futile."); *Deutsch v. Turner Corp.*, 324 F.3d 692, 718 n. 20 (9th Cir.

26   2003) (denying leave to amend complaint where amendment would be futile because statute of

27   limitations had run).

28   **B.       Roche's DUTSA Claim Should Be Dismissed As Duplicative**

1    In the FAC, Roche seeks to assert two substantially identical state-law Uniform Trade Secrets

2    Act claims against Foresight. *See* FAC at ¶¶ 356-373 (asserting CUTSA claim against Foresight);

3    374-389 (asserting DUTSA claim against Foresight). Forcing Foresight to defend against two identical

4    claims under substantially identical statutes would both prejudice Foresight and waste this Court's

5    resources. This Court should thus dismiss Roche's DUTSA claim at the outset.

6    Federal courts sitting in diversity apply the procedural choice-of-law rules of the forum state.

7    *Alaska Airlines, Inc. v. United Airlines, Inc*., 902 F.2d 1400, 1402 (9th Cir.1990). This court must

8    therefore conduct a choice-of-law analysis under California courts' governmental interest test. *Anduril*

9    *Indus., Inc. v. Salient Motion Inc*., No. 8:23-cv-01650-JVS-KES, 2024 U.S. Dist. LEXIS 77672, at

10   *17 (C.D. Cal. Mar. 4, 2024). The first step of the governmental interest test is to determine "whether

11   the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in

12   question is the same or different." *Id.* If there are no material differences between the laws of the

13   different jurisdictions, no further analysis is required, and "the inquiry ends here." *Id.* at 19. In *Anduril*,

14   plaintiffs brought both DUTSA and CUTSA claims against several defendants. *Id.* at 1. The court

15   assessed the DUTSA and CUTSA and found "there do not appear to be any differences that would

16   affect the Court's analysis or remedies," and thus "Delaware's interest would not be impaired if its

17   law were not applied." *Id.* at 19. The court thus found that California law applied and dismissed the

18   plaintiffs' DUTSA claim. This Court should do the same to avoid duplicative analysis and waste of

19   the Court's time and resources.

20   ## C.    <u>Roche Fails To State A Claim Under The DTSA And CUTSA</u>

21   As explained above, Roche's trade secret misappropriation claims are untimely and therefore

22   should be dismissed. However, even if Roche's misappropriation claims were brought within the

23   statute of limitations period, the FAC fails to state a claim for trade secret misappropriation under

24   the DTSA or CUTSA. Its claims should therefore be dismissed under FRCP 12(b)(6).[5]

25   To state a claim for trade secret misappropriation, a plaintiff must allege "(1) the plaintiff

26   owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's

27

28   [5] To the extent Roche's DUTSA claim is not dismissed as duplicative of its CUTSA claim,
     it should be dismissed for failure to state a claim for the same reasons listed below.

actions damaged the plaintiff." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571 at *3 (N.D. Cal. Feb. 16, 2017) (citation omitted). *See also Battaglia Mgmt., Inc. v. Abramowicz*, No. CV 23-615-GBW, 2024 WL 3183063, at *3 (D. Del. June 26, 2024) (listing elements for DUTSA). Roche's claims fail for two reasons. First, Roche fails to plead factual allegations plausibly alleging that it owned any actual "trade secret" as distinguished from matters of general knowledge. Second, Roche fails to plead that Foresight, as distinguished from the Stanford Oncologists, committed any misappropriation.

### 1. Roche Fails To Distinguish Its Trade Secrets From Matters of General Knowledge

"[T]he burden is on Plaintiff to identify protectable trade secrets and show that they exist." *CleanFish, LLC v. Sims*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020) (citation omitted). Roche's claim for trade secret misappropriation fails for the threshold reason that the FAC does not identify any trade secrets with the particularity required by the applicable pleading standard:

> Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret ..., the complainant should describe the subject matter of the trade secret with ***sufficient particularity to separate it from matters of general knowledge in the trade*** or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

*Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (citations omitted) (granting motion to dismiss trade secret claims). Thus, Roche would only have a viable trade secret claim in technology related to CAPP-Seq "if [Roche] reveals implementation details and techniques *beyond* what was disclosed in [a published patent application or paper]." *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (emphasis in original). Foresight called out this glaring deficiency in its motion to dismiss Roche's original complaint. Yet once again, Roche has not even tried to address this pleading requirement in its FAC.

As an initial matter, Roche makes only conclusory allegations about "non-public aspects of the original CAPP-Seq/iDES," but does not identify or provide any indication about what those "non-public aspects" would be. FAC ¶ 239 ("Drs. Alizadeh and Diehn had knowledge of and access to….***non-public aspects of*** the original CAPP-Seq/iDES selector library generation algorithm

acquired by Roche from CappMed", "***non-public aspects of*** the original CAPP-Seq/iDES algorithms and software code for adaptive variant calling acquired by Roche from CappMed," and "***non-public aspects of*** the original CAPP-Seq/iDES fusion caller algorithm (FACTERA) acquired by Roche from CappMed"). The FAC makes no attempt to distinguish any alleged "trade secrets"—whether CappMed trade secrets or post-acquisition trade secrets allegedly developed by Roche—from the voluminous publicly-disclosed details of the technology areas it identifies in its FAC. *See RoadRunner Recycling, Inc. v. Recycle Track Sys*., No. C 23-04804 WHA, 2023 U.S. Dist. LEXIS 229227, at *8 (N.D. Cal. Dec. 26, 2023) (dismissing trade secret misappropriation claim where "no specific, non-public aspects of this system have been identified.").

For example, Roche's first listed "trade secret" is "CAPP-Seq/iDES adapters." FAC, ¶ 86. However, Stanford's '084 patent, which is licensed to Roche, discloses CAPP-Seq/iDES adapters in robust detail—and the FAC fails to distinguish its alleged trade secrets in any way from those disclosures. *See, e.g.*, Ex. C, "Y - Shaped Adaptors Comprising Unique Barcodes," col. 11:51-12:60; 13:33-19:51; Figs. 1, 6. Similarly, the FAC fails to distinguish the "CAPP-Seq/iDES barcodes" (Roche's second listed trade secret, FAC ¶ 91) from the CAPP-Seq/iDES barcodes disclosed in the '084 patent. For example, the FAC calls out two types of "unique CAPP-Seq/iDES barcodes: (1) 'index' barcodes and (2) 'insert' or 'duplex' barcodes." FAC, ¶ 93. But the '084 patent publicly disclosed both "index" and "insert"/"duplex" barcodes. *See, e.g.*, Ex. C, col. 47 ("Example 7: Processing of Molecular Barcodes," describing use of "index" and "insert" barcodes).

As it did in its original complaint, Roche again alleges that its trade secrets include CAPP-Seq "selectors," which target particular "genomic coordinates" in a sample. FAC ¶ 99. But once again, Roche fails to distinguish its CAPP-Seq selector alleged trade secrets from the CAPP-Seq selectors that were publicly disclosed in the '020 Application, which notes that "[e]xemplary selector sets are provided in Tables 2, and 6-18" for cancers including non-small cell lung cancer, breast cancer, colorectal cancer, diffuse large B-cell lymphoma, follicular lymphoma, pancreatic cancer and adenocarcinomas. Ex. B at [00554]. Roche has also failed to distinguish its "CAPP-Seq/iDES Algorithm for Selector Library Generation" trade secret, FAC ¶ 123, from the '020 Applications disclosure of the "CAPP-Seq Selector Design" algorithm. Ex. B, [00823-00825], [00555-00593].

Roche's pleading failure is all the more glaring given that Foresight's Motion to Dismiss Roche's original complaint (Dkt. 57) identified at least i) Newman, Bratman et al. Nature Medicine 2014, https://www.nature.com/articles/nm.3519; ii) the '020 Application; and iii) the '925 Application as disclosing intimate details of the technologies Roche is attempting to claim as its trade secrets. And Roche has failed to distinguish its newly-listed trade secret categories from similar disclosures in the '084 Patent. Roche's FAC fails to address *any* of these publications and does not explain how its purported trade secrets are distinct from the corresponding disclosures in these publications.

In sum, Roche failed to describe its trade secrets with sufficient particularity to separate them from what was already publicly disclosed. The FAC does not allow Foresight to ascertain the boundaries of Roche's alleged trade secrets, and Roche's trade secret misappropriation claims should therefore be dismissed with prejudice.

### 2.    Roche Fails To Allege Misappropriation By Foresight

To state a claim for trade secret misappropriation under either the CUTSA or DTSA, a plaintiff must plead plausible factual allegations that the party against whom the claim is asserted committed some act of misappropriation of information which is "not . . . generally known" to the public. 18 U.S.C. § 1839; Cal. Civ. Code § 3426.1; Del. Code Ann. Tit. 6, § 2001. Roche fails to plead any factual allegations that *Foresight*, not some other defendant or other party, misappropriated a trade secret.

Roche's unarticulated claim against Foresight is premised on two theories: (1) "Foresight purports to own a proprietary technology referred to as 'PhasED-Seq,'" which allegedly was developed "using tools, software, and data, including the Roche Trade Secrets" (FAC ¶¶ 235, 238); and (2) "Stanford granted an exclusive license to Foresight for the '779 patent and all related patent applications," which allegedly contained "Roche Trade Secrets that Drs. Diehn and Alizadeh had previously sold to Roche as part of the CappMed Acquisition." (*Id.* ¶ 327). But, as explained below, the FAC is devoid of any allegations of "factual content" that would render the first theory "plausible," e.g., that developing PhasED-Seq actually did use CAPP-Seq data and analytical tools. And, as explained below, the second theory regarding Foresight's license is a legally insufficient basis for a misappropriation claim.

### a.    The FAC Lacks Any Plausible Factual Allegations That PhaseED-Seq Was Developed Using Roche Trade Secrets

The lynchpin of Roche's theory that development of PhasED-Seq used Roche Trade Secrets is a public statement by Stanford: "A December 11, 2023, public statement by Stanford touts the PhasED-Seq technology asserting that that 'PhasED-Seq *builds upon a technique called CAPP-Seq* . . . indicating that Defendants made use Roche's confidential CAPP-Seq data and analytical tools in developing PhasED-Seq." FAC ¶ 263 (emphasis in original); *see also id.* ¶ 292 (proposing to "extend" CAPP-Seq). But Roche's conclusion from this statement is a non-sequitur. A statement that PhasED-Seq "builds upon" or "extends" "CAPP-Seq" does not make it plausible that PhasED-Seq was built on or is an extension of any alleged CAPP-Seq *trade secret*. As discussed above, even before Roche's acquisition of CappMed, CAPP-Seq technology was already in the public domain when it came to trade secret protection: CAPP-Seq had already been described in detail in published patent applications and in a peer-reviewed paper years before Foresight's founding. Thus, Roche cannot base its claim that PhasED-Seq uses Roche Trade Secrets on a bare out-of-context assertion that PhasED-Seq builds upon CAPP-Seq. Roche's inferential leap runs contrary to the very purpose of patents: public disclosure so others may "build upon" and improve the invention. *See Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 150-51 (1989) ("The federal patent system thus embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years.").  Public and private entities are permitted to "build upon" inventions disclosed in a published patent application or patent, which is indeed available to the world—so long as they do not infringe on a valid claim of an issued patent.

Further, even if Roche Trade Secrets *were* used to develop PhasED-Seq (which they were not and Roche fails to adequately allege), any such misappropriation occurred before Foresight existed. As an example, Roche cites to Chabon 2020 to support its notion that eight of its trade secrets were used in the development of PhasED-Seq. *See* FAC ¶¶ 227, 273-278, 281. Chabon 2020 was submitted to *Nature* on July 30, 2019 at the latest and published March 25 2020, both well before Foresight's founding. Ex. 104 at 1. Further, Roche contends that the so-called "Disputed Patent

1    Applications" embody Roche Trade Secrets. FAC ¶ 302. However, the '688 application to which all

2    the Disputed Patent Applications claim priority was filed before Foresight existed. *See* FAC ¶ 284;

3    Ex. D. Roche cannot impute liability on Foresight for a tort which allegedly occurred before its

4    existence. *See Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020)

5    (dismissing misappropriation claim against corporate defendants where the complaint was "devoid

6    of any factual substantiation of [corporate] Defendants' knowledge" of the employee's alleged

7    misappropriation.).

8         The remaining allegations related to Foresight's misappropriation of trade secrets are "naked

9    assertions devoid of further factual enhancement," which are not entitled to any weight and cannot

10   defeat a motion to dismiss. *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care*

11   *Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (allegations made on information and belief, in the absence

12   of facts to provide context, were insufficient to avoid dismissal). For example, the section of Roche's

13   FAC entitled "Foresight's Misappropriation of the Roche Trade Secrets" further reveals Roche's

14   lack of factual basis for its claims, comprising several paragraphs of naked assertions alleged "on

15   information and belief," devoid of a single supporting fact.

> Foresight's Misappropriation of the Roche Trade Secrets
>
> 328.    On information and belief, Foresight misappropriated the Roche Trade Secrets through Drs. Alizadeh, Diehn, and Kurtz.
>
> 329.    On information and belief, Foresight has used and continues to use the Roche Trade Secrets.
>
> 330.    On information and belief, Foresight's technology builds on proprietary CAPP-Seq/iDES technologies previously sold to Roche by Foresight's founders, and further developed by Roche, and Foresight's technology was developed using Roche Trade Secrets, and continues to be performed using the Roche Trade Secrets.
>
> 331.    On information and belief, Foresight has raised over $70 million touting technology that improperly uses and relies on Roche Trade Secrets.
>
> 332.    On information and belief, Foresight and its co-founders Drs. Diehn, Alizadeh, and Kurtz know that Foresight's technology builds on proprietary CAPP-Seq/iDES technology previously sold to Roche by Foresight's founders and further developed by Roche, and Foresight's technology was developed using the Roche Trade Secrets and continues to be performed using the Roche Trade Secrets.

28   FAC ¶¶ 328-332. These conclusory assertions are insufficient to state a claim for misappropriation

1  of trade secrets under the *Iqbal/Twombly* standard. *See Blantz*, 727 F.3d at 927.

2      The other allegations Roche scatters throughout the FAC fare no better. For example, Roche

3  alleges "[o]n information and belief, Foresight's adapter design functionally incorporates adapter

4  improvements implemented and made by Roche" and "[o]n information and belief, Foresight's

5  adapter design, which includes barcodes, functionally incorporates the barcode improvements

6  implemented and made by Roche." FAC ¶¶ 243-244. But Roche fails to plead any facts which would

7  suggest that Foresight's adapter design and barcodes in fact include *Roche's* adapter design and

8  barcode improvements. *See P2I Ltd. v. Favored Tech. USA Corp.*, No. 23-cv-01690-AMO, 2024 U.S.

9  Dist. LEXIS 172643, at *16 (N.D. Cal. Sep. 24, 2024) ("[Defendant's] generic disclosure about

10  coating displays does not support an inference that [Defendant] stole [Plaintiff's] secrets regarding

11  specific defects when coating LCD displays."). Nor does Roche allege any facts to distinguish

12  Foresight's barcodes and selectors from barcodes and selectors already in the public domain, for

13  example, those disclosed in the '020 Application and the '084 Patent.

14      Selectors and barcodes are commonly used in the cancer diagnostics field, and Roche does

15  not distinguish its alleged trade secrets from the unremarkable use of these features in Foresight's

16  products. Roche instead invites this Court to draw the baseless inference that because the Stanford

17  Oncologists were "made aware" of Roche's alleged trade secrets relating to selectors and barcodes,

18  Foresight's use of barcodes and selectors must be due to misappropriated Roche trade secrets. FAC

19  ¶¶ 243-24. But even if the Stanford Oncologists were made aware of Roche trade secrets (assuming

20  *arguendo* that Roche actually has pertinent trade secrets), "[a]lleging mere possession of trade

21  secrets [by the Stanford Oncologists] is not enough" to support a misappropriation claim. *Pellerin*,

22  877 F. Supp. 2d 983, 989 (S.D. Cal. 2012). Because Roche only supports its allegations of

23  Foresight's misappropriation with allegations that the Stanford Oncologists *possessed* Roche's trade

24  secrets, its subsequent claims "on information and belief" that Foresight's products embody those

25  trade secrets are insufficient to support its misappropriation claim. *See Blantz*, 727 F.3d at 927.[6]

26

27      [6] Moreover, "a threat of misappropriation cannot, as a matter of California law, be inferred
28  from the fact [the defendant-employee], upon voluntarily terminating his employment with [the
plaintiff-employer], immediately began working for a direct competitor and appears to be
performing for his new employer the same or similar job duties he performed while employed by

### b.    Foresight's Licensing Of Stanford's PhasED-Seq Patents Cannot Support A Trade Secret Misappropriation Claim

Roche's only remaining factual allegation against Foresight is that "Stanford granted an exclusive license to Foresight for the '779 patent and all related patent applications." FAC ¶ 327. As a result, Roche alleges, "Foresight knowingly and improperly gained access to Roche Trade Secrets that Drs. Diehn and Alizadeh had previously sold to Roche as part of the CappMed Acquisition." *Id.* This allegation does not state a claim for trade secret misappropriation as a matter of law.

Foresight's acquisition of an exclusive license to an already-filed U.S. patent application cannot support the inference that Foresight "gained access to" Roche Trade Secrets contained within the patent because "[i]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and the patentee's only protection is that afforded under the patent law." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (quoting *Stutz Motor Car of Am. v. Reebok Int'l*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995)); *see also Attia*, 983 F.3d at 426 ("disclosure of a trade secret in a patent application extinguishes the information's trade secret status."). Because Roche fails to particularly describe what "related patent applications" it alleges contains trade secrets, the only reasonable inference is that Roche is referring to the "Disputed Patent Applications," which all published through no action of Foresight's. Thus, any alleged trade secret in those applications was extinguished upon their publication.

Moreover, Paragraph 327 explicitly limits the trade secrets Foresight allegedly "gained access to" to those "that Drs. Diehn and Alizadeh had previously sold to Roche as part of the CappMed Acquisition." But the Stanford CAPP-Seq technology that was the subject of the CappMed acquisition was developed using federal funding and thus subject to the provisions of the Bayh-Dole Act. *See* Ex. B at [0001] ("This invention was made with government support under grant number W81XWH-12-1-0285 awarded by the Department of Defense.").

---

[the plaintiff-employer]." *Les Concierges, Inc. v. Robeson*, No. C-09-1510MMC, 2009 U.S. Dist. LEXIS 39414, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009).

The Bayh-Dole Act governs intellectual property rights between the Federal Government and those who conceive or reduce to practice inventions while using federal funding. A contractor using federal funds to create an invention has two options: either (a) elect title to any patentable subject invention conceived or reduced to practice with federal funding, or (b) give the Government the right to do so while retaining a non-exclusive license. 2 Federal Contract Management P 11.01. "Thus, *there is no ability of the contractor to keep a patentable invention a trade secret* under the Bayh-Dole Act." *Id.* Accordingly, Stanford was unable to keep any trade secrets related to its federally-funded invention of the CAPP-Seq technology licensed to CappMed (and from CappMed to Roche). Thus, Roche could not have acquired trade secrets related to CAPP-Seq from the CappMed Acquisition, despite its repeated allegations to the contrary.

Finally, Roche premises its misappropriation-by-license theory on the inclusion of a BED File in the '730 Application, which cannot have any bearing on Foresight's liability for two reasons. FAC ¶ 280. First, it is undisputed that the same BED File was included as Table 3 in the '688 Application, to which all the Disputed Patent Applications claim priority. *Id.* ¶ 284-285; Ex. D at 185. The '688 Application was filed *by Stanford* before Foresight even existed. FAC ¶¶ 284, 312. Thus, the inclusion of the BED File in the '688 Application had nothing to do with Foresight.

Second, merely obtaining a license to a patent estate owned by a third party is not and cannot be an act of trade secret misappropriation. Misappropriation is defined under both federal and state law as "improper acquisition of a trade secret or disclosure of a trade secret or use of a trade secret." *Agency Solutions.com LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1026 (E.D. Cal. 2011); *see* U.S.C. § 1839(5); *see also* Cal. Civ. Code § 3426.1(b). Merely licensing a patent application, which by law only includes information within the public domain, is none of these things. *See Ultimax*, 587 F.3d at 1355 ("Public disclosure [in a patent], that is the absence of secrecy, is fatal to the existence of a trade secret.").

In sum, Roche has not alleged any facts that make it plausible that Foresight misappropriated any of the insufficiently alleged "Roche Trade Secrets." Roche has been on notice of these deficiencies since Foresight filed its Motion to Dismiss Roche's original complaint. Dkt. 57. Yet Roche has failed to even attempt to add allegations plausibly supporting its misappropriation claims

against Foresight. Roche is clearly grasping at straws to attach liability to Foresight and should not be permitted leave to amend its complaint a second time.

      **c.**      **Roche Cannot Save Its Trade Secret Claims Against Foresight By Relying on Factual Allegations Against the Stanford Oncologists**

Because the FAC is devoid of any plausible allegations specifically directed at alleged misappropriation by Foresight, Roche's trade secret claims must be dismissed. The law is clear that generic allegations of alleged misappropriation by an individual or other co-defendants, without more, are insufficient to allege misappropriation against a corporate defendant. *See, e.g., Navigation Holdings, LLC*, 445 F. Supp. 3d at 79 (dismissing a DTSA complaint against corporate defendants where the complaint improperly based its "trade secret misappropriation claims on [an employee's] conduct, without differentiating what each specific [corporate] Defendant is alleged to have done"); *Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc.*, 2019 WL 11499334, at *7 (N.D. Cal. Nov. 13, 2019) ("[T]he mere fact that [defendant] hired former [employees of plaintiff] who allegedly have knowledge of [plaintiff's] trade secrets is insufficient to demonstrate misappropriation.").

Here, the FAC is devoid of allegations specifically directed at alleged misappropriation by Foresight. For example, there are no well-pleaded allegations or specific facts showing that Foresight knew that the Stanford Oncologists purportedly misappropriated confidential or trade secret information from Roche (even if that were true); rather, all such allegations are alleged only generally and on information and belief. *See, e.g.*, FAC ¶ 328 ("On information and belief, Foresight misappropriated the Roche Trade Secrets through Drs. Alizadeh, Diehn, and Kurtz."). This is insufficient, as discussed above. *See, e.g., Carl Zeiss Meditec*, 2019 WL 11499334, at *7.

## V.    <u>ROCHE'S UCL AND UNFAIR COMPETITION CLAIMS ARE PREEMPTED</u>

Roche's UCL and Unfair Competition claims fail because the allegations mirror those upon which Roche bases its trade secret misappropriation claim, and thus the claims are preempted by CUTSA and DUTSA. "Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. It therefore supersedes claims—including Section 17200 claims—based on the same nucleus of facts as trade secret misappropriation." *Waymo, LLC v. Uber Techs., Inc.*, 256 F. Supp.

1  3d 1059, 1062 (N.D. Cal. 2017); *see also You Map, Inc. v. Snap Inc.*, No. CV 20-00162-CFC, 2021

2  WL 106498, at *8 (D. Del. Jan. 12, 2021), *report and recommendation adopted*, No. CV 20-162-

3  CFC, 2021 WL 327388 (D. Del. Feb. 1, 2021) (plaintiff's unfair competition claim which was

4  "grounded in the same facts" as plaintiff's DUTSA claim was preempted by DUTSA.).

5         The FAC alleges on its face that "the federal and state law claims derive from a common

6  nucleus of operative facts." FAC ¶ 18. Roche's sole federal claim is trade secret misappropriation

7  under the DTSA. Accordingly, Roche's state law claims, including its CUTSA, Unfair Competition,

8  and UCL claims, are necessarily "based on the same nucleus of facts as trade secret

9  misappropriation." *Waymo*, 256 F. Supp. 3d at 1062. Roche's tort claims for unfair competition and

10 UCL violations must therefore be dismissed as preempted based on Roche's own allegations. *Sylabs,*

11 *Inc. v. Rose*, 2023 WL 8813517, at *9 (N.D. Cal. Dec. 19, 2023) (tort claims preempted by CUTSA

12 where plaintiff "predicate[d] its CUTSA and non-CUTSA claims on the same underlying conduct").

13 Because Roche was put on notice of the defects in its original complaint by Foresight's motion to

14 dismiss, and still admits that its claims all "derive from a common nucleus of operative facts," FAC

15 ¶ 18, dismissal should be with prejudice. *See Sivas v. Luxottica Retail N. Am., Inc.*, No. 1:19-CV-

16 00537-LJO-BAM, 2019 U.S. Dist. LEXIS 150724, at *10 (E.D. Cal. Sep. 3, 2019) ("Because

17 [plaintiff] has already been given one opportunity to amend the complaint, and he has failed to cure

18 the deficiencies, it is clear that [his] claim cannot be cured by further amendment. It is accordingly

19 dismissed with prejudice").

20 **VI.    ROCHE'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED**

21        Roche's claim for "Declaratory Judgment of Ownership" of the Stanford PhasED-Seq

22 patents is based on two grounds: (1) Foresight's alleged misappropriation of the Roche Trade

23 Secrets, and (2) the Stanford Oncologists' alleged breach of their consulting agreements with Roche.

24 FAC ¶¶ 437-446. As explained above, Roche has failed to state trade secrets claims against

25 Foresight, and thus its patent ownership claim on that basis likewise fails. Roche also has failed to

26 adequately allege it is entitled to patent ownership under the Stanford Oncologists' consulting

27 agreements.

28        Foresight explained in its earlier-filed motion to dismiss that based on Roche's own

allegations, its claim for ownership fails. Dkt. 57. Despite being on notice of the deficiencies in its allegations, Roche fails to remedy them. As Roche admits in its FAC, Drs. Diehn and Alizadeh's "2015 Consulting Agreements acknowledged that Drs. Diehn and Alizadeh were employees of Stanford subject to certain obligations to Stanford regarding ownership of intellectual property." FAC ¶ 54. More specifically, their consulting agreements attached to the FAC expressly provided that they had "Conflicting Obligations" with Stanford. *See, e.g.,* Ex. 1 at 2:

> 5.    Conflicting Obligations.
>
> 5.1 RMS acknowledges that Provider is an employee of Stanford University ("Stanford") and is subject to certain agreements, rules, policies, regulations, orders and guidelines of Stanford, including, without limitation, policies concerning consulting, conflicts of interest and ownership of intellectual property (collectively, the "Stanford Policies").

As with Roche's original complaint, Roche's FAC contains **no** allegations as to why the Roche consulting agreements would somehow control over the Stanford Oncologists' pre-existing and "conflicting" assignment agreements with Stanford. And again, Roche did not attach to its FAC the Stanford agreements governing "ownership of intellectual property" (the SU18s) that Roche expressly acknowledged in the consulting agreements.

The reason Roche again dodges this issue is because, in view of the Stanford Oncologists' pre-existing Stanford assignments, Roche's patent ownership claim fails as a matter of law. As a preliminary matter, this court can and should treat the Oncologists' Stanford patent assignment agreements as incorporated by reference into Roche's FAC, given that no party can dispute their authenticity and the Roche consulting agreements on which Roche's claims depend specifically refer to them. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").

It is undisputed that Stanford's controlling assignment agreement for faculty, including the Stanford Oncologists, provides:

I will disclose to Stanford all potentially patentable inventions conceived or first reduced to

practice in whole or in part in the course of my University responsibilities or with more than incidental use of University resources. **I hereby assign to Stanford all my right, title and interest in such patentable inventions** and to execute and deliver all documents and do any and all things necessary and proper on my part to effect such assignment.

Exhibits F, G, H (SU18s for Drs. Diehn, Alizadeh and Kurtz). The "hereby assign" language of these assignments conveyed a *present assignment* of the Stanford Oncologists' entire rights in their future inventions, conceived or reduced to practice as part of their University responsibilities or with more than incidental use of University resources, to Stanford. *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009). The FAC does not dispute, and cannot dispute, that the Stanford Oncologists conceived PhasED-Seq and reduced it to practice both as part of their University responsibilities as well as using substantial Stanford resources. As a result, at the time of their consulting agreements with Roche, they had already assigned all legal and equitable interest in PhasED-Seq to Stanford; they retained no further ownership interest in it to convey to Roche, even under Roche's warped interpretation of those agreements. *Id.* It is as simple as this: you cannot convey title to property you no longer own.

Ironically, the leading case on this issue involves a previous dispute between Stanford and Roche, *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.* In that case, the Federal Circuit held that Roche's later-in-time assignment agreement that provided a *present assignment* using the language "I will assign and do hereby assign" controlled over Stanford's prior assignment agreement, which provided a mere *promise* to assign rights in the *future*, using the language "*I agree to assign.*" *Id.* at 842. The court explained that, because the Roche agreement "effected a present assignment of [the inventor's] future inventions to [Roche], . . .[Roche] immediately gained equitable title to the [inventor's] inventions." *Id.* The inventor's subsequent attempt to assign his interest in the invention to Stanford was therefore void; "because [Roche's] legal title vested first, [the inventor] no longer retained his rights, negating his subsequent assignment to Stanford during patent prosecution." *Id.*

Notably, as a result of this very case, Stanford changed its patent assignment agreement to provide for a present assignment of future inventions, using the magic language of a present assignment on which Roche successfully relied in that prior Stanford case: "I hereby assign to

Stanford." Exs. F, G, H. Thus, under that very case, here it was *Stanford's* "legal title [that] vested first," and the Stanford Oncologists "no longer retained [their] rights, negating" any purported assignment to Roche, even under its own incorrect interpretation of the consulting agreements. As a result, the Stanford Oncologists "ha[d] nothing remaining to assign" with respect to PhasED-Seq in their Roche consulting agreements. *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed.Cir.1991); *see also Aerotel, Ltd. v. IDT Corp.*, 486 F. Supp. 2d 277, 281-82 (S.D.N.Y. 2007) ("[C]hallenges to ownership have been permitted where an inventor, by contract or under statute, had made a present assignment of future inventions to a third party before conceiving of the patented invention. In such a case, the contract or statute divests the inventor-assignor of ownership of the invention and automatically vests ownership of the invention, when invented, in the assignee. Therefore, the inventor has no legal title to assign at a future date . . . .") (citations omitted).

Roche's patent ownership claim thus fails as a matter of law, whether based on trade secrets or the consulting agreements. Because Foresight identified the failures in Roche's previous complaint and Roche failed to cure the deficiencies, Roche's claims should be dismissed with prejudice. *See Sivas*, 2019 U.S. Dist. LEXIS 150724, at *10.

## VII.    **CONCLUSION**

Roche admits that a publication published March 25, 2020 describes the alleged misappropriation of Roche's purported trade secrets. It has therefore pled itself directly into a statute of limitations violation. In addition, Roche again fails to distinguish its purported trade secrets from the robust disclosure of the Stanford-developed CAPP-Seq technology described in multiple academic papers and published patent filings. Roche's UCL and Unfair Competition claims are preempted by its trade secret claims based on Roche's own pleading. And Roche cannot claim ownership to PhasED-Seq through its agreements with the Stanford Oncologists, because they had long before already assigned all their rights in that technology to Stanford. The FAC has failed to assert any plausible claims against Foresight. The Court should dismiss Roche's FAC against Foresight with prejudice.

1   Dated: December 16, 2024                    Respectfully submitted,

2                                               IRELL & MANELLA LLP

3

4                                               By: */s/ Alan Heinrich*
                                                   _____

5                                                  Alan Heinrich

6                                                  Attorneys for Defendant Foresight
7                                                  Diagnostics

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28