IRELL & MANELLA LLP
Morgan Chu (CA 70446)
MChu@irell.com
Alan Heinrich (CA 212782)
AHeinrich@irell.com
Jordan Nafekh (CA 328151)
JNafekh@irell.com
Henry White (CA 351549)
HWhite@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:     (310) 277-1010
Facsimile:     (310) 203-7199

*Attorneys for Drs. Diehn and Alizadeh.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC. et al<br><br>Plaintiffs<br><br>v.<br><br>FORESIGHT DIAGNOSTICS INC. et al<br><br>Defendants. | Case No. 5:24-cv-03972-EKL<br><br>**DRS. MAXIMILIAN DIEHN AND ARASH ASH ALIZADEH'S DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>Pursuant to L.R. 7-2(b), Drs. Diehn and Alizadeh identify a hearing date and time of April 2, 2025. |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................. 3

    A.    CAPP-Seq Technology ............................................................................... 3

    B.    Roche's Acquisition Of CappMed ............................................................. 4

    C.    PhasED-Seq And The Founding Of Foresight .......................................... 4

    D.    Roche's Allegations Regarding The Chabon 2020 Paper ........................ 5

III.  LEGAL STANDARDS .......................................................................................... 6

IV.   ROCHE'S TRADE SECRET CLAIMS SHOULD BE DISMISSED .............................. 6

    A.    Roche's FAC Concedes That Its Trade Secret Claims Are Barred By the Applicable Statutes Of Limitation ...................................................... 7

        1.    Roche Alleges Chabon 2020 Evidences Trade Secret Misappropriation .......................................................................... 7

        2.    Based On The FAC, Chabon 2020 Constituted Inquiry Notice Of Alleged Trade Secret Misappropriation ..................... 8

        3.    Roche's Claims Are Barred By The Statute Of Limitations .................... 11

    B.    Roche Fails To State A Claim Under The DTSA And DUTSA .......................... 13

V.    ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRCT ........................................................................................................... 16

    A.    Roche's Breach Of Contract Claim Is Time-Barred .............................. 16

    B.    Roche Fails To Sufficiently Allege Any Breach Of An Obligation Imposed By Contract ................................................................................ 17

        1.    Roche Cannot Establish Breach By Recycling Its Insufficiently-Pled Trade Secret Claims .................................... 18

        2.    The FAC Does Not Adequately Allege That Drs. Diehn Or Alizadeh Had Any Obligation To Assign The Disputed Patent Applications To Roche ................................................... 18

VI.   ROCHE'S BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM SHOULD BE DISMISSED ................................................ 22

VII.  CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbvie Inc. v. Adcentrx Therapeutics Inc.*,
    No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144 (S.D. Cal. July 29, 2024)..................15, 16

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
    182 F. App'x 994 (Fed. Cir. 2006)...........................................................................................9

*Aerotel, Ltd. v. IDT Corp.*,
    486 F. Supp. 2d 277 (S.D.N.Y. 2007)....................................................................................22

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ............................................................................15, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................6

*Ashton-Tate Corp. v. Ross*,
    728 F. Supp. 597 (N.D. Cal. 1989) ........................................................................................11

*Attia v. Google LLC*,
    983 F.3d 420 (9th Cir. 2020)...................................................................................................13

*Battaglia Mgmt., Inc. v. Abramowicz*,
    No. 23-615-GBW, 2024 U.S. Dist. LEXIS 113061 (D. Del. June 26, 2024) ......................7, 13

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
    583 F.3d 832 (Fed. Cir. 2009).............................................................................................18, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................6

*Cipla Ltd. v. Amgen Inc.*,
    778 F. App'x 135 (3d Cir. 2019)..............................................................................................17

*Colyer v. AcelRx Pharms., Inc*,
    2015 U.S. Dist. LEXIS 159640 (N.D. Cal. Nov. 25, 2015)...................................................4, 6

*Deutsch v. Turner Corp.*,
    324 F.3d 692 (9th Cir.2003)....................................................................................................12

*Dobshinsky v. Piccinini*,
    No. C 06-4193 MHP (PR), 2007 WL 2127884 (N.D. Cal. July 20, 2007)...............................12

*FilmTec Corp. v. Allied-Signal, Inc.*,
    939 F.2d 1568 (Fed.Cir.1991)................................................................................................22

*FlexWage Sols. Ltd. Liab. Co.,*
    2024 Del. Super. LEXIS 384 .................................................................................10

*Fooks v. State Health & Soc. Ser.,*
    No. CIV.A.98C-10-027, 1999 WL 743916 (Del. Super. Ct. Sept. 14, 1999) ...........17

*Forcier v. Microsoft Corp.,*
    123 F. Supp. 2d 520 (N.D. Cal. 2000) .............................................................11, 12

*GeoVector Corp. v. Samsung Elecs. Co.,*
    234 F. Supp. 3d 1009 (N.D. Cal. 2017) ...............................................................4, 5

*Giles v. Town of Elsmere,*
    No. N22M-02-006 EMD, 2022 WL 17826005 (Del. Super. Ct. Dec. 20, 2022) ......22

*HiRel Connectors, Inc. v. U.S.,*
    465 F. Supp. 2d 984 (C.D. Cal. 2005).....................................................................11

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005).................................................................................20

*Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc.,*
    No. CV 10-487-RGA-CJB, 2015 WL 5470210 (D. Del. Aug. 6, 2015)...................10

*Live Oak Banking Co. v. Streetshares, Inc.,*
    2024 U.S. Dist. LEXIS 150167 (D. Del. July 24, 2024)..........................................23

*Mallet & Co. v. Lacayo,*
    16 F.4th 364 (3d Cir. 2021)......................................................................................13

*MGA Entm't, Inc. v. Mattel, Inc.,*
    41 Cal. App. 5th 554, 564 (2019).............................................................................11

*Micrel Inc. v. Monolithic Power Sys.,*
    No. C 04-04770 JSW, 2005 U.S. Dist. LEXIS 47030 (N.D. Cal. Dec. 9, 2005)...................7, 10

*Moss v. United States Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009)......................................................................................6

*Naguiat v. BAC Home Loans Servicing, LP,*
    No. C 10-4303 RS, 2011 WL 4903180 (N.D. Cal. Oct. 14, 2011) ...........................12

*Nifty Techs., Inc. v. Mango Techs., Inc.,*
    No. 24-CV-194 JLS (AHG), 2024 U.S. Dist. LEXIS 168634 (S.D. Cal. Sep. 17,
    2024)..........................................................................................................................23

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,*
    522 F.3d 1049 (9th Cir. 2008)..................................................................................12

*Priddy v. Lane Bryant, Inc.*,
  No. C 08-5377 JL, 2010 WL 11597965 (N.D. Cal. Oct. 29, 2010) ...........................................12

*Raul v. Rynd*,
  929 F. Supp. 2d 333 (D. Del. 2013) ...............................................................................................17

*Raza v. Siemens Med. Sols. USA Inc.*,
  607 F. Supp. 2d 689 (D. Del. 2009) ................................................................................7, 8, 9, 10

*Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*,
  No. SACV 23-00982-CJC, 2023 U.S. Dist. LEXIS 149612 (C.D. Cal. Aug. 24,
  2023)...........................................................................................................................................18

*RoadRunner Recycling, Inc. v. Recycle Track Sys.*,
  No. C 23-04804 WHA, 2023 U.S. Dist. LEXIS 229227 (N.D. Cal. Dec. 26,
  2023)...........................................................................................................................................14

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 2002)..........................................................................................................6

*Sivas v. Luxottica Retail N. Am., Inc.*,
  No. 1:19-CV-00537-LJO-BAM, 2019 U.S. Dist. LEXIS 150724 (E.D. Cal. Sep.
  3, 2019).............................................................................................................................16, 22, 24

*Soc. Apps, LLC v. Zynga, Inc.*,
  No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. 2012) .............................................15

*Spirits v. Ragghianti*,
  No. 23-2913, 2024 U.S. App. LEXIS 15487 (3d Cir. June 26, 2024) .......................................13

*TransPerfect Holdings, LLC v. Pincus*,
  No. 22-1477-JLH, 2024 U.S. Dist. LEXIS 98873 (D. Del. June 4, 2024)................................24

*Truinject Corp. v. Galderma S.A.*,
  No. 19-592-GBW, 2024 U.S. Dist. LEXIS 181444 (D. Del. Sep. 13, 2024)......................17, 18

*Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS,
  2018 WL 1456697 ........................................................................................................................15

*Wang v. Palo Alto Networks, Inc.*,
  No. C 12-05579 WHA, 2014 U.S. Dist. LEXIS 50737 (N.D. Cal. Apr. 11,
  2014)..............................................................................................................................................9

*Weyerhaeuser Co. v. Domtar Corp.*,
  61 F. Supp. 3d 445 (D. Del. 2014), *aff'd*, 721 F. App'x 186 (3d Cir. 2018) ......................16, 17

**Statutes**

6 Del. C. § 2006 .................................................................................................................................8

10 Del. C. § 8106(a) ............................................................................................16, 17

18 U.S.C. § 1836(d) ...........................................................................................7, 8, 11

Bayh-Dole Act.......................................................................................................1

Del. Code Ann. Tit. 6, § 2006 ..........................................................................7, 8, 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................2, 3, 13

Numbered exhibits are attached to Plaintiffs' FAC. Dkt. 87.  Lettered exhibits are attached to the declaration of Alan Heinrich, filed concurrently herewith. Throughout this Motion, emphasis is added unless otherwise stated.

1

## <u>NOTICE OF MOTION</u>

2          PLEASE TAKE NOTICE THAT Defendants Maximilian Diehn and Arash Ash Alizadeh are

3 moving to dismiss all pending claims against them pursuant to Fed. R. Civ. P. 12(b)(6), with a hearing

4 for the motion set on April 2, 2025, or as soon thereafter as the matter may be heard, in the courtroom

5 of the Honorable Eumi K. Lee, United States District Judge for the Northern District of California

6 located at 280 South 1st Street, San Jose, CA 95113. This motion is based upon this notice of motion,

7 the supporting memorandum of points and authorities, all pleadings and papers on file in this action,

8 and upon such other matters as may be properly presented to the Court.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    <u>INTRODUCTION</u>

Plaintiffs Roche Molecular Solutions, Inc. and Roche Sequencing Solutions, Inc. (collectively, "Roche") have filed the present lawsuit alleging trade secret misappropriation, contract, and business tort claims against the Board of Trustees of the Leland Stanford Junior University ("Stanford"), Drs. David Kurtz, Maximilian Diehn, and Ash Alizadeh, each of whom is a practicing oncologist at Stanford (the "Stanford Oncologists"), and Foresight Diagnostics Inc. ("Foresight"), an early stage competitor of Roche.[1] Defendants moved to dismiss Roche's original complaint for failure to state a claim, and Roche did not attempt to oppose, instead filing a First Amended Complaint ("FAC"). But Roche's FAC fails to cure the defects in its original complaint, and raises additional grounds for dismissal.

By way of brief background, in 2015, Roche purchased an early-stage company, Capp Medical ("CappMed"), which was the exclusive licensee of Stanford-owned patent applications covering a cancer diagnostic technology co-invented by Drs. Diehn and Alizadeh called "CAPP-Seq." The Stanford Oncologists continued their research at Stanford, and years after Roche's CappMed acquisition, they invented a new and different diagnostic technology at Stanford called PhasED-Seq. Stanford patented PhasED-Seq and exclusively licensed the patents to Foresight. In its FAC, Roche contends without support that PhasED-Seq was based on trade secrets which Roche allegedly acquired from CappMed and improvements made thereto by Roche.

Roche's claims are implausible on their face. ***Before*** Roche acquired CappMed, there was nothing "secret" about CAPP-Seq: Stanford and the Stanford Oncologists had already publicly disclosed the details of that technology in academic papers and in a fulsome 547-page published patent application. In fact, the Stanford Oncologists' research leading to CAPP-Seq relied on federal funding subject to the provisions of the Bayh-Dole Act, under which "***there is no ability of the contractor to keep a patentable invention a trade secret***." 2 Federal Contract Management P 11.01 (Henry L. Goldberg ed., 2024). Contrary to the central, faulty premise of Roche's lawsuit, research

---

[1] The Stanford Oncologists have provided detailed facts and evidence that refute Roche's allegations. Defendants refer the Court to the "speaking answers" of the Stanford Oncologists, Dkt. 54 and Dkt. 26 of Civil Case No. 5:24-cv-06117-EKL.

universities such as Stanford are simply not in the "trade secrets" business for technology already publicly described. And Roche has failed to explain what any of its alleged post-acquisition improvements to CAPP-Seq actually are, or how they constitute trade secrets in light of the voluminous details of the CAPP-Seq technology that had already been published.

The allegations against Drs. Diehn and Alizadeh—claims for trade secret misappropriation, breach of contract, and breach of implied covenant of good faith and fair dealing—are implausible on their face and should be dismissed at the pleading stage under Fed. R. Civ. P. 12(b)(6). These claims fail for multiple, independent grounds.

*First*, Roche failed to bring its trade secret causes of action within the three-year statute of limitations. As of March 25, 2020, Roche was at least on inquiry notice of a published paper authored by the Stanford Oncologists, which Roche's FAC alleges constitutes an act of misappropriation of its alleged trade secrets. Roche's own allegations are fatal to its case because they demonstrate that Roche filed its trade secret misappropriation claims well after the applicable three-year statute of limitations expired.

*Second*, the FAC fails to allege anything that would actually constitute a trade secret. The FAC fails to separate the alleged trade secrets from what was already generally known in the art from the robust disclosures of several CAPP-Seq publications. Moreover, certain allegations that Roche added to the FAC made the defects in its pleading worse – in many instances Roche now concedes that some portion of the alleged "trade secrets" was publicly known, but leaves one guessing on what that is. Courts have repeatedly found that failure to distinguish trade secrets from matters generally known to the public is grounds for dismissal.

*Third*, Roche's breach of contract claims should be dismissed because (1) Chabon 2020 also put Roche on notice of the Stanford Oncologists' breach, and therefore the three-year statute of limitations has run; and (2) Roche has failed to plausibly allege that Drs. Diehn and Alizadeh breached the Consulting Agreements. Roche's theory of breach rests on two grounds. The first, that Drs. Diehn and Alizadeh "us[ed] and disclos[ed] certain of the Roche Trade Secrets in patent applications," FAC ¶ 407, is no more than a repackaging of its trade secret misappropriation claims and fails for the same reasons. The second, that Drs. Diehn and Alizadeh "purport[ed] to assign their

1  interests in the Disputed Patent Applications to Stanford," *id.*, fails because the disputed inventions

2  by the Stanford Oncologists were automatically assigned to Stanford under earlier assignment

3  agreements that as a matter of law take precedence over their later consulting agreements with

4  Roche. Roche's claim for breach of implied covenant of good faith and fair dealing is duplicative of

5  its breach of contract claim and should be dismissed for the same reasons.

6  The Court should dismiss the FAC's claims against Drs. Diehn and Alizadeh with prejudice.

7  **II.    FACTUAL BACKGROUND**

8  **A.    CAPP-Seq Technology**

9  Drs. Diehn and Alizadeh, along with Ashok Krishnamurthi, founded Capp Medical, Inc.

10  ("CappMed") in October 2013 to commercialize a new cancer diagnostic technology developed at,

11  and owned by, Stanford. FAC ¶¶ 38-39. In 2011, as part of their Stanford research, Drs. Diehn and

12  Alizadeh developed a sequencing-based method for tracking certain types of cancer-related

13  mutations in circulating tumor DNA ("ctDNA"). *Id.*; Ex. 3 at 16. They called the method CAPP-

14  Seq, which is short for Cancer Personalized Profiling by deep Sequencing. *Id.* Stanford filed U.S.

15  Provisional Patent Application No. 61/798,925 (the "'925 Application", Exhibit A) covering CAPP-

16  Seq on March 15, 2013, naming Drs. Diehn, Alizadeh and two other Stanford employees as

17  inventors. *Id.* ¶ 40; Ex. A.

18  Paragraph 31 of the FAC alleges that in April 2014, CappMed exclusively licensed from

19  Stanford the '925 Application "and any U.S. or foreign application claiming priority therefrom." The

20  FAC thus incorporates the '925 Application by reference. One of the patent applications "claiming

21  priority" from the '925 Application is PCT/US2014/025020 (the "'020 Application," Exhibit B),

22  which spans 547 pages and published on September 25, 2014. Ex. B at 1. The FAC also alleges that

23  Roche obtained rights to the CAPP-Seq "integrated digital error suppression (iDES)" workflow,

24  FAC ¶ 44, and repeatedly references iDES. . iDES is disclosed in U.S. Patent No. 11,085,084 (the

25  "'084 Patent," Ex. C at 12:67-13:02 ("Disclosed herein is a novel analytical modeling framework

26  for integrated digital error suppression (iDES)"). The '084 Patent also was exclusively licensed to

27  CappMed, and then to Roche as part of the CappMed acquisition. The specification of the '084 patent

28

1  published on March 17, 2016. Ex. C at 1 (listing publication date for WO2016/040901). The '020

2  Application and '084 Patent, which describe CAPP-Seq/iDES in detail, are incorporated by

3  reference in the FAC as well as subject to judicial notice.[2]

4        **B.**    **Roche's Acquisition Of CappMed**

5        In 2014, CappMed and Roche entered into discussions about the possibility of Roche

6  acquiring CappMed. FAC ¶ 42. In a September 2014 presentation to Roche, Drs. Diehn and Alizadeh

7  noted that CappMed's technology was "Exclusively Licensed from Stanford," and described the

8  CappMed Intellectual Property which Roche would receive as part of an acquisition. Ex. 3 at 9. The

9  CappMed Intellectual Property included filed and to-be-filed patent applications on all aspects of

10  CAPP-Seq, including selector design, library preparation, a data analysis pipeline software named

11  FACTERA, and several other CAPP-Seq-related technologies. *Id.* at 58. The presentation also noted

12  that details of CAPP-Seq were published in a 2014 paper in *Nature Medicine*. *Id.* at 22, 30. Notably,

13  nowhere in the CappMed presentation were any "trade secrets" mentioned. *Id.* And for good reason.

14  On September 25, 2014, just days after this meeting, the 547-page '020 Application published, which

15  was replete with disclosure of CAPP-Seq technologies, a number of which Roche is now alleging

16  are trade secrets. Ex. B.

17        In April 2015, months after the '020 Application published and publicly disclosed the details

18  of CAPP-Seq, Roche acquired CappMed. FAC ¶ 47. As part of that acquisition, Roche acquired

19  CappMed's exclusive license to Stanford's CAPP-Seq patent applications. *Id*. The FAC alleges that

20  Roche further developed the CAPP-Seq technology under the trademark AVENIO and in May 2017,

21  "announced the global commercial launch of its AVENIO ctDNA Analysis Kits." *Id.* ¶ 3.

22        **C.**    **PhasED-Seq And The Founding Of Foresight**

23        After Roche's CappMed acquisition, Drs. Diehn and Alizadeh partnered with Dr. Kurtz to

24  develop a new assay called PhasED-Seq, "a liquid-biopsy powered platform that detects minimal

25

26        [2] *See GeoVector Corp. v. Samsung Elecs. Co*., 234 F. Supp. 3d 1009, 1016 n.2 (N.D. Cal.

27  2017) ("because the '185 incorporates, and claims priority to the Korean Patent, I may also consider the Korean Patent as incorporated by reference in the complaint."); *Colyer v. AcelRx Pharms., Inc,*

28  2015 U.S. Dist. LEXIS 159640, at *10 (N.D. Cal. Nov. 25, 2015) ("[Patent filings] are in the public record, and all are subject to judicial notice.").

residual disease (MRD) from circulating tumor DNA (ctDNA)." *Id.*, ¶¶ 234-235.[3] PhasED-Seq is "much more sensitive" than CAPP-Seq and is able to detect "less than one cancer DNA sequence in 1 million non-cancer DNA sequences," compared to CAPP-Seq's ability to detect approximately one in ten-thousand. Ex. 12 at 4. This makes PhasED-Seq ideally suited for detecting minimal residual disease, in which ctDNA is often present at levels far below one in ten-thousand cell-free DNA fragments. *Id.* at 5.

On November 6, 2019, Stanford filed U.S. Provisional Patent Application 62/931,688 (the "'688 Application," Exhibit D), which described PhasED-Seq and listed the Stanford Oncologists as inventors. *See id.*, ¶ 284; Ex. D.[4] Stanford then filed several applications claiming priority to the '688 Application, some of which have issued as patents and all of which have published. *Id.*, ¶ 285. The PhasED-Seq patent applications do not claim priority to any CAPP-Seq application. Ex. D. After inventing and filing a provisional application on PhasED-Seq, the Stanford Oncologists, among others, co-founded Foresight on May 8, 2020, with the goal of becoming the leader in cancer detection through ultra-sensitive liquid biopsy. FAC ¶ 8. Stanford has exclusively licensed these PhasED-Seq patents and patent applications to Foresight. *Id.*, ¶ 327.

## D.   Roche's Allegations Regarding The Chabon 2020 Paper

The FAC relies heavily on a peer-reviewed paper published in *Nature* on March 25, 2020, Chabon 2020 (Ex. 104), as its main evidence of misappropriation. FAC, ¶¶ 273-278, 281. Each of the Stanford Oncologists, as well as 45 other academic researchers at Stanford, Washington University School of Medicine, St. Louis; Vanderbilt University Medical Center; Mayo Clinic; and Harvard Medical School, Massachusetts General Hospital; and other renowned institutions, are co-authors of this purported act of misappropriation.

Chabon 2020 reports certain "improvements" to "CAPP-Seq" made at Stanford in

---

[3] "Minimal residual disease" is a condition in which very small amounts of cancer cells exist in the body of a patient who has gone into cancer remission. "Circulating tumor DNA" is cell-free DNA derived from tumors that circulates in a cancer patient's body.

[4] The '688 Application is incorporated by reference into Plaintiff's FAC because each of the Disputed Patent Applications claims priority thereto. *GeoVector Corp.*, 234 F. Supp. 3d at 1016 n.2

connection with a technology called "lung cancer likelihood in plasma (Lung-CLiP)." Ex. 104 at 1. The FAC alleges that Chabon 2020 demonstrates that the Stanford Oncologists misappropriated multiple alleged Roche trade secrets. FAC ¶¶ 273-278, 281. As discussed in detail below, however, Roche was at minimum on inquiry notice of Chabon 2020 and therefore of the very act of misappropriation it alleges the Stanford Oncologists committed. Roche's own allegations thus demonstrate that Roche file its trade secret claims well past the three-year statute of limitations deadline.

## III.    LEGAL STANDARDS

To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of [its] cause[s] of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss. *Id*. Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In ruling on a motion to dismiss, the Court can consider documents not physically attached to the complaint under the incorporation by reference doctrine, which allows courts to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002). As explained above, the '020 Application and '084 Patent are incorporated by reference in Roche's FAC, and the Court may also take judicial notice of it as it is in the public record. *See Colyer*, 2015 U.S. Dist. LEXIS 159640, at *10. And as explained below, the Stanford Oncologists' SU18's are incorporated by reference into the FAC because the FAC explicitly refers to them.

## IV.    ROCHE'S TRADE SECRET CLAIMS SHOULD BE DISMISSED

Roche brings trade secret misappropriation claims against Drs. Diehn and Alizadeh under the federal Defend Trade Secrets Act ("DTSA") and the Delaware Uniform Trade Secrets Act

("DUTSA"). FAC ¶¶ 337, 379. Due to the similarity of the statutes, courts generally analyze the two statutes together. *See*, *e.g.*, *Battaglia Mgmt., Inc. v. Abramowicz*, No. 23-615-GBW, 2024 U.S. Dist. LEXIS 113061, at *7-8 (D. Del. June 26, 2024) (listing identical elements for DTSA and DUTSA and analyzing claims together). Both claims should be dismissed because a) they are time-barred by their three-year statutes of limitations; and b) Roche fails to state a claim under either statute.

### A.    Roche's FAC Concedes That Its Trade Secret Claims Are Barred By the Applicable Statutes Of Limitation

Roche attempts to backfill the insufficiency of its misappropriation allegations by relying heavily on a Stanford paper, Chabon 2020 (Ex. 104), which was published on March 25, 2020. FAC, ¶¶ 273-278, 281. Roche's trade secret claims are subject to a three-year statute of limitations. *See* 18 U.S.C. § 1836(d); Del. Code Ann. Tit. 6, § 2006. As explained below, Roche was at minimum on inquiry notice of Chabon 2020 when it published. Roche did not file its claims within three years of that date (even accounting for tolling), and its claims for trade secret misappropriation should therefore be dismissed with prejudice. *Micrel Inc. v. Monolithic Power Sys.*, No. C 04-04770 JSW, 2005 U.S. Dist. LEXIS 47030, at *18 (N.D. Cal. Dec. 9, 2005) (dismissing misappropriation claim with prejudice because Plaintiff was charged with notice of its misappropriation claim through the publication of Defendant's patent more than three years prior to the filing of its complaint); *see also Raza v. Siemens Med. Sols. USA Inc.*, 607 F. Supp. 2d 689, 693 (D. Del. 2009) (dismissing misappropriation claim where plaintiff was charged with notice of its misappropriation claim more than three years before it filed its complaint).

### 1.    Roche Alleges Chabon 2020 Evidences Trade Secret Misappropriation

Roche heavily relies on Chabon 2020 to support its claims for trade secret misappropriation. FAC, ¶¶ 273-278, 283. In the section of the FAC directed to "Defendants' Misappropriation of Roche's Trade Secrets," Roche alleges that Chabon 2020 demonstrates that the Stanford Oncologists used without authorization, and hence misappropriated:

- "Roche's CAPPSeq/iDES adaptive variant caller algorithm trade secret," FAC ¶ 273, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES germline filtering algorithm trade secret," FAC ¶ 274,

citing Chabon 2020 (Ex. 104) at 12;

- "Roche's CAPPSeq/iDES SNV caller algorithm trade secret," FAC ¶ 275, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES Indel caller algorithm trade secret," FAC ¶ 276, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES fusion caller algorithm trade secret," FAC ¶ 277, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES CNV caller algorithm trade secret," FAC ¶ 278, citing Chabon 2020 (Ex. 104) at 59-60;

- "Roche's CAPPSeq/iDES blacklisted and whitelisted genes trade secrets," FAC ¶ 281, citing Chabon 2020 (Ex. 104) at 3, 10, 21.

### 2.    Based On The FAC, Chabon 2020 Constituted Inquiry Notice Of Alleged Trade Secret Misappropriation

Roche's claims are subject to a three-year statute of limitations, which begins when a plaintiff either actually discovered ("actual notice") or should have reasonably discovered the misappropriation "through the exercise of reasonable diligence" ("inquiry notice"). *See* 18 U.S.C. § 1836(d); Del. Code Ann. Tit. 6, § 2006. *Raza* 607 F. Supp. 2d at 693 ("Under 6 Del. C. § 2006, Plaintiff was required to exercise reasonable diligence to discover his claim.").

As discussed above, the FAC itself alleges that Chabon 2020 evidences that the Stanford Oncologists allegedly misappropriated multiple Roche trade secrets. Thus, the only remaining issue is whether Roche was on inquiry notice of Chabon 2020 when it published on March 25, 2020. If it was on inquiry notice as of that date, then it would have necessarily had notice of trade secret misappropriation, based on Roche's own allegations in the FAC. For several reasons, Roche was at least on inquiry notice of Chabon 2020.

*First*, Chabon 2020 reports on research conducted at Stanford, Roche's licensor, on the very technology Stanford licensed to Roche—CAPP-Seq. Indeed, the abstract on page 1 of Chabon 2020 announces, "Here we introduce improvements to cancer personalized profiling by deep sequencing (CAPP-Seq)." Ex. 104 at 1.

1    ***Second,*** the Stanford Oncologists themselves were co-authors of Chabon 2020 and their

2    affiliation with co-defendant Stanford is prominently displayed throughout the paper. *See Wang v.*

3    *Palo Alto Networks, Inc.,* No. C 12-05579 WHA, 2014 U.S. Dist. LEXIS 50737, at *23 (N.D. Cal.

4    Apr. 11, 2014) (the fact that defendant's names were listed on the face of a patent application

5    disclosing plaintiff's trade secrets supported the court's conclusion that plaintiff was on constructive

6    notice of its misappropriation claim upon the application's publication.).

7    ***Third***, Chabon 2020 was co-authored by multiple Roche consultants and affiliates. Each of

8    the Stanford Oncologists expressly discloses a "paid consultancy from Roche" in the "Competing

9    Interests" section of Chabon 2020. Two other of Chabon 2020's co-authors also list paid consultancies

10    or other funding from Roche. Ex. 104 at 13 (listing Roche's name nine times under "Competing

11    Interests" of researchers).

12    ***Fourth***, Chabon 2020 was published in *Nature*, one of the world's largest science journals. In

13    fact, Chabon 2020 has been accessed over ***36 thousand*** times since being published and has been cited

14    hundreds of times. *See* Ex. E (Chabon 2020 *Nature* page), available at

15    https://www.nature.com/articles/s41586-020-2140-0. As Roche was actively developing products

16    relating to ctDNA analysis as early as 2017 and "continues to make substantial investments in the

17    research and development of clinically relevant next-generation sequencing assays based on the

18    CAPP-Seq technology," FAC ¶ 3, it should be charged with notice of an article discussing the same

19    technology in a widely-disseminated journal. *See Raza*, 607 F.Supp.2d at 693 ("Courts have

20    recognized that the public disclosure of products, as well as the publicly noticed filing of patent

21    protection constitutes, at a minimum, constructive knowledge for purposes of discovering a claim

22    based on the misappropriation of trade secrets and commencing the limitations period under the

23    statute."); *see also Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 182 F. App'x 994,

24    999 (Fed. Cir. 2006) (plaintiff's DUTSA claim was time-barred where, more than three years before

25    filing the complaint, plaintiff's trade secret was allegedly "disclosed [] in the United States [] through

26    publications and at conferences." Plaintiff "had, at minimum, constructive notice" of its claim as a

27    result of these disclosures); *Wang*, 2014 U.S. Dist. LEXIS 50737, at *20 ("an inventor actively

28    practicing in the field and prosecuting his own patent application must be deemed to be on constructive

1   notice of published patent applications in the same field.").

2          Roche alleges that it "has maintained the Roche Trade Secrets as confidential and has taken

3   reasonable precautions to maintain their secrecy." FAC ¶ 232. Thus, it is flatly implausible that Roche,

4   exercising "reasonable diligence" and "tak[ing] reasonable precautions to maintain [its trade secrets']

5   secrecy," should not have reasonably discovered a paper that (i) discusses Roche's licensed CAPP-

6   Seq technology at length, (ii) expressly reports improvements to CAPP-Seq, (iii) allegedly discloses

7   use of seven of Roche's trade secrets, (iv) was authored by researchers at its licensor institution, (v)

8   lists 5 of Roche's own consultants as co-authors, and (vi) was published in one of the world's most

9   widely-circulated science journals. *See Micrel Inc,* 2005 U.S. Dist. LEXIS 47030, at *17-18 (finding

10  a patent "should have put a reasonable person on notice" of misappropriation claim where the patent

11  "state[d] that it [was] a modification of [Plaintiff's] prior invention"). A straightforward search by

12  Roche of its consultants' names or CAPP-Seq would have led Roche to Chabon 2020. *See FlexWage*

13  *Sols. Ltd. Liab. Co.,* 2024 Del. Super. LEXIS 384, at *12-14 (finding plaintiff was on inquiry notice

14  where it shared confidential information with Defendant pcursuant to a NDA and Defendant later

15  publicly announced product which "seemingly copied" the confidential information); *see also Raza*,

16  607 F.Supp.2d at 693 (dismissing misappropriation claim where defendant's product release should

17  have put plaintiff on notice of misappropriation claim); *see also Lambda Optical Sols., LLC v. Alcatel-*

18  *Lucent USA Inc.*, No. CV 10-487-RGA-CJB, 2015 WL 5470210, at *10 (D. Del. Aug. 6, 2015), report

19  and recommendation adopted, No. CV 10-487-RGA, 2015 WL 5458273 (D. Del. Sept. 17, 2015)

20  (Plaintiff's misappropriation claim accrued "no later than" the publication date of a patent based on

21  Plaintiff's trade secrets.). Moreover, among Chabon 2020's 48 co-authors are several who disclosed

22  paid consultancies from other major life science companies and Roche competitors. Ex. 104 at 13.

23  Either Roche should have been aware that its CAPP-Seq trade secrets were being misappropriated by

24  these scores of researchers, including consultants for its competitors, or Roche did not take reasonable

25  precautions to protect the secrecy of its trade secrets.

26         Whether Roche argues it actually was unaware of PhasED-Seq in March of 2020 would not

27  change the result on this motion or the fact that Chabon 2020 put Roche on (inquiry) notice of its

28  misappropriation claim. Based on Roche's own allegations, Chabon 2020 either constituted an

alleged, unauthorized disclosure of Roche's trade secrets or put Roche on notice of the alleged misappropriation and use by dozens of scientific researchers. *Ashton-Tate Corp. v. Ross*, 728 F. Supp. 597, 603 (N.D. Cal. 1989) (finding statute of limitations began to run upon initial disclosure of a trade secret even though counterclaimant argued the product using the trade secrets was not published until years later).

Because Roche would have discovered Chabon 2020 through the exercise of reasonable diligence, and because, according to Roche's own allegations in the FAC, Chabon 2020 would have given Roche "reason to suspect an injury and some wrongful cause," the statute of limitations for its misappropriation claims began to run on March 25, 2020. *Mattel,* 41 Cal. App. 5th at 564.

### 3.    Roche's Claims Are Barred By The Statute Of Limitations

Each of the statutes under which Roche brings its misappropriation claims treat a continuing misappropriation as a single claim for statute of limitations purposes. *See* 18 U.S.C. § 1836(d); Del. Code Ann. Tit. 6, § 2006. Moreover, courts in this district have held that a misappropriation claim accrues at the point in time when the plaintiff was on actual or inquiry notice that the defendant had misappropriated *any* trade secret:

> [W]hen the statute of limitations begins to run on some of a plaintiff's trade secret claims against given defendants, the statute also begins to run at the same time as to other trade secret claims against those same defendants, even if there have not yet been any acts of misappropriation of the other trade secrets, at least when the plaintiff shared all the trade secrets with the defendants during the same time period and in connection with the same relationships and when the trade secrets concern related matters.

*Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000); *see also HiRel Connectors, Inc. v. U.S.*, 465 F. Supp. 2d 984, 988 (C.D. Cal. 2005) ("When a plaintiff brings suit against an individual defendant for separate misappropriations of related trade secrets . . . the date of accrual is the date of the initial misappropriation."); *MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 564 (2019) ("the question is not when MGA actually discovered all 114 misappropriations; it is when MGA by the exercise of reasonable diligence should have discovered Mattel engaged in misappropriation"). This rule is animated by the principle that "once plaintiff knows or should know that a defendant who once was trusted has shown, by any act of misappropriation, that he cannot be

1  trusted, plaintiff should know that there is a risk that that defendant will commit additional acts of

2  misappropriation, whether they involve repeated misappropriations of one trade secret or initial

3  misappropriations of other confidences." *Forcier ,*123 F. Supp. 2d at 525.

4         Here, because all three Stanford Oncologists were authors on Chabon 2020, and because

5  Roche alleges Chabon 2020 shows the misappropriation of seven separate alleged trade secrets at issue

6  in this case, the statute of limitations against each of the Stanford Oncologists began to run as to *all*

7  misappropriation claims on March 25, 2020.. In California, as a response to the Covid-19 pandemic,

8  all statutes of limitations periods longer than 180 days were tolled from April 6, 2020, until October

9  1, 2020, a period of 178 days.  Cal. Rules of Court, App'x 1: Emergency Rules Related to COVID-

10  19, Emergency Rule 9 (May 29, 2020).  Based on this tolling period, the statute of limitations on

11  Roche's trade secrets misappropriation expired on September 19, 2023—three (3) years and 178 days

12  from the publication of Chabon 2020.  Because this date predates the parties' Tolling and Standstill

13  Agreement, Roche's claims are untimely and must be dismissed.

14         Because the expiration of the statutes of limitations cannot be corrected, amendment would be

15  futile and dismissal should be with prejudice. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d

16  1049, 1060 (9th Cir. 2008) ("because Platt's claims are barred by the statute of limitations, any

17  amendments would have been futile."); *Deutsch v. Turner Corp.*, 324 F.3d 692, 718 n. 20 (9th

18  Cir.2003) (denying leave to amend complaint where amendment would be futile because statute of

19  limitations had run); *Naguiat v. BAC Home Loans Servicing, LP*, No. C 10-4303 RS, 2011 WL

20  4903180, at *3 (N.D. Cal. Oct. 14, 2011) ("In light of the fact that this is not an initial pleading, and

21  given the bar of the statute of limitations, no further leave to amend is warranted."); *Priddy v. Lane

22  Bryant, Inc.*, No. C 08-5377 JL, 2010 WL 11597965, at *4 (N.D. Cal. Oct. 29, 2010) ("no amendment

23  will allow Plaintiff to cure the passing of the applicable statute of limitations."); *Dobshinsky v.

24  Piccinini*, No. C 06-4193 MHP (PR), 2007 WL 2127884, at *1 (N.D. Cal. July 20, 2007) ("this action

25  is DISMISSED without leave to amend because the statute of limitations defense is complete and

26  obvious from the face of the pleadings.").

27

28

1    **B.    <u>Roche Fails To State A Claim Under The DTSA And DUTSA</u>**

2          As explained above, Roche's trade secret misappropriation claims are untimely and therefore

3    should be dismissed with prejudice. However, even if Roche's misappropriation claims were brought

4    within the statute of limitations, the FAC fails to state a claim for trade secret misappropriation under

5    the DTSA or DUTSA. Its claims should therefore be dismissed under FRCP 12(b)(6).

6          To state a claim for trade secret misappropriation under either the DTSA or DUTSA, a

7    plaintiff must allege "(1) the existence of a trade secret, which is information with independent

8    economic value from not being generally known or ascertainable that the owner has taken reasonable

9    measures to keep secret; and (2) misappropriation of that trade secret, which is the knowing improper

10   acquisition, use, or disclosure of that trade secret." *Battaglia Mgmt., Inc.* 2024 U.S. Dist. LEXIS

11   113061, at *7-8. Roche fails to plead factual allegations plausibly alleging that it owned any actual

12   trade secret. Thus, Roche's claims for trade secret misappropriation against Drs. Diehn and Alizadeh

13   fail.

14         To survive a motion to dismiss, the plaintiff must allege that it owned an actual "trade secret"

15   "with sufficient particularity to separate it from matters of general knowledge in the trade or of

16   special knowledge of those persons who are skilled in the trade, and to permit the defendant to

17   ascertain at least the boundaries within which the secret lies." *Mallet & Co. v. Lacayo*, 16 F.4th 364,

18   382 (3d Cir. 2021); *see also Spirits v. Ragghianti*, No. 23-2913, 2024 U.S. App. LEXIS 15487, at

19   *11 (3d Cir. June 26, 2024) (affirming dismissal of trade secret claim where Plaintiff failed to allege

20   facts supporting the claim that Plaintiff's alleged trade secrets had any independent economic value

21   from not being generally known). Thus, Roche would only have a viable trade secret claim in

22   technology related to CAPP-Seq "if [Roche] reveals implementation details and

23   techniques *beyond* what was disclosed in [a published patent application or paper]." *Attia v. Google*

24   *LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (emphasis in original) (affirming dismissal of DTSA claim

25   because plaintiff's alleged trade secrets had been placed in the public domain by a patent

26   publication). Drs. Diehn and Alizadeh called out this glaring deficiency in their motion for judgment

27   on the pleadings to Roche's original complaint. *See* Dkt. 44 of consolidated Civil Case No. 5:24-cv-

28

1    06117-EKL. Yet once again, Roche has not even tried to address this pleading requirement in its

2    FAC.

3          As an initial matter, Roche makes only conclusory allegations about "non-public aspects of

4    the original CAPP-Seq/iDES," but does not identify or provide any indication about what those

5    "non-public aspects" would be. FAC ¶ 239 ("Drs. Alizadeh and Diehn had knowledge of and access

6    to….***non-public aspects of*** the original CAPP-Seq/iDES selector library generation algorithm

7    acquired by Roche from CappMed", "***non-public aspects of*** the original CAPP-Seq/iDES algorithms

8    and software code for adaptive variant calling acquired by Roche from CappMed," and "***non-public***

9    ***aspects of*** the original CAPP-Seq/iDES fusion caller algorithm (FACTERA) acquired by Roche

10   from CappMed"). The FAC makes no attempt to distinguish any alleged "trade secrets"—whether

11   CappMed trade secrets or post-acquisition trade secrets allegedly developed by Roche—from the

12   voluminous publicly-disclosed details of the technology areas it identifies in its FAC. *See*

13   *RoadRunner Recycling, Inc. v. Recycle Track Sys*., No. C 23-04804 WHA, 2023 U.S. Dist. LEXIS

14   229227, at *8 (N.D. Cal. Dec. 26, 2023) (dismissing trade secret misappropriation claim where "no

15   specific, non-public aspects of this system have been identified.").For example, Roche's first listed

16   "trade secret" is "CAPP-Seq/iDES adapters." FAC, ¶ 86. However, Stanford's '084 patent, which is

17   licensed to Roche, discloses CAPP-Seq/iDES adapters in robust detail—and the FAC fails to

18   distinguish its alleged trade secrets in any way from those disclosures. *See, e.g.*, Ex. C, "Y - Shaped

19   Adaptors Comprising Unique Barcodes," col. 11:51-12:60; 13:33-19:51; Figs. 1, 6. Similarly, the

20   FAC fails to distinguish the "CAPP-Seq/iDES barcodes" (Roche's second listed trade secret, FAC

21   ¶ 91) from the CAPP-Seq/iDES barcodes disclosed in the '084 patent. For example, the FAC calls

22   out two types of "unique CAPP-Seq/iDES barcodes: (1) 'index' barcodes and (2) 'insert' or 'duplex'

23   barcodes." FAC, ¶ 93. But the '084 patent publicly disclosed both "index" and "insert"/"duplex"

24   barcodes. *See, e.g.*, Ex. C, col. 47 ("Example 7: Processing of Molecular Barcodes," describing use

25   of "index" and "insert" barcodes).

26         As it did in its original complaint, Roche again alleges that its trade secrets include CAPP-

27   Seq "selectors," which target particular "genomic coordinates" in a sample. FAC ¶ 99. But once

28   again, Roche fails to distinguish its CAPP-Seq selector alleged trade secrets from the CAPP-Seq

1    selectors that were publicly disclosed in the '020 Application, which notes that "[e]xemplary selector

2    sets are provided in Tables 2, and 6-18" for cancers including non-small cell lung cancer, breast

3    cancer, colorectal cancer, diffuse large B-cell lymphoma, follicular lymphoma, pancreatic cancer

4    and adenocarcinomas. Ex. B at [00554]. As another example, Roche has not attempted to distinguish

5    its "CAPP-Seq/iDES Algorithm for Selector Library Generation" trade secret, FAC ¶ 123, from the

6    '020 Applications disclosure of the "CAPP-Seq Selector Design" algorithm. Ex. B, [00823-00825],

7    [00555-00593]. And Roche's alleged trade secrets relating to the Capp-Seq/iDES workflow (or

8    "reagents"), "single-sample capture", and phased variant are devoid of any distinction from other

9    categories used across the field or basic, well-known biological principles.

10          Roche's pleading failure is all the more glaring given that Drs. Diehn and Alizadeh's motion

11   for judgment on the pleadings to Roche's original complaint identified at least the following

12   publications that disclosed intimate details of the technologies Roche is attempting to claim as its trade

13   secrets: Newman, Bratman et al. Nature Medicine 2014, https://www.nature.com/articles/nm.3519;

14   the '020 Application; and the '925 Application. *See* Dkt. 44 of consolidated Civil Case No. 5:24-cv-

15   06117-EKL. And Roche has failed to distinguish its newly-identified trade secret categories from

16   similar disclosures in the '084 Patent. Roche's FAC fails to address ***any*** of these publications and does

17   not explain in any way how its purported trade secrets are distinct from the corresponding disclosures

18   in these publications.

19          In addition, Roche's trade secret allegations "more closely resemble the broad categories of

20   information" that courts have previously dismissed for lack of specificity.  *AlterG, Inc. v. Boost*

21   *Treadmills LLC,* 388 F. Supp. 3d 1133, 1145 (N.D. Cal. 2019); *see Vendavo, Inc. v. Price f(x) AG*,

22   No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. 2018) (dismissing trade secret claim

23   because plaintiff "set out its purported trade secrets in broad, categorical terms."); *see also Soc. Apps,*

24   *LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. 2012) ("A

25   description of the category, or even of the subcategories of information within a category, does not

26   comply with the requirement to identify the actual matter that is claimed to be a trade secret.").

27          Indeed, the general trade secret allegations here are similar to those recently alleged in *Abbvie*

28   *Inc. v. Adcentrx Therapeutics Inc.*  There, the plaintiff pharmaceutical company alleged that its trade

secrets were "proprietary payloads, linker-drugs, and ADCs" and included the "'processes for synthesizing,' 'assays for testing' and 'complied [sic] information . . . of various compounds.'" *Abbvie Inc. v. Adcentrx Therapeutics Inc.*, No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144, at *5 (S.D. Cal. July 29, 2024). The court found that "such allegations are too vague and categorical to adequately allege a trade secret." *Id*. So too here: at best, Roche alleged general categories of information rather than particular trade secrets.

In sum, Roche failed to describe its trade secrets with sufficient particularity to separate them from what was already publicly disclosed. Even with the benefit of Drs. Diehn and Alizadeh's motion for judgment on the pleadings to Roche's original complaint, Roche has failed to plead allegations in its FAC which would allow Drs. Diehn and Alizadeh to ascertain the boundaries of Roche's alleged trade secrets. Roche's trade secret misappropriation claims should therefore be dismissed with prejudice. *See Sivas v. Luxottica Retail N. Am., Inc.*, No. 1:19-CV-00537-LJO-BAM, 2019 U.S. Dist. LEXIS 150724, at *10 (E.D. Cal. Sep. 3, 2019) ("Because [plaintiff] has already been given one opportunity to amend the complaint, and he has failed to cure the deficiencies, it is clear that [his] claim cannot be cured by further amendment. It is accordingly dismissed with prejudice").

## V.    ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRCT

Roche also brings a breach of contract claim against Drs. Diehn and Alizadeh under Delaware law. This claim fails for two reasons. First, like its claim for trade secret misappropriation, Roche's breach of contract claims are barred by the three year statute of limitations. *Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 451 (D. Del. 2014), *aff'd*, 721 F. App'x 186 (3d Cir. 2018) ("Under Delaware law, there is a three-year statute of limitations for breach of contract claims (10 Del. C. § 8106(a)) which 'begins to run when the contract is breached.'"). Second, Roche has not alleged any facts to support its conclusory allegations that Drs. Diehn and Alizadeh breached the terms of any agreement between them and Roche.

### A.    Roche's Breach Of Contract Claim Is Time-Barred

Roche pleads a claim for breach of contract under Delaware law. *See* FAC ¶ 407; Ex. 1 at 9

1   ("his Agreement shall be construed in accordance with, and governed in all respects by, the internal

2   laws of the State of Delaware"). 10 Del. C. § 8106(a) provides that a Delaware breach of contract

3   claim has a three-year statute of limitations. This statute of limitations "begins to run when the contract

4   is breached." *Weyerhaeuser*, 61 F. Supp. 3d at 451.

5         Here, Roche alleges the contract in question was breached based on Drs. Diehn and Alizadeh's

6   alleged misappropriation of trade secrets. FAC ¶ 407. As discussed above, Roche alleges this

7   misappropriation, and therefore the alleged breach, occurred no later than March 25, 2020, upon the

8   publication of Chabon 2020. Roche's claims are therefore untimely and must be dismissed.

9         The discovery rule does not apply because "[t]he statute of limitations can only be tolled until

10  a plaintiff discovers, ***or by exercising reasonable diligence should have discovered***, facts constituting

11  the basis of the cause of action." *Weyerhaeuser*, 61 F. Supp. 3d at 452. As discussed above, had Roche

12  exercised reasonable diligence it should have discovered Chabon 2020 upon publication. *See Fooks*

13  *v. State Health & Soc. Ser.*, No. CIV.A.98C-10-027, 1999 WL 743916, at \*3 (Del. Super. Ct. Sept.

14  14, 1999) ("the statute of limitations period accrues from the moment a plaintiff has reason to know

15  of, or knows of, the cause of action.").

16      **B.**    <u>**Roche Fails To Sufficiently Allege Any Breach Of An Obligation Imposed By**</u>

17              <u>**Contract**</u>

18        "A breach of contract claim under Delaware law requires proof of (1) a contract, (2) breach

19  of an obligation imposed by that contract, and (3) damage to the non-breaching party." *Cipla Ltd.*

20  *v. Amgen Inc.*, 778 F. App'x 135, 138 (3d Cir. 2019). Roche's breach of contract claim fails because

21  Roche has not alleged any facts to support its conclusory allegations that Drs. Diehn and Alizadeh

22  breached their consulting agreements. Roche alleges two theories of breach: "[1] using and

23  disclosing the Roche Trade Secrets in patent applications upon which they were named inventors

24  and by [2] purporting to assign their interests in the Disputed Patent Applications to Stanford." FAC

25  ¶ 407. Neither theory is supported by plausible, non-conclusory factual allegations, and Roche's

26  claim must therefore be dismissed. *Raul v. Rynd*, 929 F. Supp. 2d 333, 348 (D. Del. 2013) (dismissing

27  breach of contract claim where "[p]laintiff fails to identify any contractual provision that [defendant]

28  allegedly breached. Plaintiff's general allegation [of breach] is conclusory."); *see also Truinject*

*Corp. v. Galderma S.A.*, No. 19-592-GBW, 2024 U.S. Dist. LEXIS 181444, at *12 (D. Del. Sep. 13, 2024) (where plaintiff's trade secret claim failed, "[plaintiff's] breach of contract theory is barred . . . to the extent that [its] theory relies on the disclosure of the same information.").

### 1. Roche Cannot Establish Breach By Recycling Its Insufficiently-Pled Trade Secret Claims

Roche's first ground for Drs. Diehn and Alizadeh's alleged breach is simply a repackaging of its trade secret claim, seeking to attach liability to Drs. Diehn and Alizadeh for allegedly "using and disclosing the Roche Trade Secrets in patent applications." FAC ¶ 407. However, as discussed above, Roche has failed to plausibly allege that it owns any trade secrets. *Supra* Section IV.A.2. Thus, Roche cannot establish breach by re-alleging that Drs. Diehn and Alizadeh disclosed Roche Trade Secrets in the Disputed Patent Applications. *See Truinject Corp.* 2024 U.S. Dist. LEXIS 181444, at *12; *see also Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, No. SACV 23-00982-CJC (KESx), 2023 U.S. Dist. LEXIS 149612, at *14 (C.D. Cal. Aug. 24, 2023) ("Plaintiff fails to sufficiently allege breach of contract based on misappropriation of the broad trade secret categories for the same reasons it fails to sufficiently allege trade secret misappropriation claims regarding those categories."); *see also AlterG, Inc.*, 388 F. Supp. 3d at 1147 (dismissing breach of contract claim where it was "predicated on Defendants' alleged disclosure of trade secrets, and [the plaintiff] must allege with more specificity the types of information protected by its confidentiality agreements").

### 2. The FAC Does Not Adequately Allege That Drs. Diehn Or Alizadeh Had Any Obligation To Assign The Disputed Patent Applications To Roche

Roche's other ground for breach of contract rests on the allegation that Drs. Diehn and Alizadeh "purport[ed] to assign their interests in the Disputed Patent Applications to Stanford." FAC ¶ 407. But this presumes that Drs. Diehn and Alizadeh were required to assign the inventions disclosed in the Disputed Patent Applications to Roche under the terms of the consulting agreements. They were not. Instead, based on Roche's own allegations in the FAC, the only plausible inference is that Drs. Diehn and Alizadeh were required to assign the Disputed Patent Applications to ***Stanford*** (which they did), not to Roche.

There is ample evidence in the FAC that PhasED-Seq and the technology underlying the

Disputed Patent Applications was developed at Stanford, where Drs. Diehn and Alizadeh had full-time positions. FAC ¶ 54 ("The 2015 Consulting Agreements acknowledged that Drs. Diehn and Alizadeh were employees of Stanford subject to certain obligations to Stanford regarding ownership of intellectual property . . . ."). The FAC admits that the Disputed Patent Applications were "made with Government support under CA241076 and CA188298, two projects supported by National Institutes of Health." FAC ¶ 287. Both of these projects were filed by the Stanford Oncologists "***on behalf of Stanford.***" *Id.* ¶ 292.[5] The FAC further admits that the Disputed Patent Applications were filed ***by Stanford*** and assigned by the Stanford Oncologists ***to Stanford***. Thus, the only plausible inference which can be drawn from the FAC is that the Disputed Patent Applications were created at Stanford, for Stanford, using Stanford resources. As such, Roche could only prevail on a breach of contract claim if the invention assignment provisions of their Roche consulting agreements claimed ownership over inventions developed at Stanford using Stanford resources. But any such interpretation fails as a matter of law because Drs. Diehn and Alizadeh executed a present assignment of their rights in any such inventions to Stanford years before their consulting relationships with Roche.

Drs. Diehn and Alizadeh already explained the priority of their senior assignment provisions in their earlier-filed motion for judgment on the pleadings. *See* Dkt. 44 of consolidated Civil Case No. 5:24-cv-06117-EKL. Despite being on notice of the deficiencies in its allegations, Roche fails to remedy them. As Roche admits in its FAC, Drs. Diehn and Alizadeh's "2015 Consulting Agreements acknowledged that Drs. Diehn and Alizadeh were employees of Stanford subject to certain obligations to Stanford regarding ownership of intellectual property." FAC ¶ 54. More specifically, their consulting agreements attached to the FAC expressly provided that they had "Conflicting Obligations" with Stanford:

---

[5] While the FAC does not allege that NIH project number CA188298 was filed on behalf of Stanford, the project is incorporated by reference into the FAC and clearly shows on its face that the project was filed on behalf of Stanford. *See* Maximilian Diehn et al, *Noninvasive monitoring of lung cancer patients treated with radiotherapy,* National Institute of Health (last visited Oct. 21, 2024), https://reporter.nih.gov/search/uK8u8QAyWk2iLw T0zo7Ivg/projectdetails/8888879#details.

5.      <u>Conflicting Obligations</u>.

> 5.1 RMS acknowledges that Provider is an employee of Stanford University ("Stanford") and is subject to certain agreements, rules, policies, regulations, orders and guidelines of Stanford, including, without limitation, policies concerning consulting, conflicts of interest and ownership of intellectual property (collectively, the "Stanford Policies").

*See, e.g.,* Ex. 1 at 2.

As was true with Roche's original complaint, Roche's FAC contains ***no*** allegations as to why the Roche consulting agreements would somehow control over the Stanford Oncologists' earlier and "conflicting" assignment agreements with Stanford. And again, Roche did not attach to its FAC the Stanford agreements governing "ownership of intellectual property" (the SU18s) that Roche expressly acknowledged in the consulting agreements.

The reason Roche again dodges this issue is because, in view of the Stanford Oncologists' pre-existing Stanford assignments, Drs. Diehn and Alizadeh could not have breached the Consulting Agreements by assigning their interest in PhasED-Seq, which was developed at Stanford, to Stanford. As a preliminary matter, this court can and should treat the Oncologists' Stanford patent assignment agreements as incorporated by reference into Roche's FAC, given that no party can dispute their authenticity and the Roche consulting agreements on which Roche's claims depend specifically refer to them. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").

It is undisputed that Stanford's controlling assignment agreement for faculty, including the Stanford Oncologists, provides:

> I will disclose to Stanford all potentially patentable inventions conceived or first reduced to practice in whole or in part in the course of my University responsibilities or with more than incidental use of University resources. **I hereby assign to Stanford all my right, title and interest in such patentable inventions** and to execute and deliver all documents and do any and all things necessary and proper on my part to effect such assignment.

Exhibits F, G, H (SU18s for Drs. Diehn, Alizadeh and Kurtz). The "hereby assign" language of these

1   assignments conveyed a *present assignment* of the Stanford Oncologists' entire rights in their future

2   inventions, conceived or reduced to practice as part of their University responsibilities or with more

3   than incidental use of University resources, to Stanford. *Bd. of Trustees of Leland Stanford Junior*

4   *Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009). The FAC does not dispute,

5   and cannot dispute, that the Stanford Oncologists conceived PhasED-Seq and reduced it to practice

6   both as part of their University responsibilities as well as using substantial Stanford resources. As a

7   result, at the time of their consulting agreements with Roche, they had already assigned all legal and

8   equitable interest in PhasED-Seq to Stanford; they retained no further ownership interest in it to

9   convey to Roche, even under Roche's warped interpretation of those agreements. *Id.* It is as simple

10  as this: you cannot convey title to property you no longer own.

11      Ironically, the leading case on this issue involves a previous dispute between Stanford and

12  Roche, *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.* In that case,

13  the Federal Circuit held that Roche's later-in-time assignment agreement that provided a *present*

14  *assignment* using the language "I will assign and do hereby assign" controlled over Stanford's prior

15  assignment agreement, which provided a mere *promise* to assign rights in the *future*, using the

16  language "*I agree to assign*." *Id.* at 842. The court explained that, because the Roche agreement

17  "effected a present assignment of [the inventor's] future inventions to [Roche], . . .[Roche]

18  immediately gained equitable title to the [inventor's] inventions." *Id.* The inventor's subsequent

19  attempt to assign his interest in the invention to Stanford was therefore void; "because [Roche's]

20  legal title vested first, [the inventor] no longer retained his rights, negating his subsequent assignment

21  to Stanford during patent prosecution." *Id.*

22      Notably, as a result of this very case, Stanford changed its patent assignment agreement to

23  provide for a present assignment of future inventions, using the magic language of a present

24  assignment on which Roche successfully relied in that prior Stanford case: "I hereby assign to

25  Stanford." Exs. F, G, H. Thus, under that very case, here it was *Stanford's* "legal title [that] vested

26  first," and the Stanford Oncologists "no longer retained [their] rights, negating" any purported

27  assignment to Roche, even under its own incorrect interpretation of the consulting agreements. As a

28  result, the Stanford Oncologists "ha[d] nothing remaining to assign" with respect to PhasED-Seq in

their Roche consulting agreements. *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed.Cir.1991); *see also Aerotel, Ltd. v. IDT Corp.*, 486 F. Supp. 2d 277, 281-82 (S.D.N.Y. 2007) ("[C]hallenges to ownership have been permitted where an inventor, by contract or under statute, had made a present assignment of future inventions to a third party before conceiving of the patented invention. In such a case, the contract or statute divests the inventor-assignor of ownership of the invention and automatically vests ownership of the invention, when invented, in the assignee. Therefore, the inventor has no legal title to assign at a future date . . . .") (citations omitted).

Roche has thus failed to establish that Drs. Diehn and Alizadeh breached the Consulting Agreements, whether based on trade secrets or their assignment of PhasED-Seq to Stanford. Because Drs. Diehn and Alizadeh identified the failures in Roche's previous complaint and Roche failed to cure the deficiencies, Roche's claims should be dismissed with prejudice. *See Sivas,* 2019 U.S. Dist. LEXIS 150724, at *10 ("Because [plaintiff] has already been given one opportunity to amend the complaint, and he has failed to cure the deficiencies, it is clear that [his] claim cannot be cured by further amendment. It is accordingly dismissed with prejudice").

## VI.    ROCHE'S BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM SHOULD BE DISMISSED

Finally, Roche brings a claim for Breach of Implied Covenant of Good Faith and Fair Dealing against Drs. Diehn and Alizadeh. However, this is just another repackaging of its breach of contract claim and fails for the same reasons. The sole allegation Roche pleads in support of this claim is that that Drs. Diehn and Alizadeh "us[ed] confidential information, including the Roche Trade Secrets, that they received access to subject to the consulting agreements to develop their own work on behalf of Foresight and Stanford." FAC ¶ 419; *compare to* FAC ¶ 407 "Drs. Diehn and Alizadeh breached the Consulting Agreements by using and disclosing certain of the Roche Trade Secrets in patent applications upon which they were named inventors and by purporting to assign their interests in the Disputed Patent Applications to Stanford."

First, Roche's claim must be dismissed because "[a] claim for breach of the implied covenant of good faith has a three-year statute of limitations." *Giles v. Town of Elsmere*, No. N22M-02-006 EMD, 2022 WL 17826005, at *4 (Del. Super. Ct. Dec. 20, 2022). Because Roche alleges the same

facts give rise to its claim for breach of implied covenant of good faith and fair dealing as do its claim for breach of contract, the statute of limitations begins to run at the same time. Roche's claim is therefore time-barred for the reasons discussed above.

Second, as discussed above, Roche has not plausibly alleged that Drs. Diehn and Alizadeh used or disclosed any Roche Trade Secrets in their development of PhasED-Seq. Moreover, Roche has failed to identify any "confidential information" separate from its insufficiently-pled trade secrets. Roche therefore has failed to plead any actual breach of implied covenant.

Third, even if Roche had sufficiently alleged a breach, Roche's claim should be dismissed because, "the implied covenant [] is a limited and extraordinary legal remedy . . . [that] cannot be invoked when the contract addresses the conduct at issue." *Nifty Techs., Inc. v. Mango Techs., Inc.*, No. 24-CV-194 JLS (AHG), 2024 U.S. Dist. LEXIS 168634, at *48 (S.D. Cal. Sep. 17, 2024). (applying Delaware law) (quotations omitted). As Roche contends Drs. Diehn and Alizadeh breached the Consulting Agreements based on the same behavior upon which it bases this claim, the Consulting Agreements clearly "address[] the conduct at issue." *Id.* at 51 (dismissing claim for breach of implied covenant with prejudice where "the very essence of the NDA was to shield Plaintiff from the allegedly nefarious conduct it complains of now."); s*ee also Live Oak Banking Co. v. StreetShares, Inc.,* No. 1:23-CV-00332-JLH-SRF, 2024 WL 3878502, at *6 (D. Del. July 24, 2024), *report and recommendation adopted,* No. CV 23-332-JLH-SRF, 2024 WL 3875782 (D. Del. Aug. 20, 2024) (recommending dismissal where plaintiff's breach of implied covenant claims were "duplicative of allegations and relief demanded for the breach of contract"). Roche's claims should therefore be dismissed.

## VII.    **CONCLUSION**

Roche admits that a publication published March 25, 2020 describes the alleged misappropriation of Roche's purported trade secrets. It has therefore pled itself directly into statute of limitations violation for both its misappropriation claims and its breach of contract claim based upon the same alleged misappropriation. In addition, Roche again fails to distinguish its purported trade secrets from the robust disclosure of the Stanford-developed CAPP-Seq technology described in multiple academic papers and published patent filings. And Roche cannot claim the Stanford

Oncologists breached their Consulting Agreements by assigning PhasED-Seq to Stanford, because they had long before entered into an agreement making such an assignment automatic. The FAC has failed to assert any plausible claims against Drs. Diehn and Alizadeh. The Court should dismiss Roche's FAC against Drs. Diehn and Alizadeh with prejudice. *See Sivas*, 2019 U.S. Dist. LEXIS 150724, at *10 ("Because [plaintiff] has already been given one opportunity to amend the complaint, and he has failed to cure the deficiencies, it is clear that [his] claim cannot be cured by further amendment. It is accordingly dismissed with prejudice"); *see also TransPerfect Holdings, LLC v. Pincus*, No. 22-1477-JLH, 2024 U.S. Dist. LEXIS 98873, at *20 (D. Del. June 4, 2024) (denying leave to amend where "amendment would be futile because the claims are prohibited by the statute of limitations.").

Dated: December 16, 2024                    Respectfully submitted,

IRELL & MANELLA LLP


By: */s/ Alan Heinrich*
_____
Alan Heinrich

*Attorneys for Drs. Maximilian Diehn and Ash Alizadeh*