IRELL & MANELLA LLP
Morgan Chu (CA 70446)
MChu@irell.com
Alan Heinrich (CA 212782)
AHeinrich@irell.com
Jordan Nafekh (CA 328151)
JNafekh@irell.com
Henry White (CA 351549)
HWhite@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:     (310) 277-1010
Facsimile:     (310) 203-7199

*Attorneys for Dr. David Kurtz*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC. et al <br><br> Plaintiffs <br><br> v. <br><br> FORESIGHT DIAGNOSTICS INC. et al <br><br> Defendants. | Case No. 5:24-cv-03972-EKL <br><br> **DR. DAVID KURTZ'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)** <br><br> Pursuant to L.R. 7-2(b), Dr. Kurtz identifies a hearing date and time of April 2, 2025. |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ............................................................................................ 1

II.  FACTUAL BACKGROUND ........................................................................... 3

 A.  CAPP-Seq Technology ........................................................................ 3

 B.  Roche's Acquisition Of CappMed ...................................................... 4

 C.  PhasED-Seq And The Founding of Foresight ..................................... 4

 D.  Roche's Allegations Regarding The Chabon 2020 Paper .................. 5

III.  LEGAL STANDARDS ................................................................................... 6

IV.  ROCHE'S TRADE SECRET CLAIMS SHOULD BE DISMISSED ............... 6

 A.  Roche's FAC Concedes That Its Trade Secret Claims Are Barred By
     the Applicable Statutes Of Limitation ............................................... 7

  1.  Roche Alleges Chabon 2020 Evidences Trade Secret
      Misappropriation .................................................................... 7

  2.  Based On The FAC, Chabon 2020 Constituted Inquiry
      Notice Of Alleged Trade Secret Misappropriation ................. 8

  3.  Roche's Claims Are Barred By The Statute Of Limitations .... 10

 B.  Roche Fails To State A Claim Under The DTSA And CUTSA ........... 12

V.  ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF
    CONTRACT ................................................................................................ 15

VI.  ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF
     IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ............. 18

VII.  CONCLUSION ............................................................................................ 19

**Cases**

*Abbvie Inc. v. Adcentrx Therapeutics Inc.*,
2024 WL 3611144 (S.D. Cal. July 29, 2024)................................................................15

*Alamar Biosciences, Inc. v. DIFCO Labs.*,
1996 U.S. Dist. LEXIS 18239 (E.D. Cal. Feb. 23, 1996) ............................................8

*Alamar Biosciences, Inc. v. Difco Labs., Inc.*,
1995 U.S. Dist. LEXIS 21342 (E.D. Cal. Oct. 12, 1995) ............................................9

*Alta Devices, Inc. v. LG Elecs., Inc.*,
2019 U.S. Dist. LEXIS 72952 (N.D. Cal. Apr. 30, 2019)...........................................19

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ......................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................6

*Ashton-Tate Corp. v. Ross*,
728 F. Supp. 597 (N.D. Cal. 1989) .............................................................................10

*Attia v. Google LLC*,
983 F.3d 420 (9th Cir. 2020)........................................................................................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................6

*CALID, Inc. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023).........................................................................................15

*CleanFish, LLC v. Sims*,
2020 WL 4732192 (N.D. Cal. Aug. 14, 2020).............................................................12

*Cohen v. CBR Sys., Inc.*,
625 F. Supp. 3d 997 (N.D. Cal. 2022) .........................................................................16

*Colyer v. AcelRx Pharms., Inc*,
2015 U.S. Dist. LEXIS 159640 (N.D. Cal. Nov. 25, 2015).......................................3, 6

*De Rocha Express, Inc. v. Combined Res., Inc.*,
2024 U.S. Dist. LEXIS 187476 (N.D. Cal. Oct. 15, 2024) .........................................16

*Deutsch v. Turner Corp.*,
324 F.3d 692 (9th Cir.2003).........................................................................................11

*Dobshinsky v. Piccinini*,
    2007 WL 2127884 (N.D. Cal. July 20, 2007) ........................................................................12

*Enuke v. America's Wholesale Lender*,
    2011 U.S. Dist. LEXIS 158085 (C.D. Cal. Dec. 28, 2011)....................................................18

*Forcier v. Microsoft Corp.*,
    123 F. Supp. 2d 520 (N.D. Cal. 2000) ...................................................................................11

*GeoVector Corp. v. Samsung Elecs. Co.*,
    234 F. Supp. 3d 1009 (N.D. Cal. 2017) ...............................................................................3, 5

*HiRel Connectors, Inc. v. U.S.*,
    465 F. Supp. 2d 984 (C.D. Cal. 2005)....................................................................................11

*Imax Corp. v. Cinema Technologies, Inc.*,
    152 F. 3d 1161 (9th Cir. 1998).................................................................................................13

*Karns & Karns Ltd. Liab. P'ship v. Quintessa Mktg., Ltd. Liab. Co.*,
    2023 U.S. Dist. LEXIS 129668 (C.D. Cal. July 25, 2023) ....................................................17

*MGA Entm't, Inc. v. Mattel, Inc.*,
    41 Cal. App. 5th 554, 564 ................................................................................................10, 11

*Micrel Inc. v. Monolithic Power Sys.*,
    2005 U.S. Dist. LEXIS 47030 (N.D. Cal. Dec. 9, 2005) .....................................................7, 9

*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009)......................................................................................................6

*Naguiat v. BAC Home Loans Servicing, LP*,
    2011 WL 4903180 (N.D. Cal. Oct. 14, 2011) .......................................................................12

*Patton v. Experian Data Corp.*,
    2018 U.S. Dist. LEXIS 231731 (C.D. Cal. Dec. 4, 2018)......................................................17

*Pellerin v. Honeywell Int'l, Inc.*,
    877 F. Supp. 2d 983 (S.D. Cal. 2012) ....................................................................................13

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
    522 F.3d 1049 (9th Cir. 2008)..................................................................................................11

*Priddy v. Lane Bryant, Inc.*,
    2010 WL 11597965 (N.D. Cal. Oct. 29, 2010) .....................................................................12

*RoadRunner Recycling, Inc. v. Recycle Track Sys.*,
    2023 U.S. Dist. LEXIS 229227 (N.D. Cal. Dec. 26, 2023) ...................................................13

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 2002).......................................................................................................6

*Sivas v. Luxottica Retail N. Am., Inc.*,
    2019 U.S. Dist. LEXIS 150724 (E.D. Cal. Sep. 3, 2019) ...............................................15, 18, 19

*Soc. Apps, LLC v. Zynga, Inc.*,
    2012 WL 2203063 (N.D. Cal. 2012).......................................................................................14

*Space Data Corp. v. X*,
    2017 U.S. Dist. LEXIS 22571 at *3 (N.D. Cal. Feb. 16, 2017)...................................................6

*Stolte v. Securian Life Ins. Co.*,
    621 F. Supp. 3d 1034 (N.D. Cal. 2022) .................................................................................16

*Tarkett v. USAA Gen. Indem. Co.*,
    2024 U.S. Dist. LEXIS 103011 (S.D. Cal. June 10, 2024) ......................................................18

*Vendavo, Inc. v. Price f(x) AG*,
    2018 WL 1456697, at *4 (N.D. Cal. 2018)..............................................................................14

*Wang v. Palo Alto Networks, Inc.*,
    2014 U.S. Dist. LEXIS 50737 (N.D. Cal. Apr. 11, 2014).......................................................8, 9

*Western Homes, Inc. v. Herbert Ketell, Inc.*,
    236 Cal. App. 2d 142, 45 Cal. Rptr. 856 (1965) .................................................................16

**Statutes**

18 U.S.C. § 1836(d) .............................................................................................................7, 8, 10

Bayh-Dole Act...............................................................................................................................1

Cal. Civ. Code § 3426.6 .......................................................................................................7, 8, 10

California Uniform Trade Secrets Act ...........................................................................................6

CUTSA .............................................................................................................................6, 7, 12

DTSA .............................................................................................................................6, 12

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................................2, 3, 12

Numbered exhibits are attached to Plaintiffs' FAC. Dkt. 87. Lettered exhibits are attached to the declaration of Alan Heinrich, filed concurrently herewith. Throughout this Motion, emphasis is added unless otherwise stated.

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT Dr. David Kurtz is moving to dismiss all pending claims against him pursuant to Fed. R. Civ. P. 12(b)(6), with a hearing for the motion set on April 2, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Eumi K. Lee, United States District Judge for the Northern District of California located at 280 South 1st Street, San Jose, CA 95113. This motion is based upon this notice of motion, the supporting memorandum of points and authorities, all pleadings and papers on file in this action, and upon such other matters as may be properly presented to the Court.

## I. **INTRODUCTION**

Plaintiffs Roche Molecular Solutions, Inc. and Roche Sequencing Solutions, Inc. (collectively, "Roche") have filed the present lawsuit alleging trade secret misappropriation, contract, and business tort claims against the Board of Trustees of the Leland Stanford Junior University ("Stanford"), Drs. David Kurtz, Maximilian Diehn, and Ash Alizadeh, each of whom is a practicing oncologist at Stanford (the "Stanford Oncologists"), and Foresight Diagnostics Inc. ("Foresight"), an early stage competitor of Roche.[1] Defendants moved to dismiss Roche's original complaint for failure to state a claim, and Roche did not attempt to oppose, instead filing a First Amended Complaint ("FAC"). But Roche's FAC fails to cure the defects in its original complaint, and raises additional grounds for dismissal.

By way of brief background, in 2015, Roche purchased an early-stage company, Capp Medical ("CappMed"), which was the exclusive licensee of Stanford-owned patent applications covering a cancer diagnostic technology co-invented by Drs. Diehn and Alizadeh called "CAPP-Seq." The Stanford Oncologists continued their research at Stanford, and years after Roche's CappMed acquisition, they invented a new and different diagnostic technology at Stanford called PhasED-Seq. Stanford patented PhasED-Seq and exclusively licensed the patents to Foresight. In its FAC, Roche contends without support that PhasED-Seq was based on trade secrets which Roche allegedly acquired from CappMed and improvements made thereto by Roche.

Roche's claims are implausible on their face. **_Before_** Roche acquired CappMed, there was nothing "secret" about CAPP-Seq: Stanford and the Stanford Oncologists had already publicly disclosed the details of that technology in academic papers and in a fulsome 547-page published patent application. In fact, the Stanford Oncologists' research leading to CAPP-Seq relied on federal funding subject to the provisions of the Bayh-Dole Act, under which "**_there is no ability of the contractor to keep a patentable invention a trade secret_**." 2 Federal Contract Management P 11.01 (Henry L. Goldberg ed., 2024). Contrary to the central, faulty premise of Roche's lawsuit, research

---

[1] The Stanford Oncologists have provided detailed facts and evidence that refute Roche's allegations. Defendants refer the Court to the "speaking answers" of the Stanford Oncologists, Dkt. 54 and Dkt. 26 of Civil Case No. 5:24-cv-06117-EKL.

universities such as Stanford are simply not in the "trade secrets" business for technology already publicly described. And Roche has failed to explain what any of its alleged post-acquisition improvements to CAPP-Seq actually are, or how they constitute trade secrets in light of the voluminous details of the CAPP-Seq technology that had already been published.

The allegations against Dr. Kurtz—claims for trade secret misappropriation, breach of contract, and breach of implied covenant of good faith and fair dealing—are implausible on their face and should be dismissed at the pleading stage under Fed. R. Civ. P. 12(b)(6). These claims fail for multiple, independent grounds.

*First*, Roche failed to bring its trade secret causes of action within the three-year statute of limitations. As of March 25, 2020, Roche was at least on inquiry notice of a published paper authored by the Stanford Oncologists, which Roche's FAC alleges constitutes an act of misappropriation of its alleged trade secrets. Roche's own allegations are fatal to its case because they demonstrate that Roche filed its trade secret misappropriation claims well after the applicable three-year statute of limitations expired.

*Second*, the FAC fails to allege anything that would actually constitute a trade secret. The FAC fails to separate the alleged trade secrets from what was already generally known in the art from the robust disclosures of several CAPP-Seq publications. Moreover, certain allegations that Roche added to the FAC made the defects in its pleading worse – in many instances Roche now concedes that some portion of the alleged "trade secrets" was publicly known, but leaves one guessing on what that is. Courts have repeatedly found that failure to distinguish trade secrets from matters generally known to the public is grounds for dismissal.

*Third*, Roche's breach of contract claims should be dismissed because Roche has failed to plausibly allege that it performed its own obligations under the Kurtz Agreement. Nor could it, because Roche failed to pay Dr. Kurtz the agreed-upon compensation outlined in the only employment contract with Roche Dr. Kurtz signed. Roche's claim for breach of implied covenant of good faith and fair dealing is duplicative of its breach of contract claim and should be dismissed for the same reasons.

The Court should dismiss the FAC's claims against Dr. Kurtz with prejudice.

1    II.    **FACTUAL BACKGROUND**

2          A.    **CAPP-Seq Technology**

3          Drs. Diehn and Alizadeh, along with Ashok Krishnamurthi, founded Capp Medical, Inc.

4    ("CappMed") in October 2013 to commercialize a new cancer diagnostic technology developed at,

5    and owned by, Stanford. FAC ¶¶ 38-39. In 2011, as part of their Stanford research, Drs. Diehn and

6    Alizadeh developed a sequencing-based method for tracking certain types of cancer-related

7    mutations in circulating tumor DNA ("ctDNA"). *Id.*; Ex. 3 at 16. They called the method CAPP-

8    Seq, which is short for Cancer Personalized Profiling by deep Sequencing. *Id.* Stanford filed U.S.

9    Provisional Patent Application No. 61/798,925 (the "'925 Application", Exhibit A) covering CAPP-

10   Seq on March 15, 2013, naming Drs. Diehn, Alizadeh and two other Stanford employees as

11   inventors. *Id.* ¶ 40; Ex. A.

12         Paragraph 31 of the FAC alleges that in April 2014, CappMed exclusively licensed from

13   Stanford the '925 Application "and any U.S. or foreign application claiming priority therefrom." The

14   FAC thus incorporates the '925 Application by reference. One of the patent applications "claiming

15   priority" from the '925 Application is PCT/US2014/025020 (the "'020 Application," Exhibit B),

16   which spans 547 pages and published on September 25, 2014. Ex. B at 1. The FAC also alleges that

17   Roche obtained rights to the CAPP-Seq "integrated digital error suppression (iDES)" workflow,

18   FAC ¶ 44, and repeatedly references iDES. iDES is disclosed in U.S. Patent No. 11,085,084 (the

19   "'084 Patent," Ex. C at 12:67-13:02 ("Disclosed herein is a novel analytical modeling framework

20   for integrated digital error suppression (iDES)"). The '084 Patent also was exclusively licensed to

21   CappMed, and then to Roche as part of the CappMed acquisition. The specification of the '084 patent

22   published on March 17, 2016. Ex. C at 1 (listing publication date for WO2016/040901). The '020

23   Application and '084 Patent, which describe CAPP-Seq/iDES in detail, are incorporated by

24   reference in the FAC as well as subject to judicial notice.[2]

25

26         [2] *See GeoVector Corp. v. Samsung Elecs. Co*., 234 F. Supp. 3d 1009, 1016 n.2 (N.D. Cal.

27   2017) ("because the '185 incorporates, and claims priority to the Korean Patent, I may also consider
     the Korean Patent as incorporated by reference in the complaint."); *Colyer v. AcelRx Pharms., Inc,*

28   2015 U.S. Dist. LEXIS 159640, at *10 (N.D. Cal. Nov. 25, 2015) ("[Patent filings] are in the public
     record, and all are subject to judicial notice.").

**B.      Roche's Acquisition Of CappMed**

In 2014, CappMed and Roche entered into discussions about the possibility of Roche acquiring CappMed. FAC ¶ 42. In a September 2014 presentation to Roche, Drs. Diehn and Alizadeh noted that CappMed's technology was "Exclusively Licensed from Stanford," and described the CappMed Intellectual Property which Roche would receive as part of an acquisition. Ex. 3 at 9. The CappMed Intellectual Property included filed and to-be-filed patent applications on all aspects of CAPP-Seq, including selector design, library preparation, a data analysis pipeline software named FACTERA, and several other CAPP-Seq-related technologies. *Id.* at 58. The presentation also noted that details of CAPP-Seq were published in a 2014 paper in *Nature Medicine*. *Id.* at 22, 30. Notably, nowhere in the CappMed presentation were any "trade secrets" mentioned. *Id.* And for good reason. On September 25, 2014, just days after this meeting, the 547-page '020 Application published, which was replete with disclosure of CAPP-Seq technologies, a number of which Roche is now alleging are trade secrets. Ex. B.

In April 2015, months after the '020 Application published and publicly disclosed the details of CAPP-Seq, Roche acquired CappMed. FAC ¶ 47. As part of that acquisition, Roche acquired CappMed's exclusive license to Stanford's CAPP-Seq patent applications. *Id*. The FAC alleges that Roche further developed the CAPP-Seq technology under the trademark AVENIO and in May 2017, "announced the global commercial launch of its AVENIO ctDNA Analysis Kits." *Id.* ¶ 3.

**C.      PhasED-Seq And The Founding of Foresight**

After Roche's CappMed acquisition, Drs. Diehn and Alizadeh partnered with Dr. Kurtz to develop a new assay called PhasED-Seq, "a liquid-biopsy powered platform that detects minimal residual disease (MRD) from circulating tumor DNA (ctDNA)." *Id.*, ¶¶ 234-235.[3] PhasED-Seq is "much more sensitive" than CAPP-Seq and is able to detect "less than one cancer DNA sequence in 1 million non-cancer DNA sequences," compared to CAPP-Seq's ability to detect approximately one in ten-thousand. Ex. 12 at 4. This makes PhasED-Seq ideally suited for detecting minimal

---

[3] "Minimal residual disease" is a condition in which very small amounts of cancer cells exist in the body of a patient who has gone into cancer remission. "Circulating tumor DNA" is cell-free DNA derived from tumors that circulates in a cancer patient's body.

residual disease, in which ctDNA is often present at levels far below one in ten-thousand cell-free DNA fragments. *Id.* at 5.

On November 6, 2019, Stanford filed U.S. Provisional Patent Application 62/931,688 (the "'688 Application," Exhibit D), which described PhasED-Seq and listed the Stanford Oncologists as inventors. *See id.*, ¶ 284; Ex. D.[4] Stanford then filed several applications claiming priority to the '688 Application, some of which have issued as patents and all of which have published. *Id.*, ¶ 285. The PhasED-Seq patent applications do not claim priority to any CAPP-Seq application. Ex. D. After inventing and filing a provisional application on PhasED-Seq, the Stanford Oncologists, among others, co-founded Foresight on May 8, 2020, with the goal of becoming the leader in cancer detection through ultra-sensitive liquid biopsy. FAC ¶ 8. Stanford has exclusively licensed these PhasED-Seq patents and patent applications to Foresight. *Id.*, ¶ 327.

### D. Roche's Allegations Regarding The Chabon 2020 Paper

The FAC relies heavily on a peer-reviewed paper published in *Nature* on March 25, 2020, Chabon 2020 (Ex. 104), as its main evidence of misappropriation. FAC, ¶¶ 273-278, 281. Each of the Stanford Oncologists, as well as 45 other academic researchers at Stanford, Washington University School of Medicine, St. Louis; Vanderbilt University Medical Center; Mayo Clinic; and Harvard Medical School, Massachusetts General Hospital; and other renowned institutions, are co-authors of this purported act of misappropriation.

Chabon 2020 reports certain "improvements" to "CAPP-Seq" made at Stanford in connection with a technology called "lung cancer likelihood in plasma (Lung-CLiP)." Ex. 104 at 1. The FAC alleges that Chabon 2020 demonstrates that the Stanford Oncologists misappropriated multiple alleged Roche trade secrets. FAC ¶¶ 273-278, 281. As discussed in detail below, however, Roche was at minimum on inquiry notice of Chabon 2020 and therefore of the very act of misappropriation it alleges the Stanford Oncologists committed. Roche's own allegations thus demonstrate that Roche filed its trade secret claims well past the three-year statute of limitations

---

[4] The '688 Application is incorporated by reference into Plaintiff's FAC because each of the Disputed Patent Applications claims priority thereto. *GeoVector Corp.*, 234 F. Supp. 3d at 1016 n.2

deadline.

## III.   LEGAL STANDARDS

To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of [its] cause[s] of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss. *Id.* Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In ruling on a motion to dismiss, the Court can consider documents not physically attached to the complaint under the incorporation by reference doctrine, which allows courts to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002). As explained above, the '020 Application and '084 Patent are incorporated by reference in Roche's FAC, and the Court may also take judicial notice of it as it is in the public record. *See Colyer*, 2015 U.S. Dist. LEXIS 159640, at *10.

## IV.   ROCHE'S TRADE SECRET CLAIMS SHOULD BE DISMISSED

Roche brings trade secret misappropriation claims against Dr. Kurtz under the federal Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"). FAC ¶¶ 337, 379. Due to the similarity of the statutes, courts generally analyze the two statutes together. *See*, *e.g.*, *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571 at *3 (N.D. Cal. Feb. 16, 2017) (listing identical elements for DTSA and CUTSA and analyzing claims together). Both claims should be dismissed because a) they are time-barred by their three-year statutes of limitations; and b) Roche fails to state a claim under either statute.

**A.** **Roche's FAC Concedes That Its Trade Secret Claims Are Barred By the Applicable Statutes Of Limitation**

Roche attempts to backfill the insufficiency of its misappropriation allegations by relying heavily on a Stanford paper, Chabon 2020 (Ex. 104), which was published on March 25, 2020. FAC, ¶¶ 273-278, 281. Roche's trade secret claims are subject to a three-year statute of limitations. *See* Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d). As explained below, Roche was at minimum on inquiry notice of Chabon 2020 when it published. Roche did not file its claims within three years of that date (even accounting for tolling), and its claims for trade secret misappropriation should therefore be dismissed with prejudice. *Micrel Inc. v. Monolithic Power Sys.*, No. C 04-04770 JSW, 2005 U.S. Dist. LEXIS 47030, at *18 (N.D. Cal. Dec. 9, 2005) (dismissing CUTSA claim with prejudice because Plaintiff was charged with notice of its misappropriation claim through the publication of Defendant's patent more than three years prior to the filing of its complaint).

**1.** **Roche Alleges Chabon 2020 Evidences Trade Secret Misappropriation**

Roche heavily relies on Chabon 2020 to supports its claims for trade secret misappropriation. FAC, ¶¶ 273-278, 283. In the section of the FAC directed to "Defendants' Misappropriation of Roche's Trade Secrets," Roche alleges that Chabon 2020 demonstrates that the Stanford Oncologists used without authorization, and hence misappropriated:

- "Roche's CAPPSeq/iDES adaptive variant caller algorithm trade secret," FAC ¶ 273, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES germline filtering algorithm trade secret," FAC ¶ 274, citing Chabon 2020 (Ex. 104) at 12;

- "Roche's CAPPSeq/iDES SNV caller algorithm trade secret," FAC ¶ 275, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES Indel caller algorithm trade secret," FAC ¶ 276, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES fusion caller algorithm trade secret," FAC ¶ 277, citing Chabon 2020 (Ex. 104) at 10;

- "Roche's CAPPSeq/iDES CNV caller algorithm trade secret," FAC ¶ 278, citing

Chabon 2020 (Ex. 104) at 59-60;

- "Roche's CAPPSeq/iDES blacklisted and whitelisted genes trade secrets," FAC ¶ 281, citing Chabon 2020 (Ex. 104) at 3, 10, 21.

## 2. Based On The FAC, Chabon 2020 Constituted Inquiry Notice Of Alleged Trade Secret Misappropriation

Roche's claims are subject to a three-year statute of limitations, which begins when a plaintiff either actually discovered ("actual notice") or should have reasonably discovered the misappropriation "through the exercise of reasonable diligence" ("inquiry notice"). *See* Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d). *Alamar Biosciences, Inc. v. DIFCO Labs.*, No. CIV-S-94-1856 DFL PAN, 1996 U.S. Dist. LEXIS 18239, at *6 (E.D. Cal. Feb. 23, 1996) (granting summary judgment against misappropriation claim where defendant's PCT application describing allegedly misappropriated technology put plaintiff on notice of claim more than three years before filing of complaint).

As discussed above, the FAC itself alleges that Chabon 2020 evidences that the Stanford Oncologists allegedly misappropriated multiple Roche trade secrets. Thus, the only remaining issue is whether Roche was on inquiry notice of Chabon 2020 when it published on March 25, 2020. If it was on inquiry notice as of that date, then it would have necessarily had notice of trade secret misappropriation, based on Roche's own allegations in the FAC. For several reasons, Roche was at least on inquiry notice of Chabon 2020.

*First*, Chabon 2020 reports on research conducted at Stanford, Roche's licensor, on the very technology Stanford licensed to Roche—CAPP-Seq. Indeed, the abstract on page 1 of Chabon 2020 announces, "Here we introduce improvements to cancer personalized profiling by deep sequencing (CAPP-Seq)." Ex. 104 at 1.

*Second,* the Stanford Oncologists themselves were co-authors of Chabon 2020 and their affiliation with co-defendant Stanford is prominently displayed throughout the paper. *See Wang v. Palo Alto Networks, Inc.,* No. C 12-05579 WHA, 2014 U.S. Dist. LEXIS 50737, at *23 (N.D. Cal. Apr. 11, 2014) (the fact that defendant's names were listed on the face of a patent application disclosing plaintiff's trade secrets supported the court's conclusion that plaintiff was on constructive notice of its misappropriation claim upon the application's publication.).

**Third**, Chabon 2020 was co-authored by multiple Roche consultants and affiliates. Each of the Stanford Oncologists expressly discloses a "paid consultancy from Roche" in the "Competing Interests" section of Chabon 2020. Two other of Chabon 2020's co-authors also list paid consultancies or other funding from Roche. Ex. 104 at 13 (listing Roche's name nine times under "Competing Interests" of researchers).

**Fourth**, Chabon 2020 was published in *Nature*, one of the world's largest science journals. In fact, Chabon 2020 has been accessed over **36 thousand** times since being published and has been cited hundreds of times. *See* Ex. E (Chabon 2020 *Nature* page), available at https://www.nature.com/articles/s41586-020-2140-0. As Roche was actively developing products relating to ctDNA analysis as early as 2017 and "continues to make substantial investments in the research and development of clinically relevant next-generation sequencing assays based on the CAPP-Seq technology," FAC ¶ 3, it should be charged with notice of an article discussing the same technology in a widely-disseminated journal. *See Wang*, 2014 U.S. Dist. LEXIS 50737, at *20 ("an inventor actively practicing in the field and prosecuting his own patent application must be deemed to be on constructive notice of published patent applications in the same field.").

Roche alleges that it "has maintained the Roche Trade Secrets as confidential and has taken reasonable precautions to maintain their secrecy." FAC ¶ 232. Thus, it is flatly implausible that Roche, exercising "reasonable diligence" and "tak[ing] reasonable precautions to maintain [its trade secrets'] secrecy," should not have reasonably discovered a paper that (i) discusses Roche's licensed CAPP-Seq technology at length, (ii) expressly reports improvements to CAPP-Seq, (iii) allegedly discloses use of seven of Roche's trade secrets, (iv) was authored by researchers at its licensor institution, (v) lists 5 of Roche's own consultants as co-authors, and (vi) was published in one of the world's most widely-circulated science journals. *See Micrel Inc,* 2005 U.S. Dist. LEXIS 47030, at *17-18 (finding a patent "should have put a reasonable person on notice" of misappropriation claim where the patent "state[d] that it [was] a modification of [Plaintiff's] prior invention"). A straightforward search by Roche of its consultants' names or CAPP-Seq would have led Roche to Chabon 2020. *See Alamar Biosciences, Inc. v. Difco Labs., Inc.,* No. CIV-S-94-1856 DFL PAN, 1995 U.S. Dist. LEXIS 21342, at *15 (E.D. Cal. Oct. 12, 1995) (granting summary judgment that plaintiff's claims were time-barred

where plaintiff could have discovered defendant's PCT application more than three years prior to the filing of the complaint through a search for the name of the misappropriated technology, the plaintiff's name, or the defendant's name).

Moreover, among Chabon 2020's 48 co-authors are several who disclosed paid consultancies from other major life science companies and Roche competitors. Ex. 104 at 13. Either Roche should have been aware that its CAPP-Seq trade secrets were being misappropriated by these scores of researchers, including consultants for its competitors, or Roche did not take reasonable precautions to protect the secrecy of its trade secrets.

Whether Roche argues it actually was unaware of PhasED-Seq in March of 2020 would not change the result on this motion or the fact that Chabon 2020 put Roche on (inquiry) notice of its misappropriation claim. Based on Roche's own allegations, Chabon 2020 either constituted an alleged, unauthorized. disclosure of Roche's trade secrets or put Roche on notice of the alleged misappropriation and use by dozens of scientific researchers. *Ashton-Tate Corp. v. Ross*, 728 F. Supp. 597, 603 (N.D. Cal. 1989) (finding statute of limitations began to run upon initial disclosure of a trade secret even though counterclaimant argued the product using the trade secrets was not published until years later).

Because Roche would have discovered Chabon 2020 through the exercise of reasonable diligence, and because, according to Roche's own allegations in the FAC, Chabon 2020 would have given Roche "reason to suspect an injury and some wrongful cause," the statute of limitations for its misappropriation claims began to run on March 25, 2020. *MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 564.

### 3. Roche's Claims Are Barred By The Statute Of Limitations

Each of the statutes under which Roche brings its misappropriation claims treat a continuing misappropriation as a single claim for statute of limitations purposes. *See* Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d). Moreover, courts in this district have held that a misappropriation claim accrues at the point in time when the plaintiff was on actual or inquiry notice that the defendant had misappropriated *any* trade secret:

> [W]hen the statute of limitations begins to run on some of a plaintiff's trade secret claims against given defendants, the statute also begins to run at the same time as to other trade secret claims against those same defendants, even if there have not yet been any acts of misappropriation of the other trade secrets, at least when the plaintiff shared all the trade secrets with the defendants during the same time period and in connection with the same relationships and when the trade secrets concern related matters.

*Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000); *see also HiRel Connectors, Inc. v. U.S.*, 465 F. Supp. 2d 984, 988 (C.D. Cal. 2005) ("When a plaintiff brings suit against an individual defendant for separate misappropriations of related trade secrets . . . the date of accrual is the date of the initial misappropriation."); *Mattel*, 41 Cal. App. 5th at 564 ("the question is not when MGA actually discovered all 114 misappropriations; it is when MGA by the exercise of reasonable diligence should have discovered Mattel engaged in misappropriation"). This rule is animated by the principle that "once plaintiff knows or should know that a defendant who once was trusted has shown, by any act of misappropriation, that he cannot be trusted, plaintiff should know that there is a risk that that defendant will commit additional acts of misappropriation, whether they involve repeated misappropriations of one trade secret or initial misappropriations of other confidences." *Forcier ,*123 F. Supp. 2d at 525.

Here, because all three Stanford Oncologists were authors on Chabon 2020, and because Roche alleges Chabon 2020 shows the misappropriation of seven separate alleged trade secrets at issue in this case, the statute of limitations against each of the Stanford Oncologists began to run as to *all* misappropriation claims on March 25, 2020. In California, as a response to the Covid-19 pandemic, all statutes of limitations periods longer than 180 days were tolled from April 6, 2020, until October 1, 2020, a period of 178 days. Cal. Rules of Court, App'x 1: Emergency Rules Related to COVID-19, Emergency Rule 9 (May 29, 2020). Based on this tolling period, the statute of limitations on Roche's trade secrets misappropriation expired on September 19, 2023—three (3) years and 178 days from the publication of Chabon 2020. Because this date predates the parties' Tolling and Standstill Agreement, Roche's claims are untimely and must be dismissed.

Because the expiration of the statutes of limitations cannot be corrected, amendment would be futile and dismissal should be with prejudice. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) ("because Platt's claims are barred by the statute of limitations, any

amendments would have been futile."); *Deutsch v. Turner Corp.*, 324 F.3d 692, 718 n. 20 (9th Cir. 2003) (denying leave to amend complaint where amendment would be futile because statute of limitations had run); *Naguiat v. BAC Home Loans Servicing, LP*, No. C 10-4303 RS, 2011 WL 4903180, at *3 (N.D. Cal. Oct. 14, 2011) ("In light of the fact that this is not an initial pleading, and given the bar of the statute of limitations, no further leave to amend is warranted."); *Priddy v. Lane Bryant, Inc.*, No. C 08-5377 JL, 2010 WL 11597965, at *4 (N.D. Cal. Oct. 29, 2010) ("no amendment will allow Plaintiff to cure the passing of the applicable statute of limitations."); *Dobshinsky v. Piccinini*, No. C 06-4193 MHP (PR), 2007 WL 2127884, at *1 (N.D. Cal. July 20, 2007) ("this action is DISMISSED without leave to amend because the statute of limitations defense is complete and obvious from the face of the pleadings.").

**B.     Roche Fails To State A Claim Under The DTSA And CUTSA**

As explained above, Roche's trade secret misappropriation claims are untimely and therefore should be dismissed with prejudice. However, even if Roche's misappropriation claims were brought within the statute of limitations, the FAC fails to state a claim for trade secret misappropriation under the DTSA or CUTSA. Its claims should therefore be dismissed under FRCP 12(b)(6).

To state a claim for trade secret misappropriation under the DTSA and CUTSA, a plaintiff must allege "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp.*, 2017 U.S. Dist. LEXIS 22571 at *3 (N.D. Cal. Feb. 16, 2017) (citation omitted). Roche fails to plead factual allegations plausibly alleging that it owned any actual trade secret. Thus, Roche's claims for trade secret misappropriation against Dr. Kurtz fail.

"[T]he burden is on Plaintiff to identify protectable trade secrets and show that they exist." *CleanFish, LLC v. Sims*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020) (citation omitted). Roche's claim for trade secret misappropriation fails for the threshold reason that the FAC does not identify any trade secrets with the particularity required by the applicable pleading standard:

> Before a defendant is compelled to respond to a complaint based upon claimed
> misappropriation or misuse of a trade secret ..., the complainant should describe the
> subject matter of the trade secret with ***sufficient particularity to separate it from
> matters of general knowledge in the trade*** or of special knowledge of those persons
> who are skilled in the trade, and to permit the defendant to ascertain at least the

boundaries within which the secret lies.

*Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (citations omitted) (granting motion to dismiss trade secret claims). *See also, e.g.*, *Imax Corp. v. Cinema Technologies, Inc.*, 152 F. 3d 1161 at 1164-65 (9th Cir. 1998) (citing same standard). Thus, Roche would only have a viable trade secret claim in technology related to CAPP-Seq "if [Roche] reveals implementation details and techniques *beyond* what was disclosed in [a published patent application or paper]." *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (emphasis in original). Dr. Kurtz called out this glaring deficiency in his motion for judgment on the pleadings to Roche's original complaint. Yet once again, Roche has not even tried to address this pleading requirement in its FAC.

As an initial matter, Roche makes only conclusory allegations about "non-public aspects of the original CAPP-Seq/iDES," but does not identify or provide any indication about what those "non-public aspects" would be. FAC ¶ 239 ("Drs. Alizadeh and Diehn had knowledge of and access to....***non-public aspects of*** the original CAPP-Seq/iDES selector library generation algorithm acquired by Roche from CappMed", "***non-public aspects of*** the original CAPP-Seq/iDES algorithms and software code for adaptive variant calling acquired by Roche from CappMed," and "***non-public aspects of*** the original CAPP-Seq/iDES fusion caller algorithm (FACTERA) acquired by Roche from CappMed"). The FAC makes no attempt to distinguish any alleged "trade secrets"—whether CappMed trade secrets or post-acquisition trade secrets allegedly developed by Roche—from the voluminous publicly-disclosed details of the technology areas it identifies in its FAC. *See RoadRunner Recycling, Inc. v. Recycle Track Sys.*, No. C 23-04804 WHA, 2023 U.S. Dist. LEXIS 229227, at *8 (N.D. Cal. Dec. 26, 2023) (dismissing trade secret misappropriation claim where "no specific, non-public aspects of this system have been identified.").

For example, Roche's first listed "trade secret" is "CAPP-Seq/iDES adapters." FAC, ¶ 86. However, Stanford's '084 patent, which is licensed to Roche, discloses CAPP-Seq/iDES adapters in robust detail—and the FAC fails to distinguish its alleged trade secrets in any way from those disclosures. *See, e.g.*, Ex. C, "Y - Shaped Adaptors Comprising Unique Barcodes," col. 11:51-12:60; 13:33-19:51; Figs. 1, 6. Similarly, the FAC fails to distinguish the "CAPP-Seq/iDES barcodes"

(Roche's second listed trade secret, FAC ¶ 91) from the CAPP-Seq/iDES barcodes disclosed in the '084 patent. For example, the FAC calls out two types of "unique CAPP-Seq/iDES barcodes: (1) 'index' barcodes and (2) 'insert' or 'duplex' barcodes." FAC, ¶ 93. But the '084 patent publicly disclosed both "index" and "insert"/"duplex" barcodes. *See, e.g.*, Ex. C, col. 47 ("Example 7: Processing of Molecular Barcodes," describing use of "index" and "insert" barcodes).

As it did in its original complaint, Roche again alleges that its trade secrets include CAPP-Seq "selectors," which target particular "genomic coordinates" in a sample. FAC ¶ 99. But once again, Roche fails to distinguish its CAPP-Seq selector alleged trade secrets from the CAPP-Seq selectors that were publicly disclosed in the '020 Application, which notes that "[e]xemplary selector sets are provided in Tables 2, and 6-18" for cancers including non-small cell lung cancer, breast cancer, colorectal cancer, diffuse large B-cell lymphoma, follicular lymphoma, pancreatic cancer and adenocarcinomas. Ex. B at [00554]. As another example, Roche has not attempted to distinguish its "CAPP-Seq/iDES Algorithm for Selector Library Generation" trade secret, FAC ¶ 123, from the '020 Applications disclosure of the "CAPP-Seq Selector Design" algorithm. Ex. B, [00823-00825], [00555-00593]. And Roche's alleged trade secrets relating to the Capp-Seq/iDES workflow (or "reagents"), "single-sample capture", and phased variant are devoid of any distinction from other categories used across the field or basic, well-known biological principles.

Roche's pleading failure is all the more glaring given that Dr. Kurtz's motion for judgment on the pleadings as to Roche's original complaint (Dkt. 74) identified at least the following publications that disclosed intimate details of the technologies Roche is attempting to claim as its trade secrets: Newman, Bratman et al. Nature Medicine 2014, https://www.nature.com/articles/nm.3519; the '020 Application; and the '925 Application. And Roche has failed to distinguish its newly-identified trade secret categories from similar disclosures in the '084 Patent. Roche's FAC fails to address ***any*** of these publications and does not explain in any way how its purported trade secrets are distinct from the corresponding disclosures in these publications.

In addition, Roche's trade secret allegations "more closely resemble the broad categories of information" that courts have previously dismissed for lack of specificity. *AlterG, Inc. v. Boost Treadmills LLC,* 388 F. Supp. 3d 1133, 1145 (N.D. Cal. 2019); *see Vendavo, Inc. v. Price f(x) AG,*

No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. 2018) (dismissing trade secret claim because plaintiff "set out its purported trade secrets in broad, categorical terms."); *see also Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. 2012) ("A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret.").

Indeed, the general trade secret allegations here are similar to those recently alleged in *Abbvie Inc. v. Adcentrx Therapeutics Inc.* There, the plaintiff pharmaceutical company alleged that its trade secrets were "proprietary payloads, linker-drugs, and ADCs" and included the "'processes for synthesizing,' 'assays for testing' and 'complied [sic] information . . . of various compounds.'" *Abbvie Inc. v. Adcentrx Therapeutics Inc.*, No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144, at *5 (S.D. Cal. July 29, 2024). The court found that "such allegations are too vague and categorical to adequately allege a trade secret." *Id.* So too here: at best, Roche alleged general categories of information rather than particular trade secrets.

In sum, Roche failed to describe its trade secrets with sufficient particularity to separate them from what was already publicly disclosed. Even with the benefit of Dr. Kurtz's answer and motion for judgment on the pleadings to Roche's original complaint, Roche has failed to plead allegations in its FAC which would allow Dr. Kurtz to ascertain the boundaries of Roche's alleged trade secrets. Roche's trade secret misappropriation claims should therefore be dismissed with prejudice. *See Sivas v. Luxottica Retail N. Am., Inc.*, No. 1:19-CV-00537-LJO-BAM, 2019 U.S. Dist. LEXIS 150724, at *10 (E.D. Cal. Sep. 3, 2019) ("Because [plaintiff] has already been given one opportunity to amend the complaint, and he has failed to cure the deficiencies, it is clear that [his] claim cannot be cured by further amendment. It is accordingly dismissed with prejudice").

## V.   ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT

Roche's breach of contract claim fails because Roche has not alleged any facts to support its conclusory allegations that Dr. Kurtz breached the terms of any agreement between him and Roche. In order to state a claim for breach of contract, Roche must allege: "(1) there was a contract, (2) plaintiff either performed the contract or has an excuse for nonperformance, (3) defendant breached

the contract, and (4) plaintiff suffered damages as a result of defendant's breach." *Coronavirus Reporter; CALID, Inc. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023).

At the outset, Roche's claim for breach of contract fails because Roche fails to sufficiently allege that it performed its own obligations under the contract. *De Rocha Express, Inc. v. Combined Res., Inc.*, No. 24-cv-02037-JST, 2024 U.S. Dist. LEXIS 187476, at *4 (N.D. Cal. Oct. 15, 2024) ("plaintiff's performance or excuse for nonperformance" is a required element for breach of contract). Roche was required to pay Dr. Kurtz $1,440 per week under the contract Roche alleges Dr. Kurtz breached. Ex. F. Roche did not perform this obligation, and does not plausibly allege that it did. FAC ¶ 400. Roche's claim must therefore be dismissed.

Roche alleges that the contract that forms the basis of Roche's breach of contract claim is a "Proprietary Information and Invention Agreement (the 'Kurtz Agreement')". FAC ¶ 29. But from the face of the Kurtz Agreement it is clear that it is not a standalone agreement. Instead, it is one part of an overarching employment contract which also included the Kurtz ESA, which is the document setting forth the payment terms for Dr. Kurtz. Ex. 2 ("In consideration of [Dr. Kurtz's] employment or continued employment by Roche ***and of salary, wages or other compensation*** to be paid by Roche to me, [Dr. Kurtz] hereby agree[s] as follows…"); *Western Homes, Inc. v. Herbert Ketell, Inc.,* 236 Cal. App. 2d 142, 45 Cal. Rptr. 856 (1965) (an agreement that contemplated the hiring of plaintiff as rental manager too vague for enforcement partly because no salary was specified).

While Roche attached parts of this contract to the FAC, *see* Ex. 2, Roche did not present the complete agreement. The further provisions of Roche and Dr. Kurtz's agreement are attached to this Motion as Ex. F (the "Kurtz ESA"). The Kurtz ESA is incorporated by reference into Roche's FAC because (1) its authenticity cannot be questioned; (2) Roche's Fourth, Sixth, Eighth, Ninth, and Tenth claims for relief depend expressly on the fact that Dr. Kurtz was a Roche employee/contractor; and (3) the Kurtz ESA dictates Roche's consideration for the Kurtz Agreement; without which the Kurtz Agreement would be invalid. *See Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997, 1000 n.3 (N.D. Cal. 2022) (contract incorporated by reference into complaint where contract "forms the basis" of breach of contract claim); *see also Stolte v. Securian Life Ins. Co*., 621 F. Supp. 3d 1034, 1041 (N.D. Cal. 2022) (incorporation by reference doctrine was designed "to prevent plaintiffs from selecting only

portions of documents that support their claims, while omitting portions that weaken—or doom—their claims.").

The Kurtz Agreement states that: "In consideration of [Dr. Kurtz's] employment or continued employment by Roche *and of salary, wages or other compensation* to be paid by Roche to me, [Dr. Kurtz] hereby agree[s] as follows…" Ex. 2 at 1. The Kurtz ESA further provides that "Employer agrees to pay [Dr. Kurtz] a weekly rate of $1440.00…" Ex. F. Therefore, to state a claim for breach of contract, Roche must plead facts plausibly suggesting it performed its own obligations and paid Dr. Kurtz "a weekly rate of $1,440." *See Patton v. Experian Data Corp.*, No. SACV 17-01559-JVS(DFMx), 2018 U.S. Dist. LEXIS 231731, at *11 (C.D. Cal. Dec. 4, 2018) (dismissing breach of contract claim where claimant's "conclusory allegation [that it performed its obligations] contains no *facts* indicating that [claimant] performed or was excused from performing"). The ***only*** allegation Roche pleads with respect to this required element is that "[a]t all relevant times, Roche has performed its obligations under the Kurtz Agreement." FAC. ¶ 400. But Roche cannot prevail on this "indispensable part of its breach of contract claim" without pleading any supporting factual allegations. *See Karns & Karns Ltd. Liab. P'ship v. Quintessa Mktg., Ltd. Liab. Co.*, No. 2:23-cv-04434-SPG-KS, 2023 U.S. Dist. LEXIS 129668, at *9 (C.D. Cal. July 25, 2023) ("Plaintiff does not specify which duties it performed under the Contract, only that it 'performed all conditions, covenants, and promises.' . . . Such a conclusory allegation fails to satisfy federal pleading standards.").

The reason Roche does not even attempt to plead facts in support of its own performance under the contract is that Roche *did not* perform. Indeed, as outlined in Dr. Kurtz's Answer, Dkt. 54, "Roche did not pay Dr. Kurtz $1440 per week as it had agreed to do under the Kurtz 9/23/2017 ESA." Dkt. 54 ¶ 54.[5] Roche does not, and cannot, plead otherwise.

---

[5] As further set forth in Dr. Kurtz's Answer, within just a few weeks of Dr. Kurtz's start date, Roche sought to change Dr. Kurtz's employment status from exempt status with a fixed weekly salary to non-exempt status to be paid on an hourly basis. Dkt. 54, ¶ 54. When Roche sent Dr. Kurtz a new employment agreement to effectuate this change in status, Dr. Kurtz responded with further questions and comments on the intellectual property provisions in the Roche agreement. *Id.* In particular, Dr. Kurtz reminded Roche that "[a]s part of my position at Stanford, any work I perform at Stanford that has potential IP needs to continue to belong to Stanford and not Roche, even if in a related area." *Id.* He further disclosed that he had "existing work that can potentially turn into filings for patents, that are unrelated to Roche. However, I do not think I can list all of these here today, and I am not sure that Stanford would allow me to disclose all of these here as well." *Id.* Dr. Kurtz was referring to his "existing work" at Stanford on PhasED-Seq,

Roche's conclusory assertion that it "performed its obligations under the Kurtz Agreement" without even attempting to show a single obligation that it had under the Kurtz Agreement is insufficient to survive a motion to dismiss. *See Enuke v. America's Wholesale Lender*, No. CV 11-6661 PA (SPx), 2011 U.S. Dist. LEXIS 158085, at *23 (C.D. Cal. Dec. 28, 2011) ("the court finds Plaintiff's wholly conclusory statement that she 'substantially performed all of her conditions in the Deed of Trust' insufficient to state a claim for breach of contract.").

Roche's breach of contract claim against Dr. Kurtz should be dismissed for this reason alone. Moreover, dismissal should be with prejudice; had Roche read Dr. Kurtz's answer or motion for judgment on the pleadings, it would have been put on notice of this defect in its complaint and should have cured it in the FAC. *See Sivas*, 2019 U.S. Dist. LEXIS 150724, at *10 ) ("Because [plaintiff] has already been given one opportunity to amend the complaint, and he has failed to cure the deficiencies, it is clear that [his] claim cannot be cured by further amendment. It is accordingly dismissed with prejudice").

## VI.   ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Finally, Roche brings a claim for breach of implied covenant of good faith and fair dealing against Dr. Kurtz. Roche bases its Breach of Implied Covenant of Good Faith and Fair Dealing claim on the same acts of alleged breach as it does its Breach of Contract claim, and as such "may be disregarded as superfluous as no additional claim is actually stated." *Tarkett v. USAA Gen. Indem. Co.*, No. 3:23-cv-01724-H-BLM, 2024 U.S. Dist. LEXIS 103011, at *19 (S.D. Cal. June 10, 2024) ("Because the allegations underlying Plaintiff's good faith and fair dealing claim are identical to the allegations that form the basis of Plaintiff's breach of contract claim . . . Plaintiff's breach of the implied covenant of good faith and fair dealing claim is duplicative of Plaintiff's breach of contract claim and must be dismissed.") (quotations omitted); *Compare* FAC ¶¶ 396-399 *with id.* ¶¶ 412-415. Because Roche has failed to show that it performed its obligations under the Kurtz Agreement, this claim based on the same acts fails as well. *See Enuke*, 2011 U.S. Dist. LEXIS 158085, at *23 ("Plaintiff

---

which he identified as "unrelated to Roche." *Id.* Roche did not object or even respond to Dr. Kurtz's email. *Id.* The new employment agreement was never executed, but Roche did not perform its obligations under the old agreement, on which it basis its breach of contract claim. *Id.*

failed to properly allege her performance or excuse for nonperformance under the contract. Therefore, Plaintiff's claim for breach of the implied covenant of good faith is also dismissed without leave to amend.").

## VII.    <u>CONCLUSION</u>

Roche admits that a publication published March 25, 2020 describes the alleged misappropriation of Roche's purported trade secrets. It has therefore pled itself directly into statute of limitations violation. In addition, Roche again fails to distinguish its purported trade secrets from the robust disclosure of the Stanford-developed CAPP-Seq technology described in multiple academic papers and published patent filings. And Roche cannot succeed on a breach of contract claim against Dr. Kurtz without pleading its own performance under the same contract. The FAC has failed to assert any plausible claims against Dr. Kurtz. The Court should dismiss Roche's FAC against Dr. Kurtz with prejudice. *Alta Devices, Inc. v. LG Elecs., Inc*., No. 18-CV-00404-LHK, 2019 U.S. Dist. LEXIS 72952, at \*49 (N.D. Cal. Apr. 30, 2019) (dismissing trade secret misappropriation claim that is barred by the applicable statute of limitations with prejudice because granting leave to amend would be futile); *Sivas,* 2019 U.S. Dist. LEXIS 150724, at \*10.


Dated: December 16, 2024                     Respectfully submitted,

                                             IRELL & MANELLA LLP


                                             By: */s/ Alan Heinrich*
                                             _____
                                                  Alan Heinrich

                                                  *Attorneys for Dr. David Kurtz*