PILLSBURY WINTHROP SHAW PITTMAN LLP
JACOB R. SORENSEN (SBN 209134)
   jake.sorensen@pillsburylaw.com
DAVID J. TSAI (SBN 244479)
   david.tsai@pillsburylaw.com
ALEKZANDIR MORTON (SBN 319241)
   alekzandir.morton@pillsburylaw.com
NATALIE TRUONG (SBN 346680)
   natalie.truong@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:     415.983.1000
Facsimile:     415.983.1200

Attorneys for Defendant
*The Board of Trustees of the Leland*
*Stanford Junior University*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC. and ROCHE SEQUENCING SOLUTIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> FORESIGHT DIAGNOSTICS INC., DAVID KURTZ, an individual, and THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, <br><br> Defendants. | Lead Case No. 5:24-cv-03972-EKL <br><br> **THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> Date: April 2, 2025 <br> Time: 10:00 a.m. <br> Judge: Honorable Eumi K. Lee <br> Courtroom: 7 <br><br> Complaint Filed:   July 1, 2024 <br> Amended Complaint Filed:  November 22, 2024 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................2

    A. Drs. Diehn and Alizadeh Co-Founded CappMed, Which Roche Later Acquires ...............................................................................................2

    B. The Alleged CAPP-Seq/iDES Trade Secrets...........................................3

    C. Drs. Diehn and Alizadeh Allegedly Develop Competing Technology...............4

    D. Roche's Notice of the PhasED-Seq Technology Since March 2020 .................4

III. LEGAL STANDARD .........................................................................................5

IV. ARGUMENT ......................................................................................................5

    A. Roche's Claims Against Stanford Are Barred By The Statute Of Limitations ........................................................................................5

    B. Even if Roche's Claims Are Not Time Barred, Roche Has Failed To State A Trade Secret Misappropriation Claim Under Either The DTSA Or CUTSA Against Stanford ............................................................8

        1. Roche Has Not Adequately Alleged Any Actual Trade Secret ............9

            a. Roche did not allege any trade secret with sufficient particularity. ................................................................9

            b. The alleged trade secrets consist of publicly available information and therefore are not "secret." .............................11

        2. Roche Failed to Make Any Non-Conclusory Allegations of Misappropriation by Stanford ...............................................13

            a. Roche's conclusory allegations as to Stanford's purported knowledge of misappropriation are insufficient. ...................13

            b. Roche's allegations that PhasED-Seq "builds upon" CAPP-Seq do not plausibly amount to any misappropriation by Stanford. ..............................................................15

    C. Roche's Claims For Unfair Competition And Declaratory Judgment Must Also Be Dismissed .........................................................16

        1. Roche's UCL Claim is Preempted by CUTSA ...............................16

2. The Declaratory Judgment Act Claim Must Also Be Dismissed ........17

a. This Court will lack jurisdiction to decide the DJA claim if the DTSA claim is dismissed. ...............................18

b. Roche's own FAC establishes that it is not the lawful owner of the Disputed Patent Applications. ...........................19

V. CONCLUSION .........................................................................................................20

STANFORD'S MPA ISO MOTION TO DISMISS FAC

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*Abbvie Inc. v. Adcentrx Therapeutics Inc.*,
No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144 (S.D. Cal. July 29, 2024) ...............10, 11

*Aerotel, Ltd. v. IDT Corp.*,
486 F. Supp. 2d 277 (S.D.N.Y. 2007).......................................................................19

*Alamar Biosciences, Inc. v. DIFCO Labs.*,
No. CIV-S-94-1856 DFL PAN, 1996 U.S. Dist. LEXIS 18239 (E.D. Cal. Feb. 23, 1996) ......7

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018) ......................................................................9

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................9, 10

*Am. Gen. Life Ins. Co. v. Darbinyan*,
No. 2:20-CV-09743-JVS-JC, 2022 WL 1134722 (C.D. Cal. Mar. 30, 2022),
aff'd, No. 22-56149, 2023 WL 8613602 (9th Cir. Dec. 13, 2023).........................................15

*Ashton-Tate Corp. v. Ross*,
728 F. Supp. 597 (N.D. Cal. 1989) ..........................................................................8

*Attia v. Google LLC*,
983 F.3d 420 (9th Cir. 2020) ...................................................................11, 12, 16

*Bd. Of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
583 F.3d 832 (Fed. Cir. 2009)...............................................................................20

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
727 F.3d 917 (9th Cir. 2013) ................................................................................13

*Bonito Boats v. Thunder Craft Boats*,
489 U.S. 141 (1989)............................................................................................16

*California Police Activities League v. California Police Youth Charities, Inc.*,
No. C 08-1991 PJH, 2009 WL 537091 (N.D. Cal. 2009).........................................13

*Carr v. AutoNation Inc.*,
No. 2:17-CV-01539-JAM-AC, 2018 WL 288018 (E.D. Cal. Jan. 4, 2018)............................15

*Columbia Sussex Mgmt., LLC v. City of Santa Monica*,
482 F. Supp. 3d 1002 (C.D. Cal. 2020) ..................................................................18

STANFORD'S MPA ISO MOTION TO DISMISS FAC

Case No: 5:24-CV-03972

*Colyer v. AcelRx Pharms., Inc,*
  2015 U.S. Dist. LEXIS 159640 (N.D. Cal. Nov. 25, 2015)........................................3

*FilmTec Corp. v. Allied-Signal, Inc.,*
  939 F.2d 1568 (Fed.Cir.1991)........................................19

*Finmeccanica S.p.A. v. Gen. Motors Corp.,*
  No. CV0707537SJOPJWX, 2008 WL 11336141 (C.D. Cal. Dec. 17, 2008)........................15

*Galderma Labs. L.P. v. Revance Therapeutics, Inc.,*
  No. 2:23-CV-02879-FLA (SKX), 2024 WL 3008860 (C.D. Cal. 2024)................................14

*Gentil v. Wingfield GmbH,*
  No. 20-cv-05358-EMC, 2021 WL 4979427 (N.D. Cal. Mar. 2, 2021) ..................................11

*In re Gilead Scis. Sec. Litig.,*
  536 F.3d 1049 (9th Cir. 2008) ........................................5

*Herron v. Best Buy Co. Inc.,*
  924 F. Supp. 2d 1161 (E.D. Cal. 2013)........................................17

*Loop AI Labs Inc. v. Gatti,*
  195 F. Supp. 3d 1107 (N.D. Cal. 2016) ........................................9, 10

*MedioStream, Inc. v. Microsoft Corp.,*
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ........................................6, 8

*MGA Ent., Inc. v. Mattel, Inc.,*
  41 Cal. App. 5th 554 (2019) ........................................8

*Moss v. U.S. Secret Serv.,*
  572 F.3d 962 (9th Cir. 2009) ........................................5, 11

*Navigation Holdings, LLC v. Molavi,*
  445 F. Supp. 3d 69 (N.D. Cal. 2020)........................................14

*Nayab v. Cap. One Bank (USA), N.A.,*
  942 F.3d 480 (9th Cir. 2019) ........................................5

*Pellerin v. Honeywell Int'l, Inc.,*
  877 F. Supp. 2d 983 (S.D. Cal. 2012)........................................9

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,*
  133 Cal. App. 4th 658 (2005) ........................................15

*Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.,*
  No. CV 14-02005 SJO EX, 2014 WL 3362061 (C.D. Cal. 2014)........................18

*RoadRunner Recycling, Inc. v. Recycle Track Sys.,*
  No. C 23-04804 WHA, 2023 U.S. Dist. LEXIS 229227 (N.D. Cal. Dec. 26, 2023)..............10

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ....................................................................5

*Soc. Apps, LLC v. Zynga, Inc.*,
   No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. 2012)............................10

*Space Data Corp. v. X*,
   No. 16-cv-03260-BLF, 2017 WL 5013363 ..................................................9

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
   617 F. Supp. 2d 938 (N.D. Cal. 2007) .......................................................6

*Varlack v. Ohio Sec. Ins. Co.*,
   No. 22-CV-02478, 2023 WL 2012836 (N.D. Cal. Feb. 15, 2023) ...........................8

*Vendavo, Inc. v. Price f(x) AG*,
   No. 17-CV-06930-RS, 2018 WL 1456697 ..................................................10

*Vox Network Sols., Inc. v. Gage Techs., Inc.*,
   22-CV-09135-AMO, 2024 WL 1260573 (N.D. Cal. 2024) ...........................14, 17

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ..............................................................13

*Xsolla (USA), Inc. v. Aghanim Inc.*,
   No. 2:24-CV-02116-ODW, 2024 WL 41396105 (C.D. Cal. Sept. 10, 2024) .................15

## Statutes and Codes

United States Code
   Title 18, Section 1836(d) ....................................................................6
   Title 18, Section 1839(3) ...................................................................11

California Business and Professions Code
   Section 17200 ..............................................................................17

California Civil Code
   Section 3426.1(d)(1) ........................................................................11
   Section 3426.6 ...............................................................................6

California Code of Civil Procedures
   Section 2019.210............................................................................9

## Other Authorities

Newman, Bratman et al. Nature Medicine 2014, available at
   https://www.nature.com/articles/nm.3519].................................................12

# I.    INTRODUCTION

Plaintiffs Roche Molecular Systems, Inc.'s and Roche Sequencing Solutions, Inc.'s (collectively, "Plaintiffs" or "Roche") second attempt to bring trade secret, unfair competition, and declaratory judgment claims against Defendant The Board of Trustees of the Leland Stanford Junior University ("Stanford") fares no better than their first.  As in the original complaint, Roche's First Amended Complaint ("FAC") alleges that Defendants David Kurtz ("Dr. Kurtz"), Maximilian Diehn ("Dr. Diehn"), and Ash Alizadeh ("Dr. Alizadeh") used publicly-disclosed research (*i.e.*, not trade secrets) to develop PhasED-Seq, a cutting-edge cancer detection technology.  Roche again alleges that Stanford licensed the PhasED-Seq technology to Defendant Foresight Diagnostics Inc. ("Foresight"), a competitor of Roche that was co-founded by Drs. Kurtz, Diehn, and Alizadeh.  Roche attempts to bootstrap these allegations against Defendants Drs. Kurtz, Diehn, and Alizadeh into a claim against Stanford by alleging that Stanford was aware that Drs. Diehn, Alizadeh, and Kurtz were misappropriating Roche's trade secrets.  However, the FAC contains no factual allegations to support that conclusory assertion, which is instead made solely "[o]n information and belief."  (*See* FAC at ¶ 304.)  Indeed, Roche lumps Stanford into this alleged scheme of misappropriation simply by association without any factual support.  (*See* FAC at ¶¶ 297-299, 302-305.)

Roche's current claims against Stanford must be dismissed for multiple reasons.  **First**, Roche's trade secret misappropriation claims are barred by the statute of limitations because—as newly established through the allegations of the FAC—Roche has had inquiry notice of the purported trade secret misappropriation since as early as 2020.  **Second**, Roche fails to allege with sufficient particularity any actual trade secrets it owns.  As further discussed below, simply listing broad, general categories of information does not provide what is needed to establish the existence of a trade secret.  Moreover, Roche's alleged trade secrets (to the extent they are identifiable at all) were admittedly made publicly available several months before Roche acquired the at-issue technology.  **Third**, Roche fails to state a trade secret misappropriation claim against Stanford because it does not (and cannot) sufficiently allege facts establishing that Stanford knew or had reason to know that the allegedly misappropriated information was a trade secret or that Drs. Kurtz, Diehn, or Alizadeh purportedly breached any duty of confidentiality.  **Fourth**, Roche's UCL claim is preempted by

STANFORD'S MPA ISO MOTION TO DISMISS FAC

CUTSA because it is based on the same nucleus of facts. **Finally**, if Roche's DTSA claim is dismissed as to Stanford (which, as explained above and herein, it should be), then its DJA claim must also be dismissed for lack of subject matter jurisdiction; the DJA claim also independently fails as a matter of law.

Because Roche's causes of action against Stanford fail for multiple reasons, including in ways that cannot be cured by any amendments, Stanford respectfully requests its motion to dismiss be granted with prejudice and without leave to amend.

## II.    FACTUAL BACKGROUND

### A.    Drs. Diehn and Alizadeh Co-Founded CappMed, Which Roche Later Acquires

Drs. Diehn, Alizadeh, and Kurtz are professors at Stanford. (FAC, ¶¶ 2, 4.) Independent of their work at Stanford, Drs. Diehn and Alizadeh co-founded Capp Medical, Inc. ("CappMed"), which licensed from Stanford the "CAPP-Seq" technology, which analyzes circulating tumor DNA ("ctDNA") for certain types of cancer-related mutations. (FAC, ¶¶ 2, 40; Ex. 3.) Developed and used in conjunction with CAPP-Seq, the analytical workflow called integrated digital error suppression ("iDES") is used to further increase the sensitivity and decrease the rate of errors in the CAPP-Seq pipeline. (FAC, ¶ 44.) In 2014, CappMed entered into an Exclusive Equity Agreement with Stanford (the "Stanford Agreement") wherein Stanford granted CappMed an exclusive license to U.S. Provisional Patent Application 61/798,925 (the "'925 Application"), and any U.S. or foreign application claiming priority therefrom. (FAC, ¶ 40; *see also* Dkt. No. 61-1, Stanford's Unopposed Request for Judicial Notice ("Unopposed RJN"), Ex. 1.) Stanford filed numerous patent applications claiming priority to the '925 Application, including PCT/US2014/025020 (the "'020 Application"), filed March 12, 2014 and published September 25, 2014. (*See* Unopposed RJN, Ex. 2.)

That same year, Roche alleges that CappMed—independent of Stanford—gave a confidential presentation to Roche, led by Drs. Diehn and Alizadeh, that explained CappMed's proprietary technology, intellectual property, and other assets in order to market itself as a potential acquisition target for Roche. (FAC, ¶ 42; Ex. 3.) Absent from this presentation was any discussion about "trade secrets." (*See id.*)

On September 25, 2014, just days after this meeting, the '020 Application published, thereby publicly disclosing CAPP-Seq's "probes" and over a dozen "selectors." (*See* RJN, Ex. 2; FAC, ¶ 99.) Further, on September 11, 2015, Stanford filed U.S. Patent No. 11,085,084 (the "'084 Patent") which disclosed the CAPP-Seq/iDES adapters, barcodes, and blocking oligos. iDES is also disclosed in the '084 Patent, which states in its specification that "[d]isclosed herein is a novel analytical modeling framework for integrated digital error suppression (iDES)"). (Stanford's Request for Judicial Notice ("RJN"), Ex. A.) Thus, the '084 Patent is subject to judicial notice. *See Colyer v. AcelRx Pharms., Inc,* 2015 U.S. Dist. LEXIS 159640, at *10 (N.D. Cal. Nov. 25, 2015) ("[Patent filings] are in the public record, and all are subject to judicial notice.").

On April 7, 2015, Roche purchased CappMed to obtain rights to the CAPP-Seq technology licensed from Stanford. (FAC, ¶¶ 2, 47.) Roche alleges that in connection with the Acquisition Agreement it entered into with CappMed, CappMed and Stanford executed a Fourth Amendment to the Stanford Agreement wherein Stanford "consent[ed] to any deemed assignment by CappMed of the [Stanford] Agreement in connection with" the acquisition. (FAC, ¶ 48, Ex. 4.)

**B.    The Alleged CAPP-Seq/iDES Trade Secrets**

Roche alleges that it further developed the CappMed technology and made improvements to the CAPP-Seq/iDES workflow "that improves the accuracy and sensitivity of detecting and monitoring certain cancers" (the "Alleged Capp-Seq/iDES Trade Secrets"). (FAC, ¶ 82.) Roche does not describe any of these broad, general categories of information with specificity sufficient to allow Stanford to reasonably discern whether the Alleged CAPP-Seq/iDES Trade Secrets are actually secret, how the secrets were allegedly communicated to Stanford (if ever), what technology may use Roche's allegedly secret technology, or which trade secrets are germane to and purportedly misappropriated by Stanford. Nor does Roche even attempt to differentiate the Alleged CAPP-Seq/iDES Trade Secrets from the hundreds of pages of data, research, and CAPP-Seq/iDES techniques that were publicly disclosed in the '020 Application and '084 Patent. Nevertheless, Roche alleges that it used the Alleged CAPP-Seq/iDES Trade Secrets to develop its AVENIO ctDNA Analysis Kits, and to further develop the CAPP-Seq and iDES technologies. (*See* FAC, ¶¶ 3, 74-80.)

**C.     Drs. Diehn and Alizadeh Allegedly Develop Competing Technology**

After Roche acquired CappMed, both Drs. Diehn and Alizadeh worked as consultants for Roche until June 10, 2021.  (FAC, ¶ 4.)  During this period, Dr. Kurtz also worked as a contractor for Roche from September 2017 to July 2020.  (FAC, ¶ 4.)  Roche alleges that Drs. Kurtz, Diehn, and Alizadeh co-founded Foresight while simultaneously working for Roche.  (FAC, ¶ 5.)

Roche alleges that, through Foresight, Drs. Kurtz, Diehn, and Alizadeh developed competing non-invasive cancer detection and monitoring technology named "PhasED-Seq."  (FAC, ¶ 5.)  Roche further alleges that Drs. Diehn, Alizadeh, and Kurtz developed the PhasED-Seq technology by using tools, software, and data previously acquired by Roche in the CappMed acquisition.  (FAC, ¶ 238.)  For support, Roche relies on a December 11, 2023 public statement by Stanford that states that "PhasED-Seq builds upon a technique called Capp-Seq [. . .] developed by [Drs.] Alizadeh and Diehn."  (FAC, ¶ 263.)  This statement—which merely states that PhasED-Seq "builds upon" the older CAPP-Seq method, but does not mention using any trade secrets or proprietary information—appears to be the sole factual basis for Roche's claims against Stanford.

**D.     Roche's Notice of the PhasED-Seq Technology Since March 2020**

Roche cites to a peer-reviewed article ("Chabon 2020") published on March 25, 2020 in the *Nature* science journal and co-authored by Drs. Alizadeh, Diehn, Kurtz, and Foresight co-founder Jake Chabon as evidence of the alleged misappropriation of multiple trade secrets at issue in this matter. (FAC, ¶¶ 273-278, 281; Ex. 104.)  Roche alleges that this article "further acknowledges the use of Roche's" various alleged trade secrets.  (*See*, FAC, ¶¶ 273-278.)

Roche alleges that Drs. Diehn, Alizadeh, and Kurtz applied for patents using the technical information it sold to Roche through the CappMed acquisition.  (FAC, ¶ 5.)  Specifically, Roche alleges that on November 6, 2019, Stanford filed U.S. Provisional Patent Application 62/931,688 (the "'688 Application"), which described PhasED-Seq and listed Drs. Kurtz, Diehn, and Alizadeh as inventors.  (*See* FAC, ¶ 284.)  Roche alleges that Stanford has continued to file several patent applications claiming priority from the '688 Application and exclusively licensed these PhasED-Seq patents and patent applications to Foresight, instead of Roche (referred to by Roche in the FAC as the "Disputed Patent Applications").  (FAC, ¶¶ 285, 327.)

Roche concludes Stanford must have misappropriated the Alleged CAPP-Seq Trade Secrets based solely on its "information and belief" that Stanford was aware that "the Disputed Patent Applications disclose and claim inventions built on and developed using the Roche Trade Secrets." (FAC, ¶ 305.) Indeed, nearly all of Roche's allegations regarding "Stanford's Knowledge and Conduct" are simply premised on its "information and belief." (*See* FAC., ¶¶ 297-99, 302-305.) But nowhere does Roche specify what "information" it relies upon or the factual basis for its "belief."

## III. LEGAL STANDARD

Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." Dismissal is available when a complaint fails to state a cognizable legal theory or fails to allege sufficient **facts** under a cognizable legal theory. *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019). When a plaintiff's allegations are merely a formulaic recitation of the elements of a claim, the court does not need to consider the allegations—even if those elements are framed as factual allegations. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The court may also consider judicially-noticeable matters in deciding a motion under Rule 12(b)(6). *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016, n.9 (9th Cir. 2012).

## IV. ARGUMENT

### A. Roche's Claims Against Stanford Are Barred By The Statute Of Limitations

In the FAC, Roche newly alleges that Chabon 2020—an article that was co-authored by Drs. Alizadeh, Diehn, Kurtz, and Foresight co-founder Jake Chabon and published in March 2020—evidences the misappropriation of its alleged trade secrets. While Stanford disputes that Chabon 2020 evidences any alleged misappropriation because there was no misappropriation, this allegation nevertheless underscores a fatal flaw in Roche's claims. Specifically, Roche's own allegations demonstrate that it was on inquiry notice of the purported misappropriation since March 2020, meaning its claims here are untimely under the relevant statutes of limitations.

Under both the DTSA and CUTSA, an action for misappropriation must be brought within three years from "the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this section, a continuing misappropriation constitutes a single claim of misappropriation." 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. The limitations period begins when the plaintiff knows of the injury ("actual notice") or should know of the injury ("inquiry notice"), with the plaintiff deemed to have such constructive knowledge "only where there is a duty to inquire, as where plaintiff is aware of the facts which would make a reasonably prudent person suspicious." *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 946 (N.D. Cal. 2007) (quoting *Hobart v. Hobart Est. Co.*, 26 Cal. 2d 412, 438-29 (1945)). Further:

> "[U]nder California law 'when the statute of limitations begins to run on some of a plaintiffs trade secret claims against given defendants, the statute also begins to run at the same time as to other trade secret claims against those same defendants, even if there have not yet been any acts of misappropriation of the other trade secrets, at least when the plaintiff shared all the trade secrets with the defendants during the same time period and in connection with the same relationships and when the trade secrets concern related matters.'"

*MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1110 (N.D. Cal. 2012) (quoting *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000)).

Based on Roche's own pleadings regarding the publication of Chabon 2020, evidence of the alleged misappropriation of Roche's purported trade secrets was available to the public as early as March 25, 2020.[1] (*See*, FAC ¶¶ 273-278, 281.) If Chabon 2020 and its references to CAPP-Seq are purported to be evidence of the alleged misappropriation of Roche's technology, then that also means that Roche would have been at least on inquiry notice of such alleged misappropriation at the same time, for several reasons.

Chabon 2020 reports on research conducted at Stanford on CAPP-Seq, the very technology Stanford licensed to Roche. Indeed, the abstract on page 1 of Chabon 2020 announces, "Here we

---

[1] While beyond the scope of the current motion, Roche's claims also fail as untimely due to information they received directly from Stanford regarding PhasED-Seq on March 2, 2020.

STANFORD'S MPA ISO MOTION TO DISMISS FAC

Case No: 5:24-CV-03972

introduce improvements to cancer personalized profiling by deep sequencing (CAPP-Seq)." (Ex. 104 at 2.)  Roche even describes Chabon 2020 as "directed to the development of PhasED-Seq."  (FAC ¶¶ 278, 281.)  Further, Drs. Alizadeh, Diehn, and Kurtz clearly indicate their affiliation with Stanford (on the first page of the article no less), and they expressly disclose a "paid consultancy from Roche" in the "Competing Interests" section.  (Ex. 104 at 2, 13.)  Additionally, two other of Chabon 2020's co-authors also list paid consultancies or other funding from Roche.  (Ex. 104 at 13 [listing Roche's name nine times under "Competing Interests" of researchers].)

Roche alleges that it "has maintained the Roche Trade Secrets as confidential and has taken reasonable precautions to maintain their secrecy."  (FAC ¶ 232.)  Thus, it is flatly implausible that Roche, exercising "reasonable diligence" and "tak[ing] reasonable precautions to maintain [its trade secrets'] secrecy," should not have reasonably discovered a paper that (i) discusses Roche's licensed CAPP-Seq technology at length, (ii) expressly reports improvements to CAPP-Seq, (iii) allegedly discloses use of seven of Roche's trade secrets, (iv) was authored by researchers at Stanford on the very technology Stanford licensed to Roche, and (v) lists 5 of Roche's own consultants as co-authors.  *See Micrel Inc,* 2005 U.S. Dist. LEXIS 47030, at *17-*18 (finding a patent "should have put a reasonable person on notice" of misappropriation claim where the patent "state[d] that it [was] a modification of [Plaintiff's] prior invention").  A straightforward search by Roche of its consultants' names or CAPP-Seq would have led Roche to Chabon 2020.  *See Alamar Biosciences, Inc. v. DIFCO Labs.*, No. CIV-S-94-1856 DFL PAN, 1996 U.S. Dist. LEXIS 18239, at *6 (E.D. Cal. Feb. 23, 1996) (charging plaintiff with notice of defendant's PCT application where a search for the name of the misappropriated technology, the plaintiff's name, or the defendant's name would have revealed the application, and dismissing the trade secret claims as untimely).

To the extent that Roche argues it actually was unaware of PhasED-Seq in March of 2020, that does not change the result on this Motion or the fact that Chabon 2020 put Roche on (inquiry) notice of its misappropriation claim.  Based on Roche's own allegations, Chabon 2020 either constituted an alleged, unauthorized disclosure of Roche's trade secrets or put Roche on notice of the alleged misappropriation and use by dozens of scientific researchers.  *Ashton-Tate Corp. v. Ross*, 728 F. Supp. 597, 603 (N.D. Cal. 1989) (finding statute of limitations began to run upon initial disclosure of a trade

secret even though counterclaimant argued the product using the trade secrets was not published until years later).

Because Roche would have discovered Chabon 2020 through the exercise of reasonable diligence, and because, according to Roche's own allegations in the FAC, Chabon 2020 would have given Roche "reason to suspect an injury and some wrongful cause," the statute of limitations for its misappropriation claims began to run upon publication of Chabon 2020. *See MGA Ent., Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 564 (2019) (dismissing misappropriation claims because plaintiff was on inquiry notice of defendant's misappropriation more than three years before filing suit). Further, because the alleged trade secrets referenced in Chabon 2020 were shared in the same time period and "in connection with the same relationships" as the remaining trade secrets, the limitations period for all trade secrets at issue here began on March 25, 2020. *See MedioStream, Inc.*, 869 F. Supp. 2d at 1110.

In California, as a response to the Covid-19 pandemic, all statutes of limitations periods longer than 180 days were tolled from April 6, 2020, until October 1, 2020, a period of 178 days. Cal. Rules of Court, App'x 1: Emergency Rules Related to COVID-19, Emergency Rule 9 (May 29, 2020); *see also Varlack v. Ohio Sec. Ins. Co.*, No. 22-CV-02478, 2023 WL 2012836, at *1 (N.D. Cal. Feb. 15, 2023). Based on this tolling period, the statute of limitations on Roche's trade secrets misappropriation would have expired on September 19, 2023—three (3) years and 178 days from the publication of Chabon 2020. Because this date predates the parties' Tolling and Standstill Agreement, which was meant to toll the limitations period from January 9, 2024 to June 30, 2024, Roche's claims are untimely and must be dismissed.

**B.      Even if Roche's Claims Are Not Time Barred, Roche Has Failed To State A Trade Secret Misappropriation Claim Under Either The DTSA Or CUTSA Against Stanford**

To state a claim for trade secret misappropriation under the DTSA or the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (quoting *Space Data Corp. v. X*, No. 16-cv-03260-BLF,

2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)). Here, Roche's DTSA and CUTSA causes of action fail for two independent reasons. First, Roche failed to plausibly allege with sufficient particularity that it owned any trade secrets. Second, Roche failed to allege any non-conclusory facts establishing that Stanford misappropriated any trade secret.

### 1. Roche Has Not Adequately Alleged Any Actual Trade Secret

Roche's trade secret misappropriation claims fail for the threshold reason that Roche does not allege with sufficient particularity any actual trade secret it owns. Roche lists nineteen broad, topical categories filled with basic scientific principles and technical jargon as its Alleged CAPP-Seq/iDES Trade Secrets. (*See* FAC, ¶¶ 86-227.) But simply listing these high-level categories of general scientific information is insufficient for Roche to allege a trade secret with the requisite particularity. *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1111 (N.D. Cal. 2016); *see Alta Devices, Inc*, No. 18CV00404LHKVKD, 2019 WL 176261, at *4 ("[Plaintiff's] descriptions of these alleged trade secrets are not sufficient because they do not describe what the trade secret is, but only the category or categories in which the trade secret may be found."). Further, many of the Alleged CAPP-Seq/iDES Trade Secrets were already made publicly available (*i.e.*, they are no longer a secret) through the '020 Application and the '084 Patent.

### a. *Roche did not allege any trade secret with sufficient particularity.*

Roche has failed to sufficiently allege any of its trade secrets with the requisite level of particularity. Claims of misappropriation must "identify the trade secret with reasonable particularity." *See* Code Civ. Proc. § 2019.210; *see also AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144, n.1 (N.D. Cal. 2019) (recognizing that DTSA and CUTSA have the same standard for pleading trade secrets with particularity). While Roche is not required at the pleading stage "'to spell out the details of the trade secret,'" it is required to "'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *AlterG, Inc.*, 388 F. Supp. 3d at 1144; *see also Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) (dismissing trade secret misappropriation claim for failure to plead the trade secret with sufficient particularity). Where, as

here, the alleged trade secret "'consist[s] of incremental variations on, or advances in the state of the art in a highly specialized technical field,'" the plaintiff is required to satisfy "'a more exacting level of particularity.'" *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1112 (citing *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 836 (2005)).

Roche has not even met the threshold level of particularity, let alone the "more exacting level of particularity." *Id.* Instead, Roche has generally alleged that its purported trade secrets consist of nineteen broad, topical categories with basic scientific principles, and makes only conclusory allegations about "non-public aspects of the original CAPP-Seq/iDES," but does not identify or provide any indication about what those "non-public aspects" would be. (*See* FAC, ¶¶ 86-227, 239.) Absent from Roche's trade secret allegations are any particular descriptions of the specific matters Roche claims to be trade secrets. The FAC makes no attempt to distinguish any alleged "trade secrets"—whether CappMed trade secrets or post-acquisition trade secrets allegedly developed by Roche—from the voluminous publicly-disclosed details of the technology areas it identifies in its FAC. *See RoadRunner Recycling, Inc. v. Recycle Track Sys.*, No. C 23-04804 WHA, 2023 U.S. Dist. LEXIS 229227, at *8 (N.D. Cal. Dec. 26, 2023) (dismissing trade secret misappropriation claim where "no specific, non-public aspects of this system have been identified."). Instead, Roche's trade secret allegations "more closely resemble the broad categories of information" that courts have previously dismissed for lack of specificity. *AlterG, Inc.*, 388 F. Supp. 3d at 1145; *see Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. 2018) (dismissing trade secret claim because plaintiff "set out its purported trade secrets in broad, categorical terms."); *see also Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. 2012) ("A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret.").

Indeed, the general trade secret allegations here are similar to those recently alleged in *Abbvie Inc. v. Adcentrx Therapeutics Inc.* There, the plaintiff pharmaceutical company alleged that its trade secrets were "proprietary payloads, linker-drugs, and ADCs" and included the "'processes for synthesizing,' 'assays for testing' and 'complied [sic] information . . . of various compounds.'" *Abbvie Inc. v. Adcentrx Therapeutics Inc.*, No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144, at *5 (S.D.

Cal. July 29, 2024). The court found that "such allegations are too vague and categorical to adequately allege a trade secret." *Id.* So too here: at best, Roche alleged general categories of information rather than particular trade secrets. Because Roche's general allegations are insufficient to put Stanford on notice of the trade secrets it is alleged to have misappropriated, both the DTSA and CUTSA claims must be dismissed.

b. *The alleged trade secrets consist of publicly available information and therefore are not "secret."*

Even if Roche did allege these categories of information with sufficient particularity, its DTSA and CUTSA claims still fail for the fundamental reason that the Alleged CAPP-Seq/iDES Trade Secrets consist of publicly available information—*i.e.*, none of them are **secret**. It is axiomatic that a trade secret must not be "generally known to the public." *See* Cal. Civ. Code § 3426.1(d)(1); *see also* 18 U.S.C. § 1839(3). Moreover, "disclosure of a trade secret in a patent application extinguishes the information's trade secret status." *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020); *see also Gentil v. Wingfield GmbH*, No. 20-cv-05358-EMC, 2021 WL 4979427, at *5 (N.D. Cal. Mar. 2, 2021) (dismissing trade secret misappropriation claim because alleged trade secret had been disclosed in a utility patent). That is precisely the case here.

Specifically, Roche alleges that it acquired the Alleged CAPP-Seq/iDES Trade Secrets in connection with its acquisition of CappMed on April 7, 2015. (*See* FAC, ¶¶ 47, 74, 80.) However, on September 25, 2014 (*i.e.*, more than five months prior to Roche's acquisition of CappMed), the 547-page '020 Application filed by Stanford was published by the World Intellectual Property Organization. Yet, Roche fails to distinguish how its alleged trade secrets of CAPP-Seq "selectors," which target particular "genomic coordinates" in a sample, is different from the CAPP-Seq selectors that were publicly disclosed in the '020 Application. Indeed, the '020 Application expressly noted that "[e]xemplary selector sets are provided in Tables 2, and 6-18" for cancers including non-small cell lung cancer, breast cancer, colorectal cancer, diffuse large B-cell lymphoma, follicular lymphoma, pancreatic cancer and adenocarcinomas. (Unopposed RJN, Ex. 2 at [00554].) Additionally, Roche has not attempted to distinguish its "CAPP-Seq/iDES Algorithm for Selector Library Generation" trade secret (FAC ¶ 123) from the '020 Application's disclosure of the "CAPP-Seq Selector Design"

-11-

algorithm. (*Id.*, [00823-00825], [00555-00593].)  Thus, Roche makes no attempt to distinguish its

probes and selectors from the publicly disclosed information from the '020 Application; accordingly,

Roche cannot allege it owns these alleged trade secrets because none if this information is "secret."

*See Attia*, 983 F.3d at 426.  Accordingly, Roche cannot allege it owns these alleged trade secrets

because none if this information is "secret."  *See Attia*, 983 F.3d at 426.[2]

For example, Roche's first listed "trade secret" is "CAPP-Seq/iDES adapters."  (FAC, ¶ 86.)

However, the '084 Patent, which is licensed to Roche, publicly disclosed CAPP-Seq/iDES adapters in

robust detail—and the FAC fails to distinguish its alleged trade secrets in any way from those

disclosures.  (*See, e.g.*, RJN, Ex. A, "Y - Shaped Adaptors Comprising Unique Barcodes," col. 11:51-

12:60; 13:33-19:51; Figs. 1, 6.)    Similarly, Roche fails to distinguish its second listed trade secret,

the "CAPP-Seq/iDES barcodes" (FAC, ¶ 91) from the CAPP-Seq/iDES barcodes disclosed in the '084

Patent.  For instance, the FAC calls out two types of "unique CAPP-Seq/iDES barcodes: (1) 'index'

barcodes and (2) 'insert' or 'duplex' barcodes."  (FAC, ¶ 93.)  But the '084 Patent publicly disclosed

both "index" and "insert"/"duplex" barcodes.  (*See, e.g.*, RJN, Ex. A, col. 47 ("Example 7: Processing

of Molecular Barcodes," describing use of "index" and "insert" barcodes).)  Again, Roche fails to

discern how its adapters, barcodes, and blocking oligos are different from the publicly disclosed

information from the '084 Patent and instead relies on general descriptions of the basic features and

designs inherent in each matter.  Indeed, Stanford has publicly disclosed Roche's purported algorithm

trade secrets through its various CAPP-Seq/iDES publications and software code.  Finally, Roche's

alleged trade secrets relating to the Capp-Seq/iDES workflow (or "reagents"), "single-sample

capture", and phased variant are devoid of any distinction from other categories used across the field

or basic, well-known biological principles.

---

[2] As acknowledged in Roche's own exhibits to the FAC, CAPP-Seq was a publicly-known technique at the time Roche acquired CappMed.  (*See* FAC, Ex. 3, Slides 20, 22 [referencing Newman, Bratman et al. *Nature Medicine* 2014, available at https://www.nature.com/articles/nm.3519].)  This further defeats Roche's contention that the alleged CAPP-Seq/iDES trade secrets were actually "secret," *i.e.*, not publicly disclosed, at the time Roche acquired CappMed.

2.      Roche Failed to Make Any Non-Conclusory Allegations of Misappropriation
        by Stanford

Roche's trade secret misappropriation claims should also be dismissed for the independent reason that Roche failed to make any non-conclusory allegations that Stanford misappropriated Roche's trade secrets.  To adequately allege trade secret misappropriation, a plaintiff must show the defendant "knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it."  *California Police Activities League v. California Police Youth Charities, Inc.,* No. C 08-1991 PJH, 2009 WL 537091, at *3 (N.D. Cal. 2009).  Roche may not simply make "naked assertions devoid of further factual enhancement" but instead must provide a factual basis for its allegations.  *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (allegations made only on information and belief were insufficient to avoid dismissal); *see also Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("[C]ourts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" (quoting *Ashcroft*, 556 U.S. at 663)).

Here, Roche's claims against Stanford are premised on two theories:  (1) "Stanford was aware or should have been aware that Drs. Diehn, Alizadeh, and Kurtz had ongoing confidentiality obligations to Roche regarding the subject matter of the Roche Trade Secrets" (FAC, ¶ 349.); and (2) "Stanford was aware, and has publicly acknowledged, that 'PhasED-Seq builds upon'" Roche's CAPP-Seq technology." (FAC, ¶ 300.)  Roche's first theory merely states buzzwords devoid of factual support sufficient to allege that Stanford itself misappropriated any alleged Roche trade secrets.  And Roche's second theory makes an impermissible inferential leap from "build[ing] upon" prior, publicly-disclosed information to "misappropriation of trade secrets."

a.      *Roche's conclusory allegations as to Stanford's purported knowledge of misappropriation are insufficient.*

Roche's misappropriation claim against Stanford fails for the independent reason that it does not allege any facts supporting its allegation of Stanford's purported knowledge of misappropriation.

Roche asserts "Stanford knew, or had reason to know, at the time that it disclosed and/or used the Roche Trade Secrets that it was acquiring this information by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use" and "Stanford was aware or should have been aware that Drs. Diehn, Alizadeh, and Kurtz had ongoing confidentiality obligations to Roche regarding the subject matter of the Roche Trade Secrets." (FAC, ¶¶ 348-49, 364-65-49.) But Roche does not make any factual allegation (let alone a plausible factual allegation) that Drs. Diehn, Alizadeh, and Kurtz provided their consulting agreements to Stanford, updated Stanford on their research at Roche, or provided Roche's trade secrets to Stanford in their invention disclosures, or that Stanford knew such information was a trade secret (as opposed to being their own research conducted at Stanford and/or from publicly-available sources). Instead, Roche relies exclusively on threadbare recitations of the misappropriation element that is alleged on "information and belief."

Courts routinely hold that this type of conclusory pleading, without additional factual support, cannot survive a motion to dismiss. For example, in *Navigation Holdings, LLC v. Molavi*, the Court dismissed a DTSA claim where the plaintiff made only a conclusory allegation that the defendants "'had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy or limit their use.'" *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020). This conclusory recitation of the element was "devoid of any factual substantiation of Defendants' knowledge." *Id.*; *see also Vox Network Sols., Inc. v. Gage Techs., Inc.*, 22-CV-09135-AMO, 2024 WL 1260573, at *4 (N.D. Cal. 2024) (dismissing claim where complaint contained only conclusory assertions that the company "'conspired with [its employees] to improperly acquire [plaintiff's] trade secrets'"); *Galderma Labs. L.P. v. Revance Therapeutics, Inc.*, No. 2:23-CV-02879-FLA (SKX), 2024 WL 3008860, at *4 (C.D. Cal. 2024) (dismissing claim for indirect trade secret misappropriation where "[t]he FAC does not contain, for example, any allegations that Revance asked Tisckos to take any confidential information or offered to provide him an award for such. Nor does the FAC allege Revance had a history of hiring Galderma employees"); *Xsolla (USA), Inc. v. Aghanim Inc.*, No. 2:24-CV-02116-ODW (AGRX), 2024 WL 41396105, at *9 (C.D. Cal. Sept. 10, 2024) (dismissing DTSA and CUTSA claims because

facts alleged upon information and belief were not based on factual information that would make the inference of culpability plausible).

Nor can Roche transform any purported knowledge by Drs. Kurtz, Diehn, or Alizadeh (whose actions would fall outside the scope of their employment with Stanford if they were unlawfully misappropriating trade secrets) into knowledge that is imputable to Stanford. Even if Roche had alleged Drs. Kurtz, Diehn, or Alizadeh were officers or agents of Stanford (which it has not), it is well-settled that "'an officer's knowledge is not imputed to the corporation when he has no authority to bind the corporation relative to the fact or matter within his knowledge.'" *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 679 (2005) (quoting *Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 264 (1966)); *see, e.g.*, *Finmeccanica S.p.A. v. Gen. Motors Corp.*, No. CV0707537SJOPJWX, 2008 WL 11336141, at *3 (C.D. Cal. Dec. 17, 2008) (applying *Peregrine Funding, Inc.* to trade secrets claims); *Carr v. AutoNation Inc.*, No. 2:17-CV-01539-JAM-AC, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) ("It is not appropriate to impute an agent's knowledge of a trade secret to the principal." (citing *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792 (9th Cir. 1976)); *Am. Gen. Life Ins. Co. v. Darbinyan*, No. 2:20-CV-09743-JVS-JC, 2022 WL 1134722, at *8 (C.D. Cal. Mar. 30, 2022), aff'd, No. 22-56149, 2023 WL 8613602 (9th Cir. Dec. 13, 2023) ("'The knowledge of the agent is considered and imputed as the knowledge of the principal only when the former acquires it in the course of his agency. If he does not acquire it while acting within the scope of his authority, the knowledge is no more to be imputed to the principal than to an utter stranger.'") (quoting *Palo Alto Mut. Building & Loan Ass'n v. First Nat'l Bank*, 33 Cal. App. 214, 224 (1917)).

b.      *Roche's allegations that PhasED-Seq "builds upon" CAPP-Seq do not plausibly amount to any misappropriation by Stanford.*

Further, Roche alleges that on December 11, 2023, Stanford issued a public statement "tout[ing] the PhasED-Seq technology" and stating that "PhaseED-Seq builds upon a technique called CAPP-Seq, or cancer personalized profiling by deep sequencing, developed in 2014 by [Drs.] Alizadeh and Diehn to assess lung cancer levels and response to treatment." (FAC, ¶ 263.) Roche, however, then goes on to illogically allege that this "indicat[ed] that Drs. Alizadeh, Diehn, and Kurtz

made use [of] Roche's confidential CAPP-Seq data and analytical tools, including the Roche Trade Secrets identified above, in developing PhasED-Seq." (FAC, ¶ 263.) But Roche makes an implausible inferential leap in an attempt to transform technological advances into trade secret misappropriation.

First, as discussed in Section IV(b), *supra*, the Alleged CAPP-Seq/iDES Trade Secrets consist of information that was publicly disclosed and well-known prior to Roche acquiring CappMed. Thus, "building upon" that publicly-available information does not amount to trade secret misappropriation. Second, merely because Stanford announced that PhasED-Seq "builds upon" CAPP-Seq (which was extensively disclosed in Stanford's patent applications, including the '020 Application) does not make it plausible that PhasED-Seq was built on any ***trade secrets***. Such an inferential leap runs contrary to the very purpose of patents: public disclosure so others may "build upon" and improve the invention. *See Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 150-51 (1989) ("The federal patent system thus embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years."). Public and private entities—including Stanford—are permitted to "build upon" inventions disclosed in a published patent application or patent, which is indeed available to the world—so long as they do not infringe on a valid claim of an issued patent. Here, Roche does not accuse Stanford of infringing any patented CAPP-Seq technology; and, under unambiguous law, Roche cannot state a trade secret misappropriation claim for technology disclosed in a published patent application—let alone published more than a decade ago in September 2014. *See Attia*, 983 F.3d at 426.

Therefore, dismissal is warranted here in light of Roche's failure to sufficiently plead (and lack of factual allegations supporting) a necessary element of trade secret misappropriation as to Stanford. Accordingly, the Court should dismiss Roche's DTSA and CUTSA claims against Stanford.

**C.  Roche's Claims For Unfair Competition And Declaratory Judgment Must Also Be Dismissed**

   1.  Roche's UCL Claim is Preempted by CUTSA

Roche's eighth cause of action for Unfair Competition pursuant to California Business & Professions Code section 17200 must be dismissed because Roche failed to state any viable claim

against Stanford. As an initial matter, Roche fails entirely to allege that Stanford engaged in any unlawful, unfair, or fraudulently deceptive business acts or practices. (*Cf.* FAC, ¶ 431 [alleging that ***Foresight*** engaged in such acts or practices but never alleging that Stanford did].) This alone mandates dismissal of Roche's UCL claim against Stanford as such an allegation is a necessary element of the claim. *See Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013) ("A defendant's liability [under the UCL] must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices." (quotations cleaned up)).

Even if Roche had sufficiently alleged unlawful, unfair, or fraudulently deceptive conduct by Stanford (it did not), its UCL claim should still be dismissed because it is preempted by CUTSA. It is well established that CUTSA displaces UCL claims based on the same nucleus of facts. *See Vox Network Sols., Inc.*, 2024 WL 1260573, at *4 (citing *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958, 961-62 (2009) (dismissing UCL claim because CUTSA preempts claims for unfair competition based on the same nucleus of facts as a trade secrets claim)). In other words, "'[t]o survive preemption, [a plaintiff's] claims must "allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim."'" *Id.* (quoting *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018), aff'd, 815 F. App'x 117 (9th Cir. 2020)). Here, Roche's UCL claim is based on Stanford's alleged use and disclosure of Roche's purported trade secrets. (FAC, ¶¶ 423-25.) Thus, the alleged acts by Stanford are based entirely on its alleged misappropriation and use of the Alleged CAPP-Seq/iDES Trade Secrets. Because Roche's UCL claim is based on the same nucleus of facts as its trade secret misappropriation claim, it is preempted by CUTSA and must be dismissed.

### 2. The Declaratory Judgment Act Claim Must Also Be Dismissed

In its DJA claim, Roche seeks a declaration that it is the true and lawful owner of the Disputed Patent Applications. If the DTSA claim is dismissed for any of the reasons explained above, the DJA claim must also be dismissed for lack of subject matter jurisdiction. Further, the DJA claim fails as a matter of law because Roche's own FAC and attachments thereto establish that Roche is not entitled to the declaration it seeks.

STANFORD'S MPA ISO MOTION TO DISMISS FAC

a. *This Court will lack jurisdiction to decide the DJA claim if the DTSA claim is dismissed.*

As explained herein, Roche's DTSA claim fails as a matter of law. If the DTSA claim is dismissed, then the Court would lack jurisdiction to decide the DJA claim. This is because the Declaratory Judgment Act itself cannot serve as a basis for federal subject matter jurisdiction. *See Columbia Sussex Mgmt., LLC v. City of Santa Monica*, 482 F. Supp. 3d 1002, 1016, n.3 (C.D. Cal. 2020) ("To the extent the claim for declaratory relief is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, it is axiomatic that the Act 'does not itself confer federal subject matter jurisdiction.'") (citing *Fid. & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979)); *Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*, No. CV 14-02005 SJO EX, 2014 WL 3362061, at *3 (C.D. Cal. 2014) ("The Court cannot exercise federal question jurisdiction solely on the basis of Plaintiff's claims under the Declaratory Judgment Act, because the Declaratory Judgment Act only creates a remedy and is not an independent basis for jurisdiction.") (internal citations omitted).

The Court's opinion in *Quest Nutrition* is instructive. There, the plaintiff brought ten causes of action in the Central District of California based on the defendant's alleged theft of plaintiff's confidential information. *Quest Nutrition*, 2014 WL 3362061, at *1-*2. Among the causes of action were a declaratory judgment action seeking a declaration as to the ownership of a patent application filed by the defendant. *Id.* at *2. The Court found that although (1) the declaratory relief sought implicated patent ownership and (2) district courts have jurisdiction over "'any civil action arising under any Act of Congress relating to patents,'" (quoting 28 U.S.C. § 1338(a)) this claim could not serve as an independent basis for jurisdiction, as the question of patent ownership could be determined in state court. *See id.* at *3 ("[c]laims concerning patent ownership do not create federal jurisdiction") (internal quotes omitted).

Here, as in *Quest Nutrition*, Roche seeks a declaration as to its ownership rights in the Disputed Patent Applications. (*See* FAC, ¶ 446; *see also* Prayer for Relief in FAC, ¶ j). Because the ownership of the Disputed Patent Applications is not an action "arising under" patent laws, it cannot serve as the

basis for subject matter jurisdiction. Absent some other basis for subject matter jurisdiction, Roche's DJA claim must be dismissed if the DTSA claim is also dismissed.

b. *Roche's own FAC establishes that it is not the lawful owner of the Disputed Patent Applications.*

By Roche's own admissions, it is not the lawful owner of the Disputed Patent Applications, and thus it is not entitled to a declaration stating it is. In its FAC, Roche admits that Drs. Diehn and Alizadeh's "2015 Consulting Agreements acknowledged that Drs. Diehn and Alizadeh were employees of Stanford subject to certain obligations to Stanford regarding ownership of intellectual property." (FAC, ¶ 54.) Indeed, Section 5.1 of the agreements provided as follows: "RMS acknowledges that Provider is an employee of Stanford University ("Stanford") and is subject to certain agreements, rules, policies, regulations, orders and guidelines of Stanford, including, without limitation, policies concerning consulting, conflicts of interest and ownership of intellectual property (collectively, the "Stanford Policies")." (FAC, Ex. 1, at 2.) Thus, Roche's agreements with Drs. Diehn and Alizadeh were subject to Drs. Diehn and Alizadeh's pre-existing obligations and agreements with Stanford.

Pursuant to Stanford's assignment agreement with Drs. Diehn, Alizadeh, and Kurtz (which predate the agreements with Roche), Drs. Diehn, Alizadeh, and Kurtz agreed as follows:

> I will disclose to Stanford all potentially patentable inventions conceived or first reduced to practice in whole or in part in the court of my University responsibilities or with more than incidental use of University resources. *I hereby assign* to Stanford all my right, title and interest in such patentable inventions and to execute and deliver all documents and do any and all things necessary and proper on my part to effect such assignment.

(Unopposed RJN, Exs. 4, 5, 6 (emphasis added).) By agreeing to "I hereby assign" their invention rights to Stanford, each of them conveyed a present assignment of their rights in future inventions to Stanford, including PhasED-Seq. As a result, Roche could never have had an ownership interest in PhasED-Seq because it already belonged to Stanford under these earlier-in-time agreements. *See FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed.Cir.1991); *see also Aerotel, Ltd. v. IDT Corp.*, 486 F. Supp. 2d 277, 279 (S.D.N.Y. 2007) ("[C]hallenges to ownership have been permitted where an inventor, by contract or under statute, had made a present assignment of future

inventions to a third party before conceiving of the patented invention. In such a case, the contract or statute divests the inventor-assignor of ownership of the invention and automatically vests ownership of the invention, when invented, in the assignee. Therefore, the inventor has no legal title to assign at a future date . . . .").

Notably, the Federal Circuit has already adjudicated the "I hereby assign" language in a prior case involving Stanford and Roche. In *Bd. Of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009), the Federal Circuit held that Roche's later-in-time assignment agreement that provided a present assignment using the language "I will assign and do hereby assign" controlled over Stanford's earlier-in-time agreement that did not effectuate a present assignment of the patent rights. Here, Roche's own agreements recognized Stanford's invention-assignment agreements (containing the "I hereby assign" language) were earlier in time. Thus, Roche's patent ownership claim fails as a matter of law, and the DJA claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Stanford respectfully requests that the Court dismiss Plaintiffs' First Cause of Action for Trade Secret Misappropriation Under the Defend Trade Secret Act, Second Cause of Action for Trade Secret Misappropriation Under the California Uniform Trade Secret Act, Eighth Cause of Action for Unfair Competition, and Tenth Cause of Action for Declaratory Judgment as to Stanford with prejudice and without leave to amend.

Dated: December 16, 2024                    PILLSBURY WINTHROP SHAW PITTMAN LLP


                                            */s/ David J. Tsai*
                                      By:   JACOB R. SORENSEN
                                            DAVID J. TSAI
                                            ALEKZANDIR MORTON
                                            NATALIE TRUONG

                                            Attorneys for Defendant *The Board of Trustees of the Leland Stanford Junior University*

STANFORD'S MPA ISO MOTION TO DISMISS FAC

Case No: 5:24-CV-03972