PILLSBURY WINTHROP SHAW PITTMAN LLP
JACOB R. SORENSEN (SBN 209134)
  jake.sorensen@pillsburylaw.com
DAVID J. TSAI (SBN 244479)
  david.tsai@pillsburylaw.com
ALEKZANDIR MORTON (SBN 319241)
  alekzandir.morton@pillsburylaw.com
NATALIE TRUONG (SBN 346680)
  natalie.truong@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
Telephone:       415.983.1000
Facsimile:       415.983.1200

Attorneys for Defendant
*The Board of Trustees of the Leland
Stanford Junior University*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC. and ROCHE SEQUENCING SOLUTIONS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>FORESIGHT DIAGNOSTICS INC., DAVID KURTZ, an individual, and THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Defendants. | Lead Case No. 5:24-cv-03972-EKL<br><br>**THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY'S REPLY TO OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date: April 2, 2025<br>Time: 10:00 a.m.<br>Judge: Honorable Eumi K. Lee<br>Courtroom: 7<br><br>Complaint Filed:    July 1, 2024<br>Amended Complaint Filed:  November 22, 2024 |

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .........................................................................................................2

     A.   Roche's Claims Against Stanford Are Barred By The Statute Of
          Limitations ...................................................................................................2

     B.   Roche Still Fails To State A Trade Secret Misappropriation Claim Under
          Either The DTSA Or CUTSA Against Stanford.........................................4

          1.   Roche Fails to Adequately Identify Any Trade Secret .........................4

               a.   Roche did not allege any trade secret with sufficient
                    particularity and instead merely points to its eighty-page
                    FAC and voluminous exhibits ...................................................4

               b.   It is appropriate to consider whether Roche has sufficiently
                    alleged information that qualifies as a trade "secret" at the
                    pleading stage...........................................................................6

          2.   Roche Still Fails to Make Any Non-Conclusory Allegations of
               Misappropriation by Stanford ...............................................................7

     C.   Roche's Claims For Unfair Competition And Declaratory Judgment Must
          Also Be Dismissed........................................................................................9

          1.   Roche's UCL Claim is Based on the Same Nucleus of Facts as
               its CUTSA Claim and, Thus, is Preempted ............................................9

          2.   The Declaratory Judgment Act Claim Must Also Be Dismissed ........10

               a.   If the DTSA claim is dismissed, the DJA claim must
                    also be dismissed......................................................................10

               b.   The only fair interpretation of the contracts establishes
                    that Stanford is the lawful owner of the Disputed Patent
                    Applications. ............................................................................11

III. CONCLUSION.....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Alert Enter., Inc. v. Rana*,
    No. 22-CV-06646-JSC, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023)....................................8

*AllRounds, Inc. v. Eshares, Inc.*,
    No. 20-CV-07083-VC, 2021 WL 2945532 (N.D. Cal. July 14, 2021)...................................6

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018) .....................................................................................6

*Autodesk, Inc. v. ZWCAD Software Co.*,
    No. 5:14-CV-01409-EJD, 2015 WL 2265479 (N.D. Cal. May 13, 2015)...............................6

*Beluca Ventures LLC v. Einride Aktiebolag*,
    660 F. Supp. 3d 898 (N.D. Cal. 2023) .....................................................................................7

*Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.*,
    583 F.3d 832 (Fed. Cir. 2009) ...............................................................................................11

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
    No. 10–CV–03428–LHK, 2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ..............................6

*Columbia Sussex Mgmt., LLC v. City of Santa Monica*,
    482 F. Supp. 3d 1002 (C.D. Cal. 2020) .................................................................................10

*Countrywide Home Loans, Inc., v. Mortg. Guar. Ins. Corp.*,
    642 F.3d 849 (9th Cir. 2011) .................................................................................................11

*Henry Schein, Inc. v. Cook*,
    No. 16-CV-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ......................................9

*Herron v. Best Buy Co. Inc.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)...................................................................................9

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) .............................................................................................4, 5

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012 ...................................................................................3

*Micrel Inc. v. Monolithic Power Sys., Inc.*,
    No. C 04-04770 JSW, 2005 WL 6426678 (N.D. Cal. Dec. 9, 2005) ......................................3

*In re Mortg. Fund '08 LLC*,
    527 B.R. 351 (N.D. Cal. 2015) .............................................................................................13

*Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*,
    No. CV 14-02005 SJO EX, 2014 WL 3362061 (C.D. Cal. July 8, 2014) ...............................10

*Vox Network Sols., Inc. v. Gage Techs., Inc.*,
    No. 22-CV-09135-AMO, 2024 WL 1260573 (N.D. Cal. Mar. 25, 2024) ..............................10

*Wang v. Palo Alto Networks, Inc.*,
    No. C 12–05579 WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ...................................3

*X6D Ltd. v. Li-Tek Corps. Co.*,
    No. CV102327GHKPJWX, 2012 WL 12952726 (C.D. Cal. Aug. 27, 2012) ......................4, 5

*XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*,
    No. 3:21-CV-00105-BEN-KSC, 2022 WL 801743 (S.D. Cal. Mar. 15, 2022).........................6

<u>Statutes and Codes</u>

United States Code,
    Title 18, Section 1839(3) ...........................................................................................6
    Title 18, Section 1839(5)(A) ......................................................................................7

California Civil Code
    Section 3426.1(d)(1) ..................................................................................................6

1

## I.     INTRODUCTION

2     Roche's Opposition fails to provide any basis for its claims to survive Stanford's Motion to

3 Dismiss.[1]  **First**, Roche's trade secret misappropriation claims are barred by the statute of limitations

4 because Roche's own allegations show that Roche has had inquiry notice of the purported trade secret

5 misappropriation since as early as 2020.  While Roche's Opposition attempts to add caveats to the

6 allegations it made regarding the Chabon 2020 article as evidence of the alleged misappropriation,

7 Roche's own allegations in the FAC—which are accepted as true for purposes of the Motion—make

8 it clear that it had inquiry notice well outside of the limitations period.  Roche's attempts to now walk

9 back its own allegations must be rejected.   **Second**, Roche still fails to allege with sufficient

10 particularity any actual trade secrets it owns.  Instead of describing those alleged trade secrets with the

11 requisite sufficiency, Roche's Opposition vaguely relies on the ninety-five exhibits it attached to its

12 FAC with no sort of specificity to indicate to Defendants or the Court what Roche claims are its actual

13 trade secrets.   **Third**, Roche's Opposition continues to rely on conclusory allegations regarding

14 Stanford's knowledge of the alleged misappropriation because Roche cannot sufficiently allege facts

15 establishing that Stanford itself knew or had reason to know that the allegedly misappropriated

16 information was a trade secret or that Drs. Kurtz, Diehn, or Alizadeh purportedly breached any duty

17 of confidentiality.  **Fourth**, Roche's UCL claim is preempted by CUTSA because it is based on the

18 same nucleus of facts.  **Fifth**, if Roche's DTSA claim is dismissed as to Stanford (which, as explained

19 in the Motion and herein, it should be), then its DJA claim must also be dismissed for lack of federal

20 subject matter jurisdiction.  **Finally**, the DJA can be independently dismissed at this stage because

21 Roche still fails to provide any reasonably susceptible interpretation of the contracts that supports its

22 ownership claims.

23     Because Roche's causes of action against Stanford fail for multiple reasons, including in ways

24 that cannot be cured by any amendments, the Motion should be granted in its entirety with prejudice

25 and without leave to amend.

26

27
_____

[1]  Terms defined in the Motion (Dkt. No. 109-1) have the same meaning in this Reply.  "Mot." refers
28     to the Motion itself, and "Opp." refers to Roche's Opposition (Dkt. No. 121).

1

## II.    ARGUMENT

### A.    Roche's Claims Against Stanford Are Barred By The Statute Of Limitations

As explained in Stanford's Motion, Roche's own allegations demonstrate that Roche was on inquiry notice of any purported misappropriation of its alleged trade secrets since March 2020, making its claims untimely under the relevant statutes of limitations.  Roche now improperly attempts to construe Chabon 2020—the article it repeatedly alleged "acknowledge[d] the use of Roche's" technology at issue here—in a way contrary to its allegations in the FAC.  *See, e.g.*, FAC ¶ 274.

In its Opposition, Roche now adds the caveat that "the general disclosures in Chabon 2020 only provided evidence of misappropriation when read ***together*** with subsequent statements by Defendants . . . ."  Opp. at 7 (emphasis in original).  However, nowhere in Roche's FAC does it say that the article must be read in conjunction with other statements.  While Roche's FAC does note that Foresight's website describes Chabon 2020 as a paper "related to Foresight's liquid biopsy technology (PhasED-Seq™)," nothing in this description supports Roche's new assertion that Chabon 2020 was only noteworthy once Roche realized that the research was being commercialized.  *See* FAC ¶ 273. In other words, this later reference to Chabon 2020 by Foresight doesn't explain how Roche suddenly realized that "the aspects of CAPP-Seq technology being researched in Chabon 2020 were the product of Roche's trade secrets."  *See* Opp. at 7.  Roche only now attempts to argue that Chabon 2020 must be supported by other documents in an effort to save its pleadings from its own missteps.

Roche's Opposition attempts to confuse the issues to save its pleadings by arguing that "Stanford does not point to anything in Chabon 2020 that would suggest the article evidences misappropriation under Roche's claims."  *See* Opp. at 7.  But Stanford does not need to point to anything in Chabon 2020; **instead, Stanford only needs to point to Roche's own allegations**. Indeed, in its FAC, Roche specifically cites to Chabon 2020 as purported evidence in support of its claims.  For example, Roche alleges:

> "On information and belief, Drs. Alizadeh, Diehn, and Kurtz used Roche's CAPP-Seq/iDES fusion caller algorithm trade secret to develop and perform PhasED-Seq.  **For example, Chabon 2020 acknowledged the use of CAPP-Seq variant calling and filtering, which includes fusion calling, in relation to the development of PhasED-Seq.**"

1    FAC ¶ 277 (emphasis added).  Roche cannot run from its own allegations.

2    Roche further attempts to confuse the issues by fabricating an argument made by Stanford.

3    Roche's Opposition states that "Stanford argues that because it (along with many other universities)

4    and multiple individuals were named authors on Chabon 2020 alongside the Individual Defendants,

5    they must have received access to Roche's trade secrets by association."  Opp. at 8.  Roche then goes

6    on to call this argument a "logical leap [] without any basis in fact."  *Id.*  Any such logical leap here is

7    being made by Roche—not Stanford.  As an initial point, Stanford does not purport itself to be a named

8    author on Chabon 2020, it merely references that the Individual Defendants "clearly indicate their

9    affiliation with Stanford" in the article.  Mot. at 7.  Additionally, this reference and Stanford's

10   reference to other co-authors on the article—those that list paid consultancies or other funding from

11   Roche—are used to show that Roche should have discovered Chabon 2020 sooner if it had exercised

12   reasonable diligence.  *Id.*  This shows that Roche had inquiry notice from Chabon 2020.

13   Similarly, Roche's attempts to distinguish Stanford's case law on the statute of limitations miss

14   the point.  For example, Roche notes that in *MedioStream, Inc. v. Microsoft Corp*, the plaintiff had

15   acknowledged earlier notice in a prior litigation.  Opp. at 8 (citing 869 F. Supp. 2d 1095, 1109 (N.D.

16   Cal. 2012).  While true, this is insignificant to the holding that Stanford cites to, which explains that

17   "when the statute of limitations begins to run on some of a plaintiff's trade secret claims against given

18   defendants, the statute also begins to run at the same time as to other trade secret claims against those

19   same defendants[.]"  Mot. at 6 (citing *MedioStream, Inc.*, 869 F. Supp. 2d at 1110).  Similarly, the

20   court's recognition in *Micrel Inc. v. Monolithic Power Sys.* that a former employee leaving under false

21   pretenses contributed to the finding of inquiry notice did not change its finding that a patent "should

22   have put a reasonable person on notice" of a misappropriation claim where the patent "state[d] that it

23   [was] a modification of [Plaintiff's] prior invention."  *Micrel Inc. v. Monolithic Power Sys., Inc.*,

24   No. C 04-04770 JSW, 2005 WL 6426678, at *6 (N.D. Cal. Dec. 9, 2005).  Roche further confuses the

25   issues in its Opposition by attempting to distinguish *Wang v. Palo Alto Networks, Inc.*, a case that

26   Stanford did not cite to in any way in its Motion.  Opp. at 9 (citing *Wang v. Palo Alto Networks, Inc.*,

27   No. C 12–05579 WHA, 2014 WL 1410346, at *6-7 (N.D. Cal. Apr. 11, 2014)).

28

1    Finally, Roche claims that Stanford "cannot have it both ways" and that because Stanford

2    argues that Roche has insufficient facts to plead misappropriation, it cannot argue that Roche would

3    have discovered misappropriation upon conducting a reasonable investigation after the publication of

4    Chabon 2020. Opp. at 10. Indeed, Stanford explains in its Motion that it "disputes that Chabon 2020

5    evidences any alleged misappropriation because there was no misappropriation." Mot. at 5. However,

6    Stanford brings this argument not in an attempt to "have it both ways," but rather to show that Roche's

7    claims are flawed **based on Roche's own allegations**. Even if Roche is able to show that it has made

8    sufficient allegations to support its claims against Stanford, construing Roche's pleadings in the light

9    most favorable to it here will show that it was on inquiry notice when Chabon 2020 was published.

10   Roche cannot escape this fatal flaw by creating a motion standard that does not exist in order to limit

11   Stanford's arguments.

12   **B.    Roche Still Fails To State A Trade Secret Misappropriation Claim Under Either**

13   **The DTSA Or CUTSA Against Stanford**

14        1.   Roche Fails to Adequately Identify Any Trade Secret

15             a.   *Roche did not allege any trade secret with sufficient particularity and*

16                  *instead merely points to its eighty-page FAC and voluminous exhibits*

17   The Opposition provided Roche with yet another opportunity to identify its trade secrets in the

18   face of Stanford's argument that the trade secrets are too ill-defined to meet pleading requirements.

19   Once again, Roche failed to identify what it believes are its trade secrets. Instead, Roche merely argues

20   that through its voluminous "eighty-page Amended Complaint, with its ninety-five attached exhibits"

21   it "identif[ies] and describe[s] the specific trade secrets." Opp. at 13; *see also id.* at 11, 16. But

22   Roche's own reliance on *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020)

23   (hereinafter "*InteliClear*") is inapposite—the Ninth Circuit expressly stated in *InteliClear* that "[i]t is

24   inadequate for plaintiffs to 'cite and incorporate by reference hundreds of documents that purportedly

25   reference or reflect the trade secret information.'" *InteliClear*, at 658 (quoting *X6D Ltd. v. Li-Tek*

26   *Corps. Co.*, No. CV102327GHKPJWX, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012)).

27   Indeed, in *X6D Ltd.*, the Court held that "[p]laintiffs fail[ed] to identify what exactly their trade secrets

28   [were]" and "instead list[ed] twenty 'categories of [p]laintiffs' trade secrets that [p]laintiffs allege to

-4-

1   be misappropriated.'" *Id.* For support, the plaintiffs "cite[d] and incorporate[d] by reference hundreds

2   of documents that purportedly 'reference or reflect the trade secret information disclosed to

3   [defendant]'" but "fail[ed] to specifically identify what in these documents [was] a trade secret and

4   where within these documents that information [was] located. This disclosure [was] insufficient to

5   satisfy [p]laintiffs' 'burden of identifying for the court exactly what ... it claim[s] as trade secrets.'"

6   *Id.* Thus, because plaintiffs did "not provide any assistance on where in those documents the trade

7   secrets [could] be found" and "effectively burie[d] its trade secrets in documentation, [the Court was]

8   not required to sift through those documents and speculate as to what information contained therein

9   [was] claimed as a trade secret." *Id.* at *8.

10         So too here. Roche relies on hundreds of pages of exhibits, but it fails to point to where within

11  those documents the Alleged CAPP-Seq/iDES Trade Secrets supposedly can be found. *See, e.g.*,

12  FAC ¶¶ 131 ("Roche's CAPP-Seq/iDES selector library generation algorithm, including

13  improvements made by Roche post-acquisition, is described in Ex. 50.), 152 ("The CAPP-Seq/iDES

14  germline variant filtering algorithm, as acquired by Roche from CappMed, is described in Ex. 51."),

15  213 ("A portion of Roche's list of CAPP-Seq/iDES blacklisted genes, including improvements made

16  by Roche post-acquisition, is shown in Ex. 95."), 218 ("Roche's list of CAPP-Seq/iDES whitelisted

17  genes, which has not been made public, as acquired from CappMed, is shown in Ex. 96."), 220

18  ("Roche's list of CAPP-Seq/iDES whitelisted genes, including improvements made by Roche post-

19  acquisition, are shown in Exs. 97-102."). As Roche recognizes, at the pleading stage, a plaintiff must,

20  at a minimum, "provide reasonable notice of the issues which must be at the time of trial and ... provide

21  reasonable guidance in ascertaining the scope of appropriate discovery." Opp. at 12 (quoting

22  *Sylabs, Inc. v. Rose*, No. 23-CV-00849-SVK, 2023 WL 8813517, at *5 (N.D. Cal. Dec. 19, 2023)).

23  Similar to the plaintiffs in *X6D Ltd.*, by generally referring to its eighty-page FAC and over ninety

24  exhibits, Roche "buries its trade secrets in documentation" and subjects both the Court and Defendants

25  "to sift through [these] documents and speculate as to what information contained therein is claimed

26  as a trade secret." *X6D Ltd*, 2012 WL 12952726, at *8.

27         Indeed, the cases Roche claims have survived motions to dismiss with purported "far less

28  detailed descriptions" in reality provide far more guidance in identifying the claimed trade secrets.

1    Opp. at 13-14; *see Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409-EJD, 2015

2    WL 2265479, at *1-2, 5-6 (N.D. Cal. May 13, 2015) (plaintiff alleging the defendants' distinct design

3    software misappropriated plaintiff's particular source code as evidenced by defendants' "identical

4    idiosyncrasies and bugs that could have been introduced only through the wholesale copying of

5    significant portions of misappropriated [] code" such as the "'coloring in' or 'shading' of certain

6    geometries"); *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (plaintiff

7    alleging the exact technology in question and specifically listing particular methods plaintiff provided

8    to defendant, such as "high throughput thin-film deposition; epitaxial lift-off of the thin-film; and

9    GaAs substrate maintenance and re-use[. . .] confidential cost analysis; proofs and tests of

10   manufacturing concepts and techniques; tool roadmaps; manufacturing process flows; and

11   identification of equipment and equipment vendors . . . .").[2]  Because Roche still cannot identify its

12   alleged trade secrets, its claims should be dismissed.

13              b.    *It is appropriate to consider whether Roche has sufficiently alleged*

14                    *information that qualifies as a trade "secret" at the pleading stage*

15         In apparent recognition that its identification of trade secrets is inadequate, Roche claims that

16   it need not prove that its Alleged CAPP-Seq/iDES Trade Secrets are a trade "secret" at the pleading

17   stage.  But Roche's failure to do so is in direct contravention of Cal. Civ. Code § 3426.1(d)(1).  *See*

18   *also* 18 U.S.C. § 1839(3).  Moreover, cases that Roche relies on for the proposition that the Court

19   "need not engage in a merits-based inquiry as to whether [the Alleged CAPP-Seq/iDES Trade Secrets]

20   are allegedly public" are distinguishable—the plaintiffs in those cases had already adequately

21   identified at least certain aspects of its trade secrets were not publicly disclosed.  Opp. at 14; *see*

22   *AllRounds, Inc. v. Eshares, Inc.*, No. 20-CV-07083-VC, 2021 WL 2945532, at *1 (N.D. Cal. July 14,

23   2021); *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, No. 3:21-CV-00105-BEN-KSC, 2022

24

25   _____

26   [2]  Roche also cites *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10–CV–03428–LHK,
     2011 WL 1044899, at *1 (N.D. Cal. Mar. 23, 2011) (hereinafter "*Brocade*") in support of the
27   proposition that "courts routinely approve far less detailed descriptions than at issue here."  Opp. at
     13-14.  However, *Brocade* did not discuss whether the subject matter of a trade secret was described
28   with sufficient particularity but rather whether plaintiff alleged sufficient facts to generally make a
     trade secret misappropriation claim.  *Brocade*, 2011 WL 1044899, at *5.

1   WL 801743, at *20 (S.D. Cal. Mar. 15, 2022).  Because Roche still cannot identify its alleged trade
2   secrets, its claims are properly dismissed.

3                2.      Roche Still Fails to Make Any Non-Conclusory Allegations of
4                        Misappropriation by Stanford

5          With its heavy focus on defendant Foresight and the individual defendants, the FAC fails to
6   establish misappropriation **by Stanford**.  Tellingly, Roche's own application of the elements to
7   establish a misappropriation claim under the DTSA and CUTSA evidences its own shortcoming—it
8   is devoid of any allegations relating to Stanford's purported knowledge of the misappropriation of the
9   Alleged CAPP-Seq/iDES Trade Secrets.  Opp. at 11; *see also* 18 U.S.C. § 1839(5)(A).  Similar to its
10  allegations in the FAC, Roche relies on conclusory allegations to argue that "Stanford knew or should
11  have known that Drs. Alizadeh, Diehn, and Kurtz had an obligation to protect the confidentiality of
12  [the Alleged CAPP-Seq/iDES Trade Secrets]."  Opp. at 17.  But simply alleging that Stanford was
13  "aware that Roche had acquired CappMed" and Stanford's execution of the Fourth Amendment to the
14  Stanford Agreement does not mean that Stanford knew or had reason to know that the Alleged
15  CAPP-Seq/iDES Trade Secrets were acquired by improper means, much less that Drs. Alizadeh,
16  Diehn, and Kurtz had an obligation to protect the confidentiality of the Alleged CAPP-Seq/iDES Trade
17  Secrets (whatever those alleged trade secrets might be).

18         Indeed, this is distinguishable from *Beluca Ventures LLC v. Einride Aktiebolag*, where the
19  counterclaimant expressly alleged that one of the counter-defendant's employees, on a specific date,
20  emailed "several of his partners and employees at Core Finance the McKinsey report [(which analyzed
21  counterclaimant's market position, potential competitors, and opportunities for growth)] that
22  contained [counterclaimant's] trade secrets. [The counter-defendant's employee] warned his partners
23  at Core Finance about the confidentiality of the presentation and directed them not to share it with
24  anyone else."  *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 904, 910 (N.D. Cal.
25  2023).  Here, absent from Roche's allegations is any indication that Drs. Diehn, Alizadeh, and Kurtz
26  provided their consulting agreements to Stanford, or updated Stanford on their research at Roche, or
27  provided the Alleged CAPP-Seq/iDES Trade Secrets to Stanford in their invention disclosures, or that
28  Stanford knew such information was a trade secret.  Rather, Roche makes several improper, inferential

1    leaps when arguing that Drs. Diehn, Alizadeh, and Kurtz were aware of their confidentiality

2    agreements with Roche, so, as professors at Stanford, they must have been involved in securing

3    funding for Stanford for research relating to CAPP-Seq technology and the prosecution of the Disputed

4    Patent Applications; thus, they "ought to have 'in good faith and the exercise of ordinary care and

5    diligence' shared their knowledge with Stanford." Opp. at 18.  Again, Roche does not sufficiently

6    allege what "knowledge" from Drs. Alizadeh, Diehn, and Kurtz must have been shared with Stanford

7    that would render Stanford on notice of the Alleged CAPP-Seq/iDES Trade Secrets being acquired by

8    improper means.

9         Roche's own case law shows exactly how its claims fail.  In *Alert Enter., Inc. v. Rana*, the

10   Court found that the plaintiff failed to adequately plead a trade secret misappropriation claim because

11   plaintiff's "conclusory allegations that [the individual defendant] was acting as [the corporate

12   defendant's] agent when he took the trade secrets [] are insufficient" because the plaintiff "must allege

13   facts that support a plausible inference that [the individual defendant] was acting as [the corporate

14   defendant's] agent." *Alert Enter., Inc. v. Rana*, No. 22-CV-06646-JSC, 2023 WL 2541353, at *2-*4

15   (N.D. Cal. Mar. 16, 2023).  Similarly, here, absent from Roche's FAC are any allegations relating to

16   Drs. Diehn, Alizadeh, and Kurtz acting as Stanford's agents for Stanford's own benefit when

17   Drs. Diehn, Alizadeh, and Kurtz purportedly misappropriated the Alleged CAPP-Seq/iDES Trade

18   Secrets.  Thus, contrary to Roche's conclusory allegations, Stanford cannot be held liable for

19   misappropriation based on the doctrine of *respondeat superior*.

20        Furthermore, Roche's only support for its argument that it "has adequately pled that Stanford

21   used and disclosed Roche's trade secrets" is that "Defendants developed PhasED-Seq by building on

22   CAPP-Seq." Opp. at 19.  Roche confirms Stanford's position that it is not barred from building upon

23   technology disclosed in patents but argues that "Stanford may not escape liability for misappropriation

24   by choosing to file patent applications using information from misappropriated trade secrets."  Again,

25   devoid from Roche's arguments are any allegations that Stanford's patent applications were built on

26   any trade secrets.  Instead, Roche summarily states that "Stanford used and disclosed Roche's trade

27   secrets through its use and disclosure of certain details related to PhasED-Seq in the disputed Patent

28   Applications" but fails to disclose what those "certain details related to PhasED-Seq" are and whether

-8-

1    Stanford knew that those "certain details" were trade secrets. Therefore, dismissal is warranted here

2    in light of Roche's repeated failure to sufficiently plead (and lack of factual allegations supporting) a

3    necessary element of trade secret misappropriation under both the DTSA and CUTSA as to Stanford.

4          **C.**     **Roche's Claims For Unfair Competition And Declaratory Judgment Must Also**

5               **Be Dismissed**

6              1.    <u>Roche's UCL Claim is Based on the Same Nucleus of Facts as its CUTSA</u>

7                    <u>Claim and, Thus, is Preempted</u>

8          Roche's futile attempt to save its Unfair Competition Claim also fails. First, as Stanford

9    highlighted in its Motion, Roche fails entirely to allege in its FAC that Stanford engaged in any

10   unlawful, unfair, or fraudulently deceptive business acts or practices. *Cf.* FAC, ¶ 431 [alleging that

11   Foresight engaged in such acts or practices but never alleging that Stanford did].[3] This alone mandates

12   dismissal of Roche's UCL claim against Stanford, as such an allegation is a necessary element of the

13   claim. *See Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013) ("A defendant's

14   liability [under the UCL] must be based on his personal 'participation in the unlawful practices' and

15   'unbridled control' over the practices.") (quotations cleaned up).

16         Second, even if Roche sufficiently alleged unlawful, unfair, or fraudulently deceptive conduct

17   by Stanford (it did not), its UCL claim still fails because it is preempted by CUTSA. Roche attempts

18   to overcome preemption by alleging that Stanford "engaged in unlawful, unfair, and fraudulent

19   conduct when it knowingly utilized information it had improperly obtained from Roche, to file

20   numerous patents, including its purported 'exclusive license' to Foresight, which Foresight used to

21   raise funding to compete against Roche in the field of cancer diagnostics and monitoring using

22   ctDNA." Opp. at 20. However, what Foresight chooses to do as a competitor to Roche does not reflect

23   Stanford's own actions. Indeed, holding Stanford responsible for such actions would impose broad

24   liability on anyone who licenses any technology to anybody. This type of attenuated relationship does

25   not warrant liability, as evidenced in Roche's own case law it relies on. *See, e.g.*, *Henry Schein, Inc.*

26

27   [3] Stanford made this same argument in its initial Motion to Dismiss Roche's original Complaint.
    Thus, Roche has had two chances to make this same allegation towards Stanford but has failed to

28       do so.

1   *v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at \*4 (N.D. Cal. Mar. 1, 2017) (finding that the

2   former employer's UCL claim against its former employee was not preempted by its CUTSA claim

3   because it contained several allegations relating to the former employee's misconduct before the

4   former employee joined the former employer's competitor).

5         Therefore, because the only purported acts Roche alleges Stanford engaged in are based

6   entirely on the same nucleus of facts as its trade secret misappropriation claim, Roche's UCL claim is

7   preempted by CUTSA and must be dismissed.  *See Vox Network Sols., Inc. v. Gage Techs., Inc.*,

8   No. 22-CV-09135-AMO, 2024 WL 1260573, at \*4 (N.D. Cal. Mar. 25, 2024) (citing *K.C. Multimedia,*

9   *Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958, 961-62 (2009)

10  (dismissing UCL claim because CUTSA preempts claims for unfair competition based on the same

11  nucleus of facts as a trade secrets claim).

12              2.    The Declaratory Judgment Act Claim Must Also Be Dismissed

13                    a.    *If the DTSA claim is dismissed, the DJA claim must also be dismissed.*

14        Once Roche's DTSA claim is dismissed, Roche's Declaratory Judgment Act ("DJA") claim

15  must be dismissed for lack of subject matter jurisdiction as well.  This is because the Declaratory

16  Judgment Act itself cannot serve as a basis for federal subject matter jurisdiction.  *See Columbia*

17  *Sussex Mgmt., LLC v. City of Santa Monica*, 482 F. Supp. 3d 1002, 1016, n.3 (C.D. Cal. 2020) ("To

18  the extent the claim for declaratory relief is brought under the Declaratory Judgment Act,

19  28 U.S.C. § 2201, it is axiomatic that the Act 'does not itself confer federal subject matter

20  jurisdiction.'") (citing *Fid. & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979)); *Quest*

21  *Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*, No. CV 14-02005 SJO EX, 2014

22  WL 3362061, at \*3 (C.D. Cal. July 8, 2014) (hereinafter "*Quest Nutrition*") ("The Court cannot

23  exercise federal question jurisdiction solely on the basis of Plaintiff's claims under the Declaratory

24  Judgment Act, because the Declaratory Judgment Act only creates a remedy and is not an independent

25  basis for jurisdiction.") (internal citations omitted).

26        Roche makes no attempt to distinguish *Quest Nutrition* and instead argues—in a footnote, no

27  less—that the Court could choose to retain jurisdiction over the DJA claim without the DTSA claim.

28  Opp. at 21 n.9.  However:

1

2

3

4

> "[F]ederal courts have discretion under the DJA only as to whether to award declaratory relief pursuant to the jurisdiction that they must properly derive from the underlying controversy between the litigants. Generally, then, when courts refer to a district court's discretion to 'exercise' or 'accept' jurisdiction under the DJA, they invoke the court's discretion to provide a declaratory remedy pursuant to its otherwise proper subject matter jurisdiction over a dispute."

5

*Countrywide Home Loans, Inc., v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011). Roche

6

entirely misses the point. The DJA claim is solely derived from the DTSA claim and as such, Roche's

7

DJA claim must be dismissed *because* its DTSA claim must also be dismissed, as explained in Section

8

II.B. Thus, if the DTSA claim is dismissed (as it should be for all the reasons explained in the Motion

9

and herein), the DJA claim should be dismissed as well.

10

> b.    <u>*The only fair interpretation of the contracts establishes that Stanford is*</u>

11

> <u>*the lawful owner of the Disputed Patent Applications*</u>.

12

Even in the event that Roche's DTSA claim is not dismissed, Roche has still failed to plausibly

13

allege a claim for ownership of the Disputed Patent Applications.

14

As an initial matter, Roche attempts to argue that Stanford's assignment agreements with

15

Drs. Diehn, Alizadeh, and Kurtz are not cited in or relied upon in the FAC. However, Stanford filed

16

a Request for Judicial Notice as to these documents when it filed its motion to dismiss Roche's original

17

Complaint. Dkt. No. 61, Exs. 4, 5, 6 (hereinafter, the "Unopposed RJN"). Roche made no attempt to

18

oppose the Unopposed RJN in response to Stanford's original motion. Stanford again cited to the

19

Unopposed RJN in the current Motion (Mot. at 19)—and again, Roche made no attempt at an

20

opposition. As such, Roche cannot call the assignment agreements into question now.

21

Further, Roche's attempt to denote PhasED-Seq as an invention arising out of the Individual

22

Defendants' work with Roche is unavailing. Roche focuses on language from the 2015 Consulting

23

Agreements stating that the Individual Defendants "committed to '<u>**not use any equipment, supplies,**</u>

24

<u>**facilities or other resources of Stanford**</u>['] in connection with their work for Roche and to '***segregate***

25

***all work related to the performance of the Services from any work performed by Provider as a***

26

***Stanford employee or otherwise on behalf of Stanford.***'" Opp. at 22 (emphasis in original) (quoting

27

FAC, Ex. 1 ¶ 5.2). Then, in attempting to distinguish *Board of Trustees of Leland Stanford Junior*

28

*University v. Roche Molecular Systems, Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009), Roche falsely states

1   that Stanford's assignment agreements with the Individual Defendants "are limited in scope and do

2   not cover the inventions Roche is claiming ownership over."  Opp. at 22.  As Stanford has shown, the

3   assignment agreements cover "all potentially patentable inventions conceived or first reduced to

4   practice in whole or in part in the course of [the Individual Defendants'] University responsibilities or

5   with more than incidental use of University resources."  Unopposed RJN, Exs. 4, 5, 6.  Roche has not

6   made any allegations that the Individual Defendants 1) used Stanford's resources to perform their

7   work for Roche, 2) used Roche's resources to created PhasED-Seq at Stanford, or 3) did not segregate

8   their work performed for Stanford and for Roche.  As such, PhasED-Seq is covered by Stanford's

9   earlier-in-time agreements and thus belongs to Stanford.

10          Roche also falsely conflates "know-how developed by [Drs. Diehn and Alizadeh] that is

11  unpatented but needed to practice the [CappMed] Patents" with the PhasED-Seq technology in the

12  Disputed Patent Applications.  The ownership of know-how needed to practice CappMed's technology

13  has no bearing on the ownership of the Disputed Patent Applications and Roche makes no attempt to

14  explain why it believes that the two are connected.  As such, this argument is unpersuasive and lacks

15  any basis in law or fact.

16          Roche makes a similar failing argument by stating that by consenting to the acquisition of

17  CappMed by Roche, Stanford also consented to the assignment provisions of Drs. Diehn and

18  Alizadeh's consulting agreements with Roche.  Roche cites to the Fourth Amendment to the Stanford

19  Agreement which states: "Stanford hereby consents to any deemed assignment **by CappMed** of the

20  Agreement in connection with the [CappMed merger.]"  FAC, Ex. 4 ¶ 3.1 (emphasis added).  This

21  CappMed provision has no bearing on Drs. Diehn and Alizadeh's prior assignment agreements with

22  Stanford, as these agreements were not made in connection with the merger—nor were they made by

23  CappMed.  Again, Roche asserts factually incorrect claims that it makes no attempt to support, because

24  it knows that it cannot.

25          In a vague attempt to save its DJA claim, Roche has tried to muddy the waters of contract

26  interpretation by attempting to proffer multiple interpretations of the contracts at issue in this matter.

27  However, "[w]hile resolving the disputed meaning of a contract is generally inappropriate on a motion

28  to dismiss, dismissal may be appropriate where the language of the contract is clear.  In addition, the

Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 363 (N.D. Cal. 2015) (citing *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).  As shown above and in Stanford's Motion, the language of the contracts is clear; Roche is unable to present any fair interpretation of these contracts that supports the idea that the patents belong to Roche.  As such, this issue can be addressed on a motion to dismiss, and Roche's DJA claim should be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Stanford respectfully requests that the Court dismiss Plaintiffs' First Cause of Action for Trade Secret Misappropriation Under the Defend Trade Secrets Act, Second Cause of Action for Trade Secret Misappropriation Under the California Uniform Trade Secrets Act, Eighth Cause of Action for Unfair Competition, and Tenth Cause of Action for Declaratory Judgment as to Stanford with prejudice and without leave to amend.

Dated: February 19, 2025                PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ David J. Tsai*

By:    JACOB R. SORENSEN
DAVID J. TSAI
ALEKZANDIR MORTON
NATALIE TRUONG

Attorneys for Defendant *The Board of Trustees of the Leland Stanford Junior University*