1  IRELL & MANELLA LLP
   Morgan Chu (CA 70446)
2  MChu@irell.com
   Alan Heinrich (CA 212782)
3  AHeinrich@irell.com
   Jordan Nafekh (CA 328151)
4  JNafekh@irell.com
   Henry White (CA 351549)
5  HWhite@irell.com
   1800 Avenue of the Stars, Suite 900
6  Los Angeles, California 90067-4276
   Telephone:    (310) 277-1010
7  Facsimile:    (310) 203-7199

8  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Kevin P.B. Johnson (Bar No. 177129)
9  kevinjohnson@quinnemanuel.com
   Andrew J. Bramhall (Bar No. 253115)
10 andrewbramhall@quinnemanuel.com
   555 Twin Dolphin Drive, Fifth Floor
11 Redwood Shores, California 94065
   Telephone:    (650) 801-5000
12 Facsimile:    (650) 801-5100

13 Sandra L. Haberny (Bar No. 260977)
   sandrahaberny@quinnemanuel.com
14 David M. Elihu (Bar No. 303043)
   davidelihu@quinnemanuel.com
15 Hana Oh (Bar No. 300846)
   865 South Figueroa Street, 10th Floor
16 Los Angeles, California 90017
   Telephone:    (213) 443-3000
17 Facsimile:    (213) 443-3100

18 *Attorneys for Foresight Diagnostics Inc.*

19           **UNITED STATES DISTRICT COURT**

20           **NORTHERN DISTRICT OF CALIFORNIA**

21                  **SAN JOSE DIVISION**

22 ROCHE MOLECULAR SYSTEMS, INC.      )   Case No. 5:24-cv-03972-EKL
   and ROCHE SEQUENCING SOLUTIONS,    )
23 INC.,                              )   **FORESIGHT DIAGNOSTICS INC.'S**
                                      )   **REPLY IN SUPPORT OF ITS MOTION**
24           Plaintiffs               )   **TO DISMISS PLAINTIFFS' FIRST**
                                      )   **AMENDED COMPLAINT PURSUANT**
25      v.                            )   **TO FED. R. CIV. P. 12(b)(6)**
                                      )
26 FORESIGHT DIAGNOSTICS INC., DAVID  )
   KURTZ, an individual, and BOARD OF )
27 TRUSTEES OF THE LELAND STANFORD    )
   JUNIOR UNIVERSITY,                 )
28                                    )
           Defendants.                )

1

## **TABLE OF CONTENTS**

2

**Page**

3

I.    INTRODUCTION.................................................................................................................1

4

II.   ROCHE CANNOT JUSTIFY ITS FAILURE TO TIMELY BRING ITS
      CLAIMS.............................................................................................................................1

5

      A.    ROCHE'S ALLEGATIONS OF MISAPPROPRIATION BASED
            ON CHABON 2020 ARE JUDICIAL ADMISSIONS THAT MUST

6

            BE ACCEPTED AS TRUE, EVEN IF FATAL TO ROCHE'S
            CASE.....................................................................................................................1

7

8

      B.    ROCHE MISSTATES THE LAW ON NOTICE OF TRADE
            SECRET MISAPPROPRIATION ........................................................................3

9

      C.    CHABON 2020 ESTABLISHES INQUIRY NOTICE OF
            ALLEGED MISAPPROPRIATION.......................................................................4

10

11

III.  ROCHE FAILS TO STATE A TRADE SECRET CLAIM .................................................7

12

      A.    ROCHE'S DUTSA CLAIM SHOULD BE DISMISSED AS
            DUPLICATIVE .....................................................................................................7

13

      B.    ROCHE STILL HAS NOT IDENTIFIED ITS ALLEGED TRADE
            SECRETS WITH PARTICULARITY...................................................................7

14

15

      C.    THE BAYH-DOLE ACT FURTHER RENDERS ROCHE'S
            TRADE SECRET CLAIMS IMPLAUSIBLE ......................................................9

16

      D.    ROCHE FAILS TO ALLEGE FORESIGHT USED OR
            ACQUIRED ROCHE'S TRADE SECRETS.........................................................11

17

18

IV.   ROCHE'S UNFAIR COMPETITION CLAIMS ARE PREEMPTED ..............................12

19

V.    ROCHE'S DECLARATORY JUDGMENT CLAIM FOR PATENT
      OWNERSHIP SHOULD BE DISMISSED .......................................................................13

20

VI.   CONCLUSION ................................................................................................................15

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

**Page(s)**

2

### **Cases**

3

4
*Acorn Bay v. CamelBak Prods., LLC,*
    2020 WL 7664450 (N.D. Cal. Dec. 24, 2020) ........................................................ 13

5

6
*Albert's Organics, Inc. v. Holzman,*
    445 F. Supp. 3d 463 (N.D. Cal. 2020) .................................................................. 13

7
*AllRounds, Inc. v. Eshares, Inc.,*
    2021 WL 2945532 (N.D. Cal. July 14, 2021) ......................................................... 9

8

9
*Alta Devices, Inc. v. LG Elecs., Inc.,*
    2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) ....................................................... 13

10

11
*Am. Title Ins. Co. v. Lacelaw Corp.,*
    861 F.2d 224 (9th Cir. 1988) ................................................................................. 2

12
*Anduril Indus., Inc. v. Salient Motion Inc.,*
    2024 WL 1600661 (C.D. Cal. Mar. 4, 2024) ......................................................... 7

13

14
*Attia v. Google LLC,*
    983 F.3d 420 (9th Cir. 2020)......................................................................... 3, 8, 12

15

16
*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,*
    563 U.S. 776 (2011) .............................................................................................. 10

17
*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.,*
    727 F.3d 917 (9th Cir. 2013)................................................................................. 12

18

19
*Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.,*
    2021 WL 5197215 (N.D. Cal. Nov. 9, 2021) .......................................................... 9

20

21
*Casumpang v. Hawaiian Com. & Sugar Co.,*
    712 F. App'x 709 (9th Cir. 2018)........................................................................... 2

22
*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.,*
    517 F.3d 1284 (Fed. Cir. 2008)............................................................................. 14

23

24
*FlexWage Sols. LLC v. Ceridian HCM Holding Inc.,*
    2024 WL 2132620 (Del. Super. Ct. May 13, 2024)................................................ 6

25

26
*Forcier v. Microsoft Corp.,*
    123 F. Supp. 2d 520 (N.D. Cal. 2000) ................................................................... 5

27
*Fox v. Ethicon Endo-Surgery, Inc.,*
    35 Cal. 4th 797 (2005)......................................................................................... 4, 7

28

*Gatan, Inc. v. Nion Co.*,
    2018 WL 2117379 (N.D. Cal. May 8, 2018) ........................................................................ 9

*Henderson v. United Student Aid Funds, Inc.*,
    918 F.3d 1068 (9th Cir. 2019) ........................................................................................... 15

*Henry Schein, Inc. v. Cook*,
    2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ....................................................................... 13

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ............................................................................................... 8

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ........................................................................................... 14

*Memry Corp. v. Ky. Oil*,
    2005 WL 8162558 (N.D. Cal. Apr. 8, 2005) ....................................................................... 5

*MGA Ent., Inc. v. Mattel, Inc.*,
    41 Cal. App. 5th 554 (2019) ........................................................................................... 4, 7

*Micrel Inc. v. Monolithic Power Sys., Inc.*,
    2005 WL 6426678 (N.D. Cal. Dec. 9, 2005) ....................................................................... 3

*Nextdoor.Com, Inc. v. Abhyanker*,
    2013 WL 3802526 (N.D. Cal. July 19, 2013) ..................................................................... 8

*Novation Sols., Inc. v. Issuance Inc.*,
    2023 WL 5505908 (C.D. Cal. June 27, 2023) ..................................................................... 8

*Orkin v. Taylor*,
    487 F.3d 734 (9th Cir. 2007) ............................................................................................... 6

*P2i Ltd. v. Favored Tech USA Corp.*,
    2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ................................................................ 7, 8

*Pellerin v. Honeywell Int'l, Inc.*,
    877 F. Supp. 2d 983 (S.D. Cal. 2012) ............................................................................... 12

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
    522 F.3d 1049 (9th Cir. 2008) ............................................................................................. 2

*Portney v. CIBA Vision Corp.*,
    2008 WL 5505518 (C.D. Cal. Dec. 24, 2008) ..................................................................... 3

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
    360 F. Supp. 3d 994 (N.D. Cal. 2018) ............................................................................... 12

*Rhynes v. Stryker Corp.*,
    2011 WL 2149095 (N.D. Cal. May 31, 2011) ..................................................................... 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*RoboticVISIONTech, Inc. v. ABB Inc.*,
    2024 WL 1299691 (D. Del. Mar. 27, 2024) ................................................................... 5

*Sylabs, Inc. v. Rose*,
    2023 WL 8813517 (N.D. Cal. Dec. 19, 2023) ......................................................... 8, 13

*Tri Tool, Inc. v. Hales*,
    2023 WL 7130610 (E.D. Cal. Oct. 30, 2023) ............................................................. 12

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
    617 F. Supp. 2d 938 (N.D. Cal. 2007) ..................................................................... 11

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ..................................................................................... 6

*Waymo LLC v. Uber Techs., Inc.*,
    256 F. Supp. 3d 1059 (N.D. Cal. 2017) .............................................................. 12, 13

*York Cnty. v. HP, Inc.*,
    65 F.4th 459 (9th Cir. 2023) ....................................................................................... 6

## <u>Statutes</u>

18 U.S.C. § 1839(5) ..................................................................................................... 1

I.    **INTRODUCTION**

Roche's Opposition fails to refute the central arguments of Foresight's Motion to Dismiss. First, unable to deny its trade secret claims are time-barred as a result of its own allegations that the Chabon 2020 article was an act of unlawful "use," Roche seeks to shift the burden to Foresight, stating that it must concede or admit misappropriation to properly challenge Roche's Complaint. That is not the law. The Court must take Roche's well-pled allegations—including the ones regarding Chabon 2020 that show its claims are time-barred—as true at this stage. Roche's backup position that Chabon 2020 could not have raised more than a "general concern" of misappropriation is likewise baseless. The FAC relies on Chabon 2020 as a primary piece of evidence that Foresight allegedly misappropriated multiple purported trade secrets (though only one is required to put Roche on inquiry notice). Roche's argument that Chabon 2020 reveals Defendants' alleged misappropriation but would not have made a reasonably prudent person suspicious is implausible.

Second, even if Roche's trade secret claims were timely (they are not), Roche still has failed to identify any alleged trade secret with sufficient particularity. Roche admits that "aspects of CAPP-Seq were published before Roche's acquisition of CappMed in 2015," but fails to distinguish its purported trade secrets from public information. Opp. at 8.

Third, Roche cannot dispute that its CUTSA claim supersedes and preempts its unfair competition claims. As alleged in the FAC, Roche's CUTSA and unfair competition claims "derive from a common nucleus of operative facts." FAC ¶¶ 18, 427-29, 433-36.

Finally, on the remaining Declaratory Judgment claim, Roche's attempts to evade the language of the Stanford Oncologists' assignment agreements are unavailing. The assignment agreements, incorporated by reference into the FAC, assigned to Stanford the "right, title and interest" in the PhasED-Seq technology. *See, e.g.*, Dkt. 104-6 at 1.

II.    **ROCHE CANNOT JUSTIFY ITS FAILURE TO TIMELY BRING ITS CLAIMS**

    A.    **Roche's Allegations of Misappropriation Based on Chabon 2020 Are Judicial Admissions That Must Be Accepted as True, Even if Fatal to Roche's Case**

In its Opposition, Roche attempts to hide from its sworn allegations that Chabon 2020 constitutes an act of misappropriation of Roche trade secrets through use and disclosure. *See* 18 U.S.C.

§ 1839(5) ("the term 'misappropriation' means . . . <u>disclosure</u> or <u>use</u> of a trade secret of another without express or implied consent. . . .") (emphasis added). Roche's FAC contains numerous allegations that Chabon 2020 constituted an act of misappropriation, including for at least seven alleged trade secrets:

- FAC ¶ 227 (listing Chabon 2020 as a disclosure of "work[] [by Defendants] on phased variant detection during their time at Roche using Roche's CAPP-Seq/iDES platform, which led to the development of Foresight's PhasED-Seq technology");

- FAC ¶ 273 (in "Defendants' Misappropriation of Roche's Trade Secrets . . ." section stating "[a] 2020 paper co-authored by Drs. Alizadeh, Diehn, Kurtz, and Foresight cofounder Jake Chabon also describes the <u>use</u> of the CAPP-Seq adaptive variant caller when engaging in error suppression and variant calling in relation to the development of PhasED-Seq"); and

- FAC ¶ 274 (in same section, "Drs. Alizadeh, Diehn, and Kurtz used Roche's CAPP-Seq/iDES germline filtering algorithm trade secret to develop and perform PhasED-Seq. . . . Chabon 2020 further acknowledges the <u>use</u> of Roche's adaptive variant caller").

Mot. at 6-7, *see also* FAC ¶¶ 275-78 (in the same section on misappropriation, allegations of Chabon 2020 as evidence of improper use and disclosure of four additional trade secrets).

Now unable to walk back these fatal allegations, Roche attempts to argue, without citation, that to win on a statute of limitations defense at the pleading phase, Foresight would need to concede misappropriation or explain it in detail. Opp. at 2. Elsewhere, it argues that Foresight is "[u]nable to explain how Chabon 2020 either discloses or evidences use of misappropriation." *Id.* at 10.

These arguments are frivolous, cite no authority, and should be ignored. It is well established that on Foresight's Motion, Roche's allegations are deemed to be binding judicial admissions. *Casumpang v. Hawaiian Com. & Sugar Co.*, 712 F. App'x 709, 710 (9th Cir. 2018) (holding plaintiff's claims were time-barred based on allegations in the complaint, which "are considered judicial admissions conclusively binding on the party who made them") (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)). They are deemed true for purposes of determining whether Roche has stated a claim under Federal Rule of Civil Procedure 12(b)(6), even where Foresight does not agree with the allegations. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 (9th Cir. 2008) ("[I]n reviewing a motion to dismiss, we accept as true all well-pleaded facts in the

1    complaint[.]" (citation omitted)).  This includes Roche's allegations that publication of Chabon 2020

2    was an act of unlawful use and disclosure of multiple Roche trade secrets, constituting

3    misappropriation.  *See Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (plaintiff admitted

4    Google's patents disclosed the alleged trade secrets).  Foresight need not "explain" or concede

5    misappropriation because Roche's FAC alleges Chabon 2020 evidences "use" of trade secrets.

6              **B.**    **Roche Misstates the Law on Notice of Trade Secret Misappropriation**

7              Roche's trade secret claims are time-barred.  Based on its own admission, Roche was on

8    inquiry notice of potential misappropriation at least by March 25, 2020, when Chabon 2020 was

9    published.  Mot. at 6.  Roche alleges Chabon 2020 did not provide inquiry notice because "it did not

10   *disclose* any of Roche's trade secrets, nor did it evidence any *use* of Roche's secrets."  Opp. at 9.  But

11   Roche's actual pleading tells a different story—the FAC alleges that portions of Chabon 2020, Exhibit

12   104 to the FAC, ***demonstrate "use"*** of the alleged trade secrets.  FAC ¶¶ 274-78 (providing pin cites

13   to portions of Chabon 2020 that allegedly demonstrate "use" of various alleged trade secrets, including

14   to page 10, which includes multiple references to CAPP-Seq).  No authority supports Roche's notion

15   that entire trade secrets must be spelled out in detail for a party to be put on inquiry notice.

16             The relevant question is whether Chabon 2020 "would make a reasonably prudent person

17   suspicious" of potential misappropriation.  *Micrel Inc. v. Monolithic Power Sys., Inc*., 2005 WL

18   6426678, at *3 (N.D. Cal. Dec. 9, 2005).  If so, Roche had "a duty to investigate further and is charged

19   with knowledge of matters which would have been revealed by such an investigation."  *Id.*  Courts

20   hold sophisticated parties like Roche to a higher standard in discovering potential claims.  *Portney v.

21   CIBA Vision Corp.*, 2008 WL 5505518, at *9-10 (C.D. Cal. Dec. 24, 2008) (plaintiff failed to exercise

22   reasonable diligence because he "paint[ed] himself as a sophisticated businessperson who holds a wide

23   range of patents[,] whose inventions have resulted in profits totaling hundreds of millions of dollars").

24             It is not plausible that Roche, a sophisticated global company, would not have been aware of

25   Chabon 2020 when it was published.  Chabon 2020 was published in a leading scientific journal,

26   *Nature*, in an area of interest to Roche.  And, once Roche became aware of Chabon 2020, which Roche

27   contends demonstrates use of its alleged trade secrets, it would have had a duty to investigate further.

28

1    Roche bears the burden to establish a reasonable investigation would not have revealed

2    Foresight's alleged misappropriation. **_Roche's own complaint_** alleges Chabon 2020 evidences

3    misappropriation. *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *2 (N.D. Cal. May 31, 2011) ("In

4    order to rely on the discovery rule, 'a plaintiff *whose complaint shows on its face that his claim would*

5    *be barred without the benefit of the discovery rule* must specifically plead facts to show (1) the time

6    and manner of discovery and (2) the inability to have made earlier discovery despite reasonable

7    diligence. . . . the court places the burden on the plaintiff to show diligence.") (emphasis added).

8    Roche has not met its burden. Roche's conclusory allegation that it "could not have been

9    reasonably aware of Defendants' . . . trade secret misappropriation before [May 14, 2021]" is bereft

10   of facts—much less plausible ones—and does not address facts that must be specifically pled. FAC

11   ¶ 311. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 811 (2005) (holding claims time-barred

12   where the complaint failed to allege "**_specific facts_** supporting" plaintiff's explanation for why it could

13   not have discovered injury earlier through reasonable diligence) (emphasis added).

14        **C.**    **<u>Chabon 2020 Establishes Inquiry Notice of Alleged Misappropriation</u>**

15    Chabon 2020 is the ***linchpin*** of Roche's misappropriation allegation. FAC ¶¶ 227, 273-278,

16   281; Mot. at 7. Roche fails to explain how Chabon 2020 would not have made it, a sophisticated

17   plaintiff, suspicious of potential misappropriation. *See MGA Ent., Inc. v. Mattel, Inc.*, 41 Cal. App.

18   5th 554, 563 (2019) ("The standard for accrual of the statute of limitation under the discovery rule is

19   *not* the receipt of documentary evidence of misappropriations. The question is when MGA was on

20   notice of *a potential claim*." (internal quotations omitted)). Roche alleges Chabon 2020 "is directed

21   to the development of PhasED-Seq" and discloses the use of the following alleged trade secrets:

22   (i) "CAPP-Seq adaptive variant caller when engaging in error suppression and variant calling";

23   (ii) "Roche's adaptive variant caller, which includes adaptive variant calling in an unpaired manner";

24   (iii) "CAPP-Seq/iDES selector-wide SNV caller and a 'Monte-Carlo-based ctDNA detection index'";

25   (iv) "CAPP-Seq variant caller and filtering, which includes Indel calling"; (v) "CAPP-Seq variant

26   calling and filtering, includ[ing] fusion calling"; (vi) "Roche's CAPP-Seq CNV caller"; and

27   (vii) "CAPP-Seq panels including blacklisted and whitelisted genes." FAC ¶¶ 273-78, 281.

28    Chabon 2020's disclosure or use of even *one* of Roche's alleged trade secrets triggered

Roche's duty to investigate further. *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000) ("[W]hen the statute of limitations begins to run on some of a plaintiff's trade secret claims against given defendants, the statute also begins to run at the same time as to other trade secret claims . . . , even if there have not yet been any acts of misappropriation of the other trade secrets, at least when the plaintiff shared all the trade secrets with the defendants during the same time period and in connection with the same relationships and when the trade secrets concern related matters."). Roche (wrongly) asserts that it obtained broad intellectual property rights through the CappMed Acquisition, "including all patent rights, trade secrets, and know-how relating to the CAPP-Seq technology." FAC ¶ 47. Taken as true, Roche's claim that "Chabon 2020 disclosed only that the Individual Defendants were working on CAPP-Seq technology as they had been for years," as part of their *work at Stanford*, would have triggered Roche's duty to investigate, as CAPP-Seq is the technology to which Roche claims it acquired all rights and kept confidential. Opp. at 8. But by alleging that Chabon 2020 discloses the Stanford Oncologists' "use" of seven separate "trade secrets," Roche has pled itself into a time bar.

Roche's reliance on *Memry Corp. v. Ky. Oil*, 2005 WL 8162558, at *6 (N.D. Cal. Apr. 8, 2005), demonstrates why it should have been on inquiry notice by Chabon 2020. Opp. at 8. In *Memry*, the court found that the parties' "previous relationship" as trusted business partners, coupled with the counter-defendant's express assurances that he was working on a completely different concept than the alleged trade secret, "could have reasonably precluded [the counter-plaintiff] from becoming suspicious." 2005 WL 8162558 at *6. Here, the Stanford Oncologists' "relationship" to Roche should have made it suspicious of potential misappropriation. The Stanford Oncologists were Roche consultants developing "improvements" to CAPP-Seq (as noted in Chabon 2020, FAC, Ex. 104), while continuing their work at Stanford, as Roche was well aware. Opp. at 12. The Stanford Oncologists never provided assurances to Roche similar to those in *Memry*. *E.g.*, FAC ¶ 293.

Thus, Roche cannot rely on the parties' "previous relationship" to claim ignorance. *See, e.g.*, *RoboticVISIONTech, Inc. v. ABB Inc.*, 2024 WL 1299691, at *6 (D. Del. Mar. 27, 2024) (competitor's launch of a software product similar to plaintiff's put plaintiff on inquiry notice of its trade secret claim against the competitor, where plaintiff knew that the product was similar to its own *and* that its chief

scientist left to join the competitor while potentially being in possession of confidential information).

That the Stanford Oncologists, along with co-authors from other leading institutions, published an article in one of the world's leading peer-reviewed journals detailing alleged use of multiple claimed Roche trade secrets demonstrates that Roche should have been suspicious of any alleged misappropriation. *See FlexWage Sols. LLC v. Ceridian HCM Holding Inc.*, 2024 WL 2132620, at *4 (Del. Super. Ct. May 13, 2024) (mutual non-disclosure agreements between the parties obligated competitor to keep plaintiff's disclosures confidential, yet announcements demonstrated competitor was using plaintiff's confidential information, which put plaintiff, at least, on inquiry notice of misappropriation). Chabon 2020 includes references to Roche Molecular Diagnostics and Roche Sequencing Solutions, by name, in the Competing Interests disclosure section. FAC, Ex. 104 at 13. Roche's claim that it could not have been expected to be aware of Chabon 2020 does not pass muster.

*York Cnty. v. HP, Inc.*, 65 F.4th 459, 468 (9th Cir. 2023) is also inapposite. Opp. at 7. The plaintiffs in *York* did not have the facts necessary to plead their claims prior to the limitations date. The defendants argued plaintiffs' claims alleging securities fraud based on misleading statements contained in SEC filings were time-barred because the plaintiffs did not file suit until years after those filings. However, it was impossible for the plaintiffs to know the filings were false or misleading until the SEC issued an order revealing that those statements were actually intentional misrepresentations. *Id.* at 467. The Ninth Circuit concluded that, without the additional information from the SEC's order, the alleged misleading "statements seem[ed] like standard assurances to shareholders." *Id.*[1]

Unlike *York County*, Roche had all necessary facts available. It has alleged Chabon 2020 evidences improper use of the alleged trade secrets; the Stanford Oncologists co-authored Chabon 2020 and were under confidentiality obligations not to use or disclose Roche confidential information; and the Stanford Oncologists were Roche consultants. FAC ¶¶ 273-278, 281, 312, 316, 318, 395, 403. Also, unlike the plaintiff shareholders in *York County*, Roche is a sophisticated multinational

---

[1] Roche's citation to *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) is also misplaced. Opp. at 10. There, the Ninth Circuit held there were "no facts on the face of [plaintiff's] complaint which foreclose a showing of lack of reasonable notice." Here, the FAC alleges *as facts* that Chabon 2020 evidences misappropriation. *See Orkin v. Taylor*, 487 F.3d 734, 742 (9th Cir. 2007); FAC ¶¶ 273-278, 281.

1   healthcare conglomerate with devoted resources to discover and investigate alleged misappropriation.

2       Given the parties' previous relationship, lack of assurances (because none were requested),

3   and Roche's awareness of the Stanford Oncologists' continued work at Stanford, Roche should have

4   reasonably inquired to see whether any misappropriation occurred.  Thus, Chabon 2020 should have

5   raised more than just "general concerns."  Opp. at 12.

6       Contrary to Roche's assertions, California law makes clear that Roche "need not be aware of

7   ***specific facts*** necessary to establish the claim," only a "***suspect[ed] factual basis*** for [the claim's]

8   elements."  *MGA Ent., Inc.*, 41 Cal. App. 5th at 561-64 (emphasis added).  Courts "do not take a

9   hypertechnical approach" in using the term "elements."  *Fox*, 35 Cal. 4th at 807 ("[R]ather than

10  examining whether the plaintiffs suspect facts supporting each specific legal element of a particular

11  cause of action, [courts] look to whether the plaintiffs have reason to at least suspect that a type of

12  wrongdoing has injured them.").  Roche, armed with this knowledge, should have suspected potential

13  misappropriation, and was therefore on notice by March 25, 2020 (Chabon 2020's publication).

14  **III.    ROCHE FAILS TO STATE A TRADE SECRET CLAIM**

15      **A.    Roche's DUTSA Claim Should Be Dismissed as Duplicative**

16      Foresight's Motion established that Roche's DUTSA claim should be dismissed under

17  California's governmental interest test.  Mot. at 12.  In opposition, Roche does not dispute that its

18  claims under DUTSA and CUTSA are duplicative or that each step of the governmental interest test

19  is met.  Opp. at 3 n.4.  Instead, it argues that dismissal of its DUTSA claim is improper because

20  "there is no prejudice to Foresight from defending against both claims."  *Id.*[2]  But whether Foresight

21  would be prejudiced from defending against duplicative claims is irrelevant to the Court's analysis.

22  Thus, as in *Anduril Indus., Inc. v. Salient Motion Inc.*, 2024 WL 1600661 (C.D. Cal. Mar. 4, 2024),

23  the Court should dismiss Roche's DUTSA claim as duplicative.

24      **B.    Roche Still Has Not Identified Its Alleged Trade Secrets with Particularity**

25      Roche has not met its burden "of proving ownership of a trade secret, including both

26  identifying the trade secret and showing the trade secret exists."  *P2i Ltd. v. Favored Tech USA Corp.*,

27  _____

28  [2]  Foresight would, at minimum, incur additional expenses to defend against two separate claims,
    even if they involve near identical statutes.

2024 WL 4294652, at *3 (N.D. Cal. Sept. 24, 2024).  "Identifying trade secrets with sufficient particularity is important because defendants need concrete identification to prepare a rebuttal."  *Id.* (citing *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020)).  Roche could have a viable trade secret claim for technology related to CAPP-Seq only if Roche "reveals implementation details and techniques *beyond* what was disclosed in [a published patent application or paper]."  *Attia*, 983 F.3d at 426 (emphasis in original); Mot. at 13-15.  Having now had two attempts to distinguish its "trade secrets" from general knowledge, Roche still fails to meet this threshold burden: (1) Roche has not identified any non-public aspects of CAPP-Seq/iDES, (2) nor has it specified the "metes and bounds" of the alleged trade secrets.

Roche's alleged trade secret disclosure is insufficient for the same reasons described in *Sylabs, Inc. v. Rose*, 2023 WL 8813517, at *6 (N.D. Cal. Dec. 19, 2023)—a case on which Roche relies.  Opp. at 14.  In *Sylabs*, the court found that the plaintiff failed to "delineate the boundaries between its trade secrets and its information that has been made public through patents and patent applications."  2023 WL 8813517, at *6.  The court rejected the same argument Roche makes here that distinguishing between the confidential and public aspects of the technology would require expert discovery.

Roche claims that Foresight "applies the wrong standard for a case at this stage."  Opp. at 15.  "In fact, it is well established in the Ninth Circuit that at the motion to dismiss phase 'publication of information in a patent application eliminates any trade secrecy.'"  *Novation Sols., Inc. v. Issuance Inc.*, 2023 WL 5505908, at *6 (C.D. Cal. June 27, 2023) (quoting *Attia*, 983 F.3d at 426).  Roche argues *Attia* is distinguishable because the plaintiff in that case admitted the patents in question disclosed the secrets.  Opp. at 15.  But Roche—just like the plaintiff in *Attia*—admits "[t]here is no dispute that certain aspects of CAPP-Seq were published before Roche's acquisition of CappMed in 2015, and that these publications reflected work conducted by the Individual Defendants."  Opp. at 8.

Courts in this district have dismissed trade secret claims based on information disclosed in a patent application, even if the application did "not [disclose] prominently" the trade secrets.  *See, e.g.*, *Nextdoor.Com, Inc. v. Abhyanker*, 2013 WL 3802526, at *8 (N.D. Cal. July 19, 2013).  Here, the '084 patent discloses CAPP-Seq/iDES adapters in detail, including their components and structure.  Mot. at 14 (citing Dkt. 104-3, "Y-Shaped Adaptors Comprising Unique Barcodes," col. 11:51-12:60; 13:33-

19:51; Figs. 1, 6).  The FAC does not distinguish the Roche "CAPP-Seq/iDES barcodes" from the CAPP-Seq/iDES barcodes disclosed in the '084 patent.  *Compare* FAC ¶ 93 *with* Dkt. 104-3, col. 47 ("Example 7: Processing of Molecular Barcodes," describing use of "index" and "insert" barcodes).

Roche responds that the '084 patent does not disclose "Roche's specific CAPP-Seq/iDES adapter sequences" or barcodes.  Opp. at 16-17.  But Roche fails to plead **how** "*Roche's* specific CAPP-Seq/iDES adapter sequences" or barcodes differ from what was disclosed in the '084 patent.

*AllRounds, Inc. v. Eshares, Inc*., 2021 WL 2945532, at *1 (N.D. Cal. July 14, 2021), is inapposite.  There, the plaintiff claimed a trade secret regarding "*how* its software works (and how the software solves inefficiency problems …), which may be distinct from the information disclosed in the patent about *what* the software does." *Id.* (emphasis in original).  The court found the plaintiff identified "at least certain aspects of its alleged trade secrets that were not disclosed" in a patent application. *Id.* Here, Roche's FAC fails to identify both "*how*" its CAPP-Seq/iDes technology works differently from what was described publicly, and "*what*" aspect(s) of that technology is a trade secret.

Roche's conclusory identifications allow neither Foresight nor the Court to "investigate how [the purported trade secret] might differ from matters already known." *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018).  This is especially important where, like in *Attia*, Roche admits certain "aspects" were publicly known. *See Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, 2021 WL 5197215, at *4 (N.D. Cal. Nov. 9, 2021) (trade secret owner "must take care not to inadvertently include such public domain material by referring indiscriminately to documents that 'include' trade secrets but that also include materials that clearly are in the public domain").

## C.    The Bayh-Dole Act Further Renders Roche's Trade Secret Claims Implausible

Foresight demonstrated that the Bayh-Dole Act forecloses Roche's argument that Roche acquired CAPP-Seq trade secrets from the CappMed Acquisition.  Stanford's CAPP-Seq technology was developed using federal funding, and under Bayh-Dole, "there is no ability of the contractor to keep a patentable invention a trade secret under the Bayh-Dole Act."  2 Federal Contract Management P 11.01; Mot. at 19-20.  Rather than respond to this, Roche put at issue the Roche-CappMed acquisition agreement, claiming it "specifically states that Roche acquired broad IP rights, including trade secrets."  Opp. at 1-2, 20.  That agreement, however, says no such thing.

1    Indeed, the agreement demonstrates that Roche ***acquired no trade secrets*** from CappMed,

2    and Defendants join in Roche's invitation for the Court to take judicial notice of it.  Roche points to

3    the agreement's definition of "Intellectual Property" as including "Copyrights, Know-How, Patents

4    and Trademarks," and in turn the definition of "Know-How" as comprising a boilerplate list of

5    twenty-three categories of potential know-how, including "trade secrets."  Opp. at 1-2.  But those

6    stock definitions do not purport to identify the specific Intellectual Property that Roche actually

7    obtained under the agreement.  Section 2.10 in conjunction with Part 2.10 of the accompanying

8    Disclosure Schedule in fact shows Roche acquired no copyrights or trademarks from CappMed: Part

9    2.10(a)(ii) of the Disclosure Schedule listed "none" for CappMed copyrights and trademarks.

10    ***Critically, Section 2.10 and the Disclosure Schedule make no reference to trade secrets.***

11    Thus, the fact that "trade secrets" were included in a boilerplate definition means nothing.

12    Roche also ignores the fact that CAPP-Seq is a "subject invention" under Bayh-Dole.  Opp.

13    at 21.  The CAPP-Seq patent applications undisputedly state "[t]his invention was made with

14    government support under grant number W81XWH-12-1-0285 awarded by the Department of

15    Defense."  *See* Dkt. 104-2; Dkt. 104-1 at [0001]; FAC ¶ 40.  Roche cites *Board of Trustees of Leland*

16    *Stanford Junior University v. Roche Molecular Systems, Inc.* to suggest that the Bayh-Dole act would

17    not automatically vest in Stanford the inventions of its employees.  Opp at 20.  However, as noted in

18    Foresight's Motion, at the time of that case, Stanford's invention agreement did not include the

19    present-tense "hereby assign" language which is in Stanford's operative SU-18s.  Dkt. 103 at 24-25.

20    Thus, by the time the '925 and '020 applications were filed, Drs. Diehn and Alizadeh had made a

21    present assignment of CAPP-Seq to Stanford.  "With an effective assignment [to a Bayh-Dole

22    contractor], those inventions—if federally funded—become 'subject inventions' under the Act." *Bd.*

23    *of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 793 (2011).

24    Finally, Roche claims that Stanford disavowed ownership of "know-how needed to practice

25    CappMed's technology" through the Stanford-CappMed license agreement.  Opp. at 21.  But that

26    agreement provided Roche a non-exclusive license to "Licensed Know-How," defined broadly to

27    include "all information, know-how, results, algorithms, software (including, without limitation,

28    object code and source code for the Fusion And Chromosomal Translocation Enumeration and

Recovery Algorithm (FACTERA) and all associated copyrights) and data whether or not patentable described in the Licensed Patents that is provided by the inventors of the Licensed Patents employed by Stanford that is provided to CappMed (or utilized by such inventors) during the term of this Agreement."[3]  Such know-how remained owned by Stanford and was indisputably subject to Bayh-Dole.  Roche points to a separate provision stating the inventors "***may provide*** CappMed other know-how" that is "unpatented but needed to practice the Licensed Patents."  Opp. at 21.  The FAC contains no allegations that the inventors provided any such "other know-how" to CappMed.

### D.    Roche Fails to Allege Foresight Used or Acquired Roche's Trade Secrets

As detailed in Foresight's Motion, Roche failed to allege misappropriation by Foresight because Roche has not plausibly alleged facts showing that Foresight developed PhasED-Seq *using* Roche's alleged trade secrets.  Roche's generic allegations against the Stanford Oncologists cannot be attributed to Foresight.  Mot. at 16-21.  Roche does not meaningfully dispute this.[4]

First, the allegation that PhasEd-Seq "builds upon" or "extends" CAPP-Seq does not indicate that Foresight (as distinct from individual defendants) in fact used Roche's alleged trade secrets.  As alleged in the FAC, details regarding the CAPP-Seq technology were publicly available, and thus could not be trade secrets, before Roche's CappMed acquisition.  *E.g.*, FAC ¶ 31; Dkt. 104-2.

Roche's broad allegation that the Stanford Oncologists must have used Roche's trade secrets because they developed PhasED-Seq while working at Roche is facially not attributable to Foresight. Opp. at 18.  Any alleged misappropriation of Roche's trade secrets must have occurred before Foresight even existed.  Mot. at 16.  Roche in fact concedes that the '688 application to which all Disputed Patent Applications claim priority was filed *before* Foresight existed.  FAC ¶ 284.

Roche also sidesteps Foresight's argument that its licensing of Stanford's PhasED-Seq patents and related applications is insufficient to state a claim for trade secret misappropriation as a matter of law.  Opp. at 19-20.  Foresight's license to patents owned by Stanford that all claim priority

---

[3]  Roche's Opposition quotes the Third Amendment to the Stanford-CappMed license but does not attach it as an exhibit.  Opp. at 22.  Foresight quotes further portions of the Third Amendment herein, and will provide the complete agreement upon the Court's request.
[4]  Roche's reliance on *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 943 (N.D. Cal. 2007), is misplaced.  Opp. at 17-18.  *UniRAM* was deciding motions for summary judgment; whether the plaintiff adequately alleged use was not at issue.

to a patent application (the '688 application) filed before Foresight even existed cannot form the basis of Roche's misappropriation claims: licensing rights to a patent application, which necessarily includes only information within the public domain, does not qualify as acquisition, disclosure, or use of a trade secret. *Attia*, 983 F.3d at 426 (public disclosures made in a patent application are not secret and thus cannot be the subject of a trade secret misappropriation claim).

Second, Roche's allegations of misappropriation by the Stanford Oncologists are insufficient to allege misappropriation against Foresight. "Alleging mere possession of trade secrets is not enough" to support a misappropriation claim. *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012). Although Roche claims that the Stanford Oncologists had access to Roche confidential information, Roche fails to explain how that could mean that Foresight—another step removed—knew or had reason to know of misappropriation. Roche relies on boilerplate allegations based on information and belief that should be disregarded at the pleading stage. *See, e.g.*, FAC ¶ 328 ("On information and belief, Foresight misappropriated the Roche Trade Secrets through Drs. Alizadeh, Diehn, and Kurtz."), ¶¶ 239-332; *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (allegations made on information and belief, in the absence of facts to provide context, were insufficient to avoid dismissal).

## IV.    ROCHE'S UNFAIR COMPETITION CLAIMS ARE PREEMPTED

Roche's trade secret claims preempt its eighth and ninth causes of action for unfair competition because—as Roche admits—the claims all "derive from a common nucleus of operative facts." Mot. at 22 (citing FAC ¶ 18); *Tri Tool, Inc. v. Hales*, 2023 WL 7130610, at *9 (E.D. Cal. Oct. 30, 2023) (CUTSA claim preempted UCL claim based on plaintiff's allegation that its "state law claims arise from the same set of operative facts common to the federal claim").

"To survive preemption, [Roche's] claims must 'allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim.'" *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018) (citation omitted); *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). Here, there is no daylight between the allegations underlying Roche's UCL and CUTSA claims. In its Opposition, Roche acknowledges that its UCL claims are premised on allegations that Foresight "***knowingly utilized confidential information it***

1  *improperly obtained from Roche* . . . to raise funding to compete against Roche" and that Foresight's

2  fundraising "by *touting technology that improperly uses and relies on Roche's information* is unfair

3  competition."  Opp. at 22 (emphasis added); *see, e.g.*, FAC ¶¶ 427-429, 433-436.

4        Courts in this district routinely dismiss UCL claims based on allegations similar to Roche's.

5  In *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *7 (N.D. Cal. Apr. 30, 2019), the court

6  found that plaintiff's CUTSA claim superseded its UCL claim because both claims relied on, "in

7  essence, the same wrongdoing."  In reviewing plaintiff's "UCL claim as a whole," the court concluded

8  it was preempted where it was based on allegations that defendant, "through fraud, acquired and used

9  [plaintiff's] proprietary and Confidential Information" and was "passing off to the market as its own

10 technology which [wa]s owned by" defendant. *Id.*  The court also found it significant that plaintiff's

11 UCL claim—like Roche's claim here (*e.g.*, FAC ¶¶ 421, 432)—"incorporated the same factual

12 allegations" as its CUTSA claim.  *Id.* at *8; *see also, e.g.*, *Waymo*, 256 F. Supp. 3d at 1062 (UCL

13 claim preempted where plaintiff alleged its former employee used misappropriated information to start

14 new company); *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 475 (N.D. Cal. 2020) (UCL

15 claim preempted where plaintiff alleged "defendants used wrongful means—misappropriated trade

16 secrets, confidential information, and unlawful business tactics—to induce Albert's clients"); *Sylabs*,

17 2023 WL 8813517, at *9 (UCL claim predicated on same conduct as CUTSA claim preempted);

18 *Acorn Bay v. CamelBak Prods., LLC*, 2020 WL 7664450, at *2 (N.D. Cal. Dec. 24, 2020) (same).[5]

19 **V.    ROCHE'S DECLARATORY JUDGMENT CLAIM FOR PATENT OWNERSHIP**
20 **       SHOULD BE DISMISSED**

21       Roche's patent ownership claim fails because the Stanford Oncologists' assignment

22 agreements with Stanford pre-date and are senior to their subsequent consulting agreements with

23 Roche.  *See* Mot. at 22-25.  Unable to dispute the assignment agreements' language, Roche attempts

24 to exclude them by arguing they are not subject to judicial notice.  Opp. at 22.  Roche is mistaken.

---

25 [5]  Roche's mistakenly relies on *Henry Schein, Inc. v. Cook*, 2017 WL 783617 (N.D. Cal. Mar. 1,
26 2017).  In *Henry Schein*, the court found plaintiff's UCL claim "not preempted because it contains
   several allegations, like deceiving HSI's customers, that do not necessarily implicate Cook's
27 misappropriation of HSI's trade secrets."  *Id.* at *4.  Here, Roche's unfair competition claims
   admittedly "derive from a common nucleus of operative fact" as its trade secret claims, and allege
28 that Foresight "knowingly used the Roche Trade Secrets[.]"  FAC ¶¶ 18, 427-429, 433-436.

The Ninth Circuit permits consideration of indisputably authentic documents such as the Stanford assignments when attached to a motion to dismiss, and plaintiff's claims depend on their contents. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The FAC acknowledges the Stanford Oncologists' assignment obligations to Stanford. FAC ¶ 54. The Stanford assignments are also incorporated into the Roche consulting agreements attached as exhibits. *Id.*, Ex. 1 ¶ 5 (acknowledging Dr. Diehn is an "employee of Stanford" subject to "agreements" including concerning "ownership of intellectual property"); *id.* ¶ 21 ("This Agreement **and the other agreement referenced herein** . . . constitute the parties' entire understanding as of the Effective Date[.]") (emphasis added). The Court should consider the assignment agreements with this Motion.

Roche also claims the Stanford assignments are irrelevant because PhasED-Seq allegedly arose out of "Defendants' work with **CappMed or Roche, not Stanford.**" Opp. at 23 (emphasis in original). But the FAC contains no such factual allegations. In fact, the FAC alleges the opposite— that the Stanford Oncologists conceived PhasED-Seq and reduced it to practice *as part of their Stanford employment*, using funding obtained through Stanford. FAC ¶¶ 290-292 (alleging Dr. Kurtz obtained NIH funding through Stanford for the development of PhasED-Seq); ¶ 301 ("Stanford received millions of dollars in research funding for NIH projects CA 188298 and CA241076"). These allegations suffice to establish the earlier-in-time (and judicially noticeable) Stanford SU-18s control and automatically vested ownership over the PhasED-Seq patents in Stanford. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) ("If the contract expressly grants rights in future inventions, no further act is required once an invention comes into being, and the transfer of title occurs by operation of law.").

Roche's reference to other provisions of the Roche consulting agreements, Opp. at 23, is a non-sequitur. At the time Drs. Diehn and Alizadeh entered into those agreements, they had already presently assigned to Stanford ownership of their future Stanford inventions, as Roche was well aware. Drs. Diehn and Alizadeh had no rights in PhasED-Seq to convey to Roche.

Roche's reliance on the "other know-how" provision of the Stanford-CappMed license agreement, Opp. at 24, is even more unglued from the FAC. The FAC never alleges that PhasED-Seq constitutes "other know-how" under that provision, which only applies to unpatented technology

that is "needed to practice" the CAPP-Seq Licensed Patents.  Roche does not explain how or why *PhasED-Seq* would be "needed to practice" *CAPP-Seq*, and the FAC makes no such allegation.

Finally, Roche argues that Stanford somehow nullified its own SU-18s, and instead made the patent assignment provisions in Drs. Diehn and Alizadeh's 2015 Roche consulting agreements "the operative assignment agreements," simply by consenting to CappMed's assignment of its Stanford CAPP-Seq patent license to a new Roche entity in the Fourth Amendment to the Stanford-CappMed license.  Opp. at 24.  Roche's argument fails for multiple reasons, including:

- Stanford was not a party to the consulting agreements between Roche and Drs. Diehn and Alizadeh, and Roche does not even attempt to argue that the legal test for ratification is satisfied here.  *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) ("[R]atification is the principal's assent (or conduct that justifies a reasonable assumption of assent) to be bound by the prior action of another person or entity.").

- Stanford did not and could not have ratified the Roche consulting agreements by entering into the Fourth Amendment to the CappMed license.  The consulting agreements were not executed until over a week *after* the Fourth Amendment, *id.* (ratification involves assent to be bound to a "prior action"), and Roche does not contend that Stanford took any other action that would have manifested assent to be bound by those consulting agreements.

- The fact that Stanford consented to CappMed's assignment of its Stanford CAPP-Seq license to a new Roche entity does not negate, or relate in any way to, Stanford's years-earlier SU-18s with Drs. Diehn and Alizadeh, in which they presently assigned their future Stanford patentable inventions to Stanford.

- The Roche consulting agreements themselves acknowledge Drs. Diehn and Alizadeh's prior assignment agreements with Stanford, FAC, Ex. 1 § 5.1, and prohibit them from doing any of their Roche consulting work using any "resources of Stanford," *id.* § 5.2. Thus, the Roche consulting agreements on their face refute Roche's argument that they somehow became, or were intended to become, "the operative assignment agreements" over Stanford's SU-18s.

## VI.    **CONCLUSION**

The Court should grant Foresight's Motion to Dismiss with prejudice.

1

2   Dated: February 19, 2025                    Respectfully submitted,

3                                               QUINN EMANUEL URQUHART & SULLIVAN, LLP

4

5                                               By: /s/ Kevin P.B. Johnson

6                                                   _____
                                                    Kevin P.B. Johnson
7                                                   Andrew J. Bramhall
                                                    555 Twin Dolphin Shores, 5th Floor
8                                                   Redwood Shores, CA  94065
                                                    Telephone: (650) 801-5000
9                                                   Facsimile: (650) 801-5100

10                                                  Sandra L. Haberny, Ph.D.
                                                    David M. Elihu
11                                                  Hana Oh
                                                    865 South Figueroa Street, 10th Floor
12                                                  Los Angeles, CA  90017
                                                    Telephone: (213) 443-3000
13                                                  Facsimile: (213) 443-3100

14
                                                    IRELL & MANELLA LLP
15                                                  Morgan Chu
                                                    Alan Heinrich
16                                                  Jordan Nafekh
                                                    Henry White
17                                                  1800 Avenue of the Stars, Suite 900
                                                    Los Angeles, California 90067-4276
18                                                  Telephone: (310) 277-1010
                                                    Facsimile: (310) 203-7199
19

20                                                  *Attorneys for Defendant Foresight
                                                    Diagnostics Inc.*
21

22

23

24

25

26

27

28