IRELL & MANELLA LLP
Morgan Chu (CA 70446)
MChu@irell.com
Alan Heinrich (CA 212782)
AHeinrich@irell.com
Jordan Nafekh (CA 328151)
JNafekh@irell.com
Henry White (CA 351549)
HWhite@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199

*Attorneys for Drs. Diehn and Alizadeh*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC. et al <br><br> Plaintiffs <br><br> v. <br><br> FORESIGHT DIAGNOSTICS INC. et al <br><br> Defendants. | Case No. 5:24-cv-03972-EKL <br><br> **DRS. DIEHN AND ALIZADEH'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)** <br><br> Date: April 2, 2025 <br> Time: 10:00 a.m. <br> Judge: Honorable Eumi K. Lee <br> Courtroom: 7 <br><br> Complaint Filed: July 1, 2024 <br> Amended Complaint Filed: November 22, 2024 |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................................. 1

II.     ROCHE HAS FAILED TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION ................................................................................................. 1

    A.      Roche's Trade Secret Claims Are Barred By The Statute Of Limitations ................................................................................................. 1

        1.      Roche's Allegations of Misappropriation Through Chabon 2020 Are Judicial Admissions Accepted as True, Even If Fatal to Roche's Case ........................................................................ 1

        2.      Roche Misstates the Law on Notice of Trade Secret Misappropriation ..................................................................................... 3

        3.      Chabon 2020 Establishes Inquiry Notice of Alleged Misappropriation ..................................................................................... 4

    B.      Roche Fails To State A Claim Under Either DTSA Or DUTSA ........................ 8

III.    ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT ................................................................................................................... 10

IV.     ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ......................... 14

V.      CONCLUSION ..................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbvie Inc. v. Adcentrx Therapeutics Inc.*,
No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144 (S.D. Cal. July 29, 2024)..........................8

*AllRounds, Inc. v. Eshares, Inc.*,
2021 WL 2945532 (N.D. Cal. July 14, 2021) ...............................................................................9

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) .......................................................................................8

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988).........................................................................................................2

*Attia v. Google LLC*,
983 F.3d 420 (9th Cir. 2020).................................................................................................8, 10

*Battaglia Mgmt., Inc. v. Abramowicz*,
No. CV 23-615-GBW, 2024 WL 3183063 (D. Del. June 26, 2024)............................................8

*Casumpang v. Hawaiian Com. & Sugar Co.*,
712 F. App'x 709 (9th Cir. 2018)..................................................................................................2

*Cheever v. Huawei Device USA, Inc.*,
No. 18-CV-06715-JST, 2019 WL 8883942 (N.D. Cal. Dec. 4, 2019).......................................14

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
517 F.3d 1284 (Fed. Cir. 2008)..................................................................................................12

*FlexWage Sols. LLC v. Ceridian HCM Holding Inc.*,
No. N23C-04-086 EMD .....................................................................................................3, 4, 6

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005)..................................................................................................................7

*Gatan, Inc. v. Nion Co.*,
2018 WL 2117379 (N.D. Cal. May 8, 2018) .............................................................................10

*Henderson v. United Student Aid Funds, Inc.*,
918 F.3d 1068 (9th Cir. 2019)....................................................................................................13

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)....................................................................................................11

*Mallet & Co. Inc. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021)..........................................................................................................9

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008)...........................................................................................2

*Memry Corp. v. Ky. Oil*,
   2005 WL 8162558 (N.D. Cal. Apr. 8, 2005) ...................................................................5, 6

*MGA Ent., Inc. v. Mattel, Inc.*,
   41 Cal. App. 5th 554, 561-64 (2019) .................................................................................7

*Nextdoor.Com, Inc. v. Abhyanker*,
   2013 WL 3802526 (N.D. Cal. July 19, 2013)....................................................................9

*Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*,
   No. CVN15C08168AMLCCLD, 2019 WL 6726836 (Del. Super. Ct. Dec. 4,
   2019), aff'd, 247 A.3d 674 (Del. 2021) .............................................................................5

*Portney v. CIBA Vision Corp.*,
   2008 WL 5505518 (C.D. Cal. Dec. 24, 2008) ...................................................................3

*Raza v. Siemens Med. Sols. USA Inc.*,
   607 F. Supp. 2d 689 (D. Del. 2009) ...................................................................................3

*RoboticVISIONTech, Inc. v. ABB Inc.*,
   726 F. Supp. 3d 364 (D. Del. 2024) ...........................................................................4, 6, 7

*Estate of Saunders v. Comm'r*,
   745 F.3d 953 (9th Cir. 2014)............................................................................................14

*Vendavo, Inc. v. Price f(x) AG*,
   No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. 2018) ............................................8

*York Cnty. v. HP, Inc.*,
   65 F.4th 459 (9th Cir. 2023).............................................................................................6, 7

**Statutes**

18 U.S.C. § 1839(5) .......................................................................................................................1

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................................................2, 4, 8

**Other Authorities**

Third Amendment ........................................................................................................................12

Fourth Amendment ......................................................................................................................13

I.  **INTRODUCTION**

Roche's Opposition to Drs. Diehn and Alizadeh's Motion to Dismiss fails to overcome the deficiencies in its pleading. Roche's claims against them should be dismissed with prejudice.

First, Roche's allegations that Chabon 2020 discloses the "use" (Roche's words) of multiple trade secrets—and hence misappropriation—are binding admissions against Roche. Roche's attempt to shift the burden to Drs. Diehn and Alizadeh, arguing that they must concede or admit misappropriation to properly challenge Roche's complaint, is not the law. Roche's backtracking that Chabon 2020 could not have raised more than a "general concern" of misappropriation is attorney argument that contradicts the express allegations in the FAC. The FAC relies heavily on Chabon 2020 as alleged evidence that Drs. Diehn and Alizadeh misappropriated Roche's purported trade secrets. Roche's claim that Chabon 2020 reveals Defendants' alleged misappropriation but at the same time would not have made a reasonably prudent person suspicious is fatally contradictory. Roche's trade secret claims are time-barred.

Second, even if Roche's trade secret claims were timely (which they are not), Roche still has failed to identify any trade secret with sufficient particularity, despite being afforded a second try.

Third, Roche has failed to state a claim for breach of contract against Drs. Diehn and Alizadeh because it has failed to allege any actual breach.

Fourth, Roche has failed to state a claim for breach of implied covenant of good faith and fair dealing against Drs. Diehn and Alizadeh, and failed to rebut their arguments for dismissal. And what little Roche says about this claim is relegated to a footnote, which amounts to waiver.

II.  **ROCHE HAS FAILED TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION**

   A.  **Roche's Trade Secret Claims Are Barred By The Statute Of Limitations**

       1.  **Roche's Allegations of Misappropriation Through Chabon 2020 Are Judicial Admissions Accepted as True, Even If Fatal to Roche's Case**

In the Opposition, Roche attempts to backtrack from its binding allegations in the FAC that Chabon 2020 constitutes an act of misappropriation of Roche trade secrets through "use." *See* 18 U.S.C. § 1839(5) ("the term 'misappropriation' means . . . disclosure or use of a trade secret of another

without express or implied consent. . . ."). Roche alleges on numerous occasions in the FAC that Chabon 2020 constituted an act of misappropriation, including for at least seven alleged trade secrets:

- FAC ¶ 273 (in the section of the FAC entitled "Defendants' Misappropriation of Roche's Trade Secrets . . ." stating "***Drs. Alizadeh, Diehn, and Kurtz used Roche's CAPP-Seq/iDES adaptive variant caller algorithm trade secret*** to develop and perform PhasED-Seq. . . . . *A 2020 paper* co-authored by Drs. Alizadeh, Diehn, Kurtz, and Foresight cofounder Jake Chabon also ***describes the use of the CAPP-Seq adaptive variant caller*** when engaging in error suppression and variant calling in relation to the development of PhasED-Seq.");

- FAC ¶ 274 (in same misappropriation section, "***Drs. Alizadeh, Diehn, and Kurtz used Roche's CAPP-Seq/iDES germline filtering algorithm trade secret*** to develop and perform PhasED-Seq. . . . ***Chabon 2020 further acknowledges the use of Roche's adaptive variant caller***, which includes adaptive variant calling in an unpaired manner in relation to the development of PhasED-Seq."); and

- FAC ¶ 227 (listing Chabon 2020 as a disclosure of "work[] [by Defendants] on phased variant detection during their time at Roche using Roche's CAPP-Seq/iDES platform, which led to the development of Foresight's PhasED-Seq technology.").

*See also* FAC ¶¶ 275-278 (in the same section on misappropriation, allegations of Chabon 2020 as evidence of improper use and disclosure of still five other trade secrets).

It is well established that Roche's allegations are deemed to be binding judicial admissions. *Casumpang v. Hawaiian Com. & Sugar Co.*, 712 F. App'x 709, 710 (9th Cir. 2018) (plaintiff's claims were time-barred based on allegations in the complaint, which "are considered judicial admissions conclusively binding on the party who made them" (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988))). They are deemed to be true for the purposes of determining whether Roche has stated a claim under Fed. R. Civ. P. 12(b)(6), even where Drs. Diehn and Alizadeh do not agree with the allegations. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (courts must "accept factual allegations in the complaint as true"). This includes Roche's repeated allegation in the FAC that the publication of Chabon 2020 was an act of unlawful use and

disclosure of multiple Roche trade secrets, constituting misappropriation. The cases cited by Drs. Diehn and Alizadeh in their Motion where courts have granted motions to dismiss on the basis of statute of limitations were in similar context, based on the binding admissions of the plaintiff in the complaint. *See FlexWage Sols. LLC v. Ceridian HCM Holding Inc.,* No. N23C-04-086 EMD CCLD, 2024 WL 2132620, at *6 (Del. Super. Ct. May 13, 2024) (finding statute of limitations had run where "FlexWage's Amended Complaint demonstrates that FlexWage had sufficient reason to suspect misappropriation" outside of the limitations period.).

At this stage, Drs. Diehn and Alizadeh need not "explain" or concede misappropriation where Roche's FAC alleges, repeatedly, that Chabon 2020 evidences "use" of multiple trade secrets.

### 2. Roche Misstates the Law on Notice of Trade Secret Misappropriation

Roche's trade secret claims are time-barred because Roche was, at minimum, on inquiry notice of potential misappropriation by March 25, 2020, when Chabon 2020 was published. Mot. at 8-11. Roche alleges that Chabon 2020 did not provide inquiry notice because "it did not *disclose* any of Roche's trade secrets, nor did it evidence any *use* of Roche's secrets." Opp. at 9. But again, Roche's actual pleading tells a different story—the FAC expressly alleges that particular pages of Chabon 2020, which is Exhibit 104 to the FAC, demonstrate "use" of the alleged trade secrets, regardless of whether the entire trade secret is spelled out in detail. FAC ¶¶ 274-278 (providing pin cites to specific portions of Chabon 2020 that allegedly demonstrate "use" of various alleged trade secrets, including to page 10, which includes multiple references to CAPP-Seq).

Chabon 2020 need not disclose Roche's trade secrets for an even more fundamental reason. The relevant question is inquiry notice: whether Chabon 2020 gave Roche "'facts sufficient to make [it] suspicious, or that ought to make [it] suspicious,'" of potential misappropriation in light of the FAC's own binding admissions. *FlexWage Sols. LLC*, 2024 WL 2132620, at *5. Once a plaintiff is on inquiry notice, it must "exercise reasonable diligence to discover its claim." *Raza v. Siemens Med. Sols. USA Inc.*, 607 F. Supp. 2d 689, 693 (D. Del. 2009). Courts generally hold sophisticated parties to a higher standard of diligence in discovering potential claims. *Portney v. CIBA Vision Corp.*, 2008 WL 5505518, at *9-10 (C.D. Cal. Dec. 24, 2008) (plaintiff failed to exercise reasonable diligence because he "paint[ed] himself as a sophisticated businessperson who holds a wide range of patents[,]

whose inventions have resulted in profits totaling hundreds of millions of dollars").

It is not plausible that Roche, as a sophisticated global healthcare company, would not have been aware of Chabon 2020 when it was published. And, once Roche became aware of Chabon 2020, which, according to Roche, demonstrates the use of a number of its alleged trade secrets, it would have had a duty to investigate further.

Roche—not Drs. Diehn and Alizadeh—bears the burden here to establish that a reasonable investigation would not have revealed Drs. Diehn and Alizadeh's alleged misappropriation earlier, since it is **Roche's own complaint** that alleges Chabon 2020 evidences misappropriation. *See FlexWage Sols. LLC*, 2024 WL 2132620, at *8 ("When a claim falls outside the limitations period on its face, 'the plaintiff bears the burden of pleading facts leading to a reasonable inference that a tolling exception applies.'"). Roche has not met its burden. Roche's conclusory allegation that it "could not have been reasonably aware of Defendants' . . . trade secret misappropriation before [May 14, 2021]" is insufficient to withstand dismissal. FAC ¶ 311. *See FlexWage Sols. LLC*, 2024 WL 2132620, at *6 (where Plaintiff alleged it was not on inquiry notice of misappropriation before 2020, noting "[a]s a starting point, the Court is not required to accept legal conclusions pled under the guise of factual allegations. Thus, the Court is not bound by plaintiff-friendly Civil Rule 12(b)(6) standards to defer to FlexWage's suggestion as to when the claim accrued.").

### 3.   Chabon 2020 Establishes Inquiry Notice of Alleged Misappropriation

Chabon 2020 is the **linchpin** of Roche's allegation of misappropriation. *See* FAC ¶¶ 227, 273-278, 281. Roche's Opposition fails to explain how Chabon 2020 would not have at least made it, a sophisticated plaintiff, suspicious of potential misappropriation. *RoboticVISIONTech, Inc. v. ABB Inc.*, 726 F. Supp. 3d 364, 372 (D. Del. 2024) ("the statute of limitations begins to run when the plaintiff reasonably should have been aware of its trade secret misappropriation claim—rather than when the 'plaintiff can unassailably establish [such a claim]. . . .'"). By Roche's own description, Chabon 2020 discloses, among other things, the use of the following alleged trade secrets: (i) "CAPP-Seq adaptive variant caller when engaging in error suppression and variant calling"; (ii) "Roche's adaptive variant caller, which includes adaptive variant calling in an unpaired manner"; (iii) "CAPP-Seq/iDES selector-wide SNV caller and a 'Monte-Carlo-based ctDNA detection index'"; (iv) "CAPP-

Seq variant caller and filtering, which includes Indel calling"; (v) "CAPP-Seq variant calling and filtering, including fusion calling"; (vi) "Roche's CAPP-Seq CNV caller"; and (vii) "CAPP-Seq panels including blacklisted and whitelisted genes." FAC ¶¶ 273-278, 281.

The law is clear: Chabon 2020's disclosure of even *one* of Roche's alleged trade secrets triggered Roche's duty to investigate further. *See Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, No. CVN15C08168AMLCCLD, 2019 WL 6726836, at *16 (Del. Super. Ct. Dec. 4, 2019), aff'd, 247 A.3d 674 (Del. 2021) ("Ocimum's inquiry notice as to one trade secret claim should have alerted it to the risk that AstraZeneca misappropriated additional trade secrets shared under the same confidential relationship."). This rule of law makes particular sense here: Roche continues to assert that it obtained broad intellectual property rights to CAPP-Seq from CappMed, "including all patent rights, trade secrets, and know-how relating to the CAPP-Seq technology." FAC ¶ 47. Thus, taken as true, Roche's claim that "Chabon 2020 disclosed only that the Individual Defendants were working on CAPP-Seq technology as they had been for years", beyond plainly contradicting Roche's own allegations in the FAC, still would have triggered Roche's duty to investigate, as CAPP-Seq is the very technology to which Roche claims it acquired "all" intellectual property rights. Opp. at 8.

Roche attempts to obscure the issue further by claiming Chabon 2020 could not have provided inquiry notice because it "said nothing about the PhasED-Seq technology, which forms the basis of Roche's misappropriation claims." Opp. at 9. But Roche fails to recognize that the existence of a competing product is irrelevant to a misappropriation claim. *See Flexwage Solutions LLC,* 2024 WL 132620 at *6 (for tolling purposes, "'[u]sing' a trade secret is not limited to publicly displaying the fruits of the trade secret and offering it for sale; instead, in this context, the term 'use' has been broadly defined as any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." (internal quotations omitted)). Roche alleges Chabon 2020 demonstrates "use" of its trade secrets, no more is required.

The cases Roche relies on belie its position. In *Memry Corp. v. Ky. Oil*, 2005 WL 8162558, at *6 (N.D. Cal. Apr. 8, 2005), the counter-defendant had given express assurances that he was working on a completely different concept than the alleged trade secret, which the court found "could have reasonably precluded [the counter-plaintiff] from becoming suspicious." 2005 WL 8162558 at

\*6. Here, in contrast, the Stanford Oncologists were openly and notoriously working and publishing on CAPP-Seq, the very technology over which Roche claims to have a trove of trade secrets. Ex. 104 (Chabon 2020) at 1 (describing work as "improvements" to CAPP-Seq). And they were doing so not for Roche but as part of their full-time employment at Stanford. Yet Roche never sought assurances from the Stanford Oncologists similar to those in *Memry*. FAC ¶¶ 315, 317, 319.

Thus, Roche cannot rely on the parties' "previous relationship" to claim ignorance. *See, e.g.*, *RoboticVISIONTech, Inc.* 726 F. Supp. 3d at 372 (competitor's launch of a software product similar to plaintiff's put plaintiff on inquiry notice of its trade secret claim against the competitor, where plaintiff knew that the product was similar to its own *and* that its chief scientist had left to join the competitor while potentially being in possession of confidential information).

That the Stanford Oncologists, along with co-authors from other leading institutions, published an article in one of the world's leading peer-reviewed journals detailing use of multiple alleged Roche trade secrets demonstrates that Roche should have been suspicious of any alleged misappropriation. *See FlexWage Sols. LLC*, 2024 WL 2132620, at \*4 (mutual non-disclosure agreements between the parties contractually obligated the competitor to keep plaintiff's disclosures confidential, yet announcements demonstrated that the competitor was using plaintiff's confidential information, which put plaintiff, at least, on inquiry notice of misappropriation). Chabon 2020 even includes multiple references to both plaintiffs Roche Molecular Diagnostics and Roche Sequencing Solutions, by name, in the Competing Interests disclosure section. FAC Ex. 104 at 13. Roche's claim that it could not have been expected to be aware of Chabon 2020 does not pass muster.

The cases Roche cites do not show otherwise. For example, in *Progressive Sterilization, LLC v. Turbett Surgical LLC*, Defendants' counsel "back[ed] away from [the] assertion" that the patent defendants asserted started the limitations period actually pertained to plaintiff's trade secrets. No. 19-627-CFC, 2020 WL 1849709, \*5 (D. Del. Apr. 13, 2020). Here, it is Roche, not Defendants, who has explicitly alleged that Chabon 2020 demonstrated "use" of at least seven of Roche's trade secrets. FAC ¶¶ 273-278, 281.

*York Cnty. v. HP, Inc.*, 65 F.4th 459, 468 (9th Cir. 2023) is also inapposite. Opp. at 8. The plaintiffs in *York* did not have the facts necessary to plead their claims prior to the limitations date.

The defendants argued plaintiffs' claims alleging securities fraud based on misleading statements contained in SEC filings were time-barred because the plaintiffs did not file suit until years after those filings. However, it was impossible for the plaintiffs to know the filings were false or misleading until the SEC eventually issued an order revealing that those statements were actually intentional misrepresentations. *Id.* at 467. The court concluded that, without the information from the SEC's order, the alleged misleading "statements seemed like standard assurances to shareholders." *Id.*

Unlike *York County*, Roche had all necessary facts available to it. It has alleged Chabon 2020 evidences improper use of Roche's alleged trade secrets, and the Stanford Oncologists who co-authored Chabon 2020 were under confidentiality obligations not to use or disclose Roche confidential information. FAC ¶¶ 273-278, 281, 312, 395, 403. Also, unlike the plaintiff in *York County*, Roche is a sophisticated multinational healthcare conglomerate with devoted resources to discover and investigate alleged misappropriation.

Given the parties' previous relationship, lack of assurances (because none were requested), and Roche's awareness of the Stanford Oncologists' continued work on CAPP-Seq at Stanford, Roche should have reasonably inquired to see whether any misappropriation occurred. Thus, Chabon 2020 should have raised more than just "general concerns." Opp. at 13.

Contrary to Roche's assertions, California and Delaware law make clear that "the statute of limitations begins to run when the plaintiff reasonably should have been aware of its trade secret misappropriation claim—rather than when the 'plaintiff can unassailably establish [such a claim]. . . .'" *RoboticVISIONTech, Inc.* 726 F. Supp. 3d at 372. *See also MGA Ent., Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 561-64 (2019) (Plaintiff "need not be aware of ***specific facts*** necessary to establish the claim," only a "***suspect[ed] factual basis***" for [the claim's] elements."). Courts "do not take a hypertechnical approach" in using the term "elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) ("[R]ather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, [courts] look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."). Roche, armed with all this knowledge, should have suspected potential misappropriation, and was therefore on notice by March 25, 2020 (Chabon 2020's publication).

### B. Roche Fails To State A Claim Under Either DTSA Or DUTSA

Roche has not plausibly alleged "the existence of a trade secret, which is information with independent economic value from not being generally known or ascertainable that the owner has taken reasonable measures to keep secret. . . ." *Battaglia Mgmt., Inc. v. Abramowicz*, No. CV 23-615-GBW, 2024 WL 3183063, at *3 (D. Del. June 26, 2024). Roche "bears the burden of identifying how the [trade secrets] are 'not generally known' and 'derive independent economic value from not being known.'" *Id*. Roche could have a viable trade secret claim for technology related to CAPP-Seq only if Roche "reveals implementation details and techniques *beyond* what was disclosed in [a published patent application or paper]." *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (emphasis in original). Having now had two attempts to distinguish its "trade secrets" from general knowledge, Roche still fails to meet this burden: (1) Roche has not identified any non-public aspects of CAPP-Seq/iDES, (2) nor has it specified the metes and bounds of the alleged trade secrets.

Roche first argues that Drs. Diehn and Alizadeh "conflate the pleading standard under Rule 12(b)(6) with the higher standard for describing trade secrets with sufficient particularity under Section 2019.210." Opp. at 15. Not so. As Roche later concedes, Drs. Diehn and Alizadeh cite multiple cases dismissing trade secret claims because Plaintiff failed to plead their alleged trade secrets with specificity. Opp. at 15-16 (citing *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133 (N.D. Cal. 2019); *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. 2018); and *Abbvie Inc. v. Adcentrx Therapeutics Inc.*, No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144, at *5 (S.D. Cal. July 29, 2024)). Roche asserts in conclusory fashion that it has pled its trade secrets with more specificity that the plaintiffs in those cases. Roche is wrong. Roche's trade secret allegations include no more than broad categories with non-limiting language used to list "exemplary" aspects of the purported trade secrets. And Roche completely fails to delineate its purported trade secrets from its broad disclosures of categories that include public information.

Roche argues *Attia* is distinguishable because the plaintiff in that case admitted the patents in question disclosed the secrets, whereas Roche pleads that its trade secrets are not generally known. Opp. at 15. But Roche—just like the plaintiff in *Attia*—admits "[t]here is no dispute that certain aspects of CAPP-Seq were published before Roche's acquisition of CappMed in 2015, and that these

publications reflected work conducted by the Individual Defendants." Opp. at 9.

Roche's alleged trade secret disclosure is thus insufficient for the same reasons as those described in *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021)—a case Roche cites. Opp. at 15. In that case, the court found that the plaintiff failed "to explain how we or anyone else is to distinguish between what is generally known or available information and what it contends to be protectable trade secrets. With a wave of the hand, it declares everything to be secret know-how." *Id.* at 383. Roche's FAC suffers from the same deficiency; Roche admits "aspects of CAPP-Seq were published before Roche's acquisition of CappMed in 2015" (Opp. at 9) but fails to explain how anyone could distinguish its trade secrets from those published CAPP-Seq disclosures.

Courts in this district have dismissed a trade secret claim based on information disclosed in a patent application, even if the application did "not [disclose] prominently" the trade secrets. *See, e.g., Nextdoor.Com, Inc. v. Abhyanker*, 2013 WL 3802526, at *8 (N.D. Cal. July 19, 2013). Here, the '084 patent discloses CAPP-Seq/iDES adapters in detail, including their components and structure. Mot. at 14 (citing Ex. C, "Y - Shaped Adaptors Comprising Unique Barcodes," col. 11:51-12:60; 13:33-19:51; Figs. 1, 6). The FAC does not distinguish the "CAPP-Seq/iDES barcodes" from the CAPP-Seq/iDES barcodes disclosed in the '084 patent. *Compare* FAC ¶ 93 *with* Ex. C, col. 47 ("Example 7: Processing of Molecular Barcodes," describing use of "index" and "insert" barcodes). Roche responds that the '084 patent does not disclose "Roche's specific CAPP-Seq/iDES adapter sequences" or barcodes. Opp. at 18. But Roche fails to plead ***how*** "*Roche's* specific CAPP-Seq/iDES adapter sequences" or barcodes differ from what was disclosed in the '084 patent.

*AllRounds, Inc. v. Eshares, Inc.*, 2021 WL 2945532, at *1 (N.D. Cal. July 14, 2021), a case relied on by Roche, is inapposite. There, the plaintiff claimed a trade secret regarding "*how* its software works (and how the software solves inefficiency problems in the venture capital world), which may be distinct from the information disclosed in the patent about *what* the software does." *Id.* (emphasis in original). Based on those allegations, the court found the plaintiff identified "at least certain aspects of its alleged trade secrets that were not disclosed" in a patent application. *Id.* Here, Roche's FAC wholly fails to identify both "*how*" its CAPP-Seq/iDES technology works different from what has been described publicly, and "*what*" aspect(s) of that technology is a trade secret.

Finally, Roche argues that the Roche-CappMed acquisition agreement "specifically states that Roche acquired broad IP rights, including trade secrets." Opp. at 1-2, 17. That agreement says no such thing. Indeed, the agreement demonstrates that Roche *acquired no trade secrets* from CappMed, and Defendants join in Roche's invitation for the Court to take judicial notice of it. Roche points to the agreement's definition of "Intellectual Property" as including "Copyrights, Know-How, Patents and Trademarks," and in turn the definition of "Know-How" as comprising a boilerplate list of twenty-three categories of potential know-how, including "trade secrets." Opp. at 1-2. But those stock definitions do not purport to identify the specific Intellectual Property Roche obtained under the agreement. Section 2.10 in conjunction with Part 2.10 of the accompanying Disclosure Schedule in fact shows that Roche acquired no copyrights or trademarks from CappMed: Part 2.10(a)(ii) of the Disclosure Schedule listed "none" for CappMed copyrights and trademarks.

**Critically, Section 2.10 and the Disclosure Schedule make no reference to trade secrets.** Thus, the fact that "trade secrets" were included in a boilerplate definition means nothing.

At bottom, Roche's conclusory identifications allow neither Drs. Diehn and Alizadeh nor the Court to "investigate how [the purported trade secret] might differ from matters already known." *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018). This is especially important where, like in *Attia*, Roche admits certain "aspects" were publicly known. The Court should dismiss Roche's FAC for this reason, as well.

### III. ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT

Roche's claims for breach of contract against Drs. Diehn and Alizadeh should be dismissed because Roche fails to adequately plead any breach.

Roche's Opposition does not contest that its breach of contract claims are premised on only two purported breaches: 1) "using and disclosing certain of the Roche Trade Secrets in patent applications upon which [Drs. Diehn and Alizadeh] were named inventors," and 2) "by purporting to assign their interests in the Disputed Patent Applications to Stanford." FAC ¶ 407.

The first purported breach is premised on the same factual allegations upon which Roche bases its claims for trade secret misappropriation. *See* Opp. at 20 (arguing that "Roche properly alleges both trade secret ownership and misappropriation by Drs. Alizadeh and Diehn, which is one of the bases

1  for its breach of contract theory."). Roche's breach of contract claims premised on these allegations
2  fail for the same reasons as Roche's trade secret claims. *Supra* Section II.

3  Roche's second purported breach, which Roche describes as "failing to assign to Roche the
4  Disputed Patent Applications," also does not support Roche's claims for breach of contract. Opp. at
5  20. Based on the allegations in the FAC, Drs. Diehn and Alizadeh had no obligation to assign the
6  Disputed Patent Applications to Roche because years before, they had already presently assigned them
7  ("I hereby assign…") to Stanford in their Stanford patent assignment agreements (the Stanford "SU-
8  18s").

9  Contrary to Roche's assertion, there are no "complex issues of facts relating to contract
10 interpretation" at issue here. Opp. at 20. The facts are straightforward. As an initial matter, Roche's
11 halfhearted suggestion that the Court should not consider them on a motion to dismiss fails. The Ninth
12 Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's
13 claim depends on the contents of a document, the defendant attaches the document to its motion to
14 dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does
15 not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068,
16 1076 (9th Cir. 2005). The FAC acknowledges the Stanford Oncologists' assignment obligations to
17 Stanford. FAC ¶ 54. The Stanford SU-18s are also incorporated into the Roche consulting agreements
18 on which Roche's claims rely, and which are attached as exhibits. FAC, Ex. 1 ¶ 5 (acknowledging Dr.
19 Diehn is an "employee of Stanford" subject to "agreements" including concerning "ownership of
20 intellectual property"); *id.*, ¶ 21 ("This Agreement **and the other agreement referenced herein** . . .
21 constitute the parties' entire understanding as of the Effective Date[.]" (emphasis added)).

22 ***First***: Although Roche concedes that Drs. Diehn and Alizadeh presently assigned to Stanford
23 "patentable inventions conceived or first reduced to practice in whole or in part in the course of my
24 University responsibilities or with more than incidental use of University resources" prior to any
25 agreement with Roche, Roche argues that PhasED-Seq somehow arose out of "Defendants' work
26 with ***CappMed or Roche, not Stanford.***" Opp. at 21 (emphasis in original). The FAC contains no
27 such factual allegations. Roche is simply trying to once again shoehorn its allegations of trade secret
28 misappropriation into its breach of contract claims. *Id.* (citing FAC ¶ 304 ("the Disputed Patent

Applications claim inventions built on and developed using the Roche Trade Secrets"). Contrary to Roche's attorney argument, the FAC itself alleges that PhasED-Seq was developed using substantial Stanford resources. In fact, the FAC alleges the opposite—that the Stanford Oncologists conceived PhasED-Seq and reduced it to practice *as part of their Stanford employment*, using funding obtained through Stanford. FAC ¶¶ 290-92 (alleging that Dr. Kurtz obtained NIH funding through Stanford for the development of PhasED-Seq), ¶ 301 ("Stanford received millions of dollars in research funding for NIH projects CA 188298 and CA241076"). These allegations suffice to establish the earlier-in-time (and judicially noticeable) Stanford SU-18s control and automatically vested ownership over the PhasED-Seq patents in Stanford. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) ("If the contract expressly grants rights in future inventions, no further act is required once an invention comes into being, and the transfer of title occurs by operation of law.").

Roche points to the language in the Roche consulting agreements prohibiting Drs. Diehn and Alizadeh from doing any of their consulting work using any "resources of Stanford" and requiring them to "segregate all work" for Roche from their Stanford work. Opp. at 22. It is not clear why Roche believes those provisions support its claims. These provisions were surely included in the consulting agreements because if Drs. Diehn and Alizadeh used any Stanford resources for their Roche work, then Stanford—not Roche—would own any resulting patents. These provisions thus further highlight that Roche itself was aware that the Stanford SU-18s were senior and controlling.

***Second***: Roche's contention that "Stanford expressly acknowledged 'it has no ownership of' know-how needed to practice CappMed's technology" is a distortion of the Stanford-CappMed license. Opp. at 23. In the Third Amendment of that agreement, Stanford gave CappMed a non-exclusive license to "Licensed Know-How," which was defined broadly to include "all information, know-how, results, algorithms, software (including, without limitation, object code and source code for the Fusion And Chromosomal Translocation Enumeration and Recovery Algorithm (FACTERA) and all associated copyrights) and data whether or not patentable described in the Licensed Patents that is provided by the inventors of the Licensed Patents employed by Stanford that is provided to

CappMed (or utilized by such inventors) during the term of this Agreement."[1]  Roche's partial quotation is from a separate provision governing "other know-how," which provides that the CAPP-Seq inventors "*may provide* CappMed other know-how" that is "unpatented but needed to practice the Licensed Patents."  This provision has no bearing on any issue for this motion.  The FAC does not allege that PhasED-Seq constitutes "other know-how," much less explain how or why **PhasED-Seq** would be "needed to practice" **CAPP-Seq**.  Nor does the FAC allege that the inventors ever even provided any such "other know-how" to CappMed.

  **Third**:  Roche argues that Stanford somehow nullified its own SU-18s, and instead made the patent assignment provisions in Drs. Diehn and Alizadeh's 2015 Roche consulting agreements "the operative assignment agreements," simply by consenting to CappMed's assignment of its Stanford CAPP-Seq patent license to a new Roche entity in the Fourth Amendment to the Stanford-CappMed license.  Opp. at 23.  Roche's argument fails for multiple reasons, including:

- Stanford was not a party to the consulting agreements between Roche and Drs. Diehn and Alizadeh, and Roche does not even attempt to argue that the legal test for ratification is satisfied here.  *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) ("ratification is the principal's assent (or conduct that justifies a reasonable assumption of assent) to be bound by the prior action of another person or entity.");

- Stanford did not and could not have ratified the Roche consulting agreements by entering into the Fourth Amendment to the CappMed license.  The consulting agreements were not executed until over a week *after* the Fourth Amendment, *id.* (ratification involves assent to be bound to a "prior action"), and Roche does not contend that Stanford took any other action that would have manifested assent to be bound by those consulting agreements;

- The fact that Stanford consented to CappMed's assignment of its Stanford CAPP-Seq license to a new Roche entity does not negate, or relate in any way to, Stanford's years-earlier SU-

---

[1] Roche's Opposition quotes the Third Amendment to the Stanford-CappMed license but does not attach the Third Amendment as an exhibit.  Opp. at 22.  Drs. Diehn and Alizadeh quote further relevant portions of the Third Amendment herein and, to the extent that the Court wishes to review the remaining agreement, Drs. Diehn and Alizadeh will join Roche in submitting the agreement under separate cover

18s with Drs. Diehn and Alizadeh, in which they presently assigned their future Stanford patentable inventions to Stanford;

- The Roche consulting agreements themselves acknowledge Drs. Diehn and Alizadeh's prior assignment agreements with Stanford, Ex. 1 at § 5.1, and prohibit them from doing any of their Roche consulting work using any "resources of Stanford," *id.* at § 5.2. Thus, the Roche consulting agreements on their face refute Roche's argument that they somehow became, or were intended to become, "the operative assignment agreements" over Stanford's SU-18s.

### IV.  ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Roche concedes its claims for breach of implied covenant of good faith and fair dealing should be dismissed because Roche fails to address these claims in the body of its Opposition, relegating its entire argument in support of these claims to footnote 10. *See* Opp. at 21. The Ninth Circuit has explained that "[a]rguments raised only in footnotes, or only on reply, are generally deemed waived. *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) (declining to consider argument raised only in a footnote). *See also Cheever v. Huawei Device USA, Inc.*, No. 18-CV-06715-JST, 2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019) ("Because Defendants relegate the argument to a footnote, *id.*, the Court will decline to consider it.").

### V.  CONCLUSION

The Court should grant Drs. Diehn and Alizadeh's motion to dismiss with prejudice.

Dated: February 19, 2025

Respectfully submitted,

IRELL & MANELLA LLP

By: */s/ Alan Heinrich*

Alan Heinrich

*Attorneys for Drs. Diehn and Alizadeh*