IRELL & MANELLA LLP
Morgan Chu (CA 70446)
MChu@irell.com
Alan Heinrich (CA 212782)
AHeinrich@irell.com
Jordan Nafekh (CA 328151)
JNafekh@irell.com
Henry White (CA 351549)
HWhite@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199

*Attorneys for Dr. Kurtz*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC. et al<br><br>Plaintiffs<br><br>v.<br><br>FORESIGHT DIAGNOSTICS INC. et al<br><br>Defendants. | Case No. 5:24-cv-03972-EKL<br><br>**DR. KURTZ'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>Date: April 2, 2025<br>Time: 10:00 a.m.<br>Judge: Honorable Eumi K. Lee<br>Courtroom: 7<br><br>Complaint Filed: July 1, 2024<br>Amended Complaint Filed: November 22, 2024 |

**TABLE OF CONTENTS**
**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ROCHE HAS FAILED TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION ................................................................................................... 1

    A. Roche's Trade Secret Claims Are Barred By The Statute Of Limitations ........................................................................................................... 2

        1. Roche's Allegations of Misappropriation Through Chabon 2020 Are Judicial Admissions Accepted as True, Even If Fatal to Roche's Case ................................................................................. 2

        2. Roche Misstates the Law on Notice of Trade Secret Misappropriation ........................................................................................ 3

        3. Chabon 2020 Establishes Inquiry Notice of Alleged Misappropriation ........................................................................................ 5

    B. Roche Fails To State A Claim Under Either DTSA Or CUTSA .......................... 8

III. ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT ........................................................................................................................ 11

IV. ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING .......................... 12

V. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbvie Inc. v. Adcentrx Therapeutics Inc.*,
   No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144 (S.D. Cal. July 29, 2024)..........................9

*AllRounds, Inc. v. Eshares, Inc.*,
   2021 WL 2945532 (N.D. Cal. July 14, 2021) ...............................................................10

*AlterG, Inc. v. Boost Treadmills LLC*,
   388 F. Supp. 3d 1133 (N.D. Cal. 2019) ........................................................................9

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988).........................................................................................3

*Ashton-Tate Corp. v. Ross*,
   728 F. Supp. 597 (N.D. Cal. 1989) ..............................................................................6

*Attia v. Google LLC*,
   983 F.3d 420 (9th Cir. 2020).........................................................................3, 8, 9, 10

*Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*,
   2021 WL 5197215 (N.D. Cal. Nov. 9, 2021)...............................................................10

*Casumpang v. Hawaiian Com. & Sugar Co.*,
   712 F. App'x 709 (9th Cir. 2018)...................................................................................2

*Cheever v. Huawei Device USA, Inc.*,
   No. 18-CV-06715-JST, 2019 WL 8883942 (N.D. Cal. Dec. 4, 2019)........................12

*Enuke v. America's Wholesale Lender*,
   No. CV 11-6661 PA, 2011 U.S. Dist. LEXIS 158085 (C.D. Cal. Dec. 28, 2011)......11

*FlexWage Sols. LLC v. Ceridian HCM Holding Inc.*,
   2024 WL 2132620 (Del. Super. Ct. May 13, 2024)......................................................7

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) ..........................................................................5

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005)...............................................................................................5, 8

*Gatan, Inc. v. Nion Co.*,
   2018 WL 2117379 (N.D. Cal. May 8, 2018) .............................................................10

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020).........................................................................................8

*Karns & Karns Ltd. Liab. P'ship v. Quintessa Mktg., Ltd. Liab. Co.*,
  No. 2:23-cv-04434-SPG-KS, 2023 U.S. Dist. LEXIS 129668 (C.D. Cal. July
  25, 2023) ................................................................................................................................... 11

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................................................ 5

*Memry Corp. v. Ky. Oil*,
  2005 WL 8162558 (N.D. Cal. Apr. 8, 2005) ........................................................................ 6

*MGA Ent., Inc. v. Mattel, Inc.*,
  41 Cal. App. 5th 554, 563 (2019) ..................................................................................... 5, 8

*Micrel Inc. v. Monolithic Power Sys., Inc.*,
  2005 WL 6426678 (N.D. Cal. Dec. 9, 2005) .................................................................... 3, 4

*Nextdoor.Com, Inc. v. Abhyanker*,
  2013 WL 3802526 (N.D. Cal. July 19, 2013) .................................................................... 10

*Novation Sols., Inc. v. Issuance Inc.*,
  2023 WL 5505908 (C.D. Cal. June 27, 2023) ..................................................................... 9

*Orkin v. Taylor*,
  487 F.3d 734 (9th Cir. 2007) ................................................................................................ 7

*P2i Ltd. v. Favored Tech USA Corp.*,
  2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ..................................................................... 8

*Patton v. Experian Data Corp.*,
  No. SACV 17-01559-JVS(DFMx), 2018 U.S. Dist. LEXIS 231731 (C.D. Cal.
  Dec. 4, 2018) ...................................................................................................................... 11

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
  522 F.3d 1049 (9th Cir. 2008) .............................................................................................. 3

*Portney v. CIBA Vision Corp.*,
  2008 WL 5505518 (C.D. Cal. Dec. 24, 2008) ..................................................................... 4

*Reinhardt v. Gemini Motor Transp.*,
  879 F. Supp. 2d 1138 (E.D. Cal. 2012) ......................................................................... 11, 12

*Rhynes v. Stryker Corp.*,
  2011 WL 2149095 (N.D. Cal. May 31, 2011) ..................................................................... 4

*Estate of Saunders v. Comm'r*,
  745 F.3d 953 (9th Cir. 2014) .............................................................................................. 12

*Sylabs, Inc. v. Rose*,
  2023 WL 8813517 (N.D. Cal. Dec. 19, 2023) ..................................................................... 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Prod. Liab. Litig.*,
    No. 8:10ML 02151 JVS, 2010 WL 6419562 (C.D. Cal. Dec. 9, 2010) ........................................4

*Vendavo, Inc. v. Price f(x) AG*,
    No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. 2018) .......................................................9

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ........................................................................................................7

*Yafai v. Amtrak*,
    No. C-08-05715 EDL, 2009 WL 10692039 (N.D. Cal. Feb. 19, 2009) .....................................12

*York Cnty. v. HP, Inc.*,
    65 F.4th 459 (9th Cir. 2023) .........................................................................................................7

**Statutes**

18 U.S.C. § 1839(5) ..................................................................................................................................2

Civ. Proc. Code § 2019.210 ......................................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................3, 9, 11, 12

Numbered exhibits are attached to Plaintiffs' FAC. Dkt. 87. Lettered exhibits are attached to the declaration of Alan Heinrich in support of Dr. Kurtz's Motion to Dismiss Roche's FAC. Dkt. 108. Throughout this Motion, emphasis is added unless otherwise stated.

## I. INTRODUCTION

Roche's Opposition to Dr. Kurtz's Motion to Dismiss fails to overcome the deficiencies in its pleading. Roche's claims against them should be dismissed with prejudice.

First, Roche's allegations that Chabon 2020 discloses the "use" (Roche's words) of multiple trade secrets—and hence misappropriation—are binding admissions against Roche. Roche's attempt to shift the burden to Dr. Kurtz, arguing that he must concede or admit misappropriation to properly challenge Roche's complaint, is not the law. Roche's backtracking that Chabon 2020 could not have raised more than a "general concern" of misappropriation is attorney argument that contradicts the express allegations in the FAC. The FAC relies heavily on Chabon 2020 as alleged evidence that Dr. Kurtz misappropriated Roche's purported trade secrets. Roche's claim that Chabon 2020 reveals Defendants' alleged misappropriation but at the same time would not have made a reasonably prudent person suspicious is fatally contradictory. Roche's trade secret claims are time-barred.

Second, even if Roche's trade secret claims were timely (which they are not), Roche still has failed to identify any trade secret with sufficient particularity, despite being afforded a second try.

Third, Roche has failed to state a claim for breach of contract against Dr. Kurtz because Roche fails to plead its own performance under the contract at issue. Roche includes no more than conclusory allegations of performance, which are entitled no weight. The reason Roche has failed to plead its own performance, despite being on notice of the deficiency from Dr. Kurtz's previously-filed motion for judgment on the pleadings directed to Roche's original complaint, is that Roche did not perform and therefore cannot allege otherwise.

Fourth, Roche has failed to state a claim for breach of implied covenant of good faith and fair dealing against Drs. Diehn and Alizadeh, and failed to rebut their arguments for dismissal. And what little Roche says about this claim is relegated to a footnote, which amounts to waiver.

For all these reasons and those stated previously, all of Roche's claims against Dr. Kurtz should be dismissed.

## II. ROCHE HAS FAILED TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION

### A. Roche's Trade Secret Claims Are Barred By The Statute Of Limitations

#### 1. Roche's Allegations of Misappropriation Through Chabon 2020 Are Judicial Admissions Accepted as True, Even If Fatal to Roche's Case

In the Opposition, Roche attempts to backtrack from its binding allegations in the FAC that Chabon 2020 constitutes an act of misappropriation of Roche trade secrets through "use." *See* 18 U.S.C. § 1839(5) ("the term 'misappropriation' means . . . disclosure or use of a trade secret of another without express or implied consent. . . ."). Roche alleges on numerous occasions in the FAC that Chabon 2020 constituted an act of misappropriation, including for at least seven alleged trade secrets:

- FAC ¶ 273 (in the section of the FAC entitled "Defendants' Misappropriation of Roche's Trade Secrets . . ." stating "***Drs. Alizadeh, Diehn, and Kurtz used Roche's CAPP-Seq/iDES adaptive variant caller algorithm trade secret*** to develop and perform PhasED-Seq. . . . . *A 2020 paper* co-authored by Drs. Alizadeh, Diehn, Kurtz, and Foresight cofounder Jake Chabon also *describes the use of the CAPP-Seq adaptive variant caller* when engaging in error suppression and variant calling in relation to the development of PhasED-Seq.");

- FAC ¶ 274 (in same misappropriation section, "***Drs. Alizadeh, Diehn, and Kurtz used Roche's CAPP-Seq/iDES germline filtering algorithm trade secret*** to develop and perform PhasED-Seq. . . . ***Chabon 2020 further acknowledges the use of Roche's adaptive variant caller***, which includes adaptive variant calling in an unpaired manner in relation to the development of PhasED-Seq."); and

- FAC ¶ 227 (listing Chabon 2020 as a disclosure of "work[] [by Defendants] on phased variant detection during their time at Roche using Roche's CAPP-Seq/iDES platform, which led to the development of Foresight's PhasED-Seq technology.").

*See also* FAC ¶¶ 275-278 (in the same section on misappropriation, allegations of Chabon 2020 as evidence of improper use and disclosure of still four other trade secrets).

It is well established that Roche's allegations are deemed to be binding judicial admissions.

*Casumpang v. Hawaiian Com. & Sugar Co.*, 712 F. App'x 709, 710 (9th Cir. 2018) (plaintiff's claims were time-barred based on allegations in the complaint, which "are considered judicial admissions conclusively binding on the party who made them" (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988))). They are deemed to be true for the purposes of determining whether Roche has stated a claim under Fed. R. Civ. P. 12(b)(6), even where Dr. Kurtz does not agree with the allegations. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 (9th Cir. 2008) ("in reviewing a motion to dismiss, '[w]e accept as true all well-pleaded facts in the complaint. . . .'"). This includes Roche's repeated allegation in the FAC that the publication of Chabon 2020 was an act of unlawful use and disclosure of multiple Roche trade secrets, constituting misappropriation. The cases cited by Dr. Kurtz in his Motion where courts have granted motions to dismiss on the basis of statute of limitations were in similar context, based on the binding admissions of the plaintiff in the complaint. *See Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (plaintiff admitted Google's patents disclosed the alleged trade secrets).

At this stage, Dr. Kurtz need not "explain" or concede misappropriation where Roche's FAC alleges, repeatedly, that Chabon 2020 evidences "use" of multiple trade secrets.

### 2.  Roche Misstates the Law on Notice of Trade Secret Misappropriation

Roche's trade secret claims are time-barred because Roche was, at minimum, on inquiry notice of potential misappropriation by March 25, 2020, when Chabon 2020 was published. Mot. at 8-10. Roche alleges that Chabon 2020 did not provide inquiry notice because "it did not *disclose* any of Roche's trade secrets, nor did it evidence any *use* of Roche's secrets." Opp. at 8. But again, Roche's actual pleading tells a different story—the FAC expressly alleges that particular pages of Chabon 2020, which is Exhibit 104 to the FAC, demonstrate "use" of the alleged trade secrets, regardless of whether the entire trade secret is spelled out in detail. FAC ¶¶ 274-278 (providing pin cites to specific portions of Chabon 2020 that allegedly demonstrate "use" of various alleged trade secrets, including to page 10, which includes multiple references to CAPP-Seq).

Chabon 2020 need not disclose Roche's trade secrets for an even more fundamental reason. The relevant question is inquiry notice: whether Chabon 2020 "would make a reasonably prudent person suspicious" of potential misappropriation in light of the FAC's own binding admissions.

*Micrel Inc. v. Monolithic Power Sys., Inc.*, 2005 WL 6426678, at *3 (N.D. Cal. Dec. 9, 2005). If so, Roche had "a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *Id.* Courts generally hold sophisticated parties to a higher standard of diligence in discovering potential claims. *Portney v. CIBA Vision Corp.*, 2008 WL 5505518, at *9-10 (C.D. Cal. Dec. 24, 2008) (plaintiff failed to exercise reasonable diligence because he "paint[ed] himself as a sophisticated businessperson who holds a wide range of patents[,] whose inventions have resulted in profits totaling hundreds of millions of dollars").

It is not plausible that Roche, as a sophisticated global healthcare company, would not have been aware of Chabon 2020 when it was published. And, once Roche became aware of Chabon 2020, which, according to Roche, demonstrates the use of a number of its alleged trade secrets, it would have had a duty to investigate further.

Roche—not Dr. Kurtz—bears the burden here to establish that a reasonable investigation would not have revealed Dr. Kurtz's alleged misappropriation earlier, since it is **Roche's own complaint** that alleges Chabon 2020 evidences misappropriation. *See Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *2 (N.D. Cal. May 31, 2011) ("In order to rely on the discovery rule, 'a plaintiff *whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule* must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. . . . the court places the burden on the plaintiff to show diligence.").

Roche has not met its burden. Roche relies on *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Prod. Liab. Litig.*, No. 8:10ML 02151 JVS, 2010 WL 6419562, at *7 (C.D. Cal. Dec. 9, 2010), to argue that the Court "must accept" Roche's conclusory allegation that it "could not have been reasonably aware of Defendants' . . . trade secret misappropriation before [May 14, 2021]." FAC ¶ 311. Roche is wrong. *In re Toyota* considered a motor vehicle collision case where the Plaintiff pled that at the time of her accident, "she was unaware that her vehicle possessed any defect and she did not suspect the cause of her injuries or the tortious nature of the cause of her injuries." 2010 WL 6419562 at *3. The Court accepted those allegations as true because "even if a plaintiff knows that a particular product has injured her, the plaintiff is not necessarily on inquiry

notice that wrongdoing, such as defective design of the product, caused her injuries." *Id*. at *4.

Simply put, *In re Toyota* has nothing to do with the facts here, where Roche's own specific factual allegations contradict its conclusory allegation that it was not on notice of the alleged misappropriation. Roche's conclusory allegations are insufficient to withstand dismissal. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 811 (2005) (holding claims time-barred where the complaint failed to allege "***specific facts*** supporting" plaintiff's explanation for why it could not have discovered injury earlier through reasonable diligence); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) ("[W]e disregard conclusory allegations.").

### 3.  Chabon 2020 Establishes Inquiry Notice of Alleged Misappropriation

Chabon 2020 is the ***linchpin*** of Roche's allegation of misappropriation. *See* FAC ¶¶ 227, 273-278, 281. Roche's Opposition fails to explain how Chabon 2020 would not have at least made it, a sophisticated plaintiff, suspicious of potential misappropriation. *See MGA Ent., Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 563 (2019) ("The standard for accrual of the statute of limitation under the discovery rule is *not* the receipt of documentary evidence of misappropriations. The question is when MGA was on notice of *a potential claim*." (internal quotations omitted). By Roche's own description, Chabon 2020 discloses, among other things, the use of the following alleged trade secrets: (i) "CAPP-Seq adaptive variant caller when engaging in error suppression and variant calling"; (ii) "Roche's adaptive variant caller, which includes adaptive variant calling in an unpaired manner"; (iii) "CAPP-Seq/iDES selector-wide SNV caller and a 'Monte-Carlo-based ctDNA detection index'"; (iv) "CAPP-Seq variant caller and filtering, which includes Indel calling"; (v) "CAPP-Seq variant calling and filtering, including fusion calling"; (vi) "Roche's CAPP-Seq CNV caller"; and (vii) "CAPP-Seq panels including blacklisted and whitelisted genes." FAC ¶¶ 273-278, 281.

The law is clear: Chabon 2020's disclosure of even *one* of Roche's alleged trade secrets triggered Roche's duty to investigate further. *See Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000) ("[W]hen the statute of limitations begins to run on some of a plaintiff's trade secret claims against given defendants, the statute also begins to run at the same time as to other trade secret claims . . . , even if there have not yet been any acts of misappropriation of the other trade secrets, at least when the plaintiff shared all the trade secrets with the defendants during the same time

period and in connection with the same relationships and when the trade secrets concern related matters."). This rule of law makes particular sense here: Roche continues to assert that it obtained broad intellectual property rights to CAPP-Seq from CappMed, "including all patent rights, trade secrets, and know-how relating to the CAPP-Seq technology." FAC ¶ 47. Thus, taken as true, Roche's claim that "Chabon 2020 disclosed only that the Individual Defendants were working on CAPP-Seq technology as they had been for years", beyond plainly contradicting Roche's own allegations in the FAC, still would have triggered Roche's duty to investigate, as CAPP-Seq is the very technology to which Roche claims it acquired "all" intellectual property rights. Opp. at 7.

Roche attempts to obscure the issue further by claiming Chabon 2020 could not have provided inquiry notice because it "said nothing about the PhasED-Seq technology, which forms the basis of Roche's misappropriation claims." Opp. at 8. But Roche fails to recognize that the existence of a competing product is irrelevant to a misappropriation claim. Roche's statute of limitations began to run when it was aware, or should have been aware, of evidence of unauthorized "use" of its trade secrets, whether they were "used" in a research paper or in a competing product. *See Ashton-Tate Corp. v. Ross,* 728 F. Supp. 597, 603 (N.D. Cal. 1989) (statute of limitations began to run upon initial disclosure of a trade secret even though product using the trade secrets was not published until years later). The fact that Roche didn't *want* to pursue a misappropriation claim until it realized the value of PhasED-Seq has no bearing on when Roche was made aware of the facts necessary for its misappropriation claim.

The cases Roche relies on belie its position. In *Memry Corp. v. Ky. Oil*, 2005 WL 8162558, at *6 (N.D. Cal. Apr. 8, 2005), the counter-defendant had given express assurances that he was working on a completely different concept than the alleged trade secret, which the court found "could have reasonably precluded [the counter-plaintiff] from becoming suspicious." 2005 WL 8162558 at *6. Here, in contrast, the Stanford Oncologists were openly and notoriously working and publishing on CAPP-Seq, the very technology over which Roche claims to have a trove of trade secrets. Ex. 104 (Chabon 2020) at 1 (describing work as "improvements" to CAPP-Seq). And they were doing so not for Roche but as part of their full-time employment at Stanford. Yet Roche never sought assurances from the Stanford Oncologists similar to those in *Memry*. FAC ¶¶ 315, 317, 319.

Thus, Roche cannot rely on the parties' "previous relationship" to claim ignorance. *See, e.g.*, *RoboticVISIONTech, Inc.* 726 F. Supp. 3d at 372 (competitor's launch of a software product similar to plaintiff's put plaintiff on inquiry notice of its trade secret claim against the competitor, where plaintiff knew that the product was similar to its own *and* that its chief scientist had left to join the competitor while potentially being in possession of confidential information).

That the Stanford Oncologists, along with co-authors from other leading institutions, published an article in one of the world's leading peer-reviewed journals detailing use of multiple alleged Roche trade secrets demonstrates that Roche should have been suspicious of any alleged misappropriation. *See FlexWage Sols. LLC v. Ceridian HCM Holding Inc.*, 2024 WL 2132620, at *4 (Del. Super. Ct. May 13, 2024) (mutual non-disclosure agreements between the parties contractually obligated the competitor to keep plaintiff's disclosures confidential, yet announcements demonstrated that the competitor was using plaintiff's confidential information, which put plaintiff, at least, on inquiry notice of misappropriation). Chabon 2020 even includes multiple references to both plaintiffs Roche Molecular Diagnostics and Roche Sequencing Solutions, by name, in the Competing Interests disclosure section. FAC Ex. 104 at 13. Roche's claim that it could not have been expected to be aware of Chabon 2020 does not pass muster.

*York Cnty. v. HP, Inc.*, 65 F.4th 459, 468 (9th Cir. 2023) is also inapposite. Opp. at 6. The plaintiffs in *York* did not have the facts necessary to plead their claims prior to the limitations date. The defendants argued plaintiffs' claims alleging securities fraud based on misleading statements contained in SEC filings were time-barred because the plaintiffs did not file suit until years after those filings. However, it was impossible for the plaintiffs to know the filings were false or misleading until the SEC eventually issued an order revealing that those statements were actually intentional misrepresentations. *Id.* at 467. The court concluded that, without the information from the SEC's order, the alleged misleading "statements seemed like standard assurances to shareholders." *Id.*[1]

---

[1] Roche's citation to *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) is also misplaced. Opp. at 5. *Von Saher* involved an action to recover stolen property. The Ninth Circuit held there were "no facts on the face of [plaintiff's] complaint which foreclose a showing of lack of reasonable notice." *Von Saher,* 592 F.3d at 969. But here, the FAC alleges and admits *as facts* that Chabon 2020 evidences misappropriation, which forecloses any

Unlike *York County*, Roche had all necessary facts available to it. It has alleged Chabon 2020 evidences improper use of Roche's alleged trade secrets, and the Stanford Oncologists who co-authored Chabon 2020 were under confidentiality obligations not to use or disclose Roche confidential information. FAC ¶¶ 273-278, 281, 312, 395, 403. Also, unlike the plaintiff in *York County*, Roche is a sophisticated multinational healthcare conglomerate with devoted resources to discover and investigate alleged misappropriation.

Given the parties' previous relationship, lack of assurances (because none were requested), and Roche's awareness of the Stanford Oncologists' continued work on CAPP-Seq at Stanford, Roche should have reasonably inquired to see whether any misappropriation occurred. Thus, Chabon 2020 should have raised more than just "general concerns." Opp. at 12.

Contrary to Roche's assertions, California law makes clear that Roche "need not be aware of **specific facts** necessary to establish the claim," only a "**suspect[ed] factual basis**" for [the claim's] elements." *MGA Ent., Inc.*, 41 Cal. App. 5th at 561-64. Courts "do not take a hypertechnical approach" in using the term "elements." *Fox*, 35 Cal. 4th at 807 ("[R]ather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, [courts] look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."). Roche, armed with all this knowledge, should have suspected potential misappropriation, and was therefore on notice by March 25, 2020 (Chabon 2020's publication).

### B. Roche Fails To State A Claim Under Either DTSA Or CUTSA

Roche has not plausibly alleged "ownership of a trade secret, including both identifying the trade secret and showing the trade secret exists." *P2i Ltd. v. Favored Tech USA Corp.*, 2024 WL 4294652, at *3 (N.D. Cal. Sept. 24, 2024). "Identifying trade secrets with sufficient particularity is important because defendants need concrete identification to prepare a rebuttal." *Id.* (citing *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020)). Roche could have a viable trade secret claim for technology related to CAPP-Seq only if Roche "reveals implementation details and techniques *beyond* what was disclosed in [a published patent application or paper]." *Attia*

---

showing of reasonable diligence. *See Orkin v. Taylor*, 487 F.3d 734, 742 (9th Cir. 2007); FAC ¶¶ 273-278, 281.

*v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (emphasis in original); Mot. at 13. Having now had two attempts to distinguish its "trade secrets" from general knowledge, Roche still fails to meet this burden: (1) Roche has not identified any non-public aspects of CAPP-Seq/iDES, (2) nor has it specified the metes and bounds of the alleged trade secrets.

Roche first argues that Dr. Kurtz "conflates the pleading standard under Rule 12(b)(6) with the higher standard for describing trade secrets with sufficient particularity under Civ. Proc. Code § 2019.210." Opp. at 14. Not so. As Roche later concedes, Dr. Kurtz cites multiple cases dismissing trade secret claims because Plaintiff failed to plead their alleged trade secrets with specificity. Mot. at 16 (citing *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133 (N.D. Cal. 2019); *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. 2018); and *Abbvie Inc. v. Adcentrx Therapeutics Inc.*, No. 3:23-CV-02290-BEN-DEB, 2024 WL 3611144, at *5 (S.D. Cal. July 29, 2024)). Roche asserts in conclusory fashion that it has pled its trade secrets with more specificity that the plaintiffs in those cases. Roche is wrong. Roche's trade secret allegations include no more than broad categories with non-limiting language used to list "exemplary" aspects of the purported trade secrets. And Roche completely fails to delineate its purported trade secrets from its broad disclosures of categories that include public information.

Indeed, Roche's alleged trade secret disclosure is insufficient for the same reasons as those described in *Sylabs, Inc. v. Rose*, 2023 WL 8813517, at *6 (N.D. Cal. Dec. 19, 2023)—a case on which Roche relies. Opp. at 14. In *Sylabs*, the court found the plaintiff failed to "delineate the boundaries between its trade secrets and its information that has been made public through patents and patent applications." *Sylabs*, 2023 WL 8813517, at *6. The court rejected the very argument Roche makes here; namely, that distinguishing between the confidential aspects of the technology and those published in the patent application would require expert discovery and precluded dismissal based on the pleadings alone.

"[I]t is well established in the Ninth Circuit that at the motion to dismiss phase 'publication of information in a patent application eliminates any trade secrecy.'" *Novation Sols., Inc. v. Issuance Inc.*, 2023 WL 5505908, at *6 (C.D. Cal. June 27, 2023) (quoting *Attia*, 983 F.3d at 426). Roche argues *Attia* is distinguishable because the plaintiff in that case admitted the patents in question

1  disclosed the secrets, whereas Roche pleads that its trade secrets are not generally known. Opp. at 15.
2  But Roche—just like the plaintiff in *Attia*—admits "[t]here is no dispute that certain aspects of CAPP-
3  Seq were published before Roche's acquisition of CappMed in 2015, and that these publications
4  reflected work conducted by the Individual Defendants, including Dr. Kurtz." Opp. at 7.

5        Courts in this district have dismissed a trade secret claim based on information disclosed in a
6  patent application, even if the application did "not [disclose] prominently" the trade secrets. *See, e.g.,*
7  *Nextdoor.Com, Inc. v. Abhyanker*, 2013 WL 3802526, at *8 (N.D. Cal. July 19, 2013). Here, the '084
8  patent discloses CAPP-Seq/iDES adapters in detail, including their components and structure. Mot.
9  at 14 (citing Ex. C, "Y - Shaped Adaptors Comprising Unique Barcodes," col. 11:51-12:60; 13:33-
10 19:51; Figs. 1, 6). The FAC does not distinguish the "CAPP-Seq/iDES barcodes" from the CAPP-
11 Seq/iDES barcodes disclosed in the '084 patent. *Compare* FAC ¶ 93 *with* Ex. C, col. 47 ("Example
12 7: Processing of Molecular Barcodes," describing use of "index" and "insert" barcodes).

13       Roche responds that the '084 patent does not disclose "Roche's specific CAPP-Seq/iDES
14 adapter sequences" or barcodes. Opp. at 16-17. But Roche fails to plead **how** "*Roche's* specific
15 CAPP-Seq/iDES adapter sequences" or barcodes differ from what was disclosed in the '084 patent.

16       *AllRounds, Inc. v. Eshares, Inc.*, 2021 WL 2945532, at *1 (N.D. Cal. July 14, 2021), a case
17 relied on by Roche, is inapposite. There, the plaintiff claimed a trade secret regarding "*how* its
18 software works (and how the software solves inefficiency problems in the venture capital world),
19 which may be distinct from the information disclosed in the patent about *what* the software does." *Id.*
20 (emphasis in original). Based on those allegations, the court found the plaintiff identified "at least
21 certain aspects of its alleged trade secrets that were not disclosed" in a patent application. *Id.* Here,
22 Roche's FAC wholly fails to identify both "*how*" its CAPP-Seq/iDES technology works different
23 from what has been described publicly, and "*what*" aspect(s) of that technology is a trade secret.

24       At bottom, Roche's conclusory identifications allow neither Dr. Kurtz nor the Court to
25 "investigate how [the purported trade secret] might differ from matters already known." *Gatan, Inc.*
26 *v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018). This is especially important where,
27 like in *Attia*, Roche admits certain "aspects" were publicly known. *See Carl Zeiss X-Ray Microscopy,*
28 *Inc. v. Sigray, Inc.*, 2021 WL 5197215, at *4 (N.D. Cal. Nov. 9, 2021) (trade secret owner "must take

care not to inadvertently include such public domain material by referring indiscriminately to documents that 'include' trade secrets but that also include materials that clearly are in the public domain."). Roche's conclusory assertions conflating its alleged trade secrets with public matters in the trade cannot avoid dismissal under Rule 12(b)(6).

### III.  ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT

Roche's claim for breach of contract against Dr. Kurtz should be dismissed because Roche fails to sufficiently plead that it performed under the alleged contract. Roche does not, and cannot, dispute that the only allegation in the FAC relating to its performance is the conclusory allegation at paragraph 400: "At all relevant times, Roche has performed its obligations under the Kurtz Agreement." FAC ¶ 400. This allegation is insufficient to state a claim. *Patton v. Experian Data Corp.,* No. SACV 17-01559-JVS(DFMx), 2018 U.S. Dist. LEXIS 231731, at *11 (C.D. Cal. Dec. 4, 2018) (dismissing breach of contract claim where claimant's "conclusory allegation [that it performed its obligations] contains no facts indicating that [claimant] performed or was excused from performing"); *Karns & Karns Ltd. Liab. P'ship v. Quintessa Mktg., Ltd. Liab. Co.*, No. 2:23-cv-04434-SPG-KS, 2023 U.S. Dist. LEXIS 129668, at *9 (C.D. Cal. July 25, 2023) ("Plaintiff does not specify which duties it performed under the Contract, only that it 'performed all conditions, covenants, and promises.' . . . Such a conclusory allegation fails to satisfy federal pleading standards."); *Enuke v. America's Wholesale Lender*, No. CV 11-6661 PA (SPx), 2011 U.S. Dist. LEXIS 158085, at *23 (C.D. Cal. Dec. 28, 2011) ("the court finds Plaintiff's wholly conclusory statement that she 'substantially performed all of her conditions in the Deed of Trust' insufficient to state a claim for breach of contract."). None of Roche's various arguments in its Opposition changes the fact that Roche failed to adequately plead factual allegations of its own performance.

Roche relies on *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1143 (E.D. Cal. 2012), to argue that a Plaintiff's conclusory allegation that it "performed all conditions, covenants, and promises" is sufficient at the pleading stage. Roche misreads *Reinhardt*. In *Reinhardt*, the Court focused on the factual allegations in the pleading at issue which showed the specific "conditions, covenants, and promises" carried out by Plaintiffs:

> Further, the FAC clearly and expressly alleges that the "Plaintiffs," i.e. both Reinhardt and Armstrong, performed all conditions, covenants, and promises. *Id*. at ¶ 80. Paragraph 80 is given further meaning by both the description of the Plaintiffs' job duties in Paragraphs 9–16 and the nature of Gemini's breach (failure to pay a daily minimum amount). The FAC is reasonably read to mean that Plaintiffs were required to deliver fuel, they delivered the fuel, but they were not given their daily minimum pay despite their performance.

*Id*. The Court in *Reinhardt* therefore did not hold that conclusory allegations are sufficient on their own. To the contrary, the Court examined the factual allegations of the pleading to determine if Plaintiff has plausibly alleged its own performance under the contract at issue. Here, unlike the Plaintiff in *Reinhardt*, Roche does not allege what its obligations were under the Kurtz Agreement, and it therefore fails to state a claim.

Roche goes outside the FAC and points to Dr. Kurtz's Answer where Dr. Kurtz states he received "$12,380.97 for all of his contracting services." Dkt. 54 at 4. This is a red herring. Dr. Kurtz's Answer is not part of Roche's pleading, and therefore not properly considered at the motion to dismiss stage. *See Yafai v. Amtrak*, No. C-08-05715 EDL, 2009 WL 10692039, at *1 (N.D. Cal. Feb. 19, 2009) ("A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. . . . Review is limited to the contents of the complaint."). If it were considered, the Court should consider the factual allegation of Dr. Kurtz's Answer in its entirety: "Roche paid [Dr. Kurtz] a grand total of just $12,380.97 for all of his contracting services (over the course of 2017-2019) under an agreement that Roche itself breached due to underpayment." Dkt. 54 at 4. Dr. Kurtz's allegations are the only factual allegations before the Court on the issue of whether Roche performed under the contract it alleges was breached. Dr. Kurtz's allegations show Roche did not. The Court should grant Dr. Kurtz's motion to dismiss Roche's breach of contract claim.

### IV.     ROCHE HAS FAILED TO STATE A CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Roche's Opposition concedes its claim for breach of implied covenant of good faith and fair dealing should be dismissed. Roche fails to address Dr. Kurtz's argument in the body of its Opposition, relegating its entire argument in support of this claim to footnote 9. *See* Opp. at 21. The Ninth Circuit has explained that "[a]rguments raised only in footnotes, or only on reply, are generally deemed waived." *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) (declining to

consider argument raised only in a footnote). *See also Cheever v. Huawei Device USA, Inc.*, No. 18-CV-06715-JST, 2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019) ("Because Defendants relegate the argument to a footnote, *id.*, the Court will decline to consider it.").

The substance of Roche's footnote also fails. Roche does not address any of the arguments in Dr. Kurtz's motion, only arguing that "to the extent that Dr. Kurtz seeks to argue . . . that he itwas [*sic*] not required under the Kurtz Agreement to assign to Roche the disputed inventions, Roche is entitled to asserts [*sic*] its breach of the implied covenant of good faith and fair dealing claim . . ." Opp. at 21. Roche is wrong. Roche's claim fails for the independent reasons set forth in Dr. Kurtz's Motion to Dismiss.

## V.   CONCLUSION

The Court should grant Dr. Kurtz's motion to dismiss with prejudice.

Dated: February 19, 2025

Respectfully submitted,

IRELL & MANELLA LLP

By: */s/ Alan Heinrich*

Alan Heinrich

*Attorneys for Dr. Kurtz*