# EXHIBIT 5

**CONFIDENTIAL**
**Execution Version**

# NON-COMPETITION AGREEMENT
# [FORM FOR MAXIMILIAN DIEHN AND ARASH ALIZADEH]

**THIS NON-COMPETITION AGREEMENT** (this "Noncompetition Agreement") is being executed and delivered as of [●], 2015 by [_____] ("Securityholder"), in favor of, and for the benefit of Roche Molecular Systems, Inc., a Delaware corporation ("Parent"), and the other Beneficiaries (as defined below). Capitalized terms used but not otherwise defined in this Noncompetition Agreement have the definitions assigned to them in the Merger Agreement (as defined below).

## RECITALS

**A.** Securityholder is a substantial securityholder and founder of CAPP Medical, Inc., a Delaware corporation (the "Company"), and has also been involved in key research, development and inventive activity on behalf of the Company pertaining to the Company's technology and products.

**B.** In the course of such engagement by the Company, Securityholder has developed, obtained and been given access to extensive and valuable knowledge, Know-How and confidential information (including trade secret information) belonging to the Company concerning the Company's technology and business.

**C.** Securityholder, in the course of conducting the business of the Company, has also developed on behalf of the Company significant goodwill that is now a significant part of the value of the Company. This goodwill extends throughout the Restricted Territory.

**D.** Pursuant to and subject to the terms and conditions of that certain Agreement and Plan of Merger, dated as of the date of this Noncompetition Agreement (the "Merger Agreement"), by and among Parent, Merger Sub, the Company and the Securityholders' Agent (each as defined in the Merger Agreement), at the Effective Time, Merger Sub will merge with and into the Company, and the Company will continue as the surviving corporation in the Merger as a wholly owned subsidiary of Parent. In connection with the consummation of the Merger, Securityholder will receive substantial cash consideration in exchange for Securityholder's equity interest in the Company.

**E.** Parent wishes to protect its investment in the Intellectual Property, assets, business and goodwill of the Company, including the confidential and proprietary information possessed by Securityholder, and which Securityholder acknowledges possessing, by restricting the activities of Securityholder that might compete with, diminish or destroy the value of Company's Intellectual Property (including, without limitation, Know-How and trade secrets) or harm such assets, business or goodwill. Parent intends to employ the Company's Intellectual Property, confidential information and goodwill in extending the Company's business throughout the Restricted Territory.

**F.** In connection with, and as a condition to the consummation of, the transactions contemplated by the Merger Agreement, and to enable Parent to secure more fully the benefits of such transactions, Parent has required that Securityholder enter into this Noncompetition Agreement; and Securityholder is entering into this Noncompetition Agreement in order to induce Parent to consummate the transactions contemplated by the Merger Agreement, as Parent believes the execution of this Noncompetition Agreement is necessary to protect the goodwill of the Company and its business.

**G.** This Noncompetition Agreement is contingent upon the closing of the transactions contemplated by the Merger Agreement (the "Closing") and, if such Closing does not occur, this Noncompetition Agreement shall not take effect, and shall be null and void.

**AGREEMENT**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Securityholder agrees as follows:

**1.     Restriction on Competition.** Securityholder agrees that, during the Restricted Period, Securityholder shall not, and Securityholder shall ensure that his Affiliates do not:

**(a)**   engage, directly or indirectly (whether as a principal investigator, advisor, officer, director, securityholder, owner, co-owner, partner, promoter, employee, agent, independent contractor, representative, consultant, investor, manager or otherwise), in Competition in any part of the Restricted Territory; or

**(b)**   directly or indirectly (whether as an officer, director, securityholder, owner, co-owner, partner, promoter, employee, agent, independent contractor, representative, consultant, investor, advisor, manager or otherwise) be or become an officer, director, securityholder, owner, co-owner, Affiliate, partner, promoter, employee, agent, independent contractor, representative, designer, consultant, investor, advisor or manager of, for or to, or otherwise be or become associated or participate with or acquire or hold any direct or indirect interest in, any other Person that engages in Competition in any part of the Restricted Territory;

*provided, however*, that Securityholder may, without violating this Section 1, but only to the extent consistent with Parent's Code of Conduct if applicable to Securityholder, own, as a passive investment, shares of capital stock of a publicly-held corporation that engages in Competition if:  (i) such shares are actively traded on an established national securities market in the United States; (ii) the number of shares of such corporation's capital stock that are owned beneficially by Securityholder and the number of shares of such corporation's capital stock that are owned beneficially by the Affiliates of Securityholder collectively represent less than 1% of the total number of shares of such corporation's capital stock outstanding; and (iii) neither Securityholder nor any Affiliate of Securityholder is otherwise associated directly or indirectly with such corporation or with any Affiliate of such corporation.

**2.     No Hiring or Solicitation of Employees, Consultants or Independent Contractors; No Interference with Specified Business Contacts.**

**(a)**   Securityholder agrees that, during the Restricted Period, Securityholder shall not, and Securityholder shall ensure that his Affiliates do not (whether as an officer, director, securityholder, owner, co-owner, partner, promoter, employee, agent, independent contractor, representative, consultant, investor, advisor, manager or otherwise), directly or indirectly, personally or through others:

**(i)**   hire, attempt to hire, employ or attempt to employ any Specified Individual as an employee, consultant or independent contractor for or on behalf of any Person that engages, directly or indirectly, in Competition in any part of the Restricted Territory;

**(ii)**  encourage, induce, attempt to induce, solicit or attempt to solicit (on Securityholder's own behalf or on behalf of any other Person) any Specified Individual to leave his or her employment, consulting or independent contractor relationship with the Company, Parent or any of their respective Affiliates;

2

    **(iii)** in any way interfere or attempt to interfere with the employment, consulting or independent contractor relationship between Parent, the Company or any of their respective Affiliates and any of their respective Specified Individuals; or

    **(iv)** contact any Specified Individual for any of the foregoing purposes.

  **(b)** Securityholder agrees that, during the Restricted Period, Securityholder shall not, and Securityholder shall ensure that Securityholder's Affiliates do not (whether as an officer, director, securityholder, owner, co-owner, partner, promoter, employee, agent, independent contractor, representative, consultant, investor, advisor, manager or otherwise), directly or indirectly, personally or through others:

    **(i)** interfere or attempt to interfere with the relationship of the Company, Parent or any of their respective Affiliates with any Specified Business Contact; or

    **(ii)** libel, slander, disparage or otherwise make (or cause to be made) to any Person any disparaging, derogatory or other negative or false statement about Parent, the Company or any of their respective Affiliates in any manner that could reasonably be expected to be harmful to Parent, the Company or any such Affiliate or to the business, business reputation or personal reputation of Parent, the Company or any such Affiliate.

  Notwithstanding anything else, any mass media or generally public advertisements or listings of open employment positions, provided that such activities are not specifically directed at Specified Individuals (or the hiring or attempting to hire of any Specified Individual in connection with such Specified Individual's response thereto) shall not be deemed a violation of this Section 2.

  **3.** **Representations and Warranties.** Securityholder represents and warrants, to and for the benefit of the Beneficiaries, that: (a) Securityholder has the full power and capacity to execute and deliver, and to perform all of his obligations under, this Noncompetition Agreement; (b) neither the execution and delivery of this Noncompetition Agreement nor the performance of this Noncompetition Agreement will result directly or indirectly in a violation or breach of, or conflict with: (i) any Contract or other obligation by which Securityholder or any of Securityholder's Affiliates is or may be bound, including, any obligations to Stanford University (including, without limitation, Stanford Policies) or (ii) any applicable Legal Requirement; (c) Securityholder is executing this Noncompetition Agreement as a securityholder of the Company and is or will be receiving substantial and valuable consideration in exchange for Securityholder's equity interest in the Company in connection with the consummation of the Merger, including a portion of the Purchase Price; and (d) the restrictions imposed upon Securityholder under this Noncompetition Agreement are reasonable and necessary to protect Parent's legitimate business interests in protecting and preserving the value of the Company's Intellectual Property and goodwill developed by Securityholder for the Company and that will be developed for Parent under the Consulting Agreement being entered into between Parent and the Securityholder (the "Securityholder Consulting Agreement").

  **4.** **Specific Performance.** Securityholder agrees that, in the event of any breach or threatened breach by Securityholder of any covenant, obligation or other provision set forth in this Noncompetition Agreement: (a) Parent and each of the other Beneficiaries will suffer irreparable harm which cannot adequately be compensated by monetary damages; and (b) Parent and each of the other Beneficiaries shall be entitled, without proof of actual damages, in addition to and without limiting any other remedy that may be available to it, including monetary damages, to obtain: (i) a decree or order of specific performance or mandamus to enforce the observance and performance of such covenant, obligation or other provision; and (ii) an injunction restraining such breach or threatened breach.

Securityholder further agrees that no Beneficiary shall be required to obtain, furnish or post any bond or similar instrument in connection with or as a condition to obtaining any remedy referred to in this Section 4, and Securityholder irrevocably waives any right it may have to require any Beneficiary to obtain, furnish or post any such bond or similar instrument.

     **5.**     **Indemnification; Remedies Cumulative.**

     **(a)**     Without in any way limiting any of the rights or remedies otherwise available to any of the Beneficiaries, Securityholder shall indemnify, defend and hold harmless each Beneficiary against and from any loss, Damage, injury, harm, detriment, lost opportunity, Liability, fee (including attorneys' fees), charge or expense (whether or not relating to any third-party claim) that is directly or indirectly suffered or incurred at any time by such Beneficiary, or to which such Beneficiary otherwise becomes subject at any time, and that arises directly or indirectly out of, or relates directly or indirectly to: (i) any inaccuracy in or breach of any representation or warranty contained in this Noncompetition Agreement; or (ii) any failure on the part of Securityholder to observe, perform or abide by, or any other breach of, any restriction, covenant, obligation or other provision contained in this Noncompetition Agreement.

     **(b)**     The rights and remedies of Parent and the other Beneficiaries under this Noncompetition Agreement are not exclusive of or limited by any other rights or remedies which they may have, whether at law, in equity, by contract or otherwise, all of which shall be cumulative (and not alternative).  Without limiting the generality of the foregoing, the rights and remedies of Parent and the other Beneficiaries under this Noncompetition Agreement, and the obligations and liabilities of Securityholder under this Noncompetition Agreement, are in addition to their respective rights, remedies, obligations and liabilities under the law of unfair competition, under laws relating to misappropriation of trade secrets, under other laws and common law requirements and under all applicable rules and regulations, as well as under that certain Consulting Agreement between Securityholder and the Company (the "Company Consulting Agreement") or the Securityholder Consulting Agreement.  Nothing in this Noncompetition Agreement shall limit any of the rights or remedies of Parent or any of the other Beneficiaries under the Merger Agreement, the Company Consulting Agreement, or the Securityholder Consulting Agreement; and nothing in the Merger Agreement, the Company Consulting Agreement, or the Securityholder Consulting Agreement shall limit any of Securityholder's obligations, or any of the rights or remedies of Parent or any of the other Beneficiaries, under this Noncompetition Agreement.  No breach on the part of Parent or any other party of any covenant or obligation contained in the Merger Agreement, the Securityholder Consulting Agreement or any other agreement shall limit or otherwise affect any right or remedy of Parent or any of the other Beneficiaries under this Noncompetition Agreement.  Notwithstanding anything to the contrary contained herein, the terms of this Noncompetition Agreement shall govern and control in the event of any conflict with the terms of the Company Consulting Agreement, or the Securityholder Consulting Agreement.

     **(c)** NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, EXCEPT WITH RESPECT TO CLAIMS ARISING OUT OF SECURITYHOLDER'S FRAUD OR WILLFUL OR INTENTIONAL MISCONDUCT, WITH RESPECT TO WHICH, NO LIMITATIONS SHALL APPLY, UNDER NO CIRCUMSTANCES AND UNDER NO LEGAL THEORY (INCLUDING, WITHOUT LIMITATION, TORT, CONTRACT, STRICT LIABILITY, OR OTHERWISE) SHALL SECURITYHOLDER BE LIABLE HEREUNDER FOR ANY AMOUNT, IN THE AGGREGATE, IN EXCESS OF (X) SECURITYHOLDER'S HOLDBACK CASH (AS DEFINED IN THE MERGER AGREEMENT) AND (Y) SUCH OTHER AMOUNTS AS SECURITYHOLDER MAY BE LIABLE FOR IN CONNECTION WITH A BREACH OF THIS AGREEMENT PURSUANT TO THE MERGER AGREEMENT.

**6.** **Further Assurances**. Securityholder shall execute and/or cause to be delivered to Parent such instruments and other documents, and shall take such other actions, as Parent may reasonably request at any time for the purpose of carrying out or evidencing any of the provisions of this Noncompetition Agreement.

**7.** **Severability.** Any term or provision of this Noncompetition Agreement that is deemed or determined by a court of competent jurisdiction to be invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. If a court of competent jurisdiction declares that any term or provision hereof is invalid or unenforceable, Securityholder and Parent agree that the court making such determination shall have the power to limit the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Noncompetition Agreement shall be enforceable as so modified. In the event such court does not exercise the power granted to it in the prior sentence, Securityholder and Parent agree to replace such invalid or unenforceable term or provision with a valid and enforceable term or provision that will achieve, to the maximum extent possible, the economic, business and other purposes of such invalid or unenforceable term and the overall purpose of this Noncompetition Agreement as expressly described herein.

**8.** **Governing Law; Venue; Waiver of Jury Trial.**

**(a)** This Noncompetition Agreement shall be construed in accordance with, and governed in all respects by, the internal laws of the State of Delaware (without giving effect to principles of conflicts of laws).

**(b)** Any action, suit or other Legal Proceeding relating to this Noncompetition Agreement or the enforcement of any provision of this Noncompetition Agreement (including any action, suit or other Legal Proceeding based upon fraud) shall be brought or otherwise commenced exclusively in any state or federal court located in the County of New Castle, State of Delaware. Each party to this Noncompetition Agreement: (i) expressly and irrevocably consents and submits to the exclusive jurisdiction of each state and federal court located in the County of New Castle, State of Delaware (and each appellate court located in the County of New Castle, State of Delaware) in connection with any such action, suit or other Legal Proceeding; (ii) agrees that each state and federal court located in the County of New Castle, State of Delaware shall be deemed to be a convenient forum; and (iii) agrees not to assert (by way of motion, as a defense or otherwise), in any such action, suit or other Legal Proceeding commenced in any state or federal court located in the County of New Castle, State of Delaware, any claim that such party is not subject personally to the jurisdiction of such court, that such action, suit or other Legal Proceeding has been brought in an inconvenient forum, that the venue of such action, suit or other Legal Proceeding is improper or that this Noncompetition Agreement or the subject matter of this Noncompetition Agreement may not be enforced in or by such court.

**(c)** **TO THE MAXIMUM EXTENT PERMITTED BY LAW, SECURITYHOLDER HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT OR OTHER LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NONCOMPETITION AGREEMENT OR THE ENFORCEMENT OF ANY PROVISION OF THIS NONCOMPETITION AGREEMENT**.

**9.     Waiver.**  No failure on the part of any Beneficiary to exercise any power, right, privilege or remedy under this Noncompetition Agreement, and no delay on the part of any Beneficiary in exercising any power, right, privilege or remedy under this Noncompetition Agreement, shall operate as a waiver of such power, right, privilege or remedy; and no single or partial exercise of any such power, right, privilege or remedy shall preclude any other or further exercise thereof or of any other power, right, privilege or remedy.  No Beneficiary shall be deemed to have waived any claim arising out of this Noncompetition Agreement, or any power, right, privilege or remedy under this Noncompetition Agreement, unless the waiver of such claim, power, right, privilege or remedy is expressly set forth in a written instrument duly executed and delivered on behalf of such Beneficiary; and any such waiver shall not be applicable or have any effect except in the specific instance in which it is given.

**10.     Successors and Assigns.** This Noncompetition Agreement shall be binding upon Securityholder and shall inure to the benefit of Parent and the other Beneficiaries and the respective successors and assigns (if any) of the foregoing.  Neither Parent nor Securityholder shall be permitted to assign any of such party's respective rights or obligations under this Noncompetition Agreement, except with the prior written consent of the other party hereto; *provided, however*, that Parent shall, without the obligation to obtain the prior written consent of Securityholder, be entitled to freely assign any or all of its rights or obligations under this Noncompetition Agreement, in whole or in part, to (i) any Affiliate of Parent or (ii) any Person that acquires a substantial part of the assets or business of the Company or any of their respective successors or permitted assignees.  Any attempted assignment by Parent or Securityholder in violation of this Section 10 shall be null and void.

**11.     Attorneys' Fees.** If any action, suit or other Legal Proceeding relating to this Noncompetition Agreement or the enforcement of any provision of this Noncompetition Agreement is brought against Securityholder, the prevailing party in such action, suit or other Legal Proceeding shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which such prevailing party may be entitled).

**12.     Headings.** The bold-faced headings contained in this Noncompetition Agreement are for convenience of reference only, shall not be deemed to be a part of this Noncompetition Agreement and shall not be referred to in connection with the construction or interpretation of this Noncompetition Agreement.

**13.     Construction.**

**(a)**     For purposes of this Noncompetition Agreement, whenever the context requires: the singular number shall include the plural, and vice versa; the masculine gender shall include the feminine and neuter genders; the feminine gender shall include the masculine and neuter genders; and the neuter gender shall include the masculine and feminine genders.

**(b)**     Securityholder and Parent agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be applied in the construction or interpretation of this Noncompetition Agreement.

**(c)**     As used in this Noncompetition Agreement, (i) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, but rather shall be deemed to be followed by the words "without limitation"; and (ii) the use of the word "or" shall not be exclusive.

**(d)**     Except as otherwise indicated, all references in this Noncompetition Agreement

to "Sections" are intended to refer to Sections of this Noncompetition Agreement.

**14.  Amendment.** This Noncompetition Agreement may not be amended, modified, altered or supplemented other than by means of a written instrument duly executed and delivered on behalf of each party sought to be bound by any such amendment, modification, alteration or supplement and entered for the express purpose of such amendment, modification, alteration or supplementation.

**15.  Defined Terms.** For purposes of this Noncompetition Agreement:

(a)  "Affiliate" shall mean, with respect to any Person, any other Person that as of the date of this Noncompetition Agreement or as of any subsequent date, directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with such specified Person. For purposes of this definition and this Noncompetition Agreement, the term "control" (and correlative terms) means possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through ownership of securities, by contract, or otherwise, and Securityholder is not and will not be deemed to be under the control of any other Person and is not and will not be deemed to be controlling any individual Person (except for those Persons Securityholder expressly directs to engage in Competition). For the avoidance of doubt, the Company shall be deemed an Affiliate of Parent for purposes of this Noncompetition Agreement. In the case of Parent, for purposes of this Noncompetition Agreement, the term "Affiliate" shall not include (i) Chugai Pharmaceutical Co., Ltd., 1-9, Kyobashi 2-chome, Chuo-ku, Tokyo, 104-8301, Japan ("Chugai") or (ii) assuming consummation of the equity purchase transactions currently contemplated between an Affiliate of Parent and Foundation Medicine, Inc. ("Foundation"), Foundation, in each case, unless and until Parent provides written notice to the Company (or, following the Effective Time, the Securityholders' Agent) specifying Chugai or Foundation as an Affiliate of Parent.

(b)  "Beneficiary" or "Beneficiaries" shall mean: (i) Parent; (ii) each Affiliate of Parent; (iii) the Company; and (iv) the successors and assigns of each of the Persons referred to in clauses "(i)," "(ii)" and "(iii)" of this sentence.

(c)  A Person shall be deemed to be engaged in "Competition" if such Person or any of such Person's subsidiaries or other Affiliates is engaged or involved directly or indirectly (*e.g.*, as a principal investigator, advisor, officer, director, securityholder, owner, co-owner, partner, promoter, employee, agent, independent contractor, representative, consultant, investor, manager or otherwise): (i) in research (other than Permitted Clinical Research), development or commercialization of assays, bio-markers or algorithms to detect, quantify, measure or analyze cell-free circulating nucleic acid derived from tumors; or (ii) in any other business or commercial activity that competes in any material respect with any aspect of the business or commercial activities of Parent, the Company or any of their respective Affiliates with respect to the foregoing.

(d)  "Permitted Clinical Research" shall mean using CAPP-Seq RUO Kits or Roche Nimblegen probes with sequences expressly disclosed in the patent applications below to be provided by Parent for application of the existing CAPP-Seq method, as described or disclosed in the Newman et al. manuscript (Nat Med 20:548-54, 2014), U.S. Appl. No. 61/798,925, U.S. Appl. No. 14/209,807, including any Continuations, Divisional, Continuation in Part, PCT Application (PCT/US14/25020), including any US provisional 62/049,959 including any utility application, PCT, Divisional, Continuation in Part or Continuation, to perform the following research activities solely to the extent of and in accordance with the disease targets, tissue or cell type, assay design, methodology, reagents and experimental design are described in such patent filings (but in all cases excluding any development, modification or improvement of circulating tumor nucleic acid assays after the Closing Date): (1) clinical assessment of circulating nucleic acid at steady state or in response to various cancer therapies, tumor types and disease distributions;

7

(2) application of CAPP-Seq Technology to monitor circulating cell-free tumor nucleic acid in murine disease models to test novel treatment efficacy or create mouse xenografts of human tumor cells in order to test cancer treatment efficacy; (3) research use of CAPP-Seq Technology for cancer screening; (4) studies of circulating nucleic acid biology in human patients including examination and modeling of clearance and production rates; and (5) analysis of cell free nucleic acids in bodily fluids. Notwithstanding the foregoing, research activities that are otherwise within the definition of Permitted Clinical Research will be excluded from such definition if such activities are not currently ongoing research projects in the labs of Professor Diehn and Professor Alizadeh (*e.g.*, cell free DNA samples for such study and disease target were, prior to the Closing Date, actively being investigated).

**(e)** "Restricted Period" shall mean the period commencing on the Closing Date and ending on the second anniversary of the Closing Date.

**(f)** "Restricted Territory" shall mean each country, province, territory or other jurisdiction in the world.

**(g)** "Specified Business Contact" shall mean any Person: (i) that had, has or is expected to have a business relationship with the Company on or prior to the Closing Date; and (ii) that had, has or is expected to have a business relationship with the Company, Parent or any of their respective Affiliates during the Restricted Period and with whom Securityholder had contact (or as to whom Securityholder obtains or obtained confidential information concerning the business relationship or potential business relationship between such Person and the Company, Parent or any of their respective Affiliates) during the Restricted Period.

**(h)** "Specified Individual" shall mean: (i) any Person who is or was an employee (including any temporary or leased employees), consultant or independent contractor of the Company on, or during the 90 days prior to, the Closing Date; and (ii) any Person who is or was an employee (including any temporary or leased employees), consultant or independent contractor of the Company or Parent or any of their respective Affiliates at any time during the Restricted Period, and with whom Securityholder has or had contact (or with respect to whom Securityholder obtains or obtained confidential information) during the Restricted Period.

**16.    Closing Date.**  This Noncompetition Agreement shall become effective upon the consummation of the transactions as contemplated by the Merger Agreement (the date of such consummation being referred to as the "Closing Date"). This Noncompetition Agreement shall terminate and be of no further force or effect upon the termination of the Merger Agreement in accordance with its terms.

**17.    Entire Agreement**. This Noncompetition Agreement and the other agreements referred to herein (including the Company Consulting Agreement and the Securityholder Consulting Agreement) set forth the entire understanding of Securityholder and Parent relating to the subject matter hereof and thereof and supersede all prior agreements and understandings among or between Securityholder and Parent relating to the subject matter hereof and thereof. For the avoidance of doubt, this Noncompetition Agreement shall not supersede the Company Consulting Agreement or the Securityholder Consulting Agreement except to the extent that there is a conflict between this Noncompetition Agreement, on the one hand, and the Company Consulting Agreement or the Securityholder Consulting Agreement, on the other hand, in which case the terms and conditions of this Noncompetition Agreement shall govern.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, Securityholder has duly executed and delivered this Noncompetition Agreement as of the date first above written.

_____
[**SECURITYHOLDER**]

*[Signature Page to
Noncompetition Agreement]*