UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FORESIGHT DIAGNOSTICS INC., et al.,<br><br>Defendants. | Case No. 24-cv-03972-EKL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FORESIGHT DIAGNOSTICS, INC.'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 103 |

This action arises out of the Defendants' alleged misappropriation of Plaintiffs' trade secrets. Defendant Foresight Diagnostics, Inc. moves to dismiss the first amended complaint. Mot. to Dismiss, ECF No. 103 ("Mot."). The Court carefully reviewed the parties' briefs and heard argument on April 30, 2025. For the reasons discussed below, the motion is GRANTED without prejudice as to Count 3 (Delaware Uniform Trade Secrets Act, 6 Del. Code § 2001 *et seq*. ("DUTSA")), Count 8 (California Unfair Competition Law, Bus. And Prof. Code § 17200 *et seq*. ("UCL")), and Count 9 (Unfair Competition under Delaware Common Law), and DENIED as to Count 1 (Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. ("DTSA")), Count 2 (California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq*. ("CUTSA"), and Count 10 (Declaratory Judgment of Ownership).[1]

---

[1] After hearing, the parties agreed that Plaintiffs may amend the complaint to convert their DUTSA claim in Count 3 into CUTSA claims, so that Plaintiffs' state law trade secret claims against Defendants Foresight Diagnostics, Inc., Arash Alizadeh, and Maximilian Diehn will proceed under the CUTSA in Count 2. Plaintiffs have also agreed to withdraw Count 8, under the UCL, and Count 9, for common law unfair competition under Delaware law, reserving the right to seek leave to amend if discovery reveals additional facts establishing unfair competition. *See* Status Report at 7, ECF No. 162. Thus, the Court dismisses Counts 3, 8, and 9 without prejudice, and grants leave to amend the complaint pursuant to the parties' agreement.

## I.  FACTUAL BACKGROUND[2]

This case involves claims by Roche Molecular Systems, Inc. and Roche Sequencing Solutions, Inc. (collectively, "Roche") against three former consultants, and the company they founded, for misappropriation of Roche's trade secrets. The three former consultants are Stanford University ("Stanford") oncologists Maximilian Diehn ("Dr. Diehn"), Arash A. Alizadeh ("Dr. Alizadeh"), and David Kurtz ("Dr. Kurtz") (together, the "Doctors"). The Doctors founded Foresight Diagnostics Inc. ("Foresight") in 2020, while working for Roche. Together, the Doctors allegedly misappropriated Roche's trade secrets relating to methods for detecting and monitoring certain types of cancer, and developed a competing technology with Stanford, which Stanford licensed to Foresight for commercial development. Below, the Court summarizes the relevant allegations.

### A.  Development of CAPP-Seq and Founding of CappMed

Drs. Diehn and Alizadeh developed CAPP-Seq, a novel DNA sequencing method for tracking circulating tumor DNA in the bloodstream.[3] First Am. Compl. ¶ 39, ECF No. 87 ("FAC"); *id*. Ex. 3, ECF No. 101-2. In March 2013, Stanford filed U.S. Provisional Patent Application 61/798,925 ("'925 Application"), which covered CAPP-Seq, and named Drs. Diehn and Alizadeh as inventors.[4] Decl. of Alan Heinrich ("Heinrich Decl.") Ex. A, ECF No. 104-1. In October 2013, Drs. Diehn and Alizadeh founded Capp Medical, Inc. ("CappMed") to commercialize the CAPP-Seq technology. FAC ¶ 39. In April 2014, Stanford granted CappMed an exclusive license to the '925 Application ("Stanford Agreement"). *Id*. ¶ 40. Under the Stanford Agreement, Stanford and Drs. Diehn and Alizadeh received equity in CappMed. *Id*.

---

[2] This Order assumes familiarity with the facts of the case, and discusses the facts to the extent they are relevant to this motion and the related motions filed by Stanford, Maximilian Diehn, Arash A. Alizadeh, and David Kurtz.

[3] CAPP-Seq stands for "cancer personalized profiling by deep sequencing[.]" FAC ¶ 10.

[4] The Court GRANTS Foresight's unopposed request for judicial notice of patent applications 61/798,925, PCT/US/2014/025020, and 62/931,688, and Patent No. 11,085,084. Heinrich Decl. Exs. A-D, ECF Nos. 104-1, 104-2, 104-3, 104-4. The Court may take judicial notice of patents as public records. *Vineyard Investigations v. E. & J. Gallo Winery*, 510 F. Supp. 3d 926, 942 n.4 (E.D. Cal. 2021).

¶ 41.

### B. Roche's Acquisition of CappMed and Execution of Non-Competition and Non-Disclosure Agreements With the Doctors

In 2015, Roche acquired CappMed, including "all of CappMed's assets and intellectual property, including all patent rights, trade secrets, and know-how relating to the CAPP-Seq technology[.]" FAC ¶ 47. "Roche's goal was to incorporate CappMed's technology into commercially viable products for non-invasive cancer detection and monitoring of certain cancers in patients." *Id*. ¶ 50. In connection with the acquisition, Stanford and CappMed executed a Fourth Amendment to the Stanford Agreement whereby Stanford "'consent[ed] to any deemed assignment by CappMed of the [Stanford] Agreement in connection with' the Acquisition." *Id*. ¶ 48; *id*. Ex. 4, ECF No. 159-3.

Following the acquisition, Roche hired Drs. Diehn and Alizadeh to further develop the CAPP-Seq technology. FAC ¶ 4. Drs. Diehn and Alizadeh entered into two-year non-competition agreements ("Non-Competition Agreements") and consulting services agreements ("Consulting Agreements") with Roche. *Id*. ¶ 52; *id*. Ex. 1, ECF No. 159-1 ("Consulting Agreements"), Ex. 5, ECF No. 159-4 ("Non-Competition Agreements"). Under the Non-Competition Agreements, Drs. Diehn and Alizadeh agreed not to compete with Roche or CappMed by conducting research other than "Permitted Clinical Research" as defined therein. *Id*. ¶ 53. Under the Consulting Agreements, Roche acknowledged that Drs. Diehn and Alizadeh were Stanford employees subject to "certain obligations to Stanford regarding ownership of intellectual property," and required Drs. Diehn and Alizadeh to provide notice of any conflicting obligations with Stanford. *Id*. ¶ 54. Drs. Diehn and Alizadeh also agreed to assign inventions conceived or developed during the contract period to Roche, *id*. ¶ 55, and agreed not to disclose confidential information, *i.e.*, "technical information known to Drs. Diehn and Alizadeh through performance of consulting services with Roche," *id*. ¶ 57. The Agreements were later extended through June 10, 2021. *Id*. ¶¶ 58-60.

Roche also hired Dr. Kurtz to further develop the CAPP-Seq technology. Dr. Kurtz worked for Roche as a contractor from September 2017 to July 2020. FAC ¶ 4. Roche and Dr. Kurtz entered into a Proprietary Information and Invention Agreement ("Kurtz Agreement"). *Id*.

Ex. 2, ECF No. 159-2. The Kurtz Agreement prohibited Dr. Kurtz from obtaining outside employment in Roche's defined "Area of Interest" without Roche's approval and required disclosure of inventions, discoveries, improvements, products, or devices in Roche's Area of Interest during Dr. Kurtz's employment. *Id*. ¶¶ 65-69; *id*. Ex. 2.

### C.  Roche's Improvements to CAPP-Seq and Development of Trade Secrets

Roche alleges that it "extensively developed and made numerous improvements to" CAPP-Seq and iDES, CAPP-Seq's associated "integrated digital error suppression" workflow. FAC ¶¶ 44, 74. Roche identifies nineteen trade secrets based on Roche's acquisition and improvement of the CAPP-Seq/iDES technology: adapters; barcodes; biotinylated oligos ("probes" or "selectors"); blocking oligos; workflow; single-sample capture; algorithm for selector library generation; data polishing algorithm; adaptive variant caller algorithm; algorithm for filtering germline variants; SNV caller algorithm; indel (insertion-deletion) caller algorithm; fusion caller algorithm; CNV caller algorithm; cell of origin (COO) caller algorithm; Selector Library Files (BED Files); "blacklisted" genes; "whitelisted" genes; and detection of phased variants. *Id*. ¶¶ 86-227.

### D.  Defendants' Development of PhasED-Seq and Launch of Foresight

Roche alleges that the Doctors accessed some or all of its trade secrets during their employment with Roche and used them to develop competing technology. FAC ¶¶ 233-234, 238-262. Drs. Diehn, Alizadeh, and Kurtz "secretly" co-founded Foresight in May 2020, while working for Roche, to develop and commercialize PhasED-Seq, a "liquid-biopsy powered platform that detects minimal residual disease (MRD) from circulating tumor DNA (ctDNA)." *Id*. ¶¶ 5, 235, 237, 315.

In the amended complaint, Roche cites several documents to support its allegations that Defendants used Roche trade secrets to develop PhasED-Seq. *See, e.g.*, FAC ¶¶ 266, 273. The first document is an article co-authored by the Doctors and Foresight co-founder Jake Chabon ("Chabon 2020"), and published in the science journal Nature in 2020.[5] *See* FAC Ex. 104, Jacob

---

[5] Foresight asks the Court to incorporate the first page of Chabon 2020 by reference in the amended complaint. Heinrich Decl. Ex. E, ECF No. 104-5. The Court will consider Chabon 2020

J. Chabon et al., *Integrating Genomic Features for Non-Invasive Early Lung Cancer Detection*, 580 Nature 245 (2020), ECF No. 101-103.  The second document is Patent Application 2022/0375540, published on November 24, 2022 ("'540 Application").  *See* FAC Ex. 111, ECF No. 101-110.  The third document is an article published in Nature in 2024 ("Alig 2024").  *See* FAC Ex. 112, Stefan K. Alig et al., *Distinct Hodgkin Lymphoma Subtypes Defined by Noninvasive Genomic Profiling*, 625 Nature 778 (2024), ECF No. 101-111.

## II.   PROCEDURAL HISTORY

On July 1, 2024, Roche initiated this action against Foresight, the Board of Trustees of the Leland Stanford Junior University ("Stanford"), and Dr. Kurtz.  That same day, Roche also filed a separate action against Foresight and Drs. Diehn and Alizadeh in the U.S. District Court for the District of Delaware pursuant to forum selection clauses in the Consulting Agreements.  The Delaware action was transferred to this district by stipulation, and on October 24, 2024, the Court granted the parties' joint motion to consolidate the cases for all purposes.  ECF Nos. 43, 53, 76.

On November 22, 2024, Roche filed an amended complaint asserting claims for trade secret misappropriation against Foresight, Stanford, and Drs. Diehn, Alizadeh, and Kurtz (Counts 1-3); claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Drs. Diehn, Alizadeh, and Kurtz (Counts 4-7); claims for unfair competition against Foresight and Stanford (Counts 8, 9); and a claim for declaratory judgment of ownership of disputed patent applications against Foresight and Stanford (Count 10).  ECF No. 87.  On December 16, 2024, Foresight, Drs. Diehn and Alizadeh, Dr. Kurtz, and Stanford filed motions to dismiss the amended complaint.  ECF Nos. 103, 105, 107, 109.  This Order addresses Foresight's motion.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

---

because Roche attached that document to the FAC.  *See* ECF No. 101-103.

550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## IV.  DISCUSSION

Foresight raises several arguments in favor of dismissal. First, Foresight argues that Roche's trade secret claims are time-barred. Second, Foresight argues that Roche fails to state a trade secret claim because it has not alleged trade secrets with particularity or alleged misappropriation *by Foresight*. Third, Foresight argues that Roche fails to state a claim for declaratory judgment. The Court addresses these arguments in turn.

### A.  Roche's Trade Secret Misappropriation Claims Are Not Time-Barred.

Foresight argue that Roche's trade secret misappropriation claims are barred by the three-year statute of limitations under the DTSA and CUTSA.[6] "A motion to dismiss based on the running of the statute of limitations may be granted only if the assertions in the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."

---

[6] All Defendants assert the same arguments regarding the statute of limitations based on Chabon 2020, and the failure to allege trade secrets, in their motions to dismiss. *See* ECF No. 105 at 6-16 (Drs. Diehn and Alizadeh's Motion to Dismiss Plaintiff's First Amended Complaint); ECF No. 107 at 6-15 (Dr. Kurtz's Motion to Dismiss Plaintiff's First Amended Complaint); ECF No. 109 at 5-16 (Stanford's Motion to Dismiss Plaintiffs' First Amended Complaint).

*Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (per curiam). The statute of limitations begins to run "when the plaintiff has reason to suspect an injury and some wrongful cause[.]" *MGA Ent., Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 561 (2019). The question is "not when [Roche] actually discovered" the alleged misappropriations, but rather, when Roche "by the exercise of reasonable diligence should have discovered" that Defendants engaged in misappropriation. *Id*. at 564 (first citing Cal. Civ. Code § 3426.6, and then citing *Fox v. Ethicon Endo-Surgery, Inc*. 35 Cal. 4th 797, 807 (2005) ("A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'")).

According to Foresight, Roche was on inquiry notice of the alleged misappropriation based on the publication of Chabon 2020. As Foresight notes, the complaint relies heavily on allegations concerning Chabon 2020 to support Roche's argument that Defendants misappropriated Roche's trade secrets. *See* FAC ¶¶ 273-275, 277-278, 281. If Roche was on inquiry notice as of the publication of Chabon 2020, Roche's trade secret misappropriation claims expired in 2023, well before Roche filed suit on July 1, 2024.[7]

Foresight asserts four grounds for its statute of limitations defense based on the publication of Chabon 2020: (1) Chabon 2020 reported on research conducted at Stanford based on CAPP-Seq technology, which Stanford had licensed to Roche as part of the CappMed acquisition; (2) Chabon 2020 listed Drs. Diehn, Alizadeh, and Kurtz as co-authors; (3) Drs. Diehn, Alizadeh, and Kurtz each listed their paid Roche consultancies in the "competing interests" section of Chabon 2020; and (4) Nature is a widely read scientific journal, thus Roche would have been aware of the publication. Mot. at 8.

Roche disputes that Chabon 2020 put Roche on inquiry notice of the alleged misappropriation. Roche argues that the article was too "high level" and did not disclose any of Roche's actual trade secrets. Instead, the article "disclosed only that the Individual Defendants

---

[7] This timeline accounts for California's statutory tolling of statutes of limitations by 180 days during the Covid-19 pandemic. *See* Cal. Rules of Court, App'x 1: Emergency Rules Related to Covid-19, Emergency Rule 9 (May 29, 2020). It also accounts for the parties' tolling agreement, which lasted from January 9, 2024, to June 30, 2024. FAC ¶¶ 333-334.

were working on CAPP-Seq technology as they had been for years." Opp. at 8, ECF No. 118. This fact alone would not raise a suspicion of misappropriation because "certain aspects of CAPP-Seq" were published before its acquisition of CappMed in 2015, and the Doctors were all doing work in the cancer diagnostics field. *Id*. at 8. Therefore, the "mere reference to public aspects of CAPP-Seq" in Chabon 2020, without "technical details that would allow one to conclude that the authors were using Roche's trade secrets," did not provide inquiry notice. *Id*. at 8-9.

Roche further asserts that Chabon 2020's "general disclosures" provided evidence of misappropriation only when read together with later statements and publications about PhasED-Seq, such as the '540 Application and Alig 2024. *Id*. at 9-10. Roche argues that "[w]ithout knowledge of Foresight's use of the work described in Chabon 2020 for commercializing a competing product, Roche had no basis to suspect that the aspects of CAPP-Seq technology being researched in Chabon 2020 were the product of Roche's trade secrets." *Id*. at 10.

The Court finds Roche's arguments persuasive. The amended complaint alleges that certain aspects of CAPP-Seq had been made public. *See* FAC ¶ 80. Moreover, Chabon 2020 does not reference PhasED-Seq technology. *See* FAC Ex. 104. In light of these allegations, it is plausible that Roche was not on actual or inquiry notice of the alleged misappropriation until later.

At hearing, Defendants argued that Roche's misappropriation claim must be dismissed because the Chabon 2020 allegations constitute "judicial admissions" that the article provided inquiry notice. 4/30/25 Hr'g Tr. at 8, ECF No. 158. The Court disagrees. Although Roche alleges that Chabon 2020 revealed the use of certain trade secrets, the amended complaint can plausibly be read as having revealed the use of these secrets to develop PhasED-Seq in retrospect, and with the addition of the other publications, which both specifically referenced PhasED-Seq. *See* '540 Appl. at Fig. 3B at 12; *see* Alig 2024 at 2, 9-10.[8] Thus, despite Roche's assertion that Chabon 2020, the '540 Application, and Alig 2024 were all "directed to the development of PhasED-Seq," the three publications are distinguishable from each other in that only the '540 Application and Alig 2024 specifically referenced PhasED-Seq, while Chabon 2020 did not. At

---

[8] The page numbers referenced are the ECF header page numbers.

this stage, it is plausible that the allegations regarding Chabon 2020 did not establish inquiry notice.

Much of the legal authority cited by Foresight in support of its statute of limitations argument concerned summary judgment rulings in which the court had the benefit of an evidentiary record.[9] These cases do not assist in the Court's determination of whether the amended complaint or judicially noticeable materials submitted by the parties reveal a statute of limitations defense at this stage of the case. When courts have dismissed trade secret misappropriation claims at the pleading stage, the inquiry notice has typically arisen from the publication of patents disclosing the trade secrets at issue, or from the defendant's failure to comply with contractual obligations to return confidential information to the plaintiff. *See, e.g.*, *Micrel Inc. v. Monolithic Power Sys. Inc.*, No. C 04-04770 JSW, 2005 WL 6426678, at *6 (N.D. Cal. Dec. 9, 2005) (dismissing claims where allegations revealed that the publication of a patent provided inquiry notice of misappropriation); *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-cv-00404-LHK, 2019 WL 1924992, at *14 (N.D. Cal. Apr. 30, 2019) (dismissing claims as time-barred where the defendant's retention of information breached a nondisclosure agreement and put the plaintiff on inquiry notice).

The allegations do not establish that Chabon 2020 provided inquiry notice to Roche of trade secret misappropriation. Accordingly, Foresight's remaining arguments that the Doctors were listed as co-authors or identified their paid consultancies, or that Nature is a widely-read publication, are not persuasive on this issue.

The Court turns next to the question of whether Roche has stated plausible trade secret

---

[9] *See e.g.*, *MGA Ent.*, 41 Cal. App. 5th at 561 (granting summary judgment because plaintiff articulated a suspicion of misappropriation in an earlier-filed lawsuit); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 526 (N.D. Cal. 2000) (granting summary judgment because plaintiff admittedly suspected wrongdoing six years before filing suit ); *Wang v. Palo Alto Networks, Inc.*, No. C 121-05579 WHA, 2014 WL 1410346, at *5-7 (N.D. Cal. April 11, 2014) (granting summary judgment after finding that plaintiff had inquiry notice of misappropriation from defendant's publication of a patent application, and defendant's violation of a nondisclosure agreement); *HiRel Connectors, Inc. v. United States*, 465 F. Supp. 2d 984, 990-91 (C.D. Cal. 2005) (granting summary judgment based on evidence establishing that government's publication of technical specifications put plaintiff on inquiry notice of misappropriation).

misappropriation claims.

### B. Roche States Plausible Claims for Trade Secret Misappropriation Under the DTSA and the CUTSA.

"To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)). Because the claim elements for trade secret misappropriation under the DTSA and the CUTSA are "substantially similar," courts analyze these claims together. *Id.* at 657. "To prove ownership of a trade secret, plaintiffs 'must identify the trade secrets and carry the burden of showing they exist.'" *Id.* at 658 (quoting *MAI Sys. Corp. v. Peak Comput. Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)). "The plaintiff 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Id.* (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998)). For the reasons discussed below, the Court finds that Roche has stated plausible claims for trade secret misappropriation under the DTSA and the CUTSA.

#### 1. Roche describes its alleged trade secrets with particularity.

Roche alleges that its trade secrets consist of improvements to CAPP-Seq/iDES technology and algorithms that it acquired from CappMed, with some of its own new inventions. FAC ¶¶ 86-227 (describing alleged trade secrets and identifying corresponding exhibits). Roche submits dozens of exhibits identifying both the CAPP-Seq/iDES technology that Roche originally acquired from CappMed, and the improvements and subsequent developments that comprise Roche's alleged trade secrets.[10] *See id.* Exs. 18-108. Taken together, the allegations and exhibits describe the alleged trade secrets with "sufficient particularity to separate [them] from matters of general knowledge" about the CAPP-Seq/iDES technology that Roche acquired from CappMed.

---

[10] The Court granted in part and denied in part Roche's motion to seal portions of the exhibits that describe Roche's trade secrets. ECF No. 151.

*InteliClear*, 978 F.3d at 658.

### 2. Roche plausibly alleges that Foresight misappropriated its trade secrets.

Foresight asserts that Roche has not plausibly alleged trade secret misappropriation *by Foresight*, in contrast to Foresight's co-founders, and that Roche cannot establish misappropriation by Foresight based on Stanford's exclusive license to Foresight of Patent No. 11,634,779.

#### a. Roche alleges with sufficient detail that Foresight misappropriated trade secrets through its co-founders.

According to Foresight, Roche's allegations fail to state a plausible claim because (1) Roche has not alleged that PhasED-Seq was developed using Roche trade secrets, Mot. at 16, (2) any alleged misappropriation took place before the Doctors formed the company in 2020, and Roche cannot impute the Doctors' misappropriation to Foresight, *id*. at 17, and (3) certain allegations made on information and belief are "devoid" of supporting facts regarding Foresight, and fail to state a claim, *id*. (citing FAC ¶¶ 328-332).  The Court disagrees and finds that Roche's allegations are sufficient to state a misappropriation claim against Foresight.

Roche alleges that PhasED-Seq was developed or "built on" Roche trade secrets. *See, e.g.*, FAC ¶ 312.  For example, Roche alleges that the Doctors' work on phased variant detection during their time at Roche using Roche's platform "led to the development of Foresight's PhasED-Seq technology," FAC ¶ 227; that during the term of their agreements with Roche, the Doctors "developed PhasED-Seq and CLARITY using tools, software, and data, including the Roche [t]rade [s]ecrets previously acquired by Roche as part of the CappMed acquisition and improvements made by Roche to its Trade Secrets," *id*. ¶ 238; and that PhasED-Seq incorporates various improvements to CAPP-Seq technology that were "implemented and developed by Roche," *id*. ¶¶ 247, 249-259.  These allegations are sufficient at the pleading stage.  Foresight disputes that Roche's trade secrets were used to develop PhasED-Seq, but the Court cannot resolve factual disputes at the pleading stage.

The amended complaint also plausibly alleges that Foresight indirectly misappropriated

11

Roche's trade secrets through the Doctors:

> The elements of a claim of indirect trade secret misappropriation under California Civil Code § 3426 are: (1) the plaintiff is the owner of a valid trade secret; (2) the defendant acquired the trade secret from someone other than the plaintiff and (a) knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it; or (b) knew or had reason to know it was a trade secret and that the disclosure was a mistake; (3) the defendant used or disclosed the trade secret without plaintiff's authorization; and (4) the plaintiff suffered harm as a direct and proximate result of the defendant's use or disclosure of the trade secret, or the defendant benefitted from such use or disclosure.

*MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012) (citing Cal. Civ. Code § 3426). The amended complaint satisfies the requirements for indirect misappropriation. For example, Roche alleges that the Doctors had access to Roche's trade secrets and used them to develop PhasED-Seq, FAC ¶¶ 227, 238, 247, 249-259, and that they co-founded Foresight "with the intention of commercializing competing DNA sequencing techniques built on the proprietary CAPP-Seq technology previously acquired by Roche through the CappMed Acquisition," *id*. ¶¶ 312, 315, 317, 319. Foresight was founded "at the same time that [the Doctors] were serving as consultants and contractors for Roche." *Id*. ¶ 5. Roche further alleges that Foresight "misappropriated the Roche [t]rade [s]ecrets through Drs. Alizadeh, Diehn, and Kurtz," that Foresight "has used and continues to use the Roche [t]rade [s]ecrets," and that "Foresight's technology builds on proprietary CAPP-Seq/iDES technologies" which Roche acquired and further developed. *Id*. ¶¶ 328-330. These allegations are more than "conclusory assertions," as Foresight contends. Mot. at 17. *See, e.g.*, *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) (dismissing misappropriation claims where plaintiff's "conclusory assertion" that defendants "had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy or limit their use" was "devoid of any factual substantiation of Defendants' knowledge").

Roche alleges in sufficient detail that the Doctors acquired Roche's trade secrets and founded Foresight specifically for the purpose of developing and commercializing the secrets.[11]

---

[11] Foresight cites *Carl Zeiss Meditec, Inc. v. Topcon Medical Systems, Inc*. to support its argument that the Doctors' misappropriation cannot be imputed to the company. Mot. at 21. In *Carl Zeiss*,

*See* FAC ¶¶ 312, 315, 317, 319.  Thus, Roche has alleged misappropriation by Foresight.

### b. Roche's misappropriation claim is tied to facts other than the '779 Patent license.

Roche alleges that Foresight "knowingly and improperly gained access" to Roche trade secrets after Stanford granted Foresight an exclusive license for Patent No. 11,634,779 ("'779 Patent") and related patents.  FAC ¶ 327.  Foresight contends that this allegation cannot create a plausible inference of misappropriation because any alleged trade secrets would have been extinguished through the issuance of the '779 Patent.[12]  Mot. at 19; *see Micrel*, 2005 WL 6426678, at *4 ("The issuance of a patent gives a plaintiff constructive notice of its claims if the patent reveals information sufficient to alert a reasonable person of the need to inquire further.").  The Court agrees that if this were Roche's sole supporting allegation, it would be insufficient.  As discussed, however, the amended complaint contains allegations that state a plausible claim against Foresight.  *See* FAC ¶¶ 312-324.  Although the allegation regarding the '779 Patent arguably creates some ambiguity, it does not preclude Roche from stating a plausible claim for misappropriation based on the other allegations.

### C. Roche Has Stated a Declaratory Judgment Claim.

Under Count 10, Roche seeks a declaratory judgment of ownership of fifteen disputed patent applications ("DPAs") filed by Stanford between November 6, 2020 and October 4, 2023.  FAC ¶¶ 285, 438-446.  "In a case of actual controversy," courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see also Doe v. Epic Games, Inc*., 435 F. Supp. 3d 1024,

---

the plaintiff alleged that the defendant hired the plaintiff's former employees, and that those employees had knowledge of plaintiff's trade secrets.  No. 19-4162 SBA, 2019 WL 11499334, at *5 (N.D. Cal. Nov. 13, 2019).  Here, by contrast, Roche alleges that the Doctors launched Foresight with the intention of commercializing technology based on Roche's trade secrets.  Thus, the court's reasoning in *Carl Zeiss* is not applicable here.

[12] Foresight asserts a related argument that under the Bayh-Dole Act, 35 U.S.C. §§ 200-212, Roche could not have acquired the CAPP-Seq technology from CappMed in the first place because CAPP-Seq was developed using federal funds.  Mot. at 19-20.  This argument raises factual questions that cannot be resolved by a motion to dismiss, such as whether Stanford retained any trade secrets related to CAPP-Seq when it licensed that technology to CappMed, before CappMed was acquired by Roche.

13

1044 (N.D. Cal. 2020) (quoting statute). "To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Shell Gulf of Mexico, Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014)).

Roche's allegations establish a "substantial controversy" between parties with "adverse legal interests" in the DPAs.[13] Roche alleges that the Doctors assigned the inventions that were disclosed in the DPAs to Roche in the Consulting Agreements and the Kurtz Agreement, FAC ¶¶ 442, 444, but that Stanford claims to be the true owner of the DPAs, *id.* ¶ 445. Roche seeks a declaration that Roche is the lawful owner, or co-owner, of the DPAs, and that all rights in the DPAs and related patents which were granted to Foresight are null and void. *Id.* ¶ 446. Thus, Roche has pleaded an actual controversy regarding the DPAs between Roche on one hand, and Foresight and Stanford on the other.

Foresight disputes Roche's ability to prove ownership of the DPAs, citing the Doctors' patent assignment agreements with Stanford (the "Stanford Policies"), which predate the Consulting Agreements. Mot. at 23-25 (citing Heinrich Decl. Exs. F-H, ECF Nos. 104-6, 104-7, 104-8). Foresight argues that the Stanford Policies are incorporated by reference in the amended complaint, noting that the Consulting Agreements "acknowledged that Drs. Diehn and Alizadeh were employees of Stanford subject to certain obligations to Stanford regarding ownership of intellectual property." FAC ¶ 54; *see also* Consulting Agreements § 5.1. The Court denies Foresight's request to incorporate the Stanford Policies by reference in the amended complaint.

"[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *United States v.*

---

[13] Foresight does not challenge this claim based on a lack of immediacy; accordingly the Court focuses its analysis on whether Roche's allegations otherwise support a claim for declaratory judgment at this stage.

14

*Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). The amended complaint does not refer extensively to the Stanford Policies. At most, the Consulting Agreements refer to the Doctors' "conflicts of interest" vis-à-vis Stanford. *See* Consulting Agreements at § 5.1. The "mere mention" of a document's existence is insufficient to incorporate its contents by reference. *Id*. Furthermore, "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 342 F.3d at 1002. Foresight offers the Stanford Policies to dispute Roche's well-pled allegations regarding the legal effect of the Consulting Agreements. "[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id*. at 1003. Thus, even if the Stanford Policies were incorporated, the Court could not properly consider the truth of their contents. The Court finds that the Stanford Policies are not incorporated, and that Roche has stated a plausible claim for a declaratory judgment of ownership of the DPAs. The motion is denied as to Count 10.

## V.     CONCLUSION

For the foregoing reasons, the Court GRANTS Foresight's motion without prejudice as to Counts 3, 8, and 9. Pursuant to the parties' agreement, Roche is granted leave to amend the complaint to consolidate its state law trade secret claims under the CUTSA, and to withdraw its unfair competition claims under Counts 8 and 9. ECF No. 162. In all other respects the motion is DENIED.

Roche shall file an amended complaint consistent with this Order within fourteen days. Upon filing the amended complaint, Roche shall also file a redlined version comparing it to the original complaint.

**IT IS SO ORDERED.**

Dated: July 16, 2025

Eumi K. Lee
United States District Judge

15